THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v.                        ] | Cr. No. 19-cr-142-01-LM |
| ] | |
| ] | |
| NATHAN CRAIGUE | |

## MOTION TO DISMISS

The defendant, Nathan Craigue, through his counsel, Dorothy E. Graham, AFPD, files this motion respectfully requesting that the Court dismiss the indictment pursuant to Rule 7(c)(1) and Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. Counts One and Two are insufficient because they lack specificity and fail to state an offense punishable by the statutes of the United States. Craigue also asserts that 18 U.S.C. §1001(a)(2) must be invalidated for vagueness, as applied to the facts of this case, because it failed to provide him the kind of notice that would have enabled him to understand what conduct was prohibited.

## OFFENSE

Mr. Craigue has been charged with violating 18 U.S.C. § 1001(a)(2), which makes it a crime to knowingly and willfully make any materially false, fictitious, or fraudulent statement or representation in any matter within the jurisdiction of the executive,

1

legislative, or judicial branch of the Government of the United States. The two operative statements that the Government alleges are: (1) Mr. McKenna was a subcontractor; and (2) "I've always treated them – they would come and go as they please, so I would always treat them as not employees."

Count One alleges:

> That on or about August 28, 20018, Craigue did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation, by stating to an OSHA Compliance Safety & Health Officer that KM . . . was a subcontractor and was not an employee of the defendant or his business, when, in truth and in fact, as the defendant then and there knew, KM had been an employee and not a subcontractor.

Count Two alleges:

> that on or about October 24, 2018, Craigue "did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, by stating to an OSHA Compliance Safety & Health Officer that KM . . . was not an employee of the defendant or his business, specifically when the Officer asked him whether CE and KM were employees of his company, the defendant stated, 'I've always treated them – they would come and go as they please, so I would always treat them as not employees,' when, in truth and in fact, as the defendant then and there knew, KM had been an employee and not a subcontractor."

## FACTS[1]

In the mid-1980s Ken Craigue, Nathan Craigue's father, began his siding and home exterior company. Around 2002, Ken suffered a severe head injury from falling

---

[1] The facts were obtained from the discovery provided by the government.

2

from the roof of an old barn that he was working on.  As a result of Ken's condition, Craigue unexpectedly took over his father's business, Craigue & Sons Home Exteriors.

In the summer of 2018, Craigue was contracted to do exterior work on a building located at 280 Pleasant Street in Concord.  On August 28, Craigue had two individuals, Kenneth McKenna and Nicholas Ford, tasked with the project.  On that day, Concord Police and Fire Rescue were called to the location because McKenna had an accident, leaving him in critical condition.  Compliance Safety and Health Officer Scott Kelly, an investigator from OSHA, proceeded to the jobsite to investigate.

When Kelly arrived, he spoke with Concord Police officers who informed him that two workers, McKenna and Ford, had been at the jobsite.  McKenna had apparently fallen off a ladder while installing siding and was at the hospital.  Ford, who was still at the jobsite, agreed to speak with Kelly.  Ford stated that he had only worked for the company for about one week and was actually a subcontractor.  Ford explained that he was getting paid by the job and would get a check once the project was over.[2]  Describing the accident, Ford explained that he was working on the ground making materials while McKenna was installing siding.  At one point

---

[2] Ford provided another statement to OSHA on October 31, 2018, stating that he was actually paid by the hour "under the table" and that he "never lied, [he] just withheld information the first time. When he was talking to [Kelly]." 19R48_OSHA-01142-43.

McKenna felt dizzy so he came off the roof and rested. After a few minutes of resting and drinking water, McKenna climbed back on the ladder. Approximately 20 minutes later, Ford heard a noise and realized McKenna had fallen to the ground.

Craigue eventually arrived at the jobsite and also spoke with Kelly and other investigators. Craigue explained that Ford and McKenna were subcontractors. When Craigue received a specific job, McKenna would come and work for a few weeks. While Craigue and Kelly were talking, officers approached and informed them that McKenna had just died from his injuries. Craigue became very upset and explained that he had known McKenna for many years and had worked together on several different jobs. Because he was very upset, Craigue ended the conversation after answering more of Kelly's questions. On August 30, 2018, Chris Erickson sent an email to OSHA, reporting that he had worked for Craigue & Sons Siding and about a month prior had fallen off a ladder, fracturing his hip. Erickson further explained that McKenna had been his roommate and both had worked for Craigue. On August 31, 2018 and September 20, 2018 OSHA interviewed Erickson, who stated that he was not a subcontractor, was paid by the hour, and worked about 4 to 5 roofing jobs a year for Craigue.

