UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>NATHAN CRAIGUE, )<br>)<br>Defendant ) | No. 1:19-cr-142-01-LM |

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, objects as follows to the Defendant's Motion to Dismiss (ECF No. 15, filed Jan. 23, 2020):

**I.     INTRODUCTION**

Defendant Nathan Craigue ("Craigue") was indicted on July 10, 2019, on two counts of making a false statement to a federal agent, in violation of 18 U.S.C. § 1001(a)(2). Craigue now moves to dismiss the indictment, and raises three arguments. First, Craigue challenges both counts on the ground that neither provides a legal definition of the term "employee," so the indictment is insufficiently specific. (ECF No. 15 at 13.) *See* Fed. R. Crim. P. 12(b)(3)(B)(iii) (identifying "lack of specificity" as ground for dismissal). Second, Craigue contends that Count 2 fails to state an offense because the statement there attributed to him – "I would always treat them as not employees" - is not "actually false" in that it "expresses a subjective viewpoint or belief." (ECF No. 15 at 14.) *See* Fed. R. Crim. P. 12(b)(3)(B)(v) ("failure to state an offense"). Third, Craigue maintains that as

applied in this case § 1001(a)(2) is void for vagueness under the Fifth Amendment's due process clause in that it fails to provide him with adequate notice that his statements were prohibited conduct. (ECF No. 15 at 15.)

As shown *infra*, each of Craigue's arguments falls short, and this Court should summarily deny his motion. The indictment is not insufficiently specific for failing to define the term "employee," since that term's definition is well settled and widely understood in federal labor law and the building industry, and the indictment otherwise amply meets the notice requirements of the Sixth Amendment and Rule 7. Count 2 of the indictment does not fail to state an offense, since the factual claims Craigue makes related to that count are for the jury and cannot be determined before trial. Finally, Craigue's void-for-vagueness argument must be rejected, both because it is premature and because the defendant cannot show that section 1001, as applied in this case involving an OSHA investigation following a fatal workplace accident, fails to give him fair notice of the conduct it punishes.

**II.     THE INDICTMENT**

Count 1 of the indictment alleges that on August 28, 2018, in an investigation by the Occupational Safety and Health Administration ("OSHA") of the U.S. Department of Labor, defendant Craigue knowingly and willfully made a material false statement "by stating to an OSHA Compliance Safety & Health Officer that KM, who had died as a result of a workplace accident earlier that day, was a subcontractor and was not an employee of the defendant or his business," when in

2

truth, as Craigue knew, "KM had been an employee and not a subcontractor." (ECF No. 1 at 1.)

Count 2 charges that on October 24, 2018, again in an OSHA investigation, Craigue again made a materially false statement to the OSHA Compliance Safety and Health Officer: that KM "was not an employee of the defendant or his business, specifically, when the Officer asked him whether CE and KM were employees of his company, the defendant stated, 'I've always treated them – they could come and go as they please, so I would always treat them as not employees,'" even though Craigue knew that "KM had been an employee and not a subcontractor." *Id.*[1]

### III. ARGUMENT

#### A. The Indictment Is Not Defective in Failing to Define the Term "Employee," Since Only a "Plain, Concise, and Definite" Charge Is Required, and "Employee" Has a Widely Accepted and Well Defined Common Law Meaning.

Craigue first maintains that the indictment lacks "specificity" regarding the term "employee," and thus provides insufficient notice about a "legal conclusion involving evaluation of a multitude of factors." (ECF No. 15 at 9.) According to Craigue, the indictment is required to set forth "the factors or legal definition the

---

[1] Although Craigue in his motion to dismiss includes a detailed statement of facts (ECF No. 15 at 2-6), such a factual statement is improper, since only pretrial motions that the Court "can determine without a trial on the merits" are permitted. Fed. R. Crim. P. 12(b)(1). Indeed, "a court must deny a motion to dismiss if the motion relies on disputed facts." *U.S. v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018.) Here, the government disputes aspects of Craigue's factual statement, including, for example, its omission of Craigue's sotto voce directive to NF at the fatal accident scene, "Don't forget, Skinny's a sub, you know, you're a sub." Accordingly, the Court should at this stage disregard Craigue's factual claims, and limit its inquiry to "whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *U.S. v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012).

government relies [on]," and must allege that Craigue both knew the "relevant and correct legal definition of employee/subcontractor" used by the government, and clearly understood the legal analysis involved in determining that KM was or was not an employee. (ECF No. 15 at 9.)

