UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                Criminal No. 19-cr-142-LM
                                        Opinion No. 2020 DNH 109

Nathan Craigue

**O R D E R**

Defendant, Nathan Craigue, is charged with two counts of making a false statement to a federal agent in violation of 18 U.S.C. § 1001(a)(2). Craigue moves to dismiss the two counts as multiplicitous under Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) or, in the alternative, to compel the government to elect between the multiplicitous counts.[1] The government objects.

**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Specifically, a motion

---

[1] Craigue requests a hearing on this motion. However, upon review of the relevant pleadings, the court is not convinced that oral argument would "provide assistance to the court." LR 7.1(d).

claiming a defect in the indictment, such as "charging the same offense in more than one count (multiplicity)", must be raised in a pretrial motion when the basis for the motion is "reasonably available" and the motion can be determined without a trial on the merits.  Fed. R. Crim. P. 12(b)(3)(B)(ii).  When considering a motion to dismiss under Rule 12(b), the court must accept the factual allegations in the indictment as true.  See United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011); United States v. Bohai Trading Co., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

## BACKGROUND[2]

Craigue is the owner and operator of Craigue & Sons Home Exteriors, which is a siding and home exterior company.  In the summer of 2018, the company was hired to perform work on a property located in Concord, New Hampshire.  Craigue tasked two individuals, Kenneth McKenna and Nicholas Ford, with the project.  On August 28, 2018, McKenna had an accident at the job site.  He later died from his injuries.

The day of the accident, an officer from the Occupational Safety and Health Administration ("OSHA") visited the job site

---

[2] To the extent the following facts are not alleged in the indictment, the court has drawn them from the parties' pleadings.  These facts are not dispositive of the pending motion and are recited only to provide context.

and questioned Craigue. In response to the OSHA officer's questioning, Craigue stated that McKenna and Ford were subcontractors, not employees.

In October 2018, an OSHA officer interviewed Craigue again about the accident.[3] The officer asked Craigue whether McKenna and Ford were employees. Craigue replied "I've always treated them—they would come and go as they please, so I would always treat them as not employees." Doc. no. 1 at 2.

In 2019, a grand jury indicted Craigue on two counts of making a false statement to a federal agent in violation of 18 U.S.C. § 1001(a)(2). Count one alleges that Craigue knowingly and willfully made a materially false statement to the OSHA officer on the day of the accident (August 28, 2018) by stating that McKenna was a subcontractor, not an employee. Count two alleges that Craigue knowingly and willfully made a second materially false statement to the OSHA officer when he stated during an interview in October 2018 that "I've always treated them—they would come and go as they please, so I would always treat them as not employees." Doc. no. 1 at 2. Craigue argues that these two counts are multiplicitous and therefore the court

---

[3] The allegations in the indictment do not specify the identity of the OSHA officer who questioned Craigue on each of the two relevant occasions. Craigue represents, based on discovery provided by the government, that the same OHSA officer, Scott Kelly, questioned Craigue on both occasions. The government does not explicitly dispute this point.

should either dismiss the indictment or require the government to elect between the two counts.

## DISCUSSION

"A prosecution is multiplicitous when it charges a defendant more than once for what is essentially a single crime." United States v. Smith, 919 F.3d 1, 15 (1st Cir. 2019), cert. denied, 140 S. Ct. 203, 205 (2019) (internal quotation marks omitted). For example, "when a felon has violated 18 U.S.C. § 922(g) by possessing a firearm, it would be multiplicitous to charge the felon with two counts simply because he had [the firearm] yesterday and today." United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012). A multiplicitous indictment creates two potential problems. First, it may cause the defendant to receive multiple sentences for the same offense, thereby running afoul of the Double Jeopardy Clause, which bars such a result. See Smith, 919 F.3d at 15; United States v. Gagalis, No. 04-CR-126-0106-PB, 2006 WL 931909, at *1 (D.N.H. Apr. 7, 2006). Second, a multiplicitous indictment may result in the jury being "improperly prejudiced by the suggestion that the defendant has committed several crimes instead of one." Gagalis, 2006 WL 931909, at *1.

Where, as here, "a claim of multiplicity is premised on an indictment alleging several violations of a single statutory

provision, an inquiring court must determine whether there is a sufficient factual basis to treat each count as separate." United States v. Gordon, 875 F.3d 26, 32 (1st Cir. 2017) (quoting United States v. Stefanidakis, 678 F.3d 96, 100-01 (1st Cir. 2012)); see also United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011).  That determination "depends on whether Congress intended to punish separately each of the alleged violations."  Gordon, 875 F.3d at 32; see also Smith, 919 F.3d at 15.  In other words, the court must determine the "unit of prosecution" of the relevant statute.  Gagalis, 2006 WL 931909, at *1.

