*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO OCTOBER 6, 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                                *
UNITED STATES OF AMERICA         *
                                 *  1:19-cr-142-01-LM
            v.                   *  February 20, 2020
                                 *  9:45 a.m.
NATHAN CRAIGUE                   *
                                 *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LANDYA B. McCAFFERTY

Appearances:


For the Government:         John S. Davis, AUSA
                            United States Attorney's Office



For the Defendant:          Dorothy E. Graham, Esq.
                            Behzad Mirhashem, Esq.
                            Federal Defender's Office




Court Reporter:             Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603)225-1442

P R O C E E D I N G S

1          THE CLERK:  The Court has before it for

2    consideration today a motion hearing regarding a motion

3    to dismiss in criminal case 19-cr-142-01-LM, United

4    States vs. Nathan Craigue.

5          THE COURT:  All right.  Attorney Graham, go

6    ahead.

7          MS. GRAHAM:  Thank you.

8          Your Honor, this is somewhat of an unusual

9    case because the government is contending that my client

10   made a false statement and not a factual statement that

11   we would tend to see on a regular basis, like my shirt

12   is red or it's blue or something that can easily be

13   disproved, but it's one based on my client's

14   understanding of a complicated and multidimensional

15   criteria definition that's often litigated in courts.

16   And that is, what is an employee.

17         The indictment fails to provide sufficient

18   notice to Craigue concerning the elements of the

19   offense, specifically, as I've outlined, what is an

20   employee, and this case hinges on what is an employee.

21         THE COURT:  Do you have case law that you can

22   give me that would show or hold that the government does

23   need to include that definition in the indictment?  It

24   includes the elements; you're saying it's just missing

1    that -- that piece, the definition of employee.

2             Do you have case law that would help me on

3    that?  Because the requirements of a sufficient

4    indictment are not overly demanding.  It's got to state

5    the elements and the nature of the crime.

6             MS. GRAHAM:  Yes, your Honor, but I think we

7    are -- the false statement is the element.  The falsity

8    in and of itself, where that's the element, that the

9    four corners do not define exactly what does -- what

10   does that element mean.

11            And so I think that that can't be supplied by

12   discovery.  It can't be supplied by any other facts or

13   notice within the government's, you know, discovery.  It

14   is a notice that needs to be contained within the four

15   corners.  And just saying it's a false statement without

16   a true understanding of what that actually means does

17   not provide him with sufficient notice.

18            But as to a specific case, no, I do not -- I

19   can't cite to a specific case.

20            THE COURT:  I did not try the *Munyenyezi* case,

21   but I have vague -- a vague understanding.  And as I

22   recall, the government charged her with making a false

23   statement on her naturalization app and I think one of

24   the false statements was she described herself as

25   somebody with good moral character.

```
1              And I -- -- did the indictment -- is it
2     required that the government specify what that means?
3     Obviously the government charged in Munyenyezi that she
4     was a genocidaire and was involved in essentially mass
5     killings.  But ultimately, that phrase, good moral
6     character, I don't think the government had to define.
7     I'm just trying to think of other examples of cases --
8              MS. GRAHAM:  Right.
9              THE COURT:  -- like this one.  And I agree it
10    seems unusual.
11             MS. GRAHAM:  I think that what is -- makes
12    this case distinguishable is that employee has
13    potentially so many different meanings within the legal
14    community or within the -- the definitions provided to
15    the Court when they're instructing the jury that these
16    are the elements, but not only the elements, but these
17    are the factors that you need to consider.
18             And given that this is a -- a -- it's a legal
19    term in a sense; it's not one that can be easily decided
20    by -- by a --
21             THE COURT:  So it would be -- I'm trying to
22    think of another example.
23             An accident, car accident; police pull over,
24    the driver gets out and says, I was not negligent.
25    Negligent would be a legal --
```

1           MS. GRAHAM:  Correct.

2           THE COURT:  -- term.  And so it would be akin

3  to essentially charging him -- he said, I was negligent

4  (sic), when he knew then and there that he was, in fact,

5  negligent.

