UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-142-01-LM |
| | ) | |
| NATHAN CRAIGUE, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE #2**

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, responds as follows to the Defendant's Motion in Limine #2 (ECF No. 36, filed Oct. 21, 2020):

**I.    INTRODUCTION**

Defendant Nathan Craigue ("Craigue") was indicted on July 10, 2019, on two counts of making a false statement to a federal agent, in violation of 18 U.S.C. § 1001(a)(2).  Count 1 of the indictment alleges that on August 28, 2018, in an investigation by the Occupational Safety and Health Administration ("OSHA"), defendant Craigue made a material false statement "by stating to an OSHA Compliance Safety & Health Officer that KM, who had died as a result of a workplace accident earlier that day, was a subcontractor and was not an employee of the defendant or his business," when in truth, as Craigue knew, "KM had been an employee and not a subcontractor."  (ECF No. 1 at 1.)

Count 2 charges that on October 24, 2018, again in an OSHA investigation, Craigue again made a materially false statement to the OSHA Compliance Safety

and Health Officer: that KM "was not an employee of the defendant or his business, specifically, when the Officer asked him whether CE and KM were employees of his company, the defendant stated, 'I've always treated them – they could come and go as they please, so I would always treat them as not employees,'" even though Craigue knew that "KM had been an employee and not a subcontractor." *Id.*

In his Motion in Limine #2, Craigue now seeks to exclude:

(a) Evidence that KM (Kenneth McKenna) died, or evidence to prove the severity of his injuries;

(b) Evidence about the employment status of McKenna's co-workers for Craigue's company, CE (Christopher Erickson) and Nicholas Ford;

(c) Evidence that Erickson was injured in a workplace accident at the same job site one month before McKenna's fatal accident;

(d) Evidence that McKenna, Erickson and Ford were paid "under the table";

(e) Evidence that OSHA and the New Hampshire Department of Labor issued violations or judgments against Craigue, or that they made a determination that McKenna was an employee;

(f) Evidence that Craigue's work equipment was unsafe or faulty or that the worksite was unsafe; or

(g) Hearsay and other inadmissible evidence contained in Craigue's October 24, 2018, recorded statement to the OSHA officer.

As shown below, the government objects to many of Craigue's proposed exclusions, but agrees with others.

2

## II. ARGUMENT

### A. Although the Details and Severity of McKenna's Fatal Injury Are Not Essential to the Proof, the Fact of His Death Is.

The government agrees with Craigue that evidence of the extent and severity of McKenna's fatal injuries on August 28, 2018, as well as evidence about possible causes or responsibility for McKenna's death, are more prejudicial than probative and ought to be excluded. Thus, the government will not offer detailed testimony about the injury (other than about his fall while working on a ladder and his subsequent death). Nor will the government seek to introduce photographs of McKenna's body or injuries, or medical testimony about the cause of death. Finally, the government will not argue or introduce evidence to prove that Craigue was responsible for the fatal accident because of faulty equipment or unsafe practices at the jobsite.

However, the government must be permitted to prove the basic fact that McKenna died while working for Craigue on August 28, 2018, prompting the OSHA investigation at the heart of this case. Evidence of McKenna's death is necessary to place the entire case in context. Were that fact to be withheld from the jury, the trial evidence would be at the least confusing, and potentially nonsensical.

Several considerations militate strongly in favor of admitting evidence that McKenna died. First, McKenna's death forms part of the essential context of the charged crimes. The death is the backdrop of the events of August 28, 2018, when Craigue made the first charged false statement; it illuminates why and when McKenna's roommate and co-worker, Erickson, reached out to OSHA to provide

3

information in the investigation; it drives Craigue's motive to deny financial responsibility for the event; and it explains why OSHA was asking questions of Craigue on the two dates identified in the indictment. In deciding the difficult questions of fact in this case, the jury must be allowed to understand the basic context of the events in question: that McKenna worked for the defendant, that he died in a workplace accident, and that OSHA was investigating.

