THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA        ]
                                ]
v.                              ]        Cr. No. 19-cr-142-LM
                                ]
                                ]
NATHAN CRAIGUE

**RESPONSE TO GOVERNMENT'S 404b NOTICE/MOTION TO EXCLUDE**

> The prosecution – which has available to it the immense resources of the federal government – possesses a significant advantage in criminal cases, and there seldom is a good reason for a prosecutor to push the envelope of that advantage. Mindful of this imbalance [the Court] consistently [has] warn[ed] the government about the folly of . . . overkill.

*United States v. Kilmartin*, 944 F.3d 315, 337 (1st Cir. 2019)(internal citation and quotation omitted).

In this case, the government - under the guise of motive, knowledge and intent - wishes to present the jury with a multitude of misdeeds committed by Nathan Craigue, spanning 13 years. This picture would include repeated snapshots of job-site injuries beginning in 2005 and ending in 2018 with McKenna's death; refusal to pay worker's compensation; and failures to abide by tax obligations. This propensity evidence would unfairly prejudice Craigue.

Nathan Craigue, by and through his counsel, moves *in limine* for an order precluding the government from introducing at trial the following evidence as outlined in the government's 404b notice.1

<u>404B NOTICE</u>

---

1  By outlining the government's assertions in its 404(b) notice, Craigue does not adopt them as undisputed facts.

1

A) Craigue did not pay payroll taxes- including but not limited to contributions owed for Social Security and Medicare taxes under the Federal Insurance Contributions Act (FICA) – in connection with the wages that he paid to Erickson and McKenna. Craigue never issued a form W-2 or 1099 to either Erickson or McKenna.

B) On July 27, 2018 Erickson fell off a roof on a job site at 280 Pleasant Street while working for Craigue. This is the same job site that McKenna suffered his fatal accident.   Erickson's injuries required hospitalization and included broken fingers and contusions and fractures to his back. Craigue visited Erickson in the hospital, told him not to file a worker's compensation claim, and that he would "take care of" him if he did not file such a claim. Craigue paid Erickson $400.   Erickson has attempted to obtain worker's compensation but has been unable because Craigue did not pay for it.

C) In the summer of 2017, McKenna injured himself while working for Craigue in Concord. He was injured and hospitalized.   He was out of work for five to six weeks and to Erickson's knowledge, McKenna never received worker's compensation insurance.2

D) Craigue testified at a worker's compensation civil penalty inspection hearing on October 15, 2018 and made numerous statements concerning McKenna's work status. The government seeks to introduce the following statements: Craigue admitted that he did not secure worker's compensation insurance for McKenna or Erickson and that the last time he secured worker's compensation insurance was June 25, 2016. Craigue testified that Erickson and McKenna were independent contractors. Craigue admitted that he did not have payroll records, employee files, or records to show that McKenna or Erickson had their own business.

E) The government seeks to admit certain statements Craigue made to Inspector Martineau, an investigator for the NH Department of Labor.   Craigue told Inspector Martineau that McKenna and Erickson were independent contractors, not employees. Martineau would testify that Craigue could not provide any contracts or written agreement or documents saying the men, and not Craigue, were liable for the work being performed or for worker's compensation insurance for themselves; nor could Craigue provide federal ID numbers for the men.

F) The government intends to introduce evidence that in 2005, McKenna filed a claim for worker's compensation for an injury he sustained in the course of his work for Craigue & Sons and that Craigue maintained insurance up until June 25, 2016.

_____

2 Craigue contends that this witness lacks personal knowledge and the testimony would be inadmissible hearsay, as well as inadmissible propensity evidence.

I.      THE CHARGES

Mr. Craigue is charged in a two-count indictment with making false statements.   Both counts allege that he knowingly made false statements concerning the status of Kenneth McKenna as an employee or independent contractor (or subcontractor).   Whether the statements were in fact false turns on McKenna's status.

II.     LAW AND ARGUMENT

All of the proffered evidence in the government's 404b notice is inadmissible under Federal Rules of Evidence 403 and 404(b).   Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, "[i]rrelevant evidence is not admissible." Relevant evidence may not be admitted if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.   "Rule 403 requires a balancing of probative value and prejudicial effect.   When assessing the probative value of the evidence under Rule 403, a court must consider both whether the evidence that has been offered to prove an issue that is in genuine dispute, and whether the evidentiary point can be made with other evidence that does not present a risk of unfair prejudice." *United States v. Henry*, 848 F.3d 1, 9 (1st Cir. 2017).

