UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 19-cr-142-LM** |
| **v.** | ) | |
| | ) | |
| **NATHAN CRAIGUE** | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE UNDER RULE 404(b)**

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, responds as follows to the Defendant's Motion to Exclude Evidence Under Rule 404(b) (ECF No. 65). Contrary to Defendant's assertion, presenting the evidence disclosed in the Government's 404(b) notice is not "overkill." The evidence is intrinsic to the case, and necessary to introduce in light of the absence of Kenneth McKenna, who, but for his untimely death, would be the Government's main witness. To the extent the evidence is not intrinsic to the case, it shows that Defendant had a motive to make false statements to investigators about the status of his employees, and that he knew those statements were false. The evidence is not so shocking, heinous or likely to inflame the jury that its probative value is outweighed—let alone "substantially" outweighed, as exclusion under Rule 403 requires—by the danger of unfair prejudice. Accordingly, Defendant's motion should be denied.

## I. LEGAL STANDARD

Rule 404(b) does not exclude evidence that is intrinsic to the crimes charged: Rule 404(b) excludes only extrinsic evidence—"evidence of other crimes, wrongs, or acts"—the probative value of which depends exclusively upon a "forbidden inference of criminal propensity." *United States v. Manning*, 79 F.3d 212, 218 (1st Cir. 1996). Evidence that is intrinsic to the crime for which the defendant is on trial, accordingly, is not governed by Rule 404(b). *Id.*; *United States v.*

*Tutiven*, 40 F.3d 1, 5 (1st Cir.1994) ("The cases are legion in which similar intrinsic circumstantial evidence has been admitted without occasioning either challenge or analysis under Rule 404(b)."); *United States* v. *Mare*, 668 F.3d 35, 39 (1st Cir. 2012) (evidence concerning matters intrinsic to the crime charged does not trigger analysis under rule 404(b)). Such "intrinsic" evidence includes, but is not limited to, "the necessary description of the events leading up to" the charged crime. *United States* v. *Souza*, 749 F.3d 74, 84 & n.2 (1st Cir. 2014); *see also United States* v. *Green*, 617 F.3d 233, 247 (3d Cir. 2010) (stating that evidence is admissible for purpose of "allowing the jury to understand the circumstances surrounding the charged crime" or "completing the story").

If the evidence is intrinsic to the case, a defendant's motion to exclude the evidence on Rule 404(b) grounds must be denied: Only if the Court holds that the evidence is not intrinsic to the case should it proceed to engage in Rule 404(b) analysis. The First Circuit applies a two-part test to determine the admissibility of evidence under Rule 404(b). "First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question," *United States* v. *Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995), such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2); *United States* v. *Robles-Alvarez*, 874 F.3d 46, 51 (1st Cir. 2017). If this "special relevance" is established, the court must then apply Rule 403 "to determine whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice.'" *Aguilar-Aranceta*, 58 F.3d at 798 (quoting Fed. R. Evid. 403). "By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided." *United*

*States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989). The phrase "unfair prejudice" is "reserved for evidence that invites the jury to render a verdict on an improper emotional basis or for evidence that is shocking or heinous and likely to inflame the jury." *United States v. Soto*, 799 F.3d 68, 90 (1st Cir. 2015) (internal quotations omitted).

## II. ARGUMENT

The evidence to which Defendant objects in this case is intrinsic to the crime charged, and cannot be excluded under Rule 404(b). The fact that the Government disclosed this evidence in its Rule 404(b) notice does not prove otherwise. The Government explicitly stated in the notice that it was disclosing such evidence because such evidence is "arguably" subject to Rule 404(b). *See* Exhibit A, the Government's Rule 404(b) Notice. The Government's position is that it is not. The evidence relates to Craigue's employment practices and treatment of McKenna and Erickson, and the entire case is about whether Craigue's statements to federal agents about his workers' employment status are true or false. Because the evidence speaks to the truth or falsity of these statements and whether Craigue knew they were false, both of which are elements of the crime charged, the evidence should not be excluded under Rule 404(b).