On September 11, 2018 NH Labor Board Inspector Philip Martineau interviewed Craigue at the NH Worker's Compensation office in Concord. Prior to determining whether or not Craigue was responsible for labor violations, Martineau

4

asked Craigue a series of questions and applied the criteria set forth in NH RSA 275:42 II to determine if McKenna and Erickson were independent contractors or employees of Craigue's company.  19R48_DOL-OIG00002-00011.  Craigue explained that the two workers were independent contractors.  Although Martineau did not believe this conclusion or opinion, he believed that "Mr. Craigue was being truthful with him, and also appeared to be very shaken up about the whole ordeal." 19R48_OSHA-00371.   At an October 15th hearing before the NH Department of Labor, Craigue testified that the workers, McKenna and Erickson, identified themselves as independent contractors and one of the workers reported having his own business.  19R48_DOL-OIG-00003.

On October 24, 2019 Kelly conducted a recorded interview of Craigue, which was transcribed.  The interview consisted of approximately 69 questions concerning various aspects of Craigue's business.  The following excerpt is relevant to Count Two of the indictment:

| Kelly: | And it's very hard.  And I'm sure it's still hard.  But I mean, you know, we have to know – I've got to have the truth. |
| --- | --- |
| Craigue: | Yes. |
| Kelly: | Really, honestly.  So I'm just asking you again, I know I asked you there.  Is Christopher and [McKenna], are they employees? |
| Craigue: | I've always treated them – they would come and go as they please, so I would always treat them as not employees. |

19R48_OSHA-1037.

On November 15, 2018 the NH Department of Labor issued a decision seeking penalties in the amount of $39,000 and $54,700 for various violations, including failure to provide workers' compensation coverage and failure to keep true and accurate records of hours worked by two employees. Craigue was advised of his ability to appeal the decision. On December 7, 2018, the U.S. Department of Labor, OSHA, issued citations and notification of penalty to Craigue. The notification cited various violations of 29 CFR 1926 (safety and health regulations for construction under OSHA). OSHA sent Craigue an invoice/debt collection notice with a total of proposed penalties in the amount of $40,279.00. 19R48_OSHA-00352. On July 10, 2019, the government obtained a grand jury indictment against Craigue.

## LAW AND ARGUMENT

### Introduction

For Craigue to be found guilty of 18 U.S.C. § 1001, the government must prove each of the following elements beyond a reasonable doubt: First, that Craigue knowingly and willfully made a material false statement; Second, that he made the statement voluntarily and intentionally; and Third, that he made the statement to a federal agency. *Pattern Criminal Jury Instructions for the First Circuit*, 4.18.1001 (Updated 6/24/19). To sustain a false statement prosecution, the law requires that the statement or representation actually be false, and the government has the burden of establishing the alleged falsity of the statement. *United States v. Attick*, 649 F.2d 61, 63

(1st Cir. 1981). "False representations, like common law perjury, require proof of actual falsity. . ." *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994); s*ee United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999)("An indictment premised on a statement which on its face is not false cannot survive." )(quoting *United States v. Gahagan*, 881 F.2d 1380, 1383 (6th Cir. 1989); s*ee also United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003)(a defendant may not be convicted on the basis of a "statement that is, although misleading, literally true")(quoting *United States v. Mandanici,* 729 F.2d 914, 920-21 (2d Cir. 1984); *United States v. Moses*, 94 F.3d 182, 188 (5th Cir. 1996)("We cannot uphold a conviction . . . where the alleged statement . . . is true on its face."). If a statement can be interpreted in several ways, then the government must prove beyond a reasonable doubt that the statement is "false under any reasonable interpretation." *United States v. Hatch*, 434 F.3d 6, 13 (1st Cir. 2006). *See Gatewood*, 173 F.3d at 988 (quoting *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963)("[i]t is incumbent upon the Government to negative [beyond a reasonable doubt] any reasonable interpretation that would make the defendant's statement factually correct." ).

<u>The indictment fails to provide sufficient notice of the term "employee."</u>

Craigue cannot "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. Const. amend. V, and has that "right . . . to be informed of the nature and cause of the accusation." U.S.

7

Const. amend. VI.    Federal Rule of Criminal Procedure 7(c)(1) states that an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Rule 12(b) provides a criminal defendant the right to raise, by a pre-trial motion, "any defense, objection, or request that the court can determine without a trial on the merits."  Such objections include failure to state an offense, R.12(b)(3)(B)(v), and lack of specificity, R. 12(b)(3)(B)(iii).

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974); *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993).   "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117.   "[T]he question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018)(quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012).