Craigue's specificity argument deserves short shrift. To be sure, criminal defendants have the right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Consistent with the constitutional commandment, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Thus, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018). Also, "in seeing whether an indictment is up to snuff, a court must reject arguments that embrace technical niceties at the expense of common sense." *Id.*

Here, the indictment tracks the statutory language, lists the elements of the crime, and identifies the specific statements alleged to be false, so Craigue wages an uphill battle in attempting to show the indictment's inadequacy. What's more, with respect to Craigue's specific claim that the term "employee" requires further elaboration, at least five considerations doom his cause.

<u>First</u>, the term "employee" in federal labor law has a settled definition, as Craigue himself effectively recognizes. (ECF No. 15 at 12 (listing *Darden* factors).)

4

Nearly 30 years ago the Supreme Court held that where Congress uses the word "employee" in a statute without further defining it, the term is construed to incorporate traditional agency law principles from the common law. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The holding in *Darden* was consistent with that in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989), where the Court cited a long line of cases in which, where the legislature used the term "employee" without defining it, "we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." The *Darden* Court recognized that traditional agency law principles comported with its precedents and with the "common understanding, reflected in those precedents, of the difference between an employee and an independent contractor." 503 U.S. at 327.

*Darden* proceeded to adopt a multi-factor test, previously formulated in *Reid*, for determining status as an "employee." Under the test,

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

5

*Darden*, 503 U.S. at 323-24 (quoting *Reid*, 490 U.S. at 751-52).  The Court emphasized that since the common-law test contains "'no shorthand formula or magic phrase that can be applied to find the answer,'" all of the "'incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Darden*, 503 U.S. at 324 (quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)).

Today *Darden*'s common law agency test is employed routinely in labor law litigation to determine employee status.  *See, e.g., A.C. Castle Construction Co., Inc. v. Acosta*, 882 F.3d 34, 39 (1st Cir. 2018) (applying *Darden* test in OSHA action related to worksite accident).  And the U.S. Department of Labor on its website directs contractors to apply the *Darden* factors in assessing whether an individual is an employee.  *See* https://www.dol.gov/ofccp/regs/compliance/faqs/EmpRelationship.html. In short, in the field of federal labor law, the *Darden* factors are ubiquitous and reign supreme.  Accordingly, the indictment's use of the term "employee," in the context of the questioning of a contractor during a federal OSHA investigation, cannot be shown to lack specificity.  *See United States v. Kahre*, 2009 WL 10715472, at *6 (D. Nev. Feb. 26, 2009) (denying motion to dismiss indictment in tax case raising employee/independent contractor issue, where "the law regarding employees and independent contractors is clearly settled," and citing *Darden* and IRS's 20-factor test).

Second, notwithstanding Craigue's protestations, neither the Sixth Amendment nor Rule 7 requires that an indictment define the terms it uses,

particularly when those terms have well-settled legal meanings.  *See Stepanets*, 879 F.3d at 372 (recognizing that "[a]n indictment need not say much" to satisfy notice requirements).  Allegations in an indictment "are not jury instructions," *United States v. Melvin*, 143 F. Supp. 3d 1354, 1379 (N.D. Ga. 2015), and it is well-settled that "indictments need not be infinitely specific," *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993).  Further, where a "legal term of art" is employed in an indictment's charging language, and the term is "sufficiently definite in legal meaning to give a defendant notice of the charge against him," there is no requirement that "the various component parts" of the term also be alleged.  *Hamling v. United States*, 418 U.S. 87, 118-19 (1974).