    Under 18 U.S.C. § 1001(a)(2), it is a crime to knowingly and willfully "make[] any materially false, fictious, or fraudulent statement or representation" on any matter within "the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  18 U.S.C. § 1001(a)(2).  This statutory language makes it unlawful to knowingly and willfully make a single false statement or representation of material fact to a United States agency. United States v. Guzman, 781 F.2d 428, 432 (5th Cir. 1986); United States v. Jones, Crim. No. 1:11-CR-42-TCB-LTW, 2012 WL 4049449, at *8 (N.D. Ga. Aug. 3, 2012), R&R adopted 2012 WL 4049448 (N.D. Ga. Sept. 13, 2012).

The unit of prosecution under § 1001(a)(2)—a single false statement—would seem to suggest that Craigue could be charged, convicted, and punished for both of his allegedly false statements without a multiplicity problem.  However, the Eighth and Ninth Circuit Courts of Appeals have adopted a special rule applicable under § 1001(a)(2) under certain circumstances: "where identical false statements, in either oral or written form, are made in response to identical questions, the declarant may be convicted only once."  United States v. Stewart, 420 F.3d 1007, 1013 (9th Cir. 2005) (quoting United States v. Olsowy, 836 F.2d 439, 443 (9th Cir. 1987)); see also United States v. Graham, 60 F.3d 463, 467 (8th Cir. 1995).  The underlying justification for this rule is that "the repetition of a false statement by a declarant does not further impair the operations of the government beyond the initial violation, and a contrary rule would permit the government to pile on multiple convictions by repeatedly asking a declarant the same question."  Stewart, 420 F.3d at 1013.  This approach, referred to as the "unitary harm rule," has developed into the following two-part test: "[t]he government may charge separate violations for identical false statements under section 1001(a)(2) if: (1) the declarant was asked the same question and gave the same answer; and (2) the later false statement further impaired the operations of the

government."  Id.; see also Graham, 60 F.3d at 467; United States v. Salas-Camacho, 859 F.2d 788, 791 (9th Cir. 1988).

For instance, in Stewart, the Ninth Circuit reversed one of the defendant's convictions under § 1001(a)(2) as multiplicitous under the unitary harm rule.  Stewart, 420 F.3d at 1014.  In that case, the defendant was charged with making two false statements to an FBI agent in relation to an investigation into whether he had threatened to murder a federal judge.  Id. at 1010.  In November 2002, an FBI agent told the defendant he had reason to believe the defendant was involved in a conspiracy to harm a federal judge and asked if the defendant had said "anything that could even be misinterpreted as a threat to a judge."  Id. at 1011.  Defendant denied saying anything.  Id.  Two months later, in January 2003, the same FBI agent interviewed the defendant a second time and again asked whether he had said "anything which could have been misinterpreted by anyone regarding any threats to a judge."  Id.  Again, defendant replied in the negative.  Id.  Applying the unitary harm rule, the Ninth Circuit reversed the defendant's conviction on the second false statement because the two convictions involved identical questions and answers and the evidence at trial did not establish that the defendant's second false statement had further impaired the FBI's investigation.  Id. at 1014.

The government argues that the court should decline to follow Stewart and its supporting line of cases because the "statutory language [of § 1001(a)(2)] cannot plausibly be stretched as far" as these cases and defendant wish to take it. Doc. no. 21 at 5.  The court is not persuaded.  The court finds the unitary harm rule adhered to in the Eighth and Ninth Circuits logical and persuasive.  Further, the government has not cited, and the court has not found, any case that has expressly rejected the unitary harm rule or lodged a similar criticism of the rule.

To the contrary, although only the Eighth and Ninth Circuits have expressly adopted the rule, numerous other courts have applied or implicitly adopted the rule.  See, e.g., United States v. Wu, 419 F.3d 142, 147 (2d Cir. 2005) (noting Second Circuit's "implicit endorsement" of Olsowy); United States v. Long, No. 1:06CR00028, 2007 WL 218592, at *4 (W.D. Va. Jan. 29, 2007) (vacating perjury conviction as multiplicitous under unitary harm rule); United States v. Cisneros, 26 F. Supp. 2d 24, 44 (D.D.C. 1998) (citing Olsowy and Salas-Camacho approvingly); cf. United States v. Anderson-Bagshaw, 509 Fed. App'x 396, 412 (6th Cir. 2012) (noting that Sixth Circuit has not expressly adopted the unitary harm rule and declining to decide whether to adopt it because the rule was inapplicable to the facts presented).  Notably, at least two district courts in

8

the First Circuit have relied on this jurisprudence. See Gagalis, 2006 WL 931909, at *3 n.3 (citing Olsowy to clarify that repeating the same false statement to the same audience does not "necessarily" result in multiple securities fraud violations); United States v. Mavroules, 819 F. Supp. 1109, 1111 (D. Mass. 1993) (relying on Salas-Camacho to find two false statement charges not multiplicitous because the second statement further impaired the government's function).  Given this weight of authority and the logic behind the rule, the court adopts the unitary harm rule.