6           MS. GRAHAM:  Correct.

7           THE COURT:  And how would --

8           MS. GRAHAM:  I think --

9           THE COURT:  How would the jury go about

10  determining whether or not that was a false statement

11  when it's got legal ramifications?

12           MS. GRAHAM:  Right.  I think ultimately, for

13  instance, in this case, the jury is going to need to be

14  instructed that employee means such and such and such.

15  I mean, according to the *Darden* factors, the jury's

16  going to have to be told what is the definition that

17  they are to use when applying the facts of the case

18  to -- to the law in deciding if, in fact, this

19  individual was, in fact, an employee.  And, therefore,

20  if he was an employee, then, therefore, that statement

21  is true and his statement is false.

22           So I -- I see that the jury is going to have

23  to sift through all of the facts of the case and apply

24  them to all of those factors as the government says is

25  under common law agency factors -- or the standards

1   presented in *Darden*.

2          THE COURT:  Okay.  Go ahead.  I interrupted

3   you with questions.  Go ahead.

4          MS. GRAHAM:  That's fine.

5          May I just have one moment, your Honor?

6          THE COURT:  Yes.

7          MS. GRAHAM:  I think -- I believe the

8   government's response to our argument is that the

9   indictment is sufficient, but that requires us to make

10  certain assumptions.  And from looking at the

11  indictment, Mr. Craigue can't assume that the government

12  means employee in the context of OSHA or that the OSHA

13  definition applies because it preempts state

14  definitions, or that it means employee in a legal

15  context specific to an OSHA investigation versus a

16  colloquial context understood by nonemployers.

17          All of that assumes that the reader -- the

18  reader must assume from the indictment the intent of the

19  government, and that assumption just cannot be made here

20  because there is no other indicator from that word,

21  false statement of an employee.  There's nothing within

22  the four corners to identify what factors need to be

23  addressed or challenged at trial.

24          Your Honor, that is -- that's -- I'll rest on

25  my pleadings for that argument.

```
 1              THE COURT:  Okay.  Attorney Davis.

 2              MR. DAVIS:  Your Honor, I don't have much.

 3              The Court asked for case law.  I think the

 4  closest thing to a case is the Kahre case, K-a-h-r-e,

 5  cited in the government's brief.  That's not -- it's not

 6  a false statement case, but it's a tax case on page 6 of

 7  our brief.  But a similar argument is made there on a

 8  motion to dismiss an indictment and the Court had no

 9  problem denying that motion.

10              And I would say the -- the controlling supreme

11  court case is Hamling, which says that a legal term of

12  art need not be defined in an indictment.  I think

13  that's the guidance, the supreme court guidance, that's

14  out there.

15              THE COURT:  Hamling is --

16              MR. DAVIS:  I'm sorry.  That's cited on --

17              THE COURT:  I looked for Kahre on page 6.

18              MR. DAVIS:  Page 6.

19              THE COURT:  Oh, I'm looking at the wrong

20  thing.  Sorry.

21              MR. DAVIS:  Yeah.

22              THE COURT:  Okay.  Yeah.

23              MR. DAVIS:  I should have where Hamling is.

24              THE COURT:  That's all right.  As long as --

25  it's H-a-m-l-i-n-g?
```

```
 1                    MR. DAVIS:  H-a-m-l-i-n-g.

 2                    THE COURT:  Okay.

 3                    MR. DAVIS:  So, your Honor, the Court raised a

 4      hypothetical, an interesting hypothetical, which was

 5      what if the -- a defendant walked up and said, I was not

 6      negligent.

 7                    To me, a better analogy or a better example

 8      here is say there was a car accident in which ownership

 9      of the car is somehow material and at the accident

10      scene, the defendant walks up to the police officer and

11      the police officer says, do you own that car?  And the

12      person said, I am not the owner of the car.

13                    In that scenario, there are -- certainly

14      ownership of a car is a legal property interest concept.

15      There may be -- there may be definitions about it, there

16      may be nuance to whether he was lending the car to his

17      son-in-law and which garage it was staying in at that

18      time and who was paying the insurance on it, but if the

19      defendant says, I didn't own the car and, in fact, he

20      had bought the car and it was registered to him and he

21      often drove it, I can imagine the government saying, you

22      made a false statement when you said you -- you did not

23      own that car.  And in an indictment, the false

24      statement, the material false statement, would be the

25      defendant made a false statement when he said he didn't
```

1   own the car.