Second, the death is part of the charged crimes. Both counts in the indictment specifically allege that KM "had died as a result of a workplace accident," and the quoted language is not surplusage. The Court should not withhold from the jury a fact expressly and properly alleged in the charged counts.

Third, the reality of McKenna's death explains why he was not and is not available to testify about his employment status in Craigue's company. If the jury is not permitted to learn of the death, it will naturally wonder about what happened to McKenna, and speculate about why he is a missing witness not called to testify by either party. The Court should preempt such speculation (which could potentially inure to the detriment of either party) by permitting straightforward, non-inflammatory evidence that McKenna died.

Fourth, the reality of McKenna's death is highly relevant to the issue of Craigue's motive and intent in making the false statements. A worker's death on the job obviously presents a much greater potential liability to his employer than a minor injury. Likewise, a fatality significantly increases an unscrupulous employer's motive to lie to investigators about the fallen employee's status, in order

4

to avoid costs related to the death. And the fact that McKenna was dead makes it more likely that Craigue would decide to lie to OSHA – since, with McKenna gone, it was considerably more difficult for the agency to disprove Craigue's "subcontractor" claim. Intent is very much at issue in this case, and the jury should not be shielded from a fact so probative on that issue.

Fifth, and finally, the defendant exaggerates the risk that limited evidence of McKenna's death will unfairly prejudice the jury. As stated above, the government agrees that photographs of the body, medical testimony, and details about McKenna's injuries should be excluded, with only the basic facts about McKenna's fall and subsequent death offered. The government will not argue, directly or indirectly, that Craigue is responsible or should be blamed for the accident. Accordingly, there is no basis under Rule 403 to exclude the fact of McKenna's death.

**B.     The Employment Status of Erickson and Ford is Highly Relevant to the Charged Offenses And is Admissible, Either as Intrinsic to the Charged Crimes or Under Rule 404(b).**

In his Motion, the defendant asserts that testimony "concerning other workers and their employment status at Craigue & Sons is not relevant" to whether McKenna was an employee and not a subcontractor. (ECF No. 36 at 4-5.) But that assertion is clearly wrong, since the manner in which Craigue treated his only other two employees around the time of McKenna's death (Erickson and, briefly, Ford) is highly probative regarding Craigue's employment practices, his financial motives, his knowledge of the distinction between an employee and a contractor, and his plan

5

and intent in lying to OSHA.  Indeed, the testimony of Erickson and Ford about their employment status could hardly be more probative, since McKenna is no longer available to testify about his.  *See United States v. DiRosa*, 761 F.3d 144, 154 (1st Cir. 2014) (emphasizing that testimony that fraud defendant had previously solicited loans for same project "was crucial to the government's case, as it was the only evidence available" to show defendant's knowledge regarding the charged crime).

Of course, evidence of a defendant's uncharged act "is not admissible to prove [the defendant's] character in order to show that on a particular occasion [the defendant] acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, "other acts" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of evidence."  Fed. R. Evid. 404(b)(2). Thus, when proffered "other act" evidence has such "special relevance," and its probative value is not "substantially outweighed" by a danger of unfair prejudice, it is admissible. *DiRosa*, 761 F.3d at 154.

Here, evidence that Craigue treated Erickson and Ford just as he treated McKenna (i.e., as his employees, while paying them hourly and in cash, and without buying worker's compensation insurance or paying payroll taxes) is not prohibited character evidence.  Rather, the evidence shows how Craigue deliberately and consistently ran his small business to minimize his labor costs.  Indeed, Craigue's consistency with respect to Erickson and Ford goes even further than their "employment status," since as soon as the OSHA investigation began Craigue