Federal Rule of Evidence 404(b) "prohibits the admission of prior bad acts to establish an individual's character or propensity to commit a crime." *United States v. Landry*, 631 F.3d 597, 601 (1st Cir. 2011).   Prior bad acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

accident." *Id*.; Fed R. Evid. 404(b). This Court employs a two-part test to determine admissibility.   "First, it must determine whether the evidence has 'special' relevance other than establishing propensity . . . Second, the court must consider whether Rule 403 requires exclusion of the evidence because the danger of unfair prejudice substantially outweighs the probative value."   *Landry*, 631 F.3d at 602.

Evidence must be excluded under Rule 404(b) if "[i]t involves an inference of propensity as 'a necessary link in the inferential chain.'" *United States v. Varoudakis,* 233 F.3d 113, 120 (1st Cir. 2000   In *Varoudakis*, the First Circuit held that admission of a prior arson was inadmissible because it was propensity evidence.   Specifically, the evidence was offered to show that because the defendant had committed a prior arson to relieve financial difficulties, it was more likely that he committed the charged arson in response to financial stress. *Id.*   In the Rule 404(b) context, "evidence of similar acts is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *United States v. DeCicco,* 370 F.3d 206, 211 (1st Cir.2004) (citing *Huddleston v. United States,* 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

Even if there were special relevance, the proffered evidence nevertheless should be excluded under Rule 403 because the serious danger of unfair prejudice from the proffered 404(b) evidence "substantially outweighs the probative value."   *United States v. Landry*, 631 F.3d 597, 602-04 (1st Cir. 2011)(considering whether 404(b) evidence would emotionally influence the jurors or "play upon a jury's passions"). "Evidence presents a risk of unfair prejudice when it has the capacity . . . to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."   *United States v. Kilmartin,* 944 F.3d at

4

335.  . . . . "unfair prejudice ensues when particular evidence serves only to evoke an improper emotional response and distracts from careful consideration of the relevant issues." *Id*.

Summary of the Argument

The central issue in this case is whether Craigue made false statements to OSHA about McKenna's work status and that Craigue knew that the statement was false. Evidence concerning Erickson's work status, his work-site injuries and his worker compensation claims has no bearing on whether Craigue knew his statement to OSHA about McKenna was false. The government wrongly contends that the work relationship (including a duty to pay employee taxes and provide workers' compensation) between Craigue and Erickson demonstrates knowledge, a financial motive to lie to federal agents and a common plan of deceit and employment fraud. All of the bad acts – the multiple job-site injuries, the failure to pay taxes, the failure to pay workers' compensation insurance – all serve to inject propensity evidence into the trial and unfairly prejudice Craigue.   Craigue will address each of the government's items listed in their 404b notice in turn

Lack of Special Relevance

a)   Evidence of payroll taxes, W-2 or 1099 Form

The government seeks to admit Craigue's history of failing to pay payroll taxes or federal employment taxes. Evidence that has no special relevance other than establishing propensity must be excluded under Rule 404(b). As a threshold matter, the defense objects because the financial and tax implications of an employee versus subcontractor requires knowledge outside the realm of lay witness testimony. *See* Fed. R. Evid. 702; *see United States v. Vega*, 813 F.3d 386, 395 (1ˢᵗ Cir. 2016)(analyzing distinction between "experiential knowledge that relies on

5

reasoning processes familiar to the average person and more specialized expertise."). The government has not provided an expert disclosure or provided notice that it intends to call a witness who will explain the tax requirements of employers, employees or subcontractors or forms each are required to file. Evidence of Craigue' failure to submit various tax forms or pay certain taxes is purportedly offered to show motive; yet the government has provided no expert disclosure explaining how Craigue's failure to file these forms provided him a windfall.

The operative fact is McKenna's status only, and not Erickson's status. Count two of the indictment references the exchange between the OSHA agent and Craigue during the recorded interview. While both McKenna and Erickson are referenced, the falsity of the statement is that Craigue, "then and there knew, *KM* [McKenna] had been an employee, and not a subcontractor." [Doc. #1](emphasis added). Craigue is not charged with making a false statement as to Erickson's employee status.   Evidence concerning Erickson's status is not relevant unless the government proves that he too was an employee, posing a danger of confusing the jury and creating a trial within a trial. *See infra* Rule 403 analysis.