Even if the Court were to find that Rule 404(b) governs the evidence in question, however, the Court should admit the evidence pursuant to traditional Rule 404(b) analysis. The evidence in question has "special relevance," because it establishes that Craigue had a motive to lie to federal agents about McKenna's and Erickson's employment status, and that he did so with knowledge that the statements were false; he did not simply make a mistake. Furthermore, the evidence in question does not engender "unfair prejudice." The evidence here—mostly regarding non-payment of taxes and workers' compensation, and Craigue's prior statements

about the employment relationship with his workers—is not "shocking or heinous and likely to inflame the jury." *Soto*, 799 F.3d at 90. Because the probative value of the evidence is not outweighed at all, let alone "substantially" by unfair prejudice (as the law requires for exclusion), it should be admitted.

### A. Evidence of Payroll Taxes and Tax Forms

#### 1. The Evidence of Payroll Taxes and Tax Forms Is Intrinsic to the Crimes Charged.

That Craigue did not pay payroll taxes for the wages he paid to McKenna and Erickson and did not issue them W-2 or 1099 forms is directly relevant to the assessment of whether they were employees or independent contractors, and therefore, whether Craigue's statements to federal agents that McKenna was not an employee were false: an element of the crime charged. *See* ECF #56 at 7-9. This information is also relevant to the materiality of Craigue's statement to the OSHA agents—another element of the crime charged—since Craigue would be required to pay such taxes if McKenna and Erickson were his employees. Thus, the evidence is intrinsic to the case.

Defendant argues that he is not charged with making a false statement about Erickson's employee status, and therefore Erickson's status is irrelevant to the crime. But evidence about Craigue's non-payment of payroll taxes, and failure to provide the necessary forms to his workers, pertains to general employment practices that affect his small number of workers equally. McKenna and Erickson both provided the same services for Craigue's company and often worked on the same jobsites. Defendant provides no reason that his employment practices or treatment affecting one of them differed from his practices or treatment affecting the other.

Furthermore, Count 2 of the Indictment charges that Craigue made a false statement to an OSHA officer in response to the officer's question as to "whether CE [Christopher Erickson] and KM [Kenneth McKenna] were employees of the company" when Craigue responded, "I've always treated *them* . . . as not employees." (ECF #1) (emphasis added). This shows Craigue's treatment of Erickson is directly relevant to his treatment of McKenna—he treated them the same—and relevant to the crime charged in Count 2 generally, since the question forming the basis of that count references Erickson directly. The jury cannot fairly evaluate the truth or falsity of Craigue's response unless it has the full context, including information about Erickson as well as McKenna.

**2. The Evidence Regarding Payroll Taxes and Tax Forms Has Special Relevance and Is Not Unfairly Prejudicial.**

Even if the Court finds the payroll tax and tax forms evidence is not intrinsic to the case, the Court should admit it under traditional Rule 404(b) analysis. In addition to its relevance to the truth and materiality of Craigue's statements to OSHA, the fact that Craigue did not pay payroll taxes for the wages he paid to McKenna and Erickson and did not issue them W-2 forms or 1099 forms has the "special relevance" of establishing his motive to lie to OSHA. Craigue was required to pay such taxes if McKenna and Erickson were his employees, and could be liable for their payment (let alone tax evasion or fraud), if he admitted that they were his employees. Craigue's choice not to pay taxes on the wages paid to his workers and not to provide them with required tax forms also supports that he knew that his statements to federal agents were false; he did not make the statement based on mistake, which will most likely be Craigue's defense at trial.

Defendant objects that the introduction of the financial and tax implications of classifying a worker as an employee versus a subcontractor requires knowledge outside the realm of lay witness testimony, citing *U.S. v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016), and that the Government has not provided any expert disclosure in this case. But *Vega* does not discuss tax implications—either of the employee/independent contractor distinction or otherwise—nor does it refute the many reasons the Government states in its objection to Defendant's Motion *in Limine* #1 that expert testimony on this topic is not required for admissibility (*e.g.*, lay employers know that they are responsible for payroll taxes and OSHA agents are qualified to testify about the employee/independent contractor distinction from personal experience, among others). *See* ECF #56 at 3-4.