The indictment in this case fails because it lacks specificity regarding the term "employee" and does not provide Craigue notice of his criminal conduct. While the government alleges that Craigue lied when identifying KM as an employee, the indictment fails to state the factors or legal definition the government relies to make the legal conclusion. Craigue asserts that to properly allege that he "did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation" requires specific notice that: (1) he knew the relevant and correct legal definition of employee/subcontractor utilized by the government in its determination;(2) had a clear understanding of the legal analysis involved in making the determination that McKenna was or was not an employee at the time he made the statements; (3) and willfully lied.

Whether under New Hampshire law or federal law, the employee versus subcontractor analysis is a legal conclusion involving evaluation of a multitude of factors. *See* RSA 281-A:2. For example, the various worker characterizations are defined in New Hampshire's worker's compensation statutory scheme. Section 281-A:2-III defines "Contractor" as "a person or organization which contracts with another to have work performed of a kind which is a regular and recurrent part of the work of the trade, business, occupation or profession of such person or organization performing the work." It defines "Subcontractor" as "a person who contracts with a contractor to perform the work described in paragraph III."

According to Subsection VI of the statute, private employee "means any person in the service of an employer subject to the provisions of this chapter under any express

9

or implied, oral or written contract of hire except a railroad employee engaged in interstate commerce whose rights are governed by the Federal Employers Liability Act. If they elect to be personally covered by this chapter, "employee" includes persons who regularly operate businesses or practice their trades, professions, or occupations, whether individually, or in partnership, or association with other persons, whether or not they hire others as employees." Subsection (b)(1), states that "any person . . . who performs services for pay for an employer, is presumed to be an employee." This presumption, however, may be rebutted by proof that an individual meets all of the criteria set forth in NH RSA 281-A:2, VI(b)(1)(A)-(G).

When Inspector Martineau determined Craigue had violated various labor laws, he referenced NH RSA 275:42 II to define "employee." 19R48_DOL-OIG00002-11. Employee "means and includes every person who may be permitted, required, or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment," but shall not include any person "exempted from the definition of employee as stated in RSA 281-A:2, VI(b)(2), (3), or (4), or RSA 281-A:2, VII(b)" . . . "or any person who meets all of the following criteria:

   (a) The person possesses or has applied for a federal employer identification number or social security number, or in the alternative, has agreed in writing to carry out the responsibilities imposed on employers under this chapter.
   (b) The person has control and discretion over the means and manner of performance of the work, in that the result of the work, rather than the means and manner by which the work is performed, is the primary element bargained for by the employer.

> (c) The person has control over the time when the work is performed, and the time of performance is not dictated by the employer.  However, this shall not prohibit the employer from reaching an agreement with the person as to completion schedule, range of work hours, and maximum number of work hours to be provided by the person, and in the case of entertainment, the time such entertainment is to be presented.
> (d) The person hires and pays the person's assistants, if any, and to the extent such assistants are employees, supervises the details of the assistants' work.
> (e) The person holds himself or herself out to be in business for himself or herself or is registered with the state as a business and the person has continuing or recurring business liabilities or obligations.
> (f) The person is responsible for satisfactory completion of work and may be held contractually responsible for failure to complete the work.
> (g) The person is not required to work exclusively for the employer.

NH RSA 275:42 II.

While Martineau conducted his own investigation using factors grounded in NH statutory law, OSHA made its own findings.  As a result of its investigation, OSHA imposed fines for violations related to the worksite on Pleasant Street.  According to the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, an employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" and "shall comply with occupational safety and health standards promulgated under [OSHA]."  29 U.S.C.A. § 654.  Only an "employer" may be cited for a violation under the Act.  *See* 29 U.S.C. § 658(a); *Secretary of Labor v. Allstate Painting and Contracting Co., Ins.* 21 O.S.H.Cas (BNA) 1033 (2005).  An "employer" is defined under OSHA as "a person engaged in a business affecting commerce who has employees . . . ".  29 U.S.C.A § 652(5).

11

"Employee" is defined as "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C.A. § 652(6). Because this language is circular, courts have applied a multifactor test ("Darden factors") when deciding whether a hired party is an employee and placed the burden of proof on the Secretary of Labor. *See A.C. Castle Construction Co., Inc. v. Acosta*, 882 F.3d 34, 38-39 (1st Cir. 2018). *Darden's* test is as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*A.C. Castle Construction Co., Inc. v. Acosta*, 882 F.3d at 39.