      Here, the indictment plainly and concisely charges that, on particular dates, in particular investigative interviews with an OSHA Compliance Safety & Health Officer, Craigue intentionally made false statements when he claimed (1) that KM was a subcontractor and not an employee; and (2) that he had always treated CE and KM as "not employees."  That language is more than adequate under Rule 7, and therefore the indictment need not also list the "component parts" of the term "employee."

      <u>Third</u>, although Craigue devotes much of his motion to state law definitions of "employee" and related terms from the RSA, and also discusses a parallel state investigation by a New Hampshire Labor Board Inspector (ECF No. 15 at 4-5, 9-11), those excursions can safely be ignored, since state law does not control and is not directly relevant to this case.  Manifestly, both counts allege false statements made

to the same federal OSHA officer, during the same federal OSHA investigation, and subject to the same federal penal statute. There is no question that in the underlying federal workplace safety investigation in this case federal law preempts contrary state law, and there is therefore no need to explore state law concepts to assess the sufficiency of the indictment. *See Pedraza v. Shell Oil Co.*, 942 F.2d 48, 52 (1st Cir. 1991) (recognizing that OSHA's section 18 "preempts unapproved assertions of state jurisdiction in the development and enforcement of standards relating to occupational health and safety issues in competition with federal standards").

Moreover, even if state labor laws and regulations were relevant to his motion, logic would require Craigue to demonstrate that New Hampshire's definitions of "employee" are materially different from the traditional common law agency concepts recognized in *Darden*, since, if the state and federal definitions of "employee" are effectively the same, there is no legal ground for confusion about one's status as an "employee." But conspicuously absent from Craigue's motion to dismiss is any claim or showing that New Hampshire labor laws differ from federal law in some way that matters. Nor could such a showing be made, since New Hampshire law regarding employee status reflects the same common law agency principles that underlie *Reid* and *Darden*. *Compare Petition of City Cab of Manchester, Inc.,* 652 A.2d 1202, 1203 (N.H. 1994) (recognizing that New Hampshire Department of Labor's "employer-employee" test is derived from *Restatement (Second) of Agency* § 220) *with Reid*, 490 U.S. at 752 (citing same

8

Restatement section as authority for *Darden* factors). Accordingly, Craigue's many citations to state law amount to an unnecessary detour that this Court should avoid.

Fourth, Craigue's claim that the indictment provides insufficient notice is blunted by the statute's mens rea requirement. Section 1001 expressly requires that the government prove that in making false statements Craigue acted "knowingly and willfully," as the indictment alleges. Thus, if Craigue was in fact confused about the meaning of "employee," he is free to show it. And if the evidence gives rise to a reasonable doubt about whether Craigue in good faith believed that his statements to the OSHA officer were true, then Craigue would be entitled to an acquittal. *See United States v. Arcadipane*, 41 F.3d 1, 8 (1st Cir. 1994) (holding that jury instruction asking whether defendant made "good faith" denial that he was employed or self-employed "unambiguously put the jury on notice that the government had to prove beyond a reasonable doubt that appellant knew the statements were false when made"). Thus, just as a scienter or mens rea requirement "may mitigate a law's vagueness," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499 (1982), so here the statute's requirement of proof of an *intentional* false statement undermines Craigue's claim that the indictment is fatally deficient for failing to define the term "employee."

Fifth, and finally, common sense suggests that Craigue, an experienced businessman in a regulated industry, shares in the "common understanding," *see Darden*, 503 U.S. at 327, regarding the difference between an employee and an

9

independent contractor. Craigue must know that the employee/contractor distinction is fundamental, and has important legal and financial consequences with respect, for example, to the provision of workers' compensation insurance; unemployment insurance; payroll taxes; and workplace safety regulations and responsibilities. And like any owner of a company, Craigue must have frequently made business judgments that turned on whether a given worker was categorized as an employee or a contractor. In short, context matters, and in the context of this false statement case, a federal workplace safety investigation of the defendant's business following the accidental on-the-job death of the defendant's long-time paid assistant, KM, the defendant cannot credibly maintain that without a recitation of the *Darden* factors in the indictment he cannot fairly defend himself. *See Stepanets*, 879 F.3d at 372.