The question remains whether the unitary harm rule should be applied in this case, i.e. whether Craigue was asked the same question and gave the same answer twice and whether the later alleged false statement further impaired the operations of the government.  Count one alleges that Craigue falsely represented to an OHSA officer in August 2018 that McKenna was a subcontractor and not an employee.  Count two alleges that Craigue falsely represented to an OHSA officer in October 2018 that McKenna was not an employee by saying "I've always treated them—they would come and go as they please, so I would always treat them as not employees."  Doc. no. 1 at 2.

Though these statements are not identical, the alleged false assertion—that McKenna was not an employee—is the same. These two alleged false statements can be considered identical

9

for the purposes of the unitary harm rule because the "same factual proof" would be required to prove their falsity: evidence that McKenna was in fact an employee. Graham, 60 F.3d at 467. Further, not much time elapsed between the two statements. See Stewart, 420 F.3d at 1011 n.1, 1014. Because the indictment alleges two functionally identical false statements made just two months apart in separate counts, defendant has a colorable claim that the indictment is multiplicitous. See Graham, 60 F.3d at 466-67 (three charges for making false statement in bankruptcy proceeding found to be multiplicitous where defendant lied about ownership interest in property during first meeting with creditors and repeated the same lie during second and third meetings with creditors); United States v. Trent, 949 F.2d 998, 1000 (8th Cir. 1991) (reversing false statement conviction on multiplicity grounds when defendant's repetition of her fabricated story of a robbery to FBI agents "added nothing" to the harm caused to the FBI's inquiry); Olsowy, 836 F.2d at 443 (holding that defendant's same oral denial about having received a Social Security check repeated two weeks later to same government agent did not further impair government operations and therefore conviction on second statement could not stand).

At this stage of the proceedings, however, it is not clear whether the other factual prerequisites of the rule are present

in this case. From the face of the indictment, one cannot tell if Craigue made the two statements in response to identical questions. Additionally, the court cannot discern from the facts alleged in the indictment whether Craigue's second statement "further impaired the operations of the government." Stewart, 420 F.3d at 1013-14 (holding second conviction multiplicitous where government agent's trial testimony did not establish that defendant's second false statement added "any additional impairment to his investigation"). One fact that may be crucial to the "impairment" analysis is whether Craigue made both his statements to the same government agent. Compare Stewart, 420 F.3d at 1013-14 (holding second conviction multiplicitous where defendant made identical false statements to same FBI agent), with Salas-Camacho, 859 F.3d at 791 (upholding conviction for two identical false statements when defendant made statements to two different Customs inspectors who each had different job duties). As noted above, though there appears to be evidence that Craigue made both statements to the same OHSA officer, that is not evident from the indictment. Because these factual issues require further development, the court denies Craigue's motion to dismiss the indictment without prejudice as premature. See United States v. Hubbell, 177 F.3d 11, 14 (D.C. Cir. 1999).

The court also denies without prejudice Craigue's request that the court compel the government to elect between the two charges. The court has not yet made a finding that the indictment is multiplicitous, so it would be premature to require the government to elect between the two counts now. Even if the court were to find the indictment multiplicitous before trial, it would be within the court's discretion to either "require the [g]overnment to elect on which count it will proceed or to allow both counts to proceed to trial and dismiss one prior to sentencing." United States v. Widi, 697 F. Supp. 2d 140, 145 (D. Me. 2010). This is so in part because Craigue appears to argue only that the purported multiplicitous indictment violates the Fifth Amendment's Double Jeopardy Clause. See id.; cf. United States v. Martinez, 599 F. Supp. 2d 784, 794 (W.D. Tex. 2009) (observing that defendant may argue that multiplicitous indictment will improperly prejudice jury by suggesting that several crimes have been committed). Double Jeopardy, however, is not implicated until the defendant faces punishment for multiplicitous convictions. See Widi, 697 F. Supp. 2d at 145. Thus, even assuming Craigue is convicted of both counts at trial, the court can protect his rights by sentencing him on only one conviction. See id.

**CONCLUSION**

For the foregoing reasons, the court denies without prejudice Craigue's motion to dismiss the indictment as multiplicitous or require an election between the two counts (doc. no. 19).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 29, 2020

cc: Counsel of Record
 U.S. Probation
 U.S. Marshal