2          And I don't think the proper remedy would be

3   to dismiss that indictment on the ground that, well,

4   ownership -- there could be state law, UCC concepts and

5   factual issues and it could be very confusing here.  To

6   me, that would be a similar sort of morass and clearly

7   not the right result.

8          I mean, the question of employee is -- it

9   certainly is a legal term, we agree with that, but it's

10  also a fundamental term in employer-employee relations

11  and in the building industry.

12          It's a very practical term because it's one

13  that a small businessman has to assess maybe every day

14  in terms of whether he's paying worker's comp or not or

15  whether he's doing payroll taxes or whether a -- how

16  he's doing tax accounting at the end.

17          It's also not a particularly technical term.

18  It's a -- it's a common law agency doctrine.  It's based

19  on the common law.  It's based on Restatement (Second).

20  And it is something that people in commerce have applied

21  for hundreds of years.

22          And so to say that it's -- it's, you know,

23  based on my client's understanding, it's so

24  multifaceted, it's so difficult -- well, we simply

25  dispute that and -- it's a legal term, but it's a

1   fundamental, basic, practical, old common law notion and

2   we can use that term with precision.  And when people

3   make false statements about it, we can fairly prove that

4   they intentionally made a false statement.

5          Now, maybe we can't prove it.  That's what the

6   trial is for.  That's what the jury is for.

7          THE COURT:  So if he --

8          MR. DAVIS:  But --

9          THE COURT:  Let me ask you this.  If he does

10  not testify -- and obviously you've given discovery to

11  Attorney Graham, because she references it in her --

12         MR. DAVIS:  Right.

13         THE COURT:  -- motion.

14         If he doesn't testify, how do you prove what

15  his knowledge was?

16         MR. DAVIS:  From circumstantial evidence.

17         THE COURT:  Okay.  Does he -- I mean,

18  ultimately, ownership of a car, you know, that's

19  something that is accessible to a jury in terms of what

20  does he do to exhibit ownership.  Those are -- those are

21  concepts that I think are -- are fact-based and easy to

22  understand.

23         This, however, there -- there's no question

24  there are all kinds of cases resolving the question of

25  whether someone's an employee or a contractor.  So how

1   do you prove that -- without him testifying, how do you

2   prove what was in his mind on this issue?  That's what

3   I'm interested in.

4           MR. DAVIS:  By circumstantial evidence and by

5   his conduct.  The --

6           THE COURT:  Circumstantial evidence and what?

7           MR. DAVIS:  And by his conduct.

8           THE COURT:  Okay.

9           MR. DAVIS:  That the -- we are working on a

10  *Darden* factor analysis.  I don't -- I don't have it yet,

11  but it is overwhelmingly in favor of a finding of --

12  that he's an employee; that Kenneth McKenna, the

13  decedent, was an employee.

14          And so the jury's going to be able to say,

15  okay, here's what an employee is, here's all the

16  different aspects of the relationship, including

17  everything he did here, about his -- his employment of

18  Kenneth McKenna.

19          And we're also going to be able to show -- for

20  instance, as I note in the footnote, he called -- when

21  he first talks to the other employee -- who's a very new

22  hire -- at the scene, who -- who actually is there when

23  Kenneth McKenna dies, and this young guy calls

24  Mr. Craigue, who's off-site, to report this terrible

25  thing, what Mr. Craigue says is, basically, remember,

1    you're a sub.

2              And that shows intent, in our view,

3    overwhelmingly.  That is, that even in a tragedy here,

4    Mr. Craigue is very quickly making sure that his story

5    and his facade, which has saved him a whole lot of

6    money, is maintained and that reality is covered up

7    here.  That shows intent.

8              And I mean, your Honor, there's many, many,

9    many cases where intent has to be proved beyond a

10   reasonable doubt and we don't have a confession and we

11   don't have a legal document that says -- that

12   establishes the issue.