6

separately instructed both men to remember they were subcontractors (even though they weren't). Thus, the testimony of Erickson and Ford about their workplace relationships with Craigue goes directly to proving Craigue's "motive" to reduce his labor costs, his "plan" and "intent" to mislead OSHA backed by false statements from Erickson and Ford, his "knowledge" about the distinction between employee and contractor and the financial implications of that distinction, and the "absence of mistake" in his false statements to the OSHA officer. Under these circumstances, the "special relevance" under Rule 404(b) of Erickson's and Ford's testimony about their employment status is patent. *See United States v. Appolon*, 715 F.3d 362, 373 (1st Cir. 2013) (holding that evidence of two uncharged real estate transactions was "highly probative for multiple reasons," including to show defendant's "intent to engage in the conspiracy, to demonstrate his knowledge of the conspiracy's mechanics, and to eradicate any doubt that his participation was somehow unintentional"); *United States v. Oppon*, 863 F.2d 141, 147 (1st Cir. 1988) (upholding admission under Rule 404(b) of other occasions on which defendant had falsely represented his citizenship; "It is not unfair to infer from the evidence presented that appellant had developed a common scheme or plan of falsely identifying himself as a U.S. Citizen in order to obtain employment and employment-related benefits").

In addition, Erickson's employment status is directly relevant to the false statement alleged in Count 2. In that OSHA interview, Craigue was specifically asked whether McKenna *and Erickson* were employees of his company. And Craigue's answer pertained, not just to McKenna, but to both workers. It follows

that Craigue's treatment of Erickson, like his treatment of McKenna, is intrinsic to the crime alleged in Count 2 and therefore admissible, since the jury cannot fairly evaluate the truth or falsity of the charged statement if it is deprived of evidence about Erickson's employment status.  *See United States v. Mare*, 668 F.3d 35, 41 (1st Cir. 2012) (upholding admission of prior arson as intrinsic evidence of defendant's state of mind).

Indeed, evidence that Craigue treated McKenna in the same way in which he dealt with his other workers is even more important because the defendant will likely argue he lacked intent.  The defendant is expected to maintain that he was confused by the legal concepts surrounding the employer/contractor distinction, that he was shaken by McKenna's loss, and that the charged statements to OSHA were not lies but rather good-faith mistakes about terminology.  That defense might have some force in a vacuum, if Craigue is permitted to wipe away any evidence about his simultaneous treatment of his two other employees.  But, as in other workplace contexts, if a properly instructed jury hears evidence that Craigue's handling of McKenna was part of a deliberate, consistent, and long-standing employment practice, it will have a better opportunity to find the truth.  *Cf. Taboas v. Diddler, Gonzalez & Rodriguez, PSC*, 41 F. Supp. 3d 137 (D.P.R. 2014) (admitting "me too" evidence regarding treatment of similarly situated employee in age discrimination case); *Nuskey v. Hochberg*, 723 F. Supp. 2d 229 (D.D.C. 2010) (same, in gender discrimination case).

C. **The Fact That Erickson Was Injured One Month Before McKenna's Death While Working For Craigue, and Craigue's**

**Response to His Injury, Is Probative and Admissible to Prove Craigue's Employment Practices.**

Craigue next attempts to exclude evidence that one month before McKenna died, Erickson *also* was injured while working with McKenna at the same jobsite. But the evidence about Erickson's injury and Craigue's response to it – first to promise to take care of Erickson's medical bills, then to pay just $400 for that purpose – is again highly relevant for all the reasons cited in Part II(B) *supra*. That is, Craigue's response to the accident shows that he knew Erickson was in fact his employee and that he was financially responsible for his employee's injury even though he did not have worker's compensation insurance. The evidence is also important to context, since it explains why Erickson was not working with McKenna on the day of the fatality, and why Craigue needed to bring Ford on to the jobsite. The fact of the injury and Craigue's response is therefore probative and admissible.

However, as stated in Part II(A) regarding McKenna's workplace accident, the government agrees that detailed testimony about or photographs of Erickson's injuries; medical evidence; or evidence that Craigue was responsible for the accident because of faulty equipment or unsafe practices; should not be admitted.