Whether Craigue complied with specific tax code obligations or filings for Erickson does not make it more probable that Craigue knew his statements to OSHA concerning McKenna's work status were false. This evidence has no special relevance. Rather, it is serves only as propensity evidence - that because Craigue violated employment laws for Erickson, it was more likely he did the same for McKenna. The government links the tax consequences with the OSHA hearing without any evidence that Craigue understood or had knowledge that identifying McKenna as an employee to OSHA would create similar financial consequences or hardship to him.

b)  <u>Evidence of Erickson's July 2018 Injury at Same Job Site/Plea Not to File Claim</u>

The government intends to submit evidence of Erickson's job-site injuries and statements concerning worker compensation liability.   Evidence that has no special relevance other than establishing propensity must be excluded under Rule 404(b).   Testimony concerning prior job site injuries and New Hampshire worker's compensation liability is not probative of Craigue's knowledge that his statements to OSHA about McKenna were false. Asking Erickson to forego a workers' compensation claim or providing him financial assistance is not evidence that Craigue knew Erickson was his employee or that he was required to have workers' compensation insurance. Erickson's injury and claim for workers' compensation serve only as propensity evidence - that because Craigue is the type of person who violates New Hampshire employment laws, provides unsafe job sites, and leaves workers physically and financially disabled, he is more likely to lie to agents about McKenna.

c)  <u>McKenna's 2017 work injury/Failure to receive workers' compensation</u>

The government seeks to introduce evidence of McKenna's 2017 work injury and his failure to receive workers' compensation.   For the same reasons stated in section (b), Craigue moves to exclude this evidence.

d)  <u>Craigue's statements at the NH DOL civil penalty hearing</u>

The government seeks to introduce Craigue's statements from the NH Department of Labor workers' compensation civil penalty hearing held on October 15, 2018. Those statements include identifying McKenna and Erickson as independent contractors. This hearing occurred after Craigue spoke to OSHA at the job site immediately following McKenna's accident, but before Craigue met with OSHA for the recorded interview on October 24, 2018.

7

The subject matter of the state-related workers' compensation civil penalty hearing – application of New Hampshire's workers' compensation statute – is not probative of Craigue's knowledge that his statement to OSHA was false.   While the government claims that the evidence demonstrates Craigue's plan to describe his employees in a way to avoid liability, the facts do not bear that out. When Craigue spoke to OSHA, he answered a number of questions that eventually led the agent to conclude that McKenna was an employee. The government does not suggest that Craigue's answers to those questions were false.   In fact, Craigue's answers led to the agent's ultimate conclusion of McKenna's work status.   It was Craigue's statement that he did not treat McKenna as an employee that the government contends is false – not his description of their relationship.   Furthermore, even assuming Craigue had a financial motive for not paying workers' compensation insurance or employment taxes, that inference does not translate to Craigue knowing that stating that to OSHA would provide some financial incentive or gain.

Admitting evidence of multiple hearings to demonstrate that Craigue repeated the same answer (which the state and government agencies relied on to make their conclusions) does not show a plan or motive to lie.   Rather, it shows that Craigue was under investigation for various wrongdoings – both state and federal.   Testimony about the hearing serves only as propensity evidence - that because Craigue was subject to a civil penalty hearing where the government alleges he lied - he is more likely to lie to agents about McKenna.

e)   Craigue's statements to NH DOL Inspector Martineau

For the same reasons stated in section (d), Craigue moves to exclude evidence that Craigue was investigated and interviewed by the New Hampshire Department of Labor concerning

worker compensation and wage assignment violations and that he provided statements in response to that investigation.

    f)  <u>McKenna's 2005 work injury and worker's compensation claim/Coverage until 2016</u>

The government seeks to admit evidence of McKenna's injury and worker's compensation claim that occurred over 15 year ago and that Craigue carried worker's compensation insurance until 2016 for the same purpose. For the reasons set forth in sections (a) to (e), Craigue objects.   Furthermore, the proffered evidence is too remote to have any probative value concerning the work status of McKenna in 2018. *United States v. Varoudakis,* 233 F.3d 113, 119 (1st Cir. 2000).   Whether Craigue carried worker's compensation until 2016 does not tend to show that his statement to OSHA in 2018 about McKenna's work status at that time was false.   Rather, testimony of prior injuries to McKenna serves only as propensity evidence - that because Craigue provided an unsafe job site to his worker - he is more likely to lie to agents about McKenna.