Defendant also argues that whether Craigue complied with specific tax code obligations for *Erickson* does not make it more probable that Craigue knew his statements to OSHA concerning *McKenna's* work status were false. But, first, the evidence shows that Craigue did not comply with tax code obligations for *McKenna himself*. Second, as described in Section A(1) above, Craigue's statement to OSHA that forms the basis of Count 2 of the Indictment is that he treated both Erickson and McKenna the same way: as "not [his] employees." Craigue's treatment of Erickson is therefore directly relevant to his treatment of McKenna. Moreover, because the evidence regards general employment practices that affected the two coworkers in the same way, evidence as to Erickson is admissible as to Craigue's treatment of McKenna. *Cf. Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir.2008) (rejecting defendant's objection on 404(b) grounds in a civil case, holding admissible as to plaintiff's retaliation claim evidence that employer also retaliated against plaintiff's co-workers, who were similarly situated to plaintiff

and had the same supervisor); *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (holding, in the employment context, that whether "me too" evidence is relevant depends on how closely related the evidence is to the plaintiff's circumstances and theory of the case). Regardless, the evidence referenced in the 404(b) notice shows Craigue's non-payment of payroll taxes for his workers generally, and establishes a motive for Craigue to lie to the OSHA agents about the status of those workers (including both McKenna and Erickson), giving it special relevance.

This evidence also meets the second and final element for admissibility under a Rule 404(b) analysis: Defendant has not shown that, under Rule 403, the probative value of the disputed evidence is "substantially outweighed" by a danger of unfair prejudice. Non-payment of taxes or wages is not the type of "shocking or heinous" evidence "likely to inflame the jury" that courts typically find to be "unfairly prejudicial," especially where it may be explained by factors other than criminal conduct. *United States v. Nazario-Quinones*, 442 F. Supp. 3d 504, 509–10 (D.P.R. 2020) (admitting 404(b) evidence of defendants' withholding of municipal employees' wages over defendant's objection on 403 grounds, since it did not invite the jury to render a verdict on an improper emotional basis) (citing *Soto*, 799 F.3d at 90). Since it has special relevance and is not substantially outweighed by unfair prejudice, the evidence should be admitted. *Id.*

## B. Evidence of Erickson's July 2018 Injury and Craigue's Request that He Not File a Workers' Compensation Claim

### 1. Evidence of Erickson's July 2018 Injury and Craigue's Request that He Not File a Workers' Compensation Claim Is Intrinsic to the Crimes Charged.

The fact that Craigue told Erickson not to file for workers' compensation and that he would "take care of him" when Erickson fell off a roof at Craigue's jobsite in July 2018 shows that Craigue did not pay workers' compensation that year. This is another fact relevant to the assessment of whether Craigue's workers were employees or independent contractors, and is intrinsic to the case. *See supra* Section IA. Therefore, it is not governed by Rule 404(b), and should be admitted.

### 2. Evidence of Erickson's July 2018 Injury and Craigue's Request that He Not File a Workers' Compensation Claim Has Special Relevance and Is Not Unfairly Prejudicial.

Even if the Court finds the evidence of Erickson's July 2018 injury and Craigue's request that he not file workers' compensation is not intrinsic to the case, the Court should admit it pursuant to traditional Rule 404(b) analysis. This evidence has special relevance because it shows Craigue's knowledge that he had an obligation to file workers' compensation—suggesting that he knew Erickson was his employee—and he thus had a motive to lie to federal agents about the status of his workers (including Erickson and McKenna). This is especially true when combined with the evidence, referenced in the Government's Rule 404(b) notice, that Craigue in fact paid workers' compensation insurance for both men for many years, up until 2016: he knew he was required to pay to cover his employees, but he chose not to in order to save money.