As referenced above, this investigation involved two agencies formulating the legal conclusion that KM was an employee of Craigue. The indictment, however, does not fairly inform Craigue of his illegal conduct. It fails to articulate the legal criteria the government utilized to determine KM's status. It also fails to articulate that Craigue had a clear understanding of the legal analysis involved in making the determination that KM was an employee at the time he made the statement, as opposed to expressing his own opinion, whether right or wrong, that KM was an

12

independent contractor. Craigue asserts that the indictment is insufficient because he is unable – from looking at the four corners of the document – to answer the following questions: Concerning the definition of "employee" how will the Court instruct the jury in this case? Will the government be tasked with proving beyond a reasonable doubt that KM was an employee, and if so, under what legal standard and criteria? Will the jury be tasked with making a legal conclusion as to KM's status, and if so, pursuant to what criteria? The indictment fails to provide Craigue with sufficient information to "prepare a defense and to invoke double-jeopardy protections to forestall a later trial on the same charges." *Stepanets*, 879 F.3d at 373. Accordingly, the Court should dismiss the indictment.

## Count Two Fails to State a Crime

In Count Two the government alleges that the following statement was false: "I've always treated them – they would come and go as they please, so I would always treat them as not employees." This count fails to state a crime because the alleged statement is not false. To sustain a false statement prosecution, the law requires that the statement or representation actually be false, and the government has the burden of establishing the alleged falsity of the statement. *United States v. Attick*, 649 F.2d 61, 63 (1st Cir. 1981). "False representations, like common law perjury, require proof of actual falsity. . ." *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994). If a statement can be interpreted in several ways, then the government must prove beyond a

reasonable doubt that the statement is "false under any reasonable interpretation." *United States v. Hatch*, 434 F.3d 6, 13 (1st Cir. 2006); s*ee Gatewood*, 173 F.3d at 988 (quoting *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963)("[i]t is incumbent upon the Government to negative [beyond a reasonable doubt] any reasonable interpretation that would make the defendant's statement factually correct." ).

Craigue's alleged statement is not an assertion that KM was in fact an employee. Rather, the alleged statement expresses a subjective viewpoint or belief. It is an indication of how Craigue personally treated KM. Accordingly, under that reasonable interpretation, the statement was not false.

## The statute is void for vagueness as applied

The Due Process Clause requires that "a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal." *United States v. Zhen Zhou Wu*, 711 F.3d 1, 13 (1st Cir. 2013)(quoting *Buckley v. Valeo,* 424 U.S. 1, 77 (1976)(per curiam). "The 'void for vagueness doctrine' addresses at least two discrete due process concerns: 'first, . . . regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'" *Id*. "Outside the First Amendment context", a district court considers "whether a statute is vague as applied to the particular facts at issue, for a defendant who engages in some conduct that is clearly proscribed cannot complain of the

14

vagueness of the law as applied to the conduct of others." *Id.* at 15 (internal quotations omitted).

The government's case is rooted in establishing that KM was an employee, and that Craigue's characterization of KM was a lie. The characterization of an individual's work status is based on a multi-step legal opinion after considering a myriad of statutory and judicial factors. *See A.C. Castle Construction Co., Inc. v. Acosta*, 882 F.3d 34, 38-39 (1st Cir. 2018); NH RSA 281-A:2; RSA 281-A:2, VI(b)(1)(A)-(G); s*ee also Appeal of Harleysville Ins. Co.* (N.H. Comp. Appeals Bd), 156 N.H. 532 (2007); *Appeal of New Generation Construction*, LLC, 2006 WL 8418255 (2006); *Appeal of Ann Miles Builder*, 150 N.H. 315, 320 (2003). Whether a worker is an employee versus an independent contractor is a concept that is regularly litigated and one that lawyers can disagree. The statute as applied to Craigue failed to provide him – a person will no law degree – with adequate notice that his statement was prohibited conduct. *Compare Zhen Zhou Wu*, 711 F.3d at 15-16 (the defendant "promoted himself as both an exporter of military supplies and an export compliance expert" and there was ample evidence that the defendants actually believed the phase shifters required government licenses for export.). Accordingly, this Court should dismiss the indictment.

This is a dispositive motion and so concurrence was not sought, pursuant to Local Rule 7.1(c).

No separate memorandum of law is attached as all points and authorities are contained herein.

Wherefore the defendant through counsel respectfully moves the Court to schedule a hearing, and after hearing dismiss the indictment and for such other relief as may be deemed just.

Respectfully submitted,

Date: January 23, 2020 /s/ *Dorothy E. Graham*

Respectfully submitted,

Dorothy E. Graham
Assistant Federal Defender
22 Bridge Street
Concord, NH
603.226-7360

E-mail: Dorothy_Graham@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was served on the following person on January 23, 2020 and in the manner specified herein: electronically served through CM/ECF to AUSA John Davis.

/s/*Dorothy E. Graham*

Dorothy E. Graham