In summary, Craigue has failed to demonstrate that the indictment is fatally deficient because it does not define the term "employee."

B.   **Count 2 Does Not Fail to State an Offense**.

Craigue's second argument fares no better than his first. He claims that Count 2 fails to state an offense because his alleged response to the OSHA officer (who had asked him whether CE and KM were employees of his company), "I would always treat them as not employees," was "not false." According to Craigue, "If a statement can be interpreted in several ways, then the government must prove beyond a reasonable doubt that the statement is 'false under any reasonable interpretation.'" (ECF No. 15 at 14.) Here, according to Craigue, the alleged

10

statement "expresses a subjective viewpoint or belief," and "is an indication of how Craigue personally treated KM." "[U]nder that reasonable interpretation," he contends, "the statement was not false." (ECF No. 15 at 14.)

The government disagrees, for several reasons. First, although Craigue contends that his statement to the OSHA officer was "not false," that question is properly for the jury. *See United States v. Reveron Martinez*, 836 F.2d 684, 689 (1st Cir. 1988). It cannot be raised via a motion to dismiss under Rule 12(b)(3)(B)(v). *United States v. Rodriguez-Rivera*, 918 F.3d 32, 35-36 (1st Cir. 2019) (reversing pretrial dismissal of aggravated identity theft counts where district court determined disputed facts). Accordingly, because Craigue's factual defenses are premature, his motion must be denied.

Second, Craigue's assertion that his alleged statement "expresses a subjective viewpoint or belief" is badly mistaken. The statement is one of fact. The OSHA officer asked Craigue whether two men were employees of his company. Craigue replied that the two men "would come and go as they please," so he "would always treat them as not employees." That statement was one of fact, not belief, and it was either true or false. If the evidence shows that it was false, and that Craigue made the false statement intentionally, a jury could properly convict on the offense charged in Count 2.

Third, Craigue garbles the law in claiming that, if a defendant's statement can be interpreted in several ways, "then the government must prove beyond a reasonable doubt that the statement is 'false under any reasonable interpretation.'"

11

(ECF No. 15 at 13-14.) The law in the First Circuit is otherwise. The issue is not whether a defendant's *statement* can be interpreted in several ways; again, the question of what a defendant subjectively intended is for the jury. Instead, the inquiry focuses on the *question* that may precede an alleged false statement. If the question posed to a defendant is ambiguous and susceptible to multiple interpretations, then the government is required to prove that the answer is false under any "reasonable interpretation" of that question. Thus, "in a false statement prosecution, an answer to a question is not fraudulent if there is an objectively reasonable interpretation of the question under which the answer is not even false." *United States v. Rowe*, 144 F.3d 15, 21 (1st Cir. 1998).

But where the question asked a defendant is not ambiguous, and is susceptible to only one reasonable construction, then a jury may properly conclude that the defendant's answer to the unambiguous question was intentionally false. *See United States v. Boskic*, 545 F.3d 69, 91 (1st Cir. 2008) ("the jury reasonably could find that Boskic understood that the question posed by Gehani demanded disclosure of all of his military activity"); *United States v. Hatch*, 434 F.3d 1, 6 (1st Cir. 2006) ("The government proved, and a rational jury found beyond a reasonable doubt, that the only sensible reading of Question 18 demanded that Hatch report his entire OUI history"). And a jury in such a case is *not* required to decide whether the defendant's statement is "false under any reasonable interpretation" of the statement – contrary to Craigue's legal brief. Here, nothing in Count 2 suggests that the OSHA officer's question to Craigue was ambiguous, and there is no basis to

12

dismiss the count on the theory that under Craigue's suggested "reasonable interpretation" of his own statement, it was not false.

### C. Section 1001, as Applied in This Case, Is Not Void for Vagueness.

Finally, Craigue's void-for-vagueness challenge to section 1001 must also fail, because it is premature, or alternately, because in this case he had sufficient notice of the conduct it prohibited.