13             THE COURT:  Uh-huh.  Do you have anything

14   maybe he signed or he said other than that one

15   statement?  Maybe checking off boxes that would indicate

16   he knew they were -- they were actually employees?

17             MR. DAVIS:  Not that I can think of.

18             THE COURT:  Okay.  I agree that's not a good

19   fact, but ultimately proving what is in his mind is

20   ultimately what you're going to have to persuade the

21   jury, that he knew what he was saying was false.

22             MR. DAVIS:  Yeah.  Yeah.

23             THE COURT:  Do you agree with defense counsel

24   that the jury has to be instructed somehow on the common

25   law that you're talking about with respect --

1          MR. DAVIS:  I think the jury does have to be,

2    because the statement has to be actually false.  And so

3    the definition of employee is -- is something they have

4    to decide; was it a false statement, was it objectively

5    false.

6          That's a question --

7          THE COURT:  Okay.

8          MR. DAVIS:  And so to know what is an

9    employee, I think the *Darden* factors do have to be --

10   which is easy enough to do, but we -- we've assumed

11   that, yes.

12         THE COURT:  Okay.  So you're assuming that the

13   proposed jury instructions you give me will actually

14   include the *Darden* factors.

15         MR. DAVIS:  Correct.

16         THE COURT:  So you agree with defense counsel

17   on that point?

18         MR. DAVIS:  Correct.  I think that would be --

19   that would be helpful.

20         THE COURT:  Okay.

21         MR. DAVIS:  I don't have -- I don't think I

22   have -- I mean, I guess I think the last thing I'll say

23   is the -- the defense has not made any effort that I

24   can see, either in the brief or in here, to show some

25   difference that matters in some definition of employee

1     that's different from *Darden*.

2              And that's -- that's an important question, I

3     think.  If there were some separate definition that's --

4     that applies in some other jurisdiction and that

5     definition made the -- the question of whether Kenneth

6     McKenna was a -- was an employee a lot closer question

7     than it is here and there was some reason to think that

8     the defendant had in his mind a confusion about whether

9     that separate jurisdiction's definition applied, this

10    argument is a lot closer.

11             But -- but there is no such showing.  What the

12    defendant says is, well, there's New Hampshire

13    definitions.  Well, New Hampshire definitions are also

14    based on Restatement (Second).  And the definition of

15    employee, although multifaceted, although there's a lot

16    of different things to look at, the actual concept is

17    not particularly difficult and it is, again, a practical

18    one.

19             And, sure, there can be applications -- just

20    like with ownership of a car, you can imagine nuance and

21    difficulty, but it doesn't mean that -- that there's

22    something technical about this definition that's --

23    that's different from some other definition somewhere

24    that accounts for or could account for confusion.  The

25    defendant's -- the defense hasn't showed that.  It's

1    just said, well, there's *Darden* factors and there's no

2    definition in the indictment and it's not sufficient

3    here.

4         This is not -- in the government's view, this

5    is not a close motion to dismiss.

6         THE COURT:  The second -- Count Two, his --

7    obviously the question is -- is not ambiguous as it's

8    alleged here because it's asking whether these two --

9    two were employees, but then his statement is -- he's

10   describing how he treated them.  And do you -- you have

11   proof that he did not treat them in that manner?

12        MR. DAVIS:  Well, he -- it's a little awkward

13   because it's a double negative, but what he's saying is

14   I would always treat them as not employees.  What he

15   means there is I would treat them as contractors, which

16   is the -- the other side of that coin.  He doesn't say

17   contractors, but he says not employees.  And in the

18   context, and given everything -- all the testimony about

19   that particular interview, it's going to be clear that

20   that's what he's saying.

21        THE COURT:  Right.  But the statement in the

22   indictment is I've always treated them -- they would

23   come and go as they please.

24        That could conceivably be true even if he

25   knows them to be employees, that they would come and go

1    as they please, so he didn't control them in that way

2    all the time.  That seems to me to be more problematic

3    in terms of -- in terms of, you know, the -- the charge

4    here, false statement, because you've got to prove that

5    they didn't come and go as they please, at least from

6    Mr. Craigue's understanding.

7              MR. DAVIS:  I don't agree with that, your

8    Honor.

9              THE COURT:  Okay.

10             MR. DAVIS:  The operative falsity there is I

11   would always treat them as not employees, and they would

12   come and go as they please is a qualification and -- and

13   certainly a -- as a -- as a practical matter, of course

14   they come and go as they please.  Whether they're

15   employees or not, it's still a free country.  They may

16   decide they don't want to come to work today.