**D.     Evidence That Craigue Paid All Three of His Employees "Under the Table" Is Directly Relevant to the Issue of Employment Status.**

Next, the defendant half-heartedly contends that evidence that he paid his employees "under the table," without paying payroll taxes, should be excluded. The argument is half-hearted because, as he recognizes, evidence of how McKenna was

9

paid "may be relevant to determining his employment status." (ECF No. 36 at 6, n.1). Indeed it is, since one of the *Darden's* express factors is the "method of payment." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). And the manner in which Craigue paid his other employees, Erickson and Ford, is also probative for the reasons stated *supra* in Part II(B). Accordingly, evidence that Craigue paid all three of his employees "under the table" is probative and admissible.

### E. Findings or Rulings by OSHA or New Hampshire DOL Against Craigue Regarding the Employment Status of His Workers Should Be Excluded.

Craigue next moves to exclude evidence that either OSHA or the New Hampshire DOL issued violations or judgments against Craigue, or determined that McKenna was an employee. The government agrees that any formal actions or findings of those agencies ought to be excluded from evidence. However, the government reserves the right to introduce evidence of Craigue's relevant statements to members of those agencies, along with relevant informal statements to Craigue by members of those agencies, as admissions or other proof of Craigues's knowledge and intent.

### F. Evidence That Craigue's Equipment Was Unsafe or Faulty, or That the Workplace was Unsafe, Should be Excluded.

Craigue moves to exclude evidence that the equipment his workers used was unsafe, or that he maintained an unsafe workplace. The government agrees that such evidence should not be admitted, since this case is not about workplace safety.

10

**G.     Regarding the Tape-Recorded Statement That Craigue Gave to OSHA on October 24, 2018, the Government Agrees That Some Redactions Are Warranted (Including Redactions About Workplace Safety Issues), and Requests That the Court Defer Ruling Until the Parties Confer About Specific Redactions.**

Finally, Craigue seeks to exclude portions of the tape-recorded statement he made to OSHA on October 24, 2018, on grounds of relevance, hearsay, and undue prejudice. The government agrees that some portions of the recorded statements, including portions about workplace safety issues, should be redacted from the exhibit. However, to date the parties have not conferred regarding redactions, and can likely agree on at least some of them. Accordingly, the government requests that the Court defer ruling on this aspect of Craigue's motion, to permit the parties to confer about redactions.

### III.    CONCLUSION

For the reasons stated, this Court should deny Craigue's Motion in Limine #2 in part, and grant it in part, as follows:

A.  Deny the Motion with respect to the fact of Kenneth McKenna's death, while excluding evidence showing the severity of or responsibility for his injuries;

B.  Deny the Motion with respect to the employment status of Chris Erickson and Nicholas Ford;

C. Deny the Motion with respect to Chris Erickson's injury while working for Craigue and Craigue's response to the injury, while excluding evidence showing the severity of or responsibility for the injury;

D. Deny the Motion with respect to Craigue's "under the table" payments to his workers;

E. Grant the Motion with respect to formal findings or rulings against Craigue by OSHA or New Hampshire DOL regarding whether his workers were employees;

F. Grant the Motion with respect to evidence that Craigue's work equipment was unsafe or faulty, or that the worksite was unsafe; and

G. Defer ruling on the admissibility of Craigue's recorded statement to OSHA, until the parties have conferred on redactions.

Date:       December 4, 2020              Respectfully submitted

                                          SCOTT W. MURRAY
                                          United States Attorney

                                    By:   /s/ John S. Davis
                                          John S. Davis
                                          Anna Dronzek
                                          Aaron Gingrande
                                          Assistant U.S. Attorneys
                                          53 Pleasant Street, 4th Floor
                                          Concord, NH  03301
                                          (603) 225-1552