Rule 403 Analysis

The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence."   Fed. R. Evid. 403; *see United States v. Kilmartin*, 944 F.3d at 335 (explaining that while nearly all evidence is offered to prejudice the factfinder, Rule 403 "is meant to stand as a sentinel, which can be alerted to screen out unfair prejudice."). When reviewing the balancing undertaken by the district court, the First Circuit "give[s] great deference to the district court's judgment, and [o]nly in exceptional circumstances will [the Court] reverse the exercise of a district court's informed discretion vis-à-

9

vis the relative weighing of probative value and unfairly prejudicial effect." *United States v.*
*DiSanto*, 86 F.3d 1238, 1252 (1st Cir. 1996)(citation and quotations omitted).

In a case involving two counts of making a false statement, the government seeks to
introduce evidence that 1) Craigue didn't pay taxes, 2) workers were repeatedly injured at his
jobsite, 3) he didn't pay his workers when they were injured, 4) that his conduct and actions
caused various agencies to investigate him, and 5) that he repeatedly lied to investigators and at
civil hearings.   More specifically, the government intends to admit evidence that McKenna
suffered injuries in 2005 and 2017 at Craigue's job sites, and that Erickson was injured in 2017
and again in 2018.   Erickson's injures at the 280 Pleasant Street jobsite were serious, consisting
of broken bones and requiring hospitalization.   In response, Craigue didn't provide any financial
support for Erickson or shut down the job site.   Instead, Craigue found another worker, and
placed him at the same site where a worker was seriously injured. Just about one month later,
McKenna suffered a fatal injury. All told, the jury would learn that two individuals were injured
over 5 times at Craigue & Sons' work sites. The resulting message will be that workers at
Craigue & Sons jobs sites don't just get hurt, they die. The similarity of the uncharged conduct –
the uncompensated and repeated job-site injuries – heightens the risk that the jury will draw an
unfair inference of propensity. *See Varoudakis*, 233 F.3d at 123; *United States v. Gilbert*, 229
F.3d 15, 26 (1st Cir. 2000)(affirming district court's decision to exclude evidence that defendant,
a nurse charged with the murder of hospital patients, had called an anonymous bomb threat into
the intensive care unit).

The government contends that the prejudice can be minimized by refraining from
publishing photographs or medical records concerning the injuries or presenting evidence

placing fault on Craigue for unsafe practices. Whether or not the government overtly blames Craigue for the injuries matters little because the inference rings loud and clear.   The jury will assume they are hearing about each injury because Craigue is responsible. In fact, the government contends that Craigue's motive to lie was to avoid liability and minimize cost.

In addition to inflaming the jury, the proposed evidence will create irrelevant mini-trials within the trial.   *See United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000)(affirming district court's concern that introduction of 404(b) evidence would lead to confusing and irrelevant "mini-trial"). Craigue is not charged with making a false statement as to Erickson's employee status.   Erickson's work status is not relevant unless the government proves that Erickson too was an employee. Presenting evidence of Erickson's work status and injuries as well as issues surrounding workers' compensation liability creates a danger of confusing the jury and distracting from the main issue in the case.   Here, the jury will be placed in a position to navigate multiple levels of legal principles that have little to do with the elements of the offense. When balancing the Fed. Rule Evid 403 scale, "[i]f the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded."   *United States v. Frankhauser,* 80 F.3d 641, 649 (1st Cir. 1996)(citation omitted).   All of the proffered 404(b) evidence tips the scales, likely causing the jury to convict Craigue based on impermissible propensity evidence.

**WHEREFORE,** Craigue respectfully requests that this Honorable Court preclude the government from introducing any evidence referenced in (A) to (F).

Respectfully submitted,

Date: December 24, 2020

*/s/ Dorothy E. Graham*
Dorothy E. Graham
N.H. Bar No. 11292
Assistant Federal Defender
22 Bridge Street, 3rd floor
Concord, NH 03301
Tel. (603) 226-7360
E-mail: Dorothy_Graham@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on the following person on December 24, 2020 and in the manner specified herein: electronically served through CM/ECF to AUSA John Davis , AUSA Aaron Gingrande and AUSA Anna Dronzek.

*/s/Dorothy E. Graham*
Dorothy E. Graham