Defendant argues that the evidence of Erickson's workplace injury, providing the context for Craigue's request to Erickson not to file for workers' compensation, is unfairly prejudicial

because jurors will assume that Erickson's injury was Craigue's fault. But there is no basis for this assumption. The Government does not seek to introduce evidence as to how the injury occurred, and has already agreed not to introduce photographs or medical records about this workplace injury or others, including the one resulting in McKenna's untimely death. One worker's accident on a jobsite, standing alone, does not show that an employer has a propensity to commit crime. There is also no reason that a limiting instruction cannot address Defendant's concern about assigning fault. Moreoever, the focus of the evidence—that Craigue did not pay workers' compensation insurance in 2018—is not of a kind likely to inflame a jury. *See supra* Section A(2). Accordingly, the probative value of the evidence far outweighs any (minimal) risk of unfair prejudice to Defendant.

### C. Evidence of McKenna's 2017 Work Injury and Craigue's Failure to Provide Worker's Compensation

#### 1. Evidence of McKenna's 2017 Work Injury and Craigue's Failure to Provide Worker's Compensation Is Intrinsic to the Crimes Charged.

The fact that McKenna did not receive worker's compensation when he fell off the roof at one of Defendant's jobsites in the summer of 2017 shows, again, that Craigue did not pay workers' compensation during that time, which is intrinsic to the truth or falsity of Craigue's statement that McKenna was not an employee. *See supra* Section I(A). Therefore, it is not governed by Rule 404(b), and should be admitted.

#### 2. Evidence of McKenna's 2017 Work Injury and Craigue's Failure to Provide Worker's Compensation Has Special Relevance and Is Not Unfairly Prejudicial.

Even if the Court finds that the evidence that McKenna did not receive worker's compensation when he fell off the roof at one of Defendant's jobsites in the summer of 2017 is

not intrinsic to the case, it should admit it under traditional Rule 404(b) analysis. The evidence shows, again, that Craigue did not pay workers' compensation during that time, and when taken together with the evidence that he paid for McKenna's workers' compensation up through the year 2016, shows that he knew he was required to pay worker's compensation because McKenna was his employee. Craigue had a motive to lie to OSHA agents by saying that McKenna was not an employee: to avoid liability for failing to pay workers' compensation.

Defendant argues that the evidence is unfairly prejudicial, but as described above, this evidence is not the type likely to inflame a jury and any potential unfair prejudice can be reduced with a limiting instruction. Furthermore, "[t]he risk of an impermissible propensity inference should be weighed in light of the totality of the circumstances, including the government's need for the evidence given other available testimony." *Mare*, 668 F.3d at 40 (internal quotations omitted). Here, the evidence is necessary in large part because McKenna is deceased, and cannot testify as to whether Craigue treated him as an employee or an independent contractor, weighing in favor of admission.

### D. Craigue's Statements at the NH DOL Civil Penalty Hearing

#### 1. Craigue's Statements at the NH DOL Civil Penalty Hearing Are Intrinsic to the Crimes Charged.

Craigue's testimony during a worker's compensation civil penalty inspection hearing in October 2018, prior to the statement charged in Count 2, that (1) he secured worker's compensation insurance for McKenna and Erickson up through June 25, 2016, but not after; (2) Erickson and McKenna were independent contractors; and (3) Craigue had no payroll records, employee files, or records to show that McKenna or Erickson had their own business, is relevant to the question of whether his workers were independent contractors or employees, and what

Craigue believed their status to be. That question is intrinsic to whether Craigue's statements to federal agents were false, and whether he knew they were false. Specifically, the fact that Craigue provided workers' compensation to Erickson and McKenna for over a decade in the past shows his knowledge that he was required to pay these taxes for them as employees, and his lack of records showing that they had their own business indicates that he knew (or at least had reason to know) that they were not independent contractors. Because the evidence is intrinsic to the crimes charged, it should not be excluded under Rule 404(b).