A statute is unconstitutionally vague in violation of the Fifth Amendment's due process clause if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary punishment." *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015). As Craigue acknowledges, outside the First Amendment context, a court must consider "whether a statute is vague as applied *to the particular facts at issue*." *United States v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013) (emphasis in original). And a statute does not fail for vagueness "merely because it sets forth a standard for determining liability that is not mathematically precise." *United States v. Phillipos*, 849 F.3d 464, 477 (1st Cir. 2017).

Any determination that section 1001 is unconstitutionally vague as applied to the facts at issue here is improper, because the facts are disputed. Under Federal Rule of Criminal Procedure 12(b)(1), parties may raise as pretrial motions only those issues "that the court can determine without a trial on the merits." *See United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (district court's pretrial

13

ruling that statute was not void for vagueness was premature, because it required resolving factual issues related to defendant's alleged offense that fell within the province of the jury); *United States v. Barletta*, 644 F.2d 50, 58 (1st Cir. 1981) (Rule 12(b)(1) "excludes from pretrial determination any issues that require review of a substantially complete portion of the evidence to be introduced at trial"). Here, the facts surrounding the definition of employee, and Craigue's understanding of that definition, are the very facts to be determined by a jury at trial, and therefore a pretrial ruling on whether section 1001 is vague as applied would be premature.[2]

Should the court conclude that such a ruling may be made at this stage of proceedings, Craigue's claim must nonetheless fail. The reasons outlined above supporting the specificity of the term "employee" in the indictment also show that the term "employee" is not unconstitutionally vague, but a "familiar" standard in federal labor law. *See Phillipos*, 849 F.3d at 15 (section 1001 not void for vagueness where defendant claimed the materiality requirement made it unclear what statements were prohibited, because materiality "is a familiar [standard]"). While determining an individual's work status may not always be mathematically precise, neither is it impossible for a person of reasonable intelligence to understand.

*Zhen Zhou Wu* is instructive here, but not in the manner that Craigue suggests. (ECF No. 15 at 15.) In that case, a defendant argued that the regulatory framework of the Arms Export Control Act was unconstitutionally vague, and therefore he had not had notice that the items he exported were subject to the Act's

---

[2] See n.1 for the government's disagreement with the defendant's factual statement.

14

requirements.  711 F.3d at 13.  The court disagreed, noting that the defendant "promoted himself as both an exporter of military supplies and an export compliance expert," and that "it is not too much to ask" someone involved in such a business to comply with the applicable export control regulations.  *Id.* at 15.

Here, Craigue has run Craigue & Sons Home Exteriors, the company founded by his father, since approximately 2002.  In the normal course of running that business, he would need to comprehend the difference between an employee and a contractor, and to understand his related legal obligations. It is not too much to ask the owner of a construction company to know whether those working for him qualify as employees or contractors. *See Village of Hoffman Estates*, 455 U.S. at 498 ("[E]conomic regulation is subject to a less strict vagueness test because . . . businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.").

Further, as noted above, section 1001's scienter requirement weighs against finding it fatally vague.  "Where a statute explicitly provides that a criminal violation of its terms must be 'willful,' the void-for-vagueness doctrine is especially inapposite," because a defendant cannot be convicted based on "good-faith errors." *Zhen Zhou Wu*, 711 F.3d at 15; *see Village of Hoffman Estates*, 455 U.S. at 499. Should the government fail to prove beyond a reasonable doubt that Craigue understood the basic distinction between an employee and a contractor, Craigue could not be convicted.

Accordingly, Craigue has failed to show that section 1001 is unconstitutionally vague as applied to his case.

## IV. CONCLUSION

For the reasons stated, this Court should deny Craigue's Motion to Dismiss the Indictment.

Date: February 6, 2020     Respectfully submitted

SCOTT W. MURRAY
United States Attorney

By:   /s/ John S. Davis
John S. Davis
Anna Dronzek
Assistant U.S. Attorneys
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552