17             THE COURT:  Yeah, but you have to prove the

18   falsity of the statement.  The statement is in quotes in

19   the indictment.

20             MR. DAVIS:  Well, what --

21             THE COURT:  You're saying what he really said

22   is they're --

23             MR. DAVIS:  He was asked how -- how he --

24   whether he treated them -- he was asked whether they

25   were employees of his company, and he said they always

1    come and go as they please.  And that is not the gist of

2    the false statement.  It is quoted in the indictment.

3              THE COURT:  Uh-huh.

4              MR. DAVIS:  I suppose we could do a bill of

5    particulars or if there are -- I mean, I don't want to

6    play games here, but the -- the falsity is I would

7    always treat them as not employees.  That's what we're

8    talking about here.

9              THE COURT:  Right, the way he treated them.

10   So you would have to have proof that he didn't treat

11   them --

12             MR. DAVIS:  Correct.

13             THE COURT:  -- in that manner.  Right?

14             MR. DAVIS:  Correct.

15             THE COURT:  Okay.  All right.

16             Anything further, Attorney Graham?

17             MS. GRAHAM:  I do, your Honor, just to follow

18   up on one of the questions about how would the jury be

19   instructed.

20             And I don't mean to suggest that the jury

21   should only be instructed on *Darden* because, as the

22   Court pointed out, the -- they have the burden -- the

23   government has the burden of proving what was my

24   client's understanding of what an employee is.

25             And so I think it's also -- I also would

1   suggest that they should be informed as to what

2   employee-employer status is under New Hampshire law

3   because the government has to prove, well, what was his

4   mental state, what was his understanding.

5          And so I do believe that the jury should have

6   a full understanding of what the definition of employee

7   or subcontractor is.

8          THE COURT:  Let me ask just a practical

9   question.

10         So there's also another motion and it is --

11  multiplicitous counts motion.  That is not really going

12  to be ripe until, I think, March 2nd, which is also the

13  day of the final pretrial, and the trial's scheduled for

14  March 17th.

15         Is this -- do you envision this going to trial

16  as scheduled?

17         MS. GRAHAM:  I do, your Honor, yes.

18         THE COURT:  You do.

19         MS. GRAHAM:  Yes.

20         THE COURT:  Okay.  So you ultimately are

21  keeping this essentially on the original trial track?

22         MS. GRAHAM:  Yes.

23         THE COURT:  And you agree with that as well,

24  Attorney Davis?

25         MR. DAVIS:  I think it was continued once,

1  your Honor --

2          THE COURT:  Okay.

3          MR. DAVIS:  -- but, yes, Ms. Graham has told

4  us she thinks it's a likely trial --

5          THE COURT:  Okay.

6          MR. DAVIS:  -- so ...

7          THE COURT:  Yeah.

8          MS. GRAHAM:  May I just have one moment, your

9  Honor?

10          THE COURT:  Yes.

11          MS. GRAHAM:  Your Honor, just to address

12  the -- the void for vagueness argument, I just -- the

13  only response I had to the government's motion was -- or

14  response was that I disagree with the government's

15  contention that the void for vagueness argument is

16  premature.  I don't believe the issue -- that issue's

17  not dependent on the jury's determination about the

18  facts surrounding the definition and so I -- I don't

19  believe that it's a premature argument and I just wanted

20  to address or respond to the government's statement.

21          THE COURT:  All right.  Anything further from

22  anyone?

23          MR. DAVIS:  Nothing further, your Honor.

24  Thank you.

25          THE COURT:  All right.  I'll take this under

1    advisement.

2              Court is adjourned.  Thank you.

3              (Proceedings concluded at 10:12 a.m.)

C E R T I F I C A T E


I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 7/8/2020        /s/  Liza W. Dubois
                           LIZA W. DUBOIS, RMR, CRR