**2. Craigue's Statements at the NH Department of Labor ("DOL") Civil Penalty Hearing Have Special Relevance and Are Not Unfairly Prejudicial.**

Even if the Court finds that Craigue's testimony during the worker's compensation civil penalty inspection hearing in October 2018 is not intrinsic to the case, the Court should admit it under traditional Rule 404(b) analysis. The evidence has the special relevance discussed in Sections (B) and (C) above, and should be admitted on similar grounds. His testimony during the hearing that Erickson and McKenna were independent contractors but had no payroll records, employee files, or records to show that McKenna or Erickson had their own business, has the special relevance of showing that Craigue had a plan to describe his employees as independent contractors when faced with potential liability and that he did not make a mistake in telling federal agents that the two men were subcontractors. He knew the men were his employees, but denied it to avoid financial and other potential liability.

Defendant argues that his statements do not show a plan or pattern, or otherwise show his knowledge that his statements were false, because his statements were true, even though they led the NH DOL to conclude that McKenna and Erickson were his employees. This is a question

for the jury. But the fact that he said to the NH DOL investigator that the men were independent contractors, despite any indication of its truth, shows his willingness to lie: that some other statements he made about his economic relationship with the men were true does not make the statement that they were independent contractors any less false.

Furthermore, his past statements to the NH DOL show that he was not confused and did not otherwise make a mistake when he said McKenna was an independent contractor: he had said the exact same thing to regulators in the past. "Evidence of uncharged fraud activity that is substantially similar to the activity underlying a charged fraud scheme often is admitted to show knowledge or intent to defraud with respect to the charged fraud scheme." *United States v. Sebaggala*, 256 F.3d 59, 67–68 (1st Cir. 2001) (upholding lower court's admission of evidence that defendant had altered travelers' checks in trial for defendant's false statements to customs officials, since they provided motive to lie to customs inspectors about value of monetary instruments in his possession, over defendant's challenge on 404(b) grounds that admission of the checks amounted to "overkill"); *United States v. Guyon*, 27 F.3d 723, 729 (1st Cir. 1994) (upholding lower court's admission of evidence of defendant's prior charged and uncharged loans in bank fraud case to show defendant's intent and that he engaged in a plan to defraud various banks); *United States v. Rodriguez–Estrada*, 877 F.2d 153, 156 (1st Cir.1989) (finding evidence of past fraud admissible because the repetition of the conduct was distinctly probative); *United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987) (finding evidence of past credit card fraud admissible to prove credit card fraud charge against defendant because the two schemes were similar enough to support an inference of intent, and past fraud was not likely to

inflame the jury). In each of these cases, the First Circuit upheld the lower court's finding that the evidence was not substantially more unfairly prejudicial than it was probative.

The same conclusion should result here. Statements that Defendant made at the hearing are not shocking, heinous, or likely to inflame the jury, and neither is the fact that Defendant attended a workers' compensation hearing. The Government will not introduce the finding of the administrative law judge at that hearing, so there is little risk of unfair prejudice. Nonetheless, to the extent that there is such a risk, it can easily be mitigated with a limiting instruction.

**E. <u>Craigue's Statements to NH DOL Inspector Martineaux</u>**

**1. Craigue's Statements to NH DOL Inspector Martineau Are Intrinsic to the Crimes Charged.**

Craigue's statements to Inspector Martineaux of the NH DOL that McKenna and Erickson were independent contractors, not employees, but that he could not provide any contracts or documents saying they (not Craigue) were liable for the work performed or worker's compensation insurance, and he could not provide federal ID numbers for the men, are relevant to whether the men were independent contractors or employees, and show that he knew, or at least had reason to know, that the men were not independent contractors: elements intrinsic to the crime. Therefore, the evidence should not be excluded under Rule 404(b).

**2. Craigue's Statements to NH DOL Inspector Martineau Have Special Relevance and Are Not Unfairly Prejudicial.**

Even if the Court finds that Craigue's statements to Inspector Martineaux is not evidence intrinsic to the case, the Court should admit the evidence under traditional Rule 404(b) analysis. Craigue's statements that McKenna and Erickson were independent contractors, not employees,

but that he could not provide any contracts or documents saying they (not Craigue) were liable for the work performed or worker's compensation insurance, and that he could not provide federal ID numbers for the men, have the special relevance described above in Section D(2) (*i.e.*, for the purposes of showing motive, pattern of conduct, absence of mistake, and knowledge). The evidence should be admitted for the same reasons.

### F. McKenna's 2005 Work Injury and Workers' Compensation Coverage Until 2016

#### 1. McKenna's 2005 Work Injury and Workers' Compensation Coverage Until 2016 Are Intrinsic to the Crime Charged.

The fact that Craigue provided workers' compensation insurance to McKenna for a work-related injury as far back as 2005, and continued to pay workers' compensation through June 25, 2016 shows that he knew McKenna was his employee, and he knew he had an obligation to pay for workers' compensation for his employees; thus, he knowingly made false statements to federal agents about McKenna's status. This scienter evidence is intrinsic to the crime.

Defendant argues that this evidence is too remote in time to have any probative value concerning McKenna's work status in 2018. But the evidence may still rightfully be considered intrinsic to the crime because there is no evidence of a change in the employment relationship between McKenna and Craigue in the intervening years (from 2005 or 2016, when Craigue stopped paying workers' compensation insurance, to 2018 when Craigue was investigated by OSHA), and the employment relationship between the two men and Craigue's statement about that relationship is the focus of the crime charged. At the very least, the relationship between McKenna and Craigue in 2005, and his payment of workers' compensation until 2016, is part of

the "description of the events leading up to" the charged crime, and is thus intrinsic to it. *Souza*, 749 F.3d at 84 & n.2.

**2. McKenna's 2005 Work Injury and Workers' Compensation Coverage Until 2016 Have Special Relevance and Are Not Unfairly Prejudicial.**

Even if the Court does not find that the evidence that Craigue provided workers' compensation insurance to McKenna for a work-related injury as far back as 2005 and continued to pay workers' compensation through June 25, 2016 to be intrinsic to the crime, the Court should admit it under traditional Rule 404(b) analysis. The evidence has the special relevance of showing Craigue's knowledge that McKenna was his employee, and that he had an obligation to pay for workers' compensation for his employees—in turn showing that Craigue knew his statement to OSHA Inspectors was false.

Just as the length of time separating the work injury in question and Craigue's statements to OSHA Inspectors does not make it extrinsic to the crime, it also does not make it any less probative for purposes of Rule 404(b) analysis. "There is no absolute rule" governing the number of years that can separate probative conduct from the crime at hand, and the district court "must apply a reasonableness standard that examines the facts and circumstances of each case." *United States v. Fields*, 871 F.2d 188, 198 (1st Cir.1989). In this case, where there is no evidence that the employment relationship between Craigue and McKenna changed between 2005 and the time of McKenna's death, and Craigue continued to pay workers' compensation until two years prior to his interview with OSHA, the probative value of the evidence remains unaffected by the passage of time, and should be admitted. *See Mare*, 668 F.3d at 39 (admitting statements of the defendant made in the course of an arson he committed five (5) years prior to the charged crime over defendant's objection on 404(b) grounds because they "shed relevant

light on his mindset in committing the charged offense”). This is especially true given that it evidences Craigue’s relationship with McKenna, who is unavailable to testify directly about that relationship as a result of his untimely death. *Mare*, 668 F.3d at 40 (“The risk of an impermissible propensity inference should be weighed in light of ‘the totality of the circumstances, including the government's need for the evidence given other available testimony.’”) As previously described, there is nothing inflammatory about the evidence, and no good reason why a jury, following an appropriate limiting instruction about its proper use, could not evaluate it fairly.

## III. CONCLUSION

In light of the foregoing, Defendant’s motion should be denied, and the evidence in the Government’s 404(b) notice should be admitted.

Dated: January 7, 2021

Respectfully submitted,

SCOTT W. MURRAY
United States Attorney

By: /s/ Aaron Gingrande
Aaron Gingrande
John S. Davis
Anna Dronzek
Assistant U.S. Attorneys
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552