*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO MAY 12, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                    \*
UNITED STATES OF AMERICA            \*
                                    \*   1:19-cr-142-01-LM
            v.                      \*   January 12, 2021
                                    \*   9:06 a.m.
NATHAN CRAIGUE                       \*
                                    \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LANDYA B. McCAFFERTY


Appearances:


For the Government:      John S. Davis, AUSA
                        Anna Dronzek, AUSA
                        Aaron G. Gingrande, AUSA
                        United States Attorney's Office




For the Defendant:      Dorothy E. Graham, Esq.
                        Behzad Mirhashem, Esq.
                        Federal Defender's Office




Court Reporter:         Liza W. Dubois, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, New Hampshire 03301
                        (603)225-1442

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  For the record, this is a motion
 3   hearing in a hearing regarding jury instructions in the
 4   United States vs. Nathan Craigue.  It is
 5   19-cr-142-01-LM.
 6              THE COURT:  All right.  Good morning,
 7   everybody.
 8              I am intending that we go in the following
 9   order:  We start with the jury instructions question and
10   then we do the three motions in limine, 1, 4, and 5, in
11   that order.
12              So you'll just have to let me know who's doing
13   the arguing with which motion.  And I won't lock you
14   down on that.  If one of -- counsel wants to intervene,
15   I'm fine with that.  Just raise your hand and ask to
16   speak.  Otherwise, I'll presume that the attorney that
17   you've told me is arguing the particular motion is going
18   to be lead on that motion.
19              Let me just state for anyone watching this
20   hearing via Zoom, they should be aware of our local rule
21   that prohibits any sort of photographing, recording, any
22   audio or video, broadcasting, or transmitting these
23   court proceedings.  Even a screenshot of this proceeding
24   would violate the court's rule.  So please don't violate
25   Local Rule 83.8.
```

1          I've entered public access findings in this

2     matter.  Those are on the record.  And since this is an

3     oral argument on legal motions, I don't think there's

4     any need to go over the -- the reasons why we're having

5     this hearing via video.  I think those are obvious.

6          Okay.  Let me just say for Mr. Craigue's

7     benefit that should you desire to speak to your counsel

8     during this hearing, I'd be happy to let you do that.

9     If something comes up and you want to talk to them, we

10    can put you in a breakout room.  And so I want to make

11    sure that you -- just raise your hand, notify me.

12    Somebody will see.  Unmute your mic and just say, Judge,

13    can I speak to my counsel, and we'll make that happen

14    for you.

15          Do you understand that?  I can see you, so --

16    and you're muted, but I can see you shaking your head.

17    You understand?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Okay.  Good.  All right.  Just --

20    just notify us somehow that you want to talk to them.

21          THE DEFENDANT:  All right.

22          THE COURT:  All right.

23          THE DEFENDANT:  Thank you.

24          THE COURT:  You're welcome.

25          All right.  Now, let's start, if we can, with

1   the jury instructions.  And before we get to this

2   question of *Darden* and the factors, let me ask everybody

3   about the question of knowingly and willfully and how I

4   go about defining that for the jury.

5          Footnote 11 in the defendant's request for

6   jury instructions lays out an argument which I tried to

7   piece together as best I could.  I think what the

8   defendants are arguing is that the law has shifted and

9   although First Circuit case law, *U.S. v. Zhen Zhou Wu*,

10  711 F.3d, still only requires that -- that which the

11  government has sought here, and I believe I gave in my

12  last false statement case, which is that the defendant

13  knew his statement was false when he made it or

14  consciously disregarded or averted his eyes from its

15  likely falsity.

16         The defendant is saying there's really a

17  circuit split at this point and that the government's

18  Solicitor General conceded -- in a case that went up

19  from the First Circuit, *U.S. v. Russell* -- conceded that

20  the First Circuit's definition of willful in the statute

21  was erroneous and relied on a Supreme Court case, *Bryan*,

22  B-r-y-a-n, 524 U.S., and that adds the element of

23  knowledge that his conduct was unlawful.

24         Now, apparently the Solicitor General

25  conceded -- if footnote 11 is correct -- conceded that

1    that was the case, but it's not clear at this point, the

2    First Circuit has not so stated or so held, and so I

3    guess I ask the government about this question.

4           Obviously we don't want to create appellate

5    error where we don't need to and if, in fact, the

6    defendants are correct about this, there's some question

7    that the law requires that I tell the jury that

8    Mr. Craigue had to know while making the statement that

9    his conduct was unlawful.

10           So let me have you address that footnote 11

11   first, if you would.  And let me start -- is it Attorney

12   Mirhashem?  I see you're not muted, so I'm going to

13   assume you're speaking on this one.

14           MR. MIRHASHEM:  That's correct.  I'm

15   addressing that one from our side.

16           THE COURT:  All right.  And Attorney Davis is

17   not muted, so I'm going to assume it's Attorney Davis.

18           So, Attorney Mirhashem, why don't you tell me

19   how I got that wrong or summarized that incorrectly and

20   clarify it for us.  And if I stated it correctly, I'll

21   just -- I'll just shift to Attorney Davis and have him

22   tell me whether he's open to adding to the instruction

23   in the way that you suggest in an effort perhaps to

24   avoid some sort of error.

25           MR. MIRHASHEM:  I think your Honor has stated

1  it correctly.  I mean, I think the only thing I would

2  add is, first of all, regardless of what happens, we

3  clearly want to preserve this issue.  So our position is

4  our position on what the -- what instruction is

5  required.

6           Also I think implicit in what your Honor said,

7  and we certainly take that position, this is an open

8  question in this circuit.  In light of the First Circuit

9  decision you cited but the Solicitor General's

10 concession, I think this Court is empowered to agree

11 with us and so we not only seek to preserve the issue,

12 but we also would like to try to convince your Honor

13 that you should give this instruction.

14          THE COURT:  Well, maybe Attorney Davis will

15 shortcut this for us.  So let me ask him.

16          What's your position on adding the knowledge

17 component?

18          MR. DAVIS:  Judge, we oppose the proposal that

19 the government would have to prove beyond a reasonable

20 doubt the defendant's knowledge that his conduct was

21 specifically unlawful.  That would be a shift of

22 enormous -- with enormous implications in a statute that

23 has general application and has been applied

24 consistently, as far as I know, perhaps other than in

25 the Ninth Circuit for many years, including the many

1    years since the mid '90s when the *Bryan* and *Ratzlafv*

2    *cases were decided.*

3         *So we have proposed what is the First Circuit*

4    *pattern instruction about what knowingly and willfully*

5    *means, and it does mean that the defendant must know*

6    *that his statement is false.  Certainly that subjective*

7    *knowledge is required in the proof and the defendant*

8    *also has to act with bad purpose in a general way.*

9         *But to require proof beyond a reasonable doubt*

10   *that the defendant actually understands that there is a*

11   *Section 1001 that applies to matters within the*

12   *jurisdiction of the executive branch of the*

13   *United States and that this is such a matter would*

14   *take -- take the statute far beyond what -- what the --*

15   *what Congress intended in, again, this very old statute*

16   *of general application.*

17        *Now, I have not actually found the footnote in*

18   *the -- in the concession of error matter from 2014.  I*

19   *take the defendant at their word.  But I would only say*

20   *that the Russell* case was not a 1001 case, as far as I

21   know.  It was a 1035 case and 1035 is a much more

22   specific and more technical area than 1001.

23        And I know of no Department of Justice policy

24   or requirement that says that a -- a statement made

25   essentially in or as justification about a different

1    statute entirely in a footnote by the Solicitor General

2    in some way binds prosecutors in the face of all of the

3    precedent that the Court acknowledges.

4              And, again, *Bryan* -- the Court talked about a

5    shift in the law, but the *Bryan* case was in the '90s,

6    1998, so it's 22 years old.  And I can't find, again,

7    outside of the Ninth Circuit, a pattern instruction that

8    would require the government to prove actual knowledge

9    of the law that the defendant is violating in the same

10   way that one does have to prove that, say, in a tax case

11   or in a structuring case.

12             I would also say that such a law would make --

13   or such an instruction would make ignorance of the law a

14   defense and it would also be, as a practical matter,

15   unworkable in many, many cases where -- where the

16   defendant doesn't necessarily know what the executive

17   branch jurisdiction is or even that an investigation in

18   the federal executive branch is ongoing.

19             And the *Yermian* case from back in the '80s

20   makes it very clear that the government doesn't have to

21   prove knowledge of a particular investigation, but if

22   the Court were to adopt this proposal by the defense --

23   and, again, I don't -- I don't see the defense saying

24   anywhere that any court in the First Circuit at least

25   has given this instruction, but if the Court were to

1    adopt it, then effectively the government would have to

2    prove -- as a predicate to proof that the defendant

3    knows he's committing a federal crime, the government

4    would have to prove the defendant's knowledge of the

5    executive branch agency of its jurisdiction over this

6    particular matter and over the fact of an investigation.

7            And, again, many, many cases and 1001 say that

8    you don't have to prove the defendant knows that there's

9    an investigation; you don't have to prove the defendant

10   knows there's federal -- federal jurisdiction over a

11   matter.  What you have to prove is that the defendant

12   knows he is -- what he is saying is false.

13           So to a -- to adopt this would effectively

14   throw the -- throw the baby out with the bath water and

15   I -- I think it would be very, very difficult, if not

16   impossible, in many different contexts -- and 1001, of

17   course, comes up in all kinds of different kinds of

18   practical contexts, but it would be very difficult in

19   many cases to charge or prove the statute.

20           And, again, it's a general application statute

21   about fraudulent statements, false statements in

22   government investigations.  It was never intended to be

23   applied that way.

24           So --

25           THE COURT:  A couple questions for you.

1          MR. DAVIS:  Sure.

2          THE COURT:  Okay.  First, I think that what

3     the defendants are asking for is an instruction that

4     the defendant had to know in a general sense that his

5     conduct was unlawful.  I think that's the nature of the

6     instruction they're asking for.

7          Also, *Rehaif*, you know, the recent Supreme

8     Court case, clearly provides at least some notice that

9     you've got to look at each of the statutory elements

10    with regard to a culpable mental state of a defendant.

11    And I think -- obviously it's not the same case, it's

12    not the same statute, but that is a more recent case.

13          *Russell*, which is cited in footnote 11, is a

14    2014 case, so it's a more recent decision than the *Bryan*

15    case.  And what is cited in footnote 11 -- and again,

16    this would be something worth looking for and finding,

17    but what's cited here is that according to the defense,

18    in light of a circuit conflict over the definition of

19    willfulness in a 1001 prosecution, the Department of

20    Justice has advised prosecutors to request the more

21    defendant-friendly instruction.  That's in footnote 11.

22    And, again, I -- they cite *Russell* and you're telling me

23    *Russell* deals with, I think, 1035.

24          But in any event, could you respond to those

25    general questions and then I'll obviously ask Attorney

1  Mirhashem to respond.

2          MR. DAVIS:  Just about *Rehaif*, I mean, I think

3  a distinction from, say, 922(g) is the way the statute

4  is written.  1001 starts off by saying:  Except as

5  otherwise provided in this statute, whoever in any

6  matter within the jurisdiction of the executive,

7  legislative, or judicial branch of the United States.

8  All of that is said before the adverbs knowingly and

9  willfully occur.

10          Knowingly and willfully modify the making of a

11 materially false statement or representation.  They

12 clearly do not modify the fact -- the fact of a matter,

13 the fact of the jurisdiction of the executive branch,

14 and that -- that distinction matters.  That's the way

15 that text is written.  And knowingly and willfully, the

16 way they appear, only modify the making of a materially

17 false statement.

18          So I certainly don't agree that *Rehaif* or

19 the -- the *Bryan* cases should or -- should be extended

20 here.

21          I think it is true that -- that the defense

22 is slightly -- is -- is subtly saying that the --

23 Mr. Craigue was aware of the specific provision of the

24 law he's charged with violating, but it goes on to say

25 the government must prove that when he allegedly made a

1   false statement, he was aware that was he was thereby

2   acting unlawfully.

3          I think that phrasing effectively puts the

4   government in -- in that box of having to prove --

5   sorry.  That phrasing puts the government in the box of

6   effectively having to prove that he knows there is some

7   federal law he's violating and proving that would be

8   very -- very difficult.

9          I'm also advised of the following from the

10  department:  The Solicitor General's concession in

11  *Russell* and *Ajoku* means that henceforth the department

12  will interpret the term willfully in the context of

13  Sections 1001 and 1035 to require that a defendant be

14  aware that the conduct with which he is charged was, in

15  a general sense, prohibited by law.  In other words, the

16  defendant must have acted with a bad purpose within the

17  meaning of *Bryan*.  But this interpretation is not

18  intended to and should not impose a significant burden

19  on prosecutors under Sections 1001 and 1035 in the vast

20  majority of cases.

21         I do think a bad purpose -- you know, we

22  may -- I may be splitting hairs here, your Honor, and

23  that a -- a bad purpose general willfulness instruction

24  is appropriate.

25         But, again, the -- once the -- the phrasing

1   effectively allows the defendant to argue that the

2   defendant didn't know about what OSHA is and the

3   defendant didn't understand federal or state government

4   branches and didn't know about the extent of OSHA's

5   jurisdiction and et cetera, et cetera.  There's a

6   thousand technical ways to split hairs about that and if

7   the Court's instruction allows those arguments, again,

8   the statute is effectively narrowed far beyond what the

9   legislature intended.

10          So maybe I haven't addressed it, your Honor.

11  I do think a bad purpose type instruction is -- is

12  appropriate, but a -- one that requires knowledge, proof

13  of knowledge that a -- that a law is being violated goes

14  too far.

15          THE COURT:  Go ahead, Attorney Mirhashem.

16          MR. MIRHASHEM:  Your Honor, let me cut to the

17  chase.  What Attorney Davis is saying we're asking for,

18  we are not asking for.  What he's saying he's okay with

19  is what in writing we have asked for.

20          Our proposed instruction says Mr. Craigue must

21  have acted with a bad purpose to disobey or disregard

22  the law.  The government need not prove that Mr. Craigue

23  was aware of the specific provision of law that he's

24  charged with violating, but the government must prove

25  that when he allegedly made a false statement, he was

1     aware that he was thereby acting unlawfully.

2               I just heard Attorney Davis make an argument

3     why our proposed instruction is correct.  So --

4               THE COURT:  All right.  So the jury asks me as

5     its first question, do we need to find that he

6     understood and knew about the, you know, false statement

7     statute or any OSHA reg that would require him to be

8     truthful?

9               MR. MIRHASHEM:  So I think as far -- I mean,

10    that's a little complicated.  I think my answer is two

11    parts.

12              First of all, at one level, the answer is no,

13    you don't have to find that he was aware of a specific

14    statute; you only need to find that he acted with a bad

15    purpose to disobey or disregard the law.  Okay?  So I

16    think that we're not asking the jury to find that

17    Mr. Craigue was aware of 18 United States Code Section

18    1001.

19              I think it gets a little bit complicated if

20    it's a jury question, depending on the evidence in the

21    case, because if there is reference to testimony about

22    some regulations, you know, discussions with Mr. Craigue

23    about them, well, you can certainly infer knowledge if

24    somebody actually knew, right?  So I don't think --

25              THE COURT:  Right.

1          MR. MIRHASHEM:  -- it's as simple as saying,

2     like, no, that's never an issue.  But starting out, the

3     issue is only the bad purpose that the government here

4     is -- is acknowledging would be appropriate and is

5     apparently the position of the -- of the government and

6     nationally.

7          I mean, my footnote 11, just to clarify, is

8     basically taken from Attorney Seth Aframe's requested

9     jury instruction in the *Suzanne Brown* case.  I've cited

10    that the government says no case in the -- no court in

11    the First Circuit has given this instruction.  This

12    court, Judge Laplante, the District of New Hampshire,

13    gave that instruction in *Suzanne Brown*, 16-cr-21-JL; and

14    this argument that I make here is largely a

15    cut-and-paste job from Attorney Aframe's argument for

16    that instruction.

17          So -- and just one other thing I would say.  I

18    do think that *Rehaif* is highly relevant here because

19    that case I think more broadly stands for the

20    proposition that, you know, you read a statute such that

21    all the words in the statute do work to the extent that

22    a natural reading of the statute suggests.

23          The government's proposed instruction makes

24    the word willfully -- not their proposal orally, but in

25    writing -- makes the word willfully surplusage.  It

1    basically means he knew.  Well, so what does it add to

2    just knowingly?  That phrase has to do work.

3            Now, it can do work in two ways.  There are

4    cases, such as *Cheek*, in the tax context where the

5    government does have to prove knowledge of a particular

6    statute.  To be -- to willfully violate certain tax

7    statutes requires knowledge of the specific obligation

8    imposed by a particular statute.

9            We're asking for something less.  We're asking

10   for bad purpose, but what Attorney Davis didn't say is

11   the rest of it is bad purpose to disobey or disregard

12   the law.  It's not like what does it mean to say

13   somebody had a bad purpose.  You have to show that they

14   had a bad purpose to disobey or disregard the law.

15           THE COURT:  Was *Suzanne Brown* a 1001 case?

16           MR. MIRHASHEM:  It was.  Attorney Brown --

17   Attorney Graham actually --

18           THE COURT:  Okay.

19           MR. MIRHASHEM:  -- was counsel for the

20   defendant and so we're familiar with that case.

21           THE COURT:  Okay.  And Seth Aframe, you're

22   telling me, argued the very position that you're

23   taking --

24           MR. MIRHASHEM:  Right.  If you look at --

25           THE COURT:  -- which is urging Judge Laplante

1   to adopt your position --

2           MR. MIRHASHEM:  As --

3           THE COURT:  -- because he knows he's the guy

4   on the appeal who has to argue if it gets reversed, so

5   he doesn't want it to be reversed.

6           MR. MIRHASHEM:  Exactly.

7           THE COURT:  Okay.  Well, it looks like

8   Attorney Davis is conceding that in a general sense that

9   the conduct was unlawful is something that he would

10  support and approve.  Bad purpose to disregard the law,

11  that's also included, Attorney Mirhashem.

12          MR. MIRHASHEM:  You know what, I'm going to --

13  just to make sure that I'm not making a mistake here,

14  you're asking if that's included in the *Suzanne Brown*

15  instruction, right?

16          THE COURT:  Yes.

17          MR. MIRHASHEM:  Yeah, I want to bring that up,

18  just to make sure that I have that right, because I do

19  remember taking the argument from that case, but to what

20  extent does our proposed instruction track it, I need to

21  look at that to make sure --

22          THE COURT:  Well, let me -- let me cut to the

23  chase --

24          MR. MIRHASHEM:  Okay.

25          THE COURT:  -- and just say that it makes

1    sense to me at this point if -- it looks like you have

2    agreed on the heart of it and obviously it's going to be

3    an issue at trial.  And I would obviously want to hear

4    from counsel on what -- what you're able to argue to

5    show that he did not have a bad purpose, that his

6    purpose was innocent.  I'll be interested, obviously, in

7    those questions, sort of around the edges, what is

8    admissible, what does the government have to show, but

9    it sounds like you could meet and confer and come up

10   with an instruction that you both agree on.

11           And so rather than have me struggle with this

12   and issue a lengthy decision on this, it makes sense to

13   me to have you meet and confer, propose a joint

14   instruction on this.  It sounds like you basically

15   agree.

16           So how does that sound for moving on from

17   knowingly and willfully and moving into the question of

18   the *Darden* factors?  Are you guys good with that?

19           MR. DAVIS:  That's fine with us, Judge.

20   The -- the only thing I'd add is that we are

21   definitely -- there is the notion of reckless disregard

22   or a conscious purpose to avoid learning that's in our

23   instruction regarding knowingly and willfully and we

24   very much believe that's based on the -- you know,

25   that's based on precedent and the statute and we

1   would -- we would want to ensure that the notion that a

2   defendant who demonstrates a reckless disregard for the

3   truth or a conscious purpose to avoid learning the truth

4   is equally culpable.

5           So, anyway, I'm sure we can work that out, but

6   we haven't discussed that aspect of it so far and I

7   would just flag that as an important part of the

8   instruction for the government.  But we can -- we can

9   certainly --

10          THE COURT:  That goes under knowingly.

11          MR. MIRHASHEM:  Right.

12          THE COURT:  That goes under knowingly.

13          Do you dispute that that's part of the

14  knowingly element?

15          MR. DAVIS:  Well, we have it as --

16          THE COURT:  You do dispute it.

17          MR. DAVIS:  -- a false statement is made

18  knowingly and willfully in our proposed instruction.

19  That is, it's part of both -- both parts of the intent

20  requirement, but ...

21          MR. MIRHASHEM:  Your Honor, we absolutely

22  object to that.  Part of the issue is the only authority

23  the government has cited for its instruction is Seventh

24  Circuit Federal Criminal Jury Instructions (modified).

25  And so I -- I do object to this notion of coming in and

1    saying this is the law with no support.

2           Our contention is the statute says knowingly

3    and willfully, says nothing about reckless disregard.

4    If the government claims that that instruction is

5    appropriate, we would want to be heard on that.  I think

6    that it's basically asking for a willful blindness

7    instruction in a context which we contend is

8    inappropriate.

9           The First Circuit has repeatedly cautioned

10   against improper use of willful -- blindness

11   instructions.  I mean, one of the things that the

12   government I think categorically gets wrong here is the

13   statute says knowingly.  There are some circumstances

14   the First Circuit has said you may infer knowledge from

15   certain reckless disregard.  It's not -- it's not

16   something you can just add in and say, oh, instead of

17   knowledge, why don't we just prove you recklessly

18   disregarded it.  There's no support for that in the case

19   law.  There is support for willful blindness being, in

20   certain situations, appropriate.

21           So, for example, since the government keeps

22   talking about pattern instructions, if you actually look

23   at the pattern instruction for knowledge that, you

24   know, it does say:  In deciding whether defendant acted

25   knowingly, you may infer that defendant had knowledge of

1  a fact if you -- and then it goes on and there's a whole

2  paragraph.

3         So this notion of taking a statutory term

4  which says knowingly and adding to it, does it occur in

5  cases?  Have I seen that instruction?  I have.  But I

6  think it's completely inconsistent with -- with the law

7  and we certainly object to anything less than knowledge

8  being sufficient to establish guilt.

9         THE COURT:  What about the *Suzanne Brown* case?

10 What was requested by the government in that case?

11        MR. MIRHASHEM:  I think they requested

12 something very similar to here and it was -- the jury

13 was so instructed without objection from the defense.

14        THE COURT:  So very similar to here; you mean

15 very similar to what I'm arguing, Judge.

16        MR. MIRHASHEM:  No, no, no, very similar to

17 what the government is asking for here, I think.  But

18 that issue wasn't --

19        THE COURT:  Okay.

20        MR. MIRHASHEM:  I think what happened in *Brown*

21 was -- I was just about to actually -- I was pulling

22 up the instructions, but my recollection of *Brown* is

23 that -- I'm just about to get to the instructions.  Just

24 give me a moment and I can ...

25        So what happened is I'm looking at the

1  government's proposed instructions in *Brown* right now.

2  Let's see.

3          THE COURT:  I think it's a false statement is

4  made knowingly if the defendant had actual knowledge of

5  its falsity or acted with reckless disregard of the

6  truth with a conscious purpose to avoid learning the

7  truth.

8          MR. MIRHASHEM:  Right.  I think --

9          THE COURT:  I think that would be --

10          MR. MIRHASHEM:  Right.  I'm looking at *Brown*.

11  The government did ask for that.  We object to that.  We

12  object to -- the statute says knowingly and there may be

13  circumstances -- and what I would rely on, by the way --

14  let me just give you our cite.

15          THE COURT:  I'm going to have you brief this

16  issue.  So it's clear you disagree on this.  It's an

17  important question and it's complicated enough that I'd

18  like to have some briefing on this particular question.

19          MR. DAVIS:  May I respond very briefly, your

20  Honor?

21          THE COURT:  You sure can.  Go ahead.

22          MR. DAVIS:  I'm sorry.

23          The -- I think the defense just said this

24  doesn't come from the pattern instruction.  The pattern

25  First Circuit instruction that we all use says:  A false

1    statement is made knowingly and willfully if the
2    defendant knew that it was false or demonstrated a
3    reckless disregard for the truth with a conscious
4    purpose to avoid learning the truth.
5              I think the defendant just said there was no
6    authority for the proposition.  In *U.S. v. London*, which
7    is 66 F.3d 1227, the First Circuit stated that in the
8    context of 18 U.S.C. 1001, a false statement is made
9    knowingly if defendant demonstrated a reckless disregard
10   of the truth with a conscious purpose to avoid learning
11   the truth.
12             In addition, as for whether knowingly and
13   willfully -- whether this is merely a definition of
14   knowingly or knowingly and willfully, in *U.S. v.*
15   *Gonsalves*, which is 435 F.3d at 72, the First Circuit
16   said:  While interpreting the term willfulness, we have
17   held that it means nothing more in this context than
18   that the defendant knew that his statement was false
19   when he made it or, which amounts in law to the same
20   thing, consciously disregarded or averted his eyes from
21   its likely falsity.  And I'm quoting there from *Riccio,*
22   which is 529 F.3d 40.
23             So the language in our proposed instruction on
24   that point is right out of the pattern instruction and
25   it's right out of the First Circuit case -- First

1    Circuit cases both about knowingly and willfully.

2              That's all, Judge.

3              THE COURT:  All right.

4              MR. MIRHASHEM:  Your Honor, if I misstated the

5    law, I apologize.  What I would ask is that the

6    government -- these cases that they just cited they put

7    in writing and we get an opportunity to respond.

8              MR. DAVIS:  We'll certainly talk with them,

9    Judge, and confer.  So --

10             THE COURT:  Okay.

11             MR. DAVIS:  No problem.

12             THE COURT:  All right.  And I do want to have

13   a joint request for an instruction with respect to

14   willfulness.  It looks like you agree.

15             With respect to knowingly, there's

16   disagreement, so if you can't meet and confer and reach

17   agreement on that, I want you to brief that question.

18   And we do have time, obviously, before trial, so that is

19   a luxury and I would think that ultimately -- I think

20   the government has sought the knowingly instruction in

21   its proposed jury instructions and I think, Attorney

22   Mirhashem, it would -- if you could brief this question

23   with respect to knowingly, that would be helpful.  And,

24   you know, I'm open to whatever briefing schedule works

25   for counsel.

1            So to that extent, just meet and confer about

2     that schedule, talk to Attorney Esposito, and we'll --

3     we'll require a timeline that works.  But I would like

4     this briefed.

5            So if you need 14 days from today's date, that

6     is fine with the Court, and if the government wants to

7     file a brief further arguing for the knowingly

8     instruction and then you respond to that, I'll let you

9     meet and confer.  I'll be agreeable to however you want

10    to structure that, but I do want to have briefing on it

11    so that I can decide the question.

12           Okay.  Everybody clear on sort of the scope of

13    that briefing?

14           MR. MIRHASHEM:  Yes.  If I understand

15    correctly --

16           THE COURT:  Okay.

17           MR. MIRHASHEM:  -- you've left it that you --

18    unless we come to an agreement, you want the defense to

19    initially file something.  I just -- I'm not sure, like,

20    what you --

21           THE COURT:  I'm -- Attorney Davis, are you

22    willing to file the first brief on the question of

23    knowingly?

24           MR. DAVIS:  Yes.  Judge, I would just

25    suggest we meet and confer and see what we can agree on.

1  That -- I would certainly hope to do that first and we

2  see what -- where we are.

3          THE COURT:  Yes, I agree with that.

4          MR. DAVIS:  We may be able to persuade the

5  defense about the case law and also about the

6  instruction used in *Brown*.

7          But -- and so we may not end up disagreeing on

8  that either, but certainly 14 days is fine as a -- the

9  government can -- would go first on -- on a -- on the

10 question of how to instruct on the mens rea requirement

11 for 1001.

12         THE COURT:  Okay.  And the defense, 14 days

13 thereafter?

14         MR. MIRHASHEM:  That would be great, your

15 Honor.

16         And I certainly agree.  I mean, you know, if

17 we confer and we reach an agreement, we'll let the Court

18 know we've reached an agreement.  But if we don't, I

19 think that's a -- that's a good schedule.  Thank you.

20         THE COURT:  All right.  And you're going to

21 file a joint proposed jury instruction with respect to

22 willful anyway, so if you can include any agreement you

23 reach on knowingly, that would be -- you can just

24 include that in the same joint proposed jury

25 instruction.

1          If you do disagree, then the government will

2    file a brief within 14 days of today.  I'll issue a

3    short -- very short procedural order so you have -- so

4    you have this information.  If you need an extension,

5    obviously, if both sides agree, I will grant that.

6          Okay.  Now let's move to the question of how I

7    instruct the jury with respect to the element of this

8    being a false statement.

9          MR. MIRHASHEM:  May I just bring up something

10   before we move on, your Honor?

11         THE COURT:  Yeah, sure.

12         MR. MIRHASHEM:  There are other disagreements

13   in the elements instruction.  I don't know if you want

14   to take them up or not.  But I -- I don't know if you

15   want to just go through them now or you don't, but there

16   are a few other disputed issues as far as the elements.

17         So if you want to take them up now, that's

18   fine with us, if you don't want to take them up, but I

19   can tell you what they are.

20         One is that we asked for an instruction that

21   just says false and defines it.  They say --

22         THE COURT:  Just says what?

23         MR. MIRHASHEM:  False, that they have to

24   prove --

25         THE COURT:  Okay.

1          MR. MIRHASHEM:  -- that a statement was false.

2  They say false, fictitious, and fraudulent -- which is

3  right, that's what's in the statute, that's what's in

4  the indictment -- but then fictitious and fraudulent

5  need to be defined if we're going to -- if we're going

6  to tell the jury that they can convict not just based on

7  false, but fictitious or fraudulent as well, then there

8  has to be some agreement or litigation on what those

9  terms mean.  They -- they put it in their instruction

10  and, you know, I think that that's something that would

11  need to be addressed.

12          The other point that I did think is worth at

13  least flagging for the Court is we have argued and cited

14  cases that a statement is false only if it's false under

15  every reasonable interpretation of the question, and

16  Mr. Craigue's statement about Mr. McKenna's status was

17  false only if it was false under every legal definition

18  of the term employee.

19          So those are other things that are out there.

20  I just wanted to make sure the Court is aware of them.

21          THE COURT:  Okay.  All right.  That -- that --

22  raising the first one, that seems like something you can

23  meet and confer on as well and perhaps propose a

24  resolution for me on that?

25          MR. DAVIS:  Yes, we can, Judge.

1          THE COURT:  Let me know.

2          Okay.  And then with respect to every

3    reasonable interpretation of the question, I think that

4    overlaps a little bit with this next *Darden* question, so

5    maybe we can move into that and -- and I can get a sense

6    of the arguments, the scope of the argument, and maybe

7    give you a sense of where I would go with that.

8          All right.  As much as I think when I first

9    learned about the case resisted the idea that I would

10   have to tell the jury all the *Darden* factors -- I think

11   you'll recall me asking Attorney Davis, are you serious,

12   you really want me to give that to the jury -- I've come

13   to the conclusion, I think, based on everything that

14   I've read about it that ultimately I do give them,

15   essentially, the common law on the factors.

16         I am not persuaded that I need to give them

17   every single possible statute that's involved.  I think

18   as the defendants argue and you list in your proposed

19   jury instructions that I should give them the

20   Occupational Safety and Health Act, OSHA, Fair Labor

21   Standards Act, Internal Revenue Code, worker's

22   compensation law.  And I've obviously looked through

23   those codes.  It seems to me that I'd look at OSHA, the

24   context in which this case happened, and OSHA I think

25   uses the -- basically the *Darden* common law test.

1          And I am not exactly sure on how I would word

2     the *Darden* factors, but I think I would -- I'd be very

3     careful about commenting, or at least looking like I'm

4     commenting, on the evidence specific to this case and

5     try to explain to the jury how the *Darden* factor --

6     factors work in a general sense, that control is the

7     key.  And I might, you know, give some examples and use,

8     for instance, some other sort of hypothetical worker,

9     employee/independent contractor relationship like maybe

10    a housecleaner, for instance, that would not necessarily

11    be a contractor or something close to this case, but

12    just giving them a sense of the types of things you

13    would look at to determine whether or not somebody's an

14    employee or independent contractor and give it to them

15    in a very general sense:  Here are some examples of

16    control, the things you might consider; here are some

17    things that might show that a housecleaner is an

18    independent contractor as opposed to an employee.

19          That's my thinking, having read your

20    submissions.  And so tell me -- tell me why I'm wrong on

21    that, Attorney Mirhashem.

22          MR. MIRHASHEM:  Thank you, your Honor.  I

23    mean, I certainly agree that with respect to the *Darden*

24    factors instruction, the law is very clear that when it

25    comes to general instructions such as that one, the

1    Court has a lot of discretion on how to word the

2    instruction.  And we're certainly not saying that you

3    must instruct them exactly using the words that we have

4    used.  So right off the bat we acknowledge that.

5            But as far as how you word it and why you tell

6    them about the other instructions, let me just explain a

7    few things from our point of view.

8            The first thing is -- so the facts are that

9    the government alleges that Mr. Craigue, you know, in

10   statements that he makes to the OSHA investigator,

11   refers to Mr. McKenna as being an independent contractor

12   when he knows that Mr. McKenna is an employee.  Okay?

13   So that's the -- that's the -- that's the heart of the

14   case, obviously.

15           So they have to prove that the statement

16   essentially -- I paraphrased here, he's an employee --

17   he's an independent contractor, I'm sorry -- was false

18   and that he knew it was false.  Okay?

19           So what you have to do is you have to consider

20   an individual like Mr. Craigue, untutored in the law,

21   and decide -- the jury has to figure out how are we

22   going to decide whether his statement was false and he

23   knew it was false.  Okay?

24           So then you've got this mass of law, which the

25   government has just brought on a third lawyer with a

1    labor lawyer background to kind of digest and explain.

2    And this complexity -- it would be highly unfair to

3    Mr. Craigue to bury because it was in the face of this

4    complexity that he was talking and now the government

5    has chosen to criminalize his response on a complex

6    question where companies have armies of lawyers figuring

7    these things out.

8            So if you tidy it up, give a really simple

9    instruction to the jury just focusing on, you know, what

10   may have been in the OSHA investigator's mind, there is

11   a lot that's lost here.

12           As a small businessperson, Mr. Craigue had to

13   deal with does he have to pay taxes for these people,

14   does he have to get workman's comp for them.  These

15   different statutes that we've cited aren't statutes that

16   we just pulled out of the air.  Those are -- in fact,

17   the government is arguing, oh, his motive to lie was he

18   didn't want to pay workman's comp, he didn't want to pay

19   taxes.  Well, the *Darden* factors don't determine that.

20   New Hampshire worker's compensation law determines that.

21   The tax laws determine that.

22           So you have somebody sitting there making a

23   statement.  There are multiple relevant bodies of law

24   that are in the air when he responds to those questions.

25   And so the jury, having had heard all the evidence and,

1    of course, the 404(b) motion is down the line, but the

2    government -- the government wants to get into workman's

3    comp.  The government wants to get into tax obligations.

4            Well, if we're going to get into those things,

5    all the more reason -- but regardless of whether or not

6    you get into those things, the jury has to understand

7    what they think Mr. Craigue knew when he was being

8    questioned about these things.  So that's why the other

9    ones are highly significant here.

10           With respect to the *Darden* factors, I mean,

11   the government in its instruction tries to oversimplify

12   it, saying that it basically comes down to like one test

13   which is determinative.  And our problem with that is

14   that's inaccurate.  You know, the simpler you make it,

15   the more it helps the government.  They can just point

16   to one thing and say, look, he didn't do X -- you know,

17   he knew X, therefore, he's guilty, he knew that he was

18   making a false statement.

19           But the reality of it is the law in this area

20   is very complicated.  I mean, we don't have a labor

21   lawyer on our team, so Attorney Graham and I actually

22   conferred with a labor lawyer.  And the thing that we

23   keep hearing is this is very complicated.  There is one

24   answer under OSHA law, one answer under labor, you know,

25   wages and hours law, one answer under tax law, one

1    answer under New Hampshire worker's comp law.

2         I mean, they're trying to really push the

3    envelope in this case by making a criminal case out of a

4    dispute over compliance with regulations.  They --

5    they've convinced the grand jury to bring this

6    indictment, so that's within their right, but the Court

7    should let us present to the jury the full complexity of

8    the law in this area in fairness to Mr. Craigue and what

9    he was up against when these -- you know, when the

10   government bureaucrats were asking him, they knew the

11   law with respect to OSHA.  The issue is what could the

12   jury conclude was this average person's understanding of

13   it.  That's sort of the big picture of getting into

14   these other things.  You know, workman's comp is a

15   totally different test from OSHA.

16        So that's sort of the general background why

17   we think these other instructions are critical.  You

18   know, the -- OSHA is all about control.  The Fair Labor

19   Standards Act is about economic dependence.  The

20   Internal Revenue Code is about right to control as to

21   details and means.  Worker's comp, the last provision of

22   it, says, you know, you look at whether or not the

23   person is required to work exclusively for the employer.

24        These are all very different standards and if

25   Mr. Craigue's statement was true under any one of them,

1    then it wasn't a false statement.  This is how it ties

2    to the elements.  But even more crucially, if he

3    believed his statement was true under any one of them,

4    you know, he's not guilty of a federal felony.

5              I mean, this is -- they want to say you go

6    talk to a government investigator, you get it wrong, you

7    get convicted of a federal felony, you can go to federal

8    prison for getting something highly technical wrong in

9    your answer.

10             To prove that, the jury needs to see the

11   complexity.  I mean, if you simplify it, you take away

12   our defense, basically.  So that's what --

13             THE COURT:  Let me ask you this.  Let me ask

14   you this.

15             So the government has the burden of proving

16   the element of falsity beyond a reasonable doubt.  All

17   right?  And I think what you're arguing goes to his

18   knowledge, the knowledge of its falsity.  But -- and

19   maybe that's fair game as to knowledge and the knowledge

20   element.

21             But in terms of instructing the jury on that

22   element of falsity, I -- I'm inclined to give them the

23   instruction with -- which would apply, the OSHA act,

24   which would be a *Darden*-like multifactor instruction.

25             But as to knowledge, I think clearly that's an

1    argument that you make for the -- in front of the jury.

2    I'm not sure exactly how that -- how that gets played

3    out and obviously we'll have to hear argument on that.

4    But in terms of falsity, in my instructions to the jury

5    I've got to be able to explain to them how the

6    government meets its burden with respect to falsity.

7              So let me hear from Attorney Davis on that and

8    obviously, Attorney Mirhashem, I want to hear your

9    response as well.

10             MR. DAVIS:  Judge, we agree with essentially

11   everything you said on this issue.

12             Just to respond briefly to one thing defense

13   just said, the defendant said that the government wants

14   to simplify this and make it about one issue.  But

15   that's not true, and I'd point out that the last

16   sentence of our proposal is -- or the last paragraph is:

17   You should consider all the circumstances surrounding

18   the work relationship.  No single factor determines the

19   outcome.  Nevertheless, the extent of the defendant's

20   right to control the means and manner of McKenna's work

21   is the most important factor.

22             And that's right out of case law.  So we're

23   not saying that a single factor is determinative.  But

24   beyond that, your Honor, I would say several things.

25             First, as the Court recognizes, this is a

1   common law definition.  It's a -- it's evolved over

2   time.  It's the basis of the OSHA regs.  It's also the

3   basis of the state worker's comp regime, I believe.

4           And -- and so proposing that the Court

5   instruct the jury on the common law of a question of

6   agency, which is what this is, there's nothing strange

7   or weird or deceptive about that.  That's what courts do

8   every day and the Court would be -- would need to do in

9   this case.

10          It's a common law issue.  OSHA applies the

11  common law.  And *Acosta*, the First Circuit case from

12  2018, clearly says just that; this is the common law

13  definition with a bunch of factors and we totally agree

14  that there's no getting around explaining multiple

15  considerations as *Darden* does.

16          Where we strongly part ways -- and I guess one

17  other thing I'd say is although this seems to the

18  defense and perhaps to us prosecutors as a -- as an

19  arcane and very unusual area of the law, I'm sure in

20  civil cases it isn't; that is, there are lots and lots

21  of labor management cases litigated federally and jurors

22  are instructed all the time on questions like this in

23  civil trials.  So, again, the novelty of it for criminal

24  prosecutors doesn't mean that somehow it can't be done

25  or there's something wrong with doing it.

1          But getting to where we part ways with our

2    esteemed federal defenders is that it would be

3    hopelessly complex and Byzantine to saddle the jury with

4    four different definitions, or at least apparently

5    different definitions, to tell them implicitly that all

6    of these are relevant to what you're thinking about and

7    you have to figure out how they apply in determining

8    falsity.

9          The Court shouldn't do that.  The jury would

10   not be properly instructed.  I can't imagine being a

11   juror in this trial where that's the instruction you get

12   and I just don't think that that works.

13          I do think that it's certainly possible

14   that -- and the Court alluded to this at the end.  It's

15   certainly possible that a factual predicate could be

16   made that some difference in some other statutory regime

17   about this issue, some difference exists and is material

18   and also was actually known to the defendant or

19   considered by the defendant or misapprehended by the

20   defendant and that that predicate could be shown,

21   potentially by testimony, potentially by expert

22   testimony, so that the -- maybe the defense argument is

23   there is this material difference in what -- in the

24   distinction between employee and independent contractor

25   that is in the IRS statute and for this reason, the

1   defendant had contact with some tax accountant at some

2   point who advised him of the following and he had that

3   in his mind and was misled by it.

4            And that could happen and that could be a

5   basis for a knowledge defense, but as the Court just

6   said, that's a question of fact.  It's a matter of

7   evidence.  And until there is some evidence that

8   distinctions between the four different things the

9   defendant is putting in front of the Court --

10  distinctions exist and are material and actually are

11  relevant in this case as the Court determines knowledge,

12  until -- until that is shown, there's some predicate,

13  there's no reason for the Court to say -- to try to find

14  every possible legal definition.  I'm sure there are

15  probably more.  There are probably other regs similar to

16  those that the defense could say, well, these are also

17  possible and to try those out and make the jury get an

18  instruction on all of them, particularly where for most

19  of them, the basic principles are the same and most of

20  them are derived from common law agency.

21           So, anyway, we -- this would be hopelessly

22  complex.  We strongly oppose it.  We think the Court can

23  do properly, as courts do in civil cases, an instruction

24  about agency based on *Acosta*, based on *Darden*, based on

25  the common law, and that's exactly what the jury needs

1   in terms of a jury instruction and the rest of it is

2   fact and evidence and argument.

3           That's it.

4           THE COURT:  Thank you.

5           Attorney Mirhashem.

6           MR. MIRHASHEM:  Thank you.

7           Your Honor, where we agree is *Acosta*.

8   *Acosta* -- we both cited it on the *Darden* factors and I

9   completely agree that the Court has to take *Acosta*, our

10  proposal, the government's proposal, and draft a fair

11  instruction on the *Darden* factors.  That I agree with.

12          Where we disagree -- and, you know, this case,

13  it's like a gordian knot because all of these things are

14  connected to each other and this issue is connected to

15  what we were just talking about about the instructions

16  and the 404(b) issues.

17          Let me just bring your attention to footnote 6

18  of our instructions.  This is on the elements where we

19  claim that you have to look at every reasonable

20  interpretation of the question.

21          I have two quotes there, one from the

22  First Circuit:  In a false statement prosecution, an

23  answer to a question is not fraudulent if there is an

24  objectively reasonable interpretation of a question

25  under which the answer is not even false.

1          So it doesn't go just to knowledge.  If

2     there's a reasonable interpretation of the question

3     under which the answer is not even false, then, you

4     know, you're not guilty.

5          So the question is, you know -- you know,

6     Count Two of the indictment is about the October 25,

7     2018, recorded interview of Mr. Craigue with OSHA.

8     About ten days earlier, he was at a hearing at the state

9     Department of Labor Workman's Comp, October 15, 2018, if

10    I have my dates right.  So it's perfectly reasonable

11    that he may have been thinking about the definition

12    under workman's compensation law.

13          THE COURT:  How is it materially different,

14    that definition?

15          MR. MIRHASHEM:  So one -- as I said, if

16    you look at the -- if you look at the New Hampshire

17    definition, the New Hampshire definition sets up a

18    presumption that somebody's an employee, but then it

19    says the presumption may be rebutted by proof that an

20    individual meets all of the following criteria.  I'll

21    focus on the last one:  The person is not required to

22    work exclusively for the employer.

23          So if you're hiring someone who is not

24    required to work for you exclusively, can work for other

25    people, that, along with other factors, can result in

1    overcoming the presumption that the person was an

2    employee.

3              So it's just -- I mean, it is complicated.

4    I --

5              THE COURT:  Yeah, but McKenna worked for other

6    people?

7              MR. MIRHASHEM:  I don't think the government

8    has evidence that he exclusively worked for Mr. Craigue.

9    I mean, he was a -- I --

10             MR. DAVIS:  Our evidence is he only worked for

11   Mr. Craigue.  I'm not aware of any job -- I don't -- I

12   don't rule out the possibility.

13             MR. MIRHASHEM:  May I ask -- Mr. McKenna's

14   deceased.  How does the government intend to prove at

15   trial that Mr. McKenna exclusively worked for

16   Mr. Craigue?

17             MR. DAVIS:  Well, Mr. Erickson worked with him

18   for two years with -- on jobs for Mr. Craigue, the

19   defendant.

20             MR. MIRHASHEM:  The jury doesn't have to

21   credit Mr. Erickson, whose credibility is subject to,

22   you know, multiple motions that are before the Court.

23             But, I mean, this is --

24             MR. DAVIS:  Anyway, yeah.

25             MR. MIRHASHEM:  I mean, I'm just saying, you

```
1    know, again, the Court has a lot of discretion in how it
2    fashions the instructions, but -- this was an OSHA
3    investigation, but that -- it doesn't logically follow
4    from that that in determining whether a statement was
5    false, you only look at the law that applies to OSHA.
6              I mean, OSHA law may have been in the
7    investigator's head; that doesn't mean that OSHA law is
8    objectively controlling on the issue of the falsity of a
9    statement or that Mr. Craigue somehow knew, oh, when I'm
10   answering this question, I've got to, like, be aware of
11   the Darden factors.  I mean --
12             THE COURT:  Okay.  Let me ask you this.  And
13   maybe this would be Attorney -- somebody with an
14   expertise in labor law.
15             But why wouldn't exclusivity, working
16   exclusively, why wouldn't that also go to the Darden
17   factors?  Why wouldn't that be a Darden factor?
18             MR. GINGRANDE:  I'll just --
19             THE COURT:  It makes sense to me.  It's
20   consistent with Darden.  It's consistent with the notion
21   of employee versus independent contractor.
22             MR. GINGRANDE:  Your Honor, if I could respond
23   to that.
24             First of all, one thing that I wanted to -- I
25   agree with you that it would go to both and the
```

1    fundamental point to be made here in this argument about

2    exclusivity and the definition that Attorney Mirhashem

3    has quote -- is referencing is that the presumption that

4    someone is an employee under New Hampshire worker's

5    compensation law is only rebutted if all of the

6    following factors that are listed in the -- in that

7    definition of independent contractor are met, not just

8    the one, not that it's -- the person worked exclusively

9    for -- for the employer or did not work exclusively for

10   the employer.

11          There are five -- or six, I'm sorry -- six

12   other factors that would have to be met in order to

13   prove that the person is, in fact, an independent

14   contractor, including things such as a person possesses

15   a federal employer identification number, the person has

16   control and discretion over the means and manner of

17   performance of work.  You can see the overlap even just

18   in that last factor alone with the *Darden* factors.

19          So it is not as simple as, you know, saying

20   that, you know, if the person did not work exclusively

21   for the employer that they are, therefore, an

22   independent contractor.

23          MR. MIRHASHEM:  Your Honor, we agree it's

24   complicated.  What we really are pressing is an

25   instruction that makes the jury, in judging Mr. Craigue,

1    aware of the complexities.  That's really what we're

2    asking for here is this is a complicated area of the

3    law.

4              I mean, maybe the Court could say there are

5    multiple definitions of the term independent contractor

6    under this law, that law, that law.  We're not -- I know

7    that we're not entitled to a particular form of

8    instruction, but we are entitled to an instruction that

9    makes the jury aware of what a complicated legal

10   question this criminal prosecution turns on.

11             That's the crux of our defense.  That's what

12   fairness to Mr. Craigue really demands.  Now they want

13   to oversimplify this case and say, oh, look, you know,

14   he didn't do X; therefore, he's guilty.

15             Here's a man sitting there without counsel,

16   without advice that he can be prosecuted based on his

17   false statements, series -- you have the transcript of

18   the questioning.  Series of questions where the

19   questioner knows what he wants to get.  Mr. Craigue

20   doesn't know.  The government wants to like proceed in

21   the fashion they are.  We're counting on the Court to

22   make this fair such that the jury can see the full

23   complexity of what was going on as Mr. Craigue was

24   having to answer all of these questions.

25             And in a really crucial way, it all comes down

1  to, well, so what is an independent contractor?  I mean,

2  it's bizarre, because I've never had a criminal case

3  that remotely comes close to turning on something like

4  that.  Criminal cases are did you hit the guy on the

5  head, did you do this, did you do that.  No, we're going

6  to make you a felon based on did you make a false

7  statement when you said the guy was an independent

8  contractor.  Well, if you're going to make him a felon

9  based on that, you've got to dot your Is and cross your

10  Ts.  That's really the framework in which we are

11  approaching this case.

12         THE COURT:  All right.  So you're looking for

13  some sort of generalized instruction to the jury that

14  this is a complex legal question, here are the factors

15  you need to weigh in deciding it, and then go through

16  the *Darden* factors.  That would satisfy you.  Something

17  along those lines?

18         MR. MIRHASHEM:  We're asking for the

19  instructions we're asking for, but I'm saying if the

20  Court is not willing to give us that, at least it

21  shouldn't just give an oversimplified version of the

22  *Darden* factors, but in some other fashion.  I mean, if

23  the Court, you know, has a draft instruction, we would

24  certainly, you know, appreciate looking at it and seeing

25  if it really fairly brings out this key issue of just

1    how complex this area of the law is.  I mean --

2             THE COURT:  But it's complicated -- I'm

3    familiar with this area of the law, having had cases,

4    civil cases.  It is complicated.  It is a balancing test

5    of many different factors.  Anyone familiar with this

6    who says it's not complex, it's just simple and easy to

7    decide, is not correct in my opinion.

8             So it is a complex area.  It involves

9    balancing many different factors.  But ultimately I'm

10   going to be giving the jury those factors, so the jury

11   is going to have to weigh those factors and you get to

12   argue in your closing argument, look at all the factors

13   you have to weigh in order to decide this question.

14            It seems as though something that is ripe for

15   argument, especially on the prong of what he knew, what

16   he understood, the judge is asking you to find these

17   factors, decide these factors, you get to weigh all of

18   those things, you heard evidence -- and you'll argue

19   back and forth on that.

20            But ultimately I think it's self-evident that

21   these factors involve a balancing test and it -- it's an

22   argument that I think a jury's going to be sympathetic

23   to.

24            But I don't know -- in terms of requiring the

25   government to meet the element of falsity, I do not

1  think -- I'm not persuaded at least at this point that I

2  need to instruct the jury as to each possible

3  permutation of what -- you know, what the definition of

4  employee and independent contractor is under all those

5  different statutes.  My guess is a *Darden* factor

6  instruction that encompasses pieces of all of those

7  would be -- would be a correct legal instruction.

8           So my inclination is that I give them the

9  *Darden* factors and that ultimately you make an argument

10  to me, Judge, you need to include more factors; you need

11  to include the following factors.  Because, you know,

12  all of that could have been running through his mind at

13  the time and falsity as an element requires the jury to

14  weigh this other *Darden* factor.

15           Those are loose factors, at least my

16  understanding.  Some of them, it's not obvious to me

17  where the person worked, location.  How is that

18  particularly relevant in a *Darden* balancing test?

19           So I think what I would do at this point is

20  draft an instruction on this and then have -- you know,

21  have another, obviously, attempt at argument with

22  respect to my draft or my proposed instruction.  I tend

23  to do that in every criminal jury trial, give that to

24  lawyers before, even sometimes before we pick the jury,

25  so you know the scope of the evidence in terms of the --

1   in terms of the jury instructions.

2          But I'm telling you my inclination is to give

3   them the *Darden* factors and I'd be open to arguments as

4   to additional factors that should be included in that

5   balancing test.  But I do think it's fair game for you

6   to make that argument to the jury.

7          I don't know that I agree I instruct them that

8   they have an impossible task here.  That -- that does

9   not -- it seems to me I need to tell them what the

10  government has to show to prove the element of falsity.

11  And then with respect to knowledge, obviously that's

12  where I think the heart of the case comes down.

13         But that's what I'm thinking at this point.

14  And having said that, is that something -- I'm not

15  persuaded that I give them every possible permutation.

16  I'm persuaded I give them the *Darden* factors.  As I say,

17  I'm open to persuasion with respect to adding to the

18  factors.

19         Is that something that a meet-and-confer and

20  propose a *Darden* factor balancing test instruction --

21  does that make sense also to add to our list of things

22  that you could jointly propose?

23         Don't get me wrong.  You are preserving your

24  argument here and you are making the argument that I

25  should include every possible reasonable construction

1   which would include, you know, all of the different

2   statutes that you cited in your proposed instructions.

3   I do not think that is what I do here.  I'm not

4   persuaded, but I want, you know, to be clear that

5   argument is preserved.

6           Having made the argument and having heard my

7   inclination, I think it might behoove counsel to meet

8   and propose a *Darden* factor type instruction which might

9   include, for instance, exclusivity as a factor.  As

10  Attorney Gingrande just said -- I know I just pronounced

11  your name -- mispronounced your name.  I'm sorry.

12          MR. GINGRANDE:  No --

13          THE COURT:  Was it close?

14          MR. GINGRANDE:  You got it right.  You got it

15  right.

16          THE COURT:  Okay.  Well, he just said that

17  exclusivity does -- does fall under a *Darden* factor

18  test.  So it seems to me that I might throw this back in

19  your camp and ask you in accordance with *Acosta* to come

20  up with *Darden* factors that work.  Obviously around the

21  edges you may disagree and I'll resolve those

22  disagreements and you just make it clear to me where you

23  do disagree.

24          But my inclination is on the element of

25  falsity that I give them a *Darden* instruction.

1          MR. MIRHASHEM:  I understand the Court's

2    ruling.

3          THE COURT:  All right.  And you're okay with

4    adding that to the meet-and-confer and perhaps a

5    proposed instruction?

6          MR. MIRHASHEM:  Sure.

7          THE COURT:  And the sooner you get that to me,

8    the sooner I can get to you my proposed jury

9    instructions in total.

10         Okay.  Is there anything else with respect to

11   this *Darden* factor question that I need to address right

12   now?  I think what we'll do is we'll just take a brief

13   break for our court reporter and then come back and

14   we'll go through the motions in limine one -- one at a

15   time, #1, #4, and #5.

16         MR. MIRHASHEM:  Okay.

17         THE COURT:  Anything else, though, before we

18   let our court reporter take a break?

19         MR. DAVIS:  Nothing further on the *Darden*

20   issue, Judge.

21         MR. MIRHASHEM:  Not from the defense.

22         THE COURT:  All right.

23         All right.  Let's do this.  Let's reconvene at

24   25 minutes before 11:00.  That gives us ten minutes.

25         So if you just turn off your video and your

1    audio, we can just come back and all of us turn that

2    back on in ten minutes.  Does that work for everybody?

3              MR. MIRHASHEM:  It does, your Honor.

4              THE COURT:  10:35?  Okay.  All right.  Good.

5    I'll see you in ten minutes then.

6         (Recess taken from 10:24 a.m. until 10:40 a.m.)

7              THE COURT:  Okay.  It looks like we're all

8    back on the record.

9              Okay.  All right.  Now, these are three

10   motions in limine.  They are motions by the defendant.

11   And what I would say about these motions and my rulings

12   is that I'm going to give you a provisional ruling.  I'm

13   going to tell you how I am -- you know, my instinct; if

14   the evidence comes in as you suggest, here is how I am

15   going to rule.

16             If the evidence comes in differently,

17   obviously then it shifts the ground and changes a ruling

18   potentially, so I qualify my rulings only by that, to

19   that extent.  Obviously in a trial it's much easier to

20   make these decisions and final rulings when I hear the

21   evidence and I know what the evidence is.  But I tried

22   cases and I know it's helpful to have a sense of what

23   the judge is likely to rule on some of these disputed

24   issues.

25             So I will give you my ruling.  It's

1   provisional and it depends -- hinges on whether the

2   evidence does come in as I'm anticipating it will.  And

3   I'll obviously tell you how I anticipate the evidence to

4   come in based on what you've argued and you can clarify

5   for me as we go.

6          So let's start with Motion in Limine #1.  Now,

7   this one is the motion regarding any opinion testimony

8   regarding employee versus independent contractor.  Since

9   the motion's been filed, it's my understanding that with

10  respect to -- and this is Motion in Limine #1, document

11  number 35.

12         With respect to the argument that the Court

13  must exclude all testimony on the law that applies to

14  determine whether a worker is an employee or an

15  independent contractor, the government concedes there's

16  not going to be testimony on the law distinguishing an

17  employee from an independent contractor.  That's going

18  to come in my jury instructions.  And so the -- the

19  government concedes that testimony on the law is not

20  going to be admitted.

21         Am I correct on that?

22         MR. GINGRANDE:  Your Honor, yes, it's correct

23  that there will be no testimony as to the legal

24  definitions of the term employee and independent

25  contractor.

1          You know, frankly, we read defendant's motion

2    to be a little broader than that in terms of excluding

3    testimony on the distinction itself and the consequences

4    of the distinction or significance to the distinction

5    and both of those things is -- are categories of

6    evidence that we do think should come in.

7          THE COURT:  Okay.  So essentially you're

8    saying -- agreeing there's not going to be testimony

9    specifically on the legal standard to determine employee

10   versus independent contractor, but it doesn't --

11         MR. GINGRANDE:  Correct.

12         THE COURT:  -- prevent the government from

13   seeking to introduce evidence of the fact that there's

14   this legal distinction.

15         MR. GINGRANDE:  Correct.

16         THE COURT:  Okay.  All right.

17         Do you disagree with that proviso?

18         MR. MIRHASHEM:  Your Honor, I'm honestly

19   confused by exactly what the government wants here

20   because they keep saying they -- this is mostly moot.

21         So I look at their conclusion where they

22   listed four things, and the first one is the legal

23   distinction between an employer's classification of its

24   workers as employees versus independent contractors.

25   And, I mean, I guess if legal distinction means here's

1    what one means and here's what the other means,

2    obviously we object to that.  If it is that there is a

3    distinction, well, the Court's going to instruct on

4    here's what -- here's the test for the distinction.

5          So I honestly -- I just want to understand by

6    way of a proffer what the government wants to introduce

7    here when they say they want to introduce evidence on

8    the legal distinction, item number 1 at the four-item

9    list.  I don't understand what that -- what they want to

10   introduce.  My suggestion would if we could have a

11   proffer on that, then we'd be able to say whether or not

12   there's a disagreement or not.

13         THE COURT:  Go ahead, Attorney Gingrande.

14         MR. GINGRANDE:  Thank you, your Honor.

15         I -- yeah, I would respond by saying just what

16   I said before:  That the government would intend to

17   introduce the fact that there is a distinction between

18   an employee and an independent contractor; that this

19   distinction is significant to OSHA, which is a required

20   as part of this case because it shows the materiality;

21   and, of course, the reasons that it is significant to

22   OSHA, all of which both showed the materiality element

23   of the crime, but also speak to whether or not, you

24   know, he would have a motive to lie about how his

25   employees or independent contractors, as defendant would

1  argue, were classified.

2         We would not introduce any evidence of, you

3  know, this is the standard, these are factors you have

4  to apply in looking at this analysis, and try and usurp

5  the Court's role in any way.

6         And, you know, I would also say if -- you

7  know, if Attorney Davis or Attorney Dronzek, you know,

8  have any corrections to make to that, they can feel free

9  to chime in, but that's my understanding of what the

10  three of us have agreed that would be introduced.

11         THE COURT:  Is that clarifying, Attorney

12  Mirhashem?

13         MR. MIRHASHEM:  Your Honor, so I -- I mean, on

14  the first point, I mean, if some OSHA witness is going

15  to say employee and independent contractor are two

16  different things and leave it that, I mean, the Court's

17  instructions are going to make that clear.  But, I mean,

18  I don't have an objection to that statement.

19         On the significance of the distinction, I

20  guess whether or not that falls within our motion, it

21  depends on what they're going to say.  I mean, the

22  government has said they're not offering any expert

23  testimony and so I don't know exactly what they're going

24  to say.  If they're going to be describing the legal

25  distinction between an employee and independent

1    contractor -- I mean, I just don't know.  What is the

2    significance of the distinction for OSHA's investigation

3    to the extent that it may possibly fall within what we

4    have moved to exclude in Motion in Limine #1.  I mean,

5    we don't --

6              THE COURT:  Okay.

7              MR. MIRHASHEM:  -- need opinion testimony on

8    the distinction.

9              THE COURT:  Right.  Right.  I think this is

10   just a fine line we're going to have to draw very

11   carefully and sharply during the trial, but I don't

12   see how they prove their case without putting on some

13   evidence of the distinction between these two things.

14   It is the case.

15             So I -- I do think that the government

16   understands that I'm going to give the instruction to

17   the jury so that I will tell them the legal difference

18   and ask them to decide which he was as a matter of fact

19   under the falsity element, but ultimately I think I

20   grant your argument one in the Motion in Limine #1 and I

21   think the government concedes that there's not going to

22   be opinion testimony on independent contractor and

23   employee.

24             So to that extent, you know, Motion #1 is

25   granted.  However, just to be clear, it doesn't prevent

1    the government from seeking to introduce evidence that

2    there is this distinction.  It just excludes testimony

3    that would provide the jury with the law used to make

4    such distinctions.

5            So that's how I am likely to rule on argument

6    1, assuming the evidence comes in as such, and I give

7    you that ruling now.  And you, I think, are better

8    equipped to know what the law will be.  And I make clear

9    to the government that obviously I'm saying it doesn't

10   prevent you from seeking to introduce evidence of the

11   fact of the distinction, but I think you understand

12   where the line is.

13           But this may come up at trial and obviously

14   make an objection and approach the bench or use your

15   audio headphones, if we still are engaged in that.

16           All right.  Now, argument number 2, everybody

17   agrees there's not going to be expert testimony on the

18   question of whether McKenna was the defendant's

19   employee; is that right?

20           Okay.  I'm not hearing anybody on that.  Is

21   that correct, everybody agrees no expert testimony on

22   whether McKenna was the defendant's employee?

23           MR. GINGRANDE:  You're right, your Honor,

24   that's correct.  Sorry.  I must have glitched a second

25   with my mute button.

1              Yes, the government will not be introducing

2    experts.

3              THE COURT:  Okay.  And the defendant's motion

4    then is granted to the extent it seeks to exclude expert

5    testimony as to whether McKenna was the defendant's

6    employee.

7              All right.  Now, argument 3, this one's a

8    little trickier.

9              MR. MIRHASHEM:  Can I just say something about

10   that?  I'm sorry, your Honor.  I may have misheard.  But

11   we're objecting to opinion testimony, lay or expert.  I

12   don't know if the --

13             THE COURT:  Yes, I just was -- I was just

14   capturing the areas where you agree.

15             MR. MIRHASHEM:  Oh, okay.

16             THE COURT:  So now we're moving into the area

17   where you disagree and it's a little trickier.

18             So argument -- your last argument, at least

19   the way I've broken these arguments up, is that you're

20   asking me to exclude lay opinion testimony or evidence

21   as to whether Mr. McKenna was Mr. Craigue's employee.

22             So, now, the facts that people observe --

23   let's say Mr. Erickson observed certain facts like

24   Mr. McKenna carries his own tools to the site,

25   Mr. McKenna worked on his -- his own time, that kind of

1    fact.  That you're not suggesting should be excluded,

2    just opinion testimony from, say, Mr. Erickson that I

3    think Mr. McKenna was Mr. Craigue's employee.

4           MR. MIRHASHEM:  Yes, your Honor, observations

5    of a witness about facts that bear on, say, the *Darden*

6    factors, we are not objecting to.

7           THE COURT:  Okay.  Now, what about the

8    possibility that the government has statements of --

9    statements of Mr. McKenna perhaps that would be

10   admissible about his own understanding of what he was?

11   I'm not suggesting they do, but if -- if it were

12   admissible and fell under a hearsay exception, one of

13   the *Darden* factors, I believe, is whether or not the

14   person working -- the employee, independent contractor,

15   the worker -- and the employer, what -- what they

16   thought, I believe is one of the *Darden* factors.

17          So under that scenario, if there are

18   statements of McKenna, assuming they come in under a

19   hearsay exception, do you agree that those would be

20   admissible?

21          MR. MIRHASHEM:  If I could just have a moment.

22          THE COURT:  Same for maybe statements of

23   Mr. Craigue, to the extent there are statements to that

24   effect.  So answer both of those.

25          MR. MIRHASHEM:  I mean, I see it different --

1    I mean, Mr. Craigue -- if they have statements where

2    Mr. Craigue said McKenna was a employee, okay, that I

3    agree is -- is admissible if otherwise admissible.  It's

4    not barred by the general objection we've made to

5    opinion testimony.  I mean, you know, depending on what

6    the statement is, I mean, a 403 objection, if there's

7    some layer -- obviously his own statement directly is

8    not hearsay, but somebody said Mr. Craigue said -- I

9    mean, there could be evidentiary objections, but the --

10   I agree that the fact that it was an opinion of

11   Mr. Craigue's does not make it admissible because it's

12   probative of his knowledge of the falsity of his

13   statement, regardless of whether or not it was an

14   accurate opinion.

15            So -- so the answer to that question is yes, I

16   agree that if otherwise admissible, Mr. Craigue's own

17   statements are admissible.

18            THE COURT:  And what about McKenna?

19            MR. MIRHASHEM:  McKenna --

20            THE COURT:  If they have such statements.

21            MR. MIRHASHEM:  I think that McKenna, if they

22   have such statements, it's still just a lay opinion like

23   any other lay opinion.  I mean, why -- I mean, what I

24   was doing was I was trying to look at the *Darden* factors

25   to see which one the Court was referring to because

1  that -- otherwise, it seems to me like it's just a lay

2  opinion testimony.

3          You know, somebody who's working for someone,

4  their opinion of their employment status, I don't see

5  why that would be treated any differently unless, as you

6  said, there's something in the test that treats that

7  differently, and I haven't found that.

8          So I would --

9          THE COURT:  I thought it was in the

10  Restatement (Second) which *Darden* says I am supposed to

11  look to to -- for the common law and the factor would be

12  what did the two individuals think; not just the

13  employer, but what did the worker think.  I could be --

14  that's my understanding.

15          MR. MIRHASHEM:  And I'm looking at our

16  proposed instruction and the government's proposed

17  instruction and at least in those two, I don't see

18  some -- I'm sure your Honor is correct about the

19  Restatement (Second) that I have to confess ignorance of

20  here, but I don't see it in our proposed instruction

21  and, I mean, it seems to me like it's a lay opinion as

22  to a -- a matter of law.

23          So --

24          THE COURT:  I think there's a First Circuit

25  case as well that lays this out and draws from the

1    Restatement (Second).  It's *Saenger*, S-a-e-n-g-e-r,

2    *Organization, Inc.*, and it's 119 F.3d at 61.

3              Let me just say this.  To the extent the

4    *Darden* factors make the two of them and what they

5    thought relevant factors, then I'm inclined to say

6    it's -- he's not just another layperson; he is a

7    layperson whose opinion would actually be a factor under

8    *Darden*.

9              So I would be inclined -- to the extent the

10   government even has such information and to the extent

11   it would meet, you know, the hearsay objection and

12   prevail on that, that I'm -- I would tend to think it

13   would come in, you know, assuming it is a *Darden* factor.

14             MR. MIRHASHEM:  I understand.

15             THE COURT:  Okay.  All right.  Now, if it's

16   not a *Darden* factor and I'm wrong about that, obviously

17   I would revisit that.

18             Now, with respect to anyone else giving their

19   opinion, their lay opinion, I am inclined to believe

20   that that's just completely irrelevant, what some person

21   thinks about Mr. Craigue and Mr. McKenna.  I'm -- I'm

22   inclined to think that that is completely irrelevant.

23             The only area where I'm wondering, and I'd

24   like to hear, perhaps, from both counsel on this, is the

25   area of Mr. Erickson and -- you know, I just don't know

1   how the evidence would come in, but if Mr. Erickson --

2   if there's testimony that Mr. Erickson and Mr. McKenna

3   were identical or substantially similar in terms of the

4   way in which they worked for Mr. Craigue, then I could

5   see possibly it being relevant at that point.

6           So I'll let counsel give me their thoughts on

7   that, Attorney Mirhashem and then Attorney Gingrande.

8           MR. MIRHASHEM:  Your Honor, I mean, I would

9   say that I see why the Court is -- is thinking that

10  Erickson's opinion on that issue may be relevant.  I'm

11  not going to focus on that.  I'm going to focus on even

12  if relevant, because it's opinion, it has to meet the

13  more demanding standards of Rule 701.

14          So Rule 701 requires more than just mere

15  relevance and I think that Erickson's opinion would not

16  meet those factors because, first of all, obviously it

17  can't be specialized knowledge, so we've got to exclude

18  that.  It has to be helpful to clearly understanding the

19  witness's testimony or determining a fact in issue.

20          And I don't see why it's -- you know, Erickson

21  testifying to McKenna would, you know, not bring his own

22  tools or McKenna worked, you know, only on this job, as

23  the government said.  Those are facts, and I concede

24  those are relevant, but why is then this layperson going

25  on to offer an opinion on this issue helpful to clearly

1    understanding, say, his testimony about these matters we

2    just talked about or helpful to determining a fact in

3    issue.

4           I mean, I would argue it's harmful to have

5    this layperson come in and just say, you know, in my

6    opinion, McKenna was an employee, or in my opinion, I

7    was an employee -- I'm not sure which one we're talking

8    about here -- I don't think that those are helpful and I

9    further don't think that they're rationally based on his

10   perception because he would -- he can say what he

11   observed, what he heard, but to reach some sort of legal

12   conclusion from that, I don't think that that's

13   appropriate.

14          I would also say, you know, to the extent that

15   we're talking about relevance, then we also need to

16   consider Rule 403.  And I think that whatever marginal

17   probative value such evidence must have -- might have

18   is -- is substantially outweighed by the unfair

19   prejudice that the jury's going to think, oh, this guy

20   was there, you know, he must be right when he says that

21   such and such.

22          So I -- our contention is to the extent such

23   evidence exists, it is inadmissible under 403 and 701.

24          THE COURT:  All right.  Let me hear from

25   Attorney Gingrande on this.  And I'm not sure you've

1    advocated that you would, indeed, move to admit that
2    kind of opinion testimony and maybe you wouldn't, but it
3    seems to me the issues under 701, whether or not it
4    would be helpful to clearly understanding Erickson's
5    testimony or determining a fact in issue, it's clearly,
6    I think -- he's got to meet 701(a) and (c).  It's not
7    based on scientific, technical, or other specialized
8    knowledge.  He certainly would fall under (c),
9    rationally based on his perception.  That's really
10   almost a foundational question, just is it helpful to
11   the jury.  And I think I could -- I could be persuaded
12   to limit this just to testimony about -- from McKenna,
13   statements of McKenna, opinion statements, opinion
14   statements of Mr. Craigue, but no one else.
15          However, obviously Mr. McKenna -- I mean
16   Mr. Erickson -- is going to be, I think, a key witness
17   for the government, is going to get on and tell his
18   story.  So clearly the facts that would support, you
19   know, his observations that are material in the case
20   would be admissible, but why do I go that further step
21   and then let him state his opinion of whether or not
22   either himself or McKenna were employees?
23          MR. GINGRANDE:  Your Honor, I think you've --
24   you've honed in on the issue here, which is, you know,
25   whether or not this would be helpful to understanding

1    the testimony.

2              And here it is absolutely helpful to

3    understanding the testimony from Mr. Erickson,

4    especially where we don't have Mr. McKenna available to

5    testify.  Because as you picked up earlier, the

6    understanding of the employment relationship is

7    something taken into account when -- when making the

8    determination.

9              Certainly no one would argue that if there was

10   a contract that said, you know -- that X person is

11   working for X person at, you know, X employer as an

12   employee or whether it said it was as an independent

13   contractor, that would be relevant.  That documents the

14   parties' understanding.

15             Similarly, if there was an oral agreement to

16   that effect, there was some mutual understanding of the

17   relationship, that is -- that is relevant.

18             And here where we don't have available to us

19   the testimony of -- of Mr. McKenna, the -- the way that

20   we can -- the way that the government is limited in

21   discussing the relationship is with the employees who

22   are available who can testify to that economic

23   relationship.

24             I would just make one, you know, minor

25   adjustment to the statement that you just made about

1  limiting it to McKenna and Erickson's relationship and

2  also include Mr. Ford who was an employee, or at least

3  in the government's view an employee, of Mr. Craigue as

4  well.

5          But that is helpful to understanding all of

6  the other evidence that the government is going to be

7  bringing -- introducing and bringing into the trial

8  regarding the facts about the economic relationship, who

9  provided the -- the, you know, supplies, who determined

10 the hours, how payment was made, et cetera.

11         And so --

12         THE COURT:  Okay.  Now, I agree with you on

13 that.  I'm going to allow facts about the relationship.

14 But those two are not parties to the employment

15 relationship between Craigue and McKenna, so my -- my

16 feeling at this stage is that I would allow testimony

17 from Erickson and Ford about everything they saw or

18 observed about that employment relationship between

19 McKenna and Craigue, but I am not inclined to go that

20 one step further and say that their view of employee

21 versus independent contractor, their view is -- is

22 relevant and is something the jury has to hear.  But I

23 don't want to say, you know, I'm absolutely not going to

24 admit that evidence.  That's what I'm saying right now,

25 provisionally, as I -- as I hear and understand this

1    case.

2              So this would be something I think if you're

3    inclined to ask Mr. Erickson or Mr. Ford the question,

4    what did you think Mr. McKenna was, an employee or an

5    independent contractor, then you might want to approach

6    and we'll just argue this issue.

7              But my instinct right now is that 701(a) and

8    (c) are met, but I have trouble with (b).  But maybe I

9    won't for all the reasons you're saying once I hear the

10   evidence and I feel like this is something the jury --

11   is worthy for the jury to hear and it would be helpful

12   to them.  But, ultimately, I'm not -- I'm not seeing it

13   yet.

14             Now, let me ask you this.  Is Mr. Erickson --

15   I know we're going to get into 404(b) issues.  I know we

16   also have some issues regarding Mr. Erickson in these

17   motions in limine.

18             Is he right now getting his painkillers

19   through worker's comp?  Is he getting it -- is he

20   benefiting in any way by himself being deemed an

21   employee?  That's my question.

22             MR. GINGRANDE:  Your Honor, that is something

23   that I would -- I would defer to Attorneys Dronzek and

24   Davis on.  I'm not -- my understanding is that he is not

25   currently, but -- but perhaps they could address that if

1    I'm wrong.  And if there's silence --

2              THE COURT:  The reason I ask it -- and, again,

3    the reason why I'm asking it -- and Attorney Davis is

4    muting his mic, I think.

5              Let me just ask -- I'm envisioning a line of

6    cross related to that because if, in essence,

7    Mr. Erickson would have a motive to portray himself as

8    well as Mr. McKenna as employees because he would

9    somehow get free access to the painkillers he needs

10   through some sort of insurance, that would seem to me to

11   be a motive that the defense counsel would want to

12   explore.  But, again, I -- I don't know what the

13   evidence would tend to show on that and I have no idea

14   if that's a line of cross the defendants would even want

15   to touch.

16             So let me ask Attorney Davis that question.

17             MR. DAVIS:  Judge, I'm not aware of any

18   employment relationship now between Erickson and

19   Mr. Craigue.  I believe the company's out of business.

20   Bankruptcy has been declared.  I'm not sure if there's

21   pending litigation between Erickson and the Craigue

22   business.  And perhaps Ms. Dronzek knows, but as far as

23   I know, there's no current incentive along the lines the

24   Court described.

25             THE COURT:  Okay.  And I don't think the

1   defense has argued it, so it was just a simple factual

2   question for me to understand the scope of any evidence

3   that Erickson would likely testify to.

4           So I think I'm going to stick to my

5   provisional ruling here that, in fact, every bit of

6   evidence that they observed that's relevant to the

7   question of employee and independent contractor is

8   admissible.  I'm not clear that their opinions meet

9   701(b) and are helpful to the jury.

10          With regard to --

11          MR. GINGRANDE:  Your Honor, may I ask a quick

12  clarifying question about that?

13          THE COURT:  Let me just finish my provisional

14  ruling.

15          MR. GINGRANDE:  Oh, okay.

16          THE COURT:  And I know you know this, just for

17  the record.

18          And McKenna and Craigue, to the extent there

19  are statements of opinion, I think that those would be

20  admissible under the *Darden* factors.  So that's my

21  provisional ruling.

22          Go ahead, Attorney Gingrande.

23          MR. GINGRANDE:  I'm very sorry, your Honor.  I

24  think I was --

25          THE COURT:  That's okay.

1          MR. GINGRANDE:  I was trying to get to that

2     last point that you were making.

3          I wanted to just clarify whether you're saying

4     that Mr. Erickson's opinion as to whether Mr. Erickson

5     himself was an employee would be admitted.

6          And the reason that I ask that is that there

7     are -- there's a line of cases in employment law

8     discussing -- and this'll come up in 404(b), but "me

9     too" evidence, essentially, that discusses the -- how

10    the policies -- when an employer has uniform policies

11    that effect different coworkers, you know, in an

12    organization, all employees, that evidence to one is

13    admissible as to others.  And we believe that

14    Mr. Erickson's relationship with Mr. Craigue and the

15    facts about that economic relationship are directly

16    relevant to Mr. Craigue's economic relationship with

17    Mr. McKenna.

18         And so as a result, whether or not there was

19    an employment relationship between Mr. Erickson or, for

20    instance, Mr. Ford and Mr. -- Mr. Craigue, we think is

21    very probative of the relationship that Mr. Craigue had

22    with Mr. McKenna as well.

23         So I just wanted to clarify what the -- what

24    the opinion --

25         THE COURT:  What my ruling is?

1           MR. GINGRANDE:  Yes.

2           THE COURT:  Yes.  Well, my ruling deals with

3   Erickson giving an opinion as to the employment

4   relationship between McKenna and Craigue.  And I believe

5   that's the scope of the motion.

6           But I think defense counsel would object on

7   the same grounds, to allowing Erickson to testify about

8   his own belief as to his own relationship with

9   Mr. Craigue.

10           But before I say as much, let me have Attorney

11   Mirhashem weigh in on that.

12           MR. MIRHASHEM:  No, your Honor, I agree with

13   you that our motion is limited to opinion testimony

14   about whether McKenna was an employee.  Erickson raises

15   a whole cluster of issues, some of which are dealt with

16   in the 404(b) motion.

17           I mean, I would say that for all the reasons

18   that we've talked about, I -- I don't think anybody can

19   testify to their own or somebody else's employment

20   status for the reasons I've argued.  I mean, Mr. Craigue

21   is different because he's charged with saying somebody

22   is not an employee.  So if there's a statement from him

23   saying the person is an employee, you know, that's not

24   admissible for its truth; it impeaches his other

25   statement.

1           So we generally object to any other opinion

2   testimony, but there's a lot that goes into Erickson

3   that's going to be taken up on the 404(b) motion, so --

4           THE COURT:  Okay.  All right.

5           MR. MIRHASHEM:  -- we're really just asking

6   for the Court to rule on, you know, what Mr. Erickson

7   may or may not be able to testify as to his own status

8   because that raises a whole host of issues that are in

9   our 404(b) litigation.

10          THE COURT:  All right.  All right.  Well,

11  Attorney Gingrande asked me the question, what's the

12  scope of your ruling, Judge.  So the scope of my ruling

13  I think is clear.  I'm just talking about opinion

14  testimony with regards to McKenna and Craigue.

15          And rather than repeat my ruling, I'll -- I'll

16  issue a very short procedural order that will summarize

17  my rulings.  I think you each are clear on my ruling

18  with respect to Motion in Limine #1.

19          So let's go to number 4.  All right.  And

20  number 4 is the DWI.  I have an up-front question that I

21  think is important.

22          Is this DWI resolved or is it still pending?

23          MS. GRAHAM:  It's still pending, your Honor.

24  I actually had my investigator check on that yesterday.

25  It looks like Mr. Erickson is represented by counsel and

1    they requested a three-hour trial.

2              THE COURT:  Okay.  And this is a -- it's not

3    just a run-of-the-mill DWI, a first.  It's a third --

4              MS. GRAHAM:  Right.

5              THE COURT:  -- is that right?

6              MS. GRAHAM:  Yes.

7              THE COURT:  Okay.  So having read everything

8    you've submitted, let me just tell you my instinct on

9    this and then have you tell me why I'm wrong.  And this

10   would go to the government.

11             How is this not bias?  He's testifying at a

12   time -- particularly if the case is still pending --

13   he's testifying at a time when there's at least this

14   possibility -- I don't think there has -- it has to

15   be proven, that -- you know, that it's the Concord P.D.

16   and -- and you've got the government, U.S. Government,

17   he's testifying here for as a key witness in the case.

18             I don't see how this isn't bias -- classic

19   bias testimony and would -- you know, obviously you can

20   rehabilitate and ask all kinds of questions about his

21   original statements, but ultimately I think they get to

22   ask about the pending -- the pending charge.

23             Now, whether that -- I think the fact that

24   it's serious, it's a DWI third that would involve

25   significant potential jail time -- again, correct me if

1    I'm wrong -- but clearly would go to his motive to want

2    to testify in favor of the government.  And I'm not sure

3    that the jury has to know the exact nature of the

4    charge, but, again, I -- I don't see -- I see this as

5    just classic bias.

6              So tell me why I'm wrong, Attorney Dronzek.

7              MS. DRONZEK:  Yes, your Honor.

8              So the issue here is that the statements

9    Mr. Erickson will be testifying to are essentially

10   statements that he made to OSHA long before anything

11   came up with regard to this DWI, this DUI, which I also

12   will note is also a -- it's a Class A misdemeanor.  It's

13   not a felony.

14             And the defense will have -- has access to all

15   of Mr. Erickson's statements.  They will have statements

16   he made to OSHA when he first voluntarily reached out to

17   OSHA of his own accord.  They have statements that he

18   made to the grand jury.  And, you know, those were all

19   made long before this -- this arrest came about.

20             And the motives that he has for -- I think the

21   motive that he has for testifying is so clearly rooted

22   in prior actions, prior statements, prior behavior, that

23   to introduce here his arrest is simply something that's

24   going to be more prejudicial than probative when the

25   defense has the opportunity to cross-examine him on any

1    inconsistencies.

2            He has made numerous statements about this

3    case long before he will testify and the -- you know,

4    should he somehow change his testimony based on a belief

5    that the government is going to assist him in his

6    current legal troubles, the -- the defense will have

7    every opportunity to -- to -- you know, to address that

8    with him very directly with his statements at trial.

9            And I also recognize -- note that it is not to

10   the government's benefit that he do this.  Now, I

11   realize that doesn't control what a witness says when

12   they get on the stand.

13           So I think that primarily this is simply the

14   facts and the -- where these statements came from.  I

15   agree that in general whether someone is -- expects

16   there to be or thinks there's the potential for a

17   benefit from the government, you know, yes, I agree

18   generally that is bias.  I think in this case, given

19   the statements that we're going to be dealing with and

20   his -- the testimony we expect him to make, the arrest

21   is simply not something that needs to come in to address

22   the possibility that he changes his statement, that he

23   tries to please the government.

24           THE COURT:  I would agree with you -- I'm

25   sorry.

1          I would agree with you if the case were

2    resolved.  If it were resolved.  But you still have him

3    testifying, let's say, time two; he testifies in front

4    of the jury.  Time three is the future, when this --

5    when this DWI that could land him in jail for up to a

6    year is resolved.

7          So at time two when he's testifying -- time

8    one involves all his prior statements, right, but time

9    two he's testifying and the jury is assessing his

10   credibility at time two.  And I think that the defense

11   counsel gets to say at time two he's biased, he has this

12   pending matter and he wants to either lock himself in

13   to whatever, you know, false statements he made at time

14   one and really embellish those because he's going to get

15   a -- he's hoping for favorable treatment at time three.

16         If we didn't have time three, I think I'm

17   agreeing with you that the -- that the fact that he made

18   statements at time one that inculpated Mr. Craigue but

19   at -- and then at time two makes statements in front of

20   the jury.  Without time three, I think we've got a

21   problem in terms of bias.  But if these -- this case is

22   still pending.

23         Now, persuade me that, you know, they don't

24   need to know that it's a DWI third involving controlled

25   substances.  I think I could agree with you on that.

1    The jury doesn't have to hear specifically what the

2    charge is because DWI could really -- you know, could --

3    I think they could have an emotional negative reaction

4    to that.

5           But my take on this is that it's classic bias

6    because of time two and time three.  If we didn't have

7    time three, I would be -- I would be inclined to, I

8    think, deny this.  But I give a limiting instruction to

9    the jury that this goes to bias.  This comes in as to

10   bias and motive.  And that's it.

11          So that's my take on it.  I want to ask

12   Attorney Graham, though, if you have anything else to

13   add before I ask Attorney Dronzek to give me a sense of,

14   you know, whether or not it's a DWI or do I just tell

15   the jury it's a -- you know, a Class A misdemeanor.

16          Go ahead, Attorney Graham.

17          MS. GRAHAM:  Thank you, your Honor.

18          I think -- I do think the type of offense is

19   important for the jury to understand, solely because of

20   two factors.  Well, not solely.  For two factors.

21          One is that this is an offense, because it's a

22   third offense, has a mandatory minimum and so it is

23   important for his state of mind when he's testifying

24   what he's looking at here.

25          So it is --

1          THE COURT:  Well, couldn't they be told,

2    though -- couldn't the jury be told there is a -- you're

3    going to get -- you're going to get a minimum -- if

4    you're found guilty, you're going to get a minimum time

5    of X amount.  They don't need to know it was a DWI.

6          MS. GRAHAM:  I would agree, except I do think

7    also that the jury is going to hear, which is -- has not

8    been objected to -- that he has prior felonies that are

9    drug-related.  I think having the jury know that he is

10   testifying in a federal case, knowing that he has had

11   once again been arrested for what apparently was

12   drug-induced driving while -- very soon after having

13   been convicted of drug offenses is very relevant to his

14   state of mind and his motive to want to help himself and

15   curry favor with the government.

16         THE COURT:  Attorney Dronzek?

17         MS. DRONZEK:  I disagree, your Honor.  In

18   part, I don't believe that the previous drug conviction

19   is close enough in time to this arrest.  He has a

20   prior -- he has a misdemeanor Class B for transporting

21   drugs and he has a drug felony, but I don't believe it

22   is close enough in time to try to draw the kind of

23   connection that defense attorney wants to draw.

24         I also think that simply this is -- this is

25   something that is -- is really essentially propensity

1    evidence.  It's wanting to emphasize the fact that this

2    is someone who is using drugs to try to draw the -- to

3    imply to the jury that there is a -- perhaps an unbroken

4    connection in drug use throughout this whole time.

5            I know we're going to get into issues of drug

6    use further with the -- with the other -- the other

7    motion in limine, but I -- I don't see any reason why

8    knowing the nature of the offense -- if the issue is for

9    bias, I agree that potentially something in terms of the

10   significance of the case, that there's, you know, there

11   is a mandatory minimum sentence should he be convicted,

12   if that goes to the weight of the bias or the, you know,

13   why this is significant for him, but I don't think that

14   the nature of the offense goes to that bias at all.

15   There's nothing about it being a DWI that makes the bias

16   less or more and I think that connecting it to his

17   previous history is simply going to be a way to get in

18   propensity evidence that should be precluded for someone

19   who's, you know -- they're assuming evidence that

20   Erickson has struggled with drug use in his life, but to

21   create this kind of unbroken narrative I think is

22   extremely misleading.

23           THE COURT:  All right.  Unless Attorney Graham

24   wants to add anything, I -- I am inclined to grant this

25   motion for the reasons I stated, but I'm inclined to

1  agree with Attorney Dronzek's analysis of the

2  alternative proposal that whatever we come up with in

3  terms of telling the jury about this, I think that's

4  something, again, we can put on the meet-and-confer list

5  that counsel agree and perhaps even propose some

6  limiting instruction.  That -- that should be fairly

7  simple, I think, in terms of what I tell the jury, but

8  to the extent you want to fashion a particular limiting

9  instruction everybody agrees on, go ahead.  I will

10  welcome that.

11        But my inclination is to say that this is

12  still pending, we still have time three, so I think it

13  is relevant at time two that this matter is pending.

14  However, I -- I am open to the argument of Attorney

15  Dronzek that the jury doesn't have to hear that it is a

16  DWI to understand that there is something pending of

17  some serious import.

18        Okay.  So that's Motion in Limine #4.

19        MS. DRONZEK:  Your Honor, may I --

20        THE COURT:  Let's go to number -- yes, you

21  may.  Go ahead.

22        MS. DRONZEK:  May I clarify?

23        So given that we are looking at a trial date

24  in -- I don't remember where we are, April at this

25  point, I think -- should this case -- should the case

1    result in -- actually be resolved before he testifies at

2    trial, could we reopen this issue before you?

3             THE COURT:  Yes.  Because that, to me -- if,

4    in fact, we don't have time three, at time two it's

5    already resolved.  So you're going to have to make a

6    pretty strong argument, Attorney Graham, that this is

7    relevant to bias.  At that point I'm much more persuaded

8    that that this does not come in.

9             Okay.  Number 5 -- and this is the -- okay.

10   This is a little bit complicated, Erickson's drug use.

11            Okay.  And I think some of this is going to

12   depend on, really, you guys making clear to me what the

13   evidence is likely to show here.  But we're talking

14   about sort of different buckets or categories of

15   evidence here because we're talking about the persistent

16   history of drug use.

17            Now, he doesn't have a persistent history of

18   alcohol use and I think that the defendants have

19   conceded that at this point.  It's drug use that we're

20   talking about?

21            MS. GRAHAM:  Yes.  I -- I incorrectly believed

22   it was alcohol for this most recent arrest.

23            THE COURT:  Okay.  So we're talking about

24   drugs.

25            So there's this persistent history that --

1   that he allegedly has and then there's the current --

2   what's his current drug use at the time that he's

3   testifying.  So I guess we can still call that time two,

4   time -- his testimony in front of the jury.

5              Now, at time one when he made all the

6   statements that are close in time to the accident,

7   August of 2018, I know he was -- he made statements to

8   OSHA, he made statements in front of the grand jury.

9   And I believe the grand jury was June of 2019, so that

10  was a good distance from the statements he made close in

11  time to the accident.

12             So we have these different times that are

13  relevant to statements he made and then we have the

14  two -- you know, sort of his history of drug use and

15  then we've got what's his current drug use.

16             So just let me go through -- I will tell you

17  that it seems to me that evidence of his drug use in or

18  around the time of the accident -- so we're talking now

19  summer of 2018, July, August, September 2018 -- that his

20  drug use around that time is clearly relevant to his

21  ability to perceive what's going on at the jobsite or

22  recall the situation accurately.  And I don't think the

23  government disagrees with that.  Stop me if I'm wrong,

24  Attorney Dronzek.  Just, you know, interject.

25             But the government doesn't want to have the

1    jury learn anything about the medical records.  It seems

2    to me the medical records would only be relevant on

3    impeachment.  So they know what's in the medical

4    records, Erickson gets up and testifies in a way

5    inconsistent with those medical records, it seems to me

6    they get to ask him.

7            But tell me the scope of this argument.  Are

8    you -- are you simply saying that you want to introduce

9    the medical records, Attorney Graham?

10           MS. GRAHAM:  No, your Honor.  My -- my purpose

11   is to ask him on the stand what -- about his drug use at

12   that time.  Obviously if he's not truthful and I know

13   that he's not truthful, then I would present those

14   records.

15           THE COURT:  Okay.  All right.  And does the

16   government disagree that the records could become

17   relevant if he -- if he -- if he testifies inconsistent

18   with what's in them?

19           MS. DRONZEK:  Yes, your Honor.  I agree that

20   there -- that, you know, if he opens the door by

21   testifying inconsistently, then, yes, I agree that is --

22   then that would be relevant.

23           I think there would be a need to identify

24   specific portions and redact, you know, nonrelevant

25   material --

```
 1                THE COURT:  Yes.

 2                MS. DRONZEK:  -- just because of this kind

 3    of --

 4                THE COURT:  Of course.

 5                MS. DRONZEK:  -- medical records.  But --

 6                THE COURT:  Okay.

 7                MS. DRONZEK:  -- I do agree that should he

 8    testify inconsistently with what's in the medical

 9    records that that's, you know, fair game for them to

10    introduce them.

11                THE COURT:  Okay.  All right.  So everybody

12    basically is in agreement as to that.

13                So no question Erickson can be questioned

14    about his drug use around the time of the accident as

15    those questions will be relevant to his ability to

16    accurately perceive and recall those events.

17                Time of the accident, obviously you'll have to

18    make specific arguments to me, but I would think that in

19    or around the time of the accident would be relevant and

20    if he's addicted to drugs at that time, that's something

21    I think that could affect -- it'd be highly probative of

22    his credibility, his accuracy of his testimony.

23                So I'm guessing in that time frame, but --

24    somebody tell me why this is wrong, but I would think in

25    that -- well, July is when he is injured and then August
```

1    is when McKenna has his accident and dies.  And then

2    statements are made by Mr. Erickson all the way through

3    to, I think, the grand jury in June of 2019.

4            I would think his drug use could be

5    potentially admissible with regard to anytime he's

6    making statements.  Any disagreement on that?

7            MS. DRONZEK:  Your Honor, just simply that I

8    don't think we have any evidence to point to drug use

9    during the period that -- I don't think there's any

10   foundation to ask about drug use during the period

11   particularly when he's speaking to the grand jury.  We

12   have --

13           THE COURT:  Okay.  And I wouldn't know that,

14   but that's -- that's fine.  So if there isn't any

15   evidence of that, then defense wouldn't necessarily have

16   a basis or foundation to ask about it.  So -- but if

17   he's testifying, right, and at time two he comes in

18   front of the jury, clearly that time would be relevant

19   and I don't think the government's disagreeing with

20   that.

21           So tell me -- tell me where the disagreements

22   are that I need to resolve with respect to this motion.

23           MS. DRONZEK:  Your Honor, I -- I don't -- I

24   don't disagree that obviously a witness's drug use is

25   relevant to ability to perceive, recall, and testify

1    competently.  And with regard to testifying at this

2    trial, I don't disagree that that drug use is relevant.

3            What I would propose is a voir dire of the

4    witness outside the presence of the jury as a way to

5    establish any foundation of drug use because what we

6    have is -- with regard to more contemporary drug use

7    that would be potentially relevant to trial testimony,

8    we have an arrest in September of 2020.  We're looking

9    now at trial in April of 2021.  Certainly the arrest is

10   concerning, but in a vacuum, we don't have evidence that

11   he's actually -- that he's engaged in drug use at the

12   time of his trial testimony.

13           So presuming that there is sufficient evidence

14   to think it's worth exploring, I would request that the

15   Court conduct a voir dire of Erickson outside the

16   presence of the jury to essentially lay a foundation for

17   whether there is drug use.

18           If he testifies saying basically to some --

19   some form of drug use, whether that's illegal drug use

20   or, frankly, is he on, you know, painkillers still for

21   his injury, is he engaged in some kind of potentially

22   medically approved drug, you know, regime, that -- if

23   that is established, then I agree that the defense

24   should be able to go into that in front of the jury, but

25   I don't think at this point that it would make sense to

1     go into that in front of the jury without that kind of
2     foundation.  I think that --
3               THE COURT:  I -- I don't think the defense is
4     going to argue against, you know, laying a foundation
5     outside the presence of the jury, but I'll let them
6     speak to that because I would certainly be in favor of
7     handling this carefully and handling it in the way that
8     you suggest.
9               Are there Fifth Amendment issues that he's
10    going to have because he has this pending DWI?  Are
11    there going to be Fifth Amendment issues with respect to
12    Erickson's testimony with -- on his drug use?
13              MS. DRONZEK:  Your Honor, that is --
14              THE COURT:  And let me -- let me ask Attorney
15    Graham to weigh in.  I haven't.
16              Go ahead, Attorney Graham.
17              MS. GRAHAM:  I guess there possibly could be
18    if I'm asking at the time of trial if he's using drugs
19    and he, for instance, has bail conditions that prohibit
20    him from using drugs.  That could certainly cause some
21    concern for his attorney who's helping him on that DWI.
22              But I just wanted to address the question
23    about voir dire.  I think that I can -- I can lay, I
24    think, an adequate foundation now, given what I know
25    about this particular witness's history.  This is going

1    to be the government's star witness because Mr. McKenna

2    cannot testify.  He's not here to testify.  So they are

3    going to really rely on his statements about all of

4    the -- the issues that -- that are -- have been laid out

5    today.

6            But this is an individual who has prior drug

7    convictions:  He's got two prior DWIs, convictions for

8    possession -- possessing methadone, possessing

9    oxycodone.  At the date of his fall and his admission to

10   the hospital, we know from -- from his medical records

11   that he's testing positive for marijuana.  We know that

12   he's testing positive for nonprescribed Suboxone.

13   Medical records show that in July he received five

14   tablets of morphine and 50 tablets of oxycodone.

15           And by --

16           THE COURT:  July when?

17           MS. GRAHAM:  So July 28th, 2018.  And then by

18   July 31st, he had used all his medication and he was

19   still seeking more.

20           And then his medical records from August of

21   2018 show that he had used prescriptions -- I'm sorry,

22   from March 2019, the medical records indicate a

23   conversation between the doctor and Erickson that he

24   should be limiting his intake of benzos, that he has a

25   chronic prescription benzo use, he's been counseled with

1    medication management for anxiety and insomnia, and then

2    in June -- September of 2020, he then gets arrested.

3            And the behavior that's described in those

4    police reports is really unsettling.  They describe his

5    demeanor as his speech was slow and slurred, his pupils

6    were constricted, his eyelids were droopy, he was

7    extremely lethargic, methodical, eyes rolled into the

8    back of his head.  All of this is concerning that -- and

9    this is a long range of time that we're talking about,

10   from 2015 in this drug use to September of 2020.

11           So I think that I've laid the foundation that

12   this doesn't come out of left field.  I'm not interested

13   in embarrassing anyone.  This is their star witness who

14   should be cross-examined as to his ability to recall

15   based on a very long-standing addiction, it looks like,

16   to prescription drugs.

17           THE COURT:  Yeah.  No, I -- I think you have a

18   good faith basis to ask these questions.  There looks to

19   be some time between, however, you know, August 2018 and

20   September, his arrest in September of 2020, that would

21   be worthy of asking him outside the presence of the

22   jury, just to -- just to find out the scope of his --

23   you know, his drug use and allow you to ask specific

24   questions about, you know, when you testified in front

25   of the grand jury, were you under the influence of any,

1    you know, illegal drugs, were you -- when you spoke to

2    OSHA, that kind of thing, and do that outside of the

3    presence of the jury because it is so inflammatory.

4              And then once we get back in front of the

5    jury, obviously, you'll know exactly sort of the range

6    of his drug use, at least what he admits his drug use to

7    be.

8              So that's my take on this.  I think that's the

9    safest way to go about this.  I do think Attorney Graham

10   has a good faith basis to ask about drug use certainly

11   in or around the time of the accident, but it seems to

12   me it's best just get him on the stand outside of the

13   presence of the jury to figure out the time between, you

14   know, his drug use that we know is substantiated in

15   medical records and then the September 2020 drug use.

16             And then there's September 2020 time of trial

17   as well is another time you'll want to ask him

18   questions.  And if his DWI is still pending, I can't

19   imagine that his lawyer isn't going to have some

20   concerns about, you know, the questions related to his

21   drug use, particularly around the time of, you know, his

22   arrest.

23             So that's something that I throw back to

24   counsel, because obviously that's something worth

25   exploring.  He's your star witness, the government's

1    star witness.  So I'll throw that back to the government

2    to look into that and to the extent we need to have some

3    sort of hearing on that, let's do that before this

4    trial.

5              I think that we're clear now on number 5, that

6    basically I -- I don't see a huge area of disagreement.

7    The government is saying that, you know, there's got to

8    be a proper foundation for these gaps in time and the

9    government wants questions outside the presence of the

10   jury.  I'm inclined to approach it that way.  But,

11   generally, drug use at these relevant times is going to

12   be admissible and I don't see the government arguing

13   that it's not admissible.

14             Am I right about that?

15             MS. DRONZEK:  That's correct, your Honor.

16             THE COURT:  Okay.  So the question just

17   becomes, you know, how much evidence of drug use is

18   there and are there gaps in what -- what the defense

19   understands to be the evidence of his drug use and they

20   explore that outside the presence of the jury.

21             So it does seem to me that the defense would

22   be able to question McKenna -- I'm sorry -- Erickson out

23   of the box on the stuff that they know about, which is,

24   you know, close in time to his original statements and

25   that they have a basis to ask about that before any

1  out of the jury questioning happens and they would

2  certainly have the ability to ask him about this pending

3  case and the arrest.

4          But with respect to areas where there really

5  is this gap, I think we do it outside the presence of

6  the jury.

7          Is -- so is that clear to everybody in terms

8  of Motion in Limine #5?

9          MS. GRAHAM:  Yes.  Understood, your Honor.

10          MS. DRONZEK:  Yes, your Honor.

11          THE COURT:  Okay.  Good.  So I think that --

12  that at least takes care of everything that's in front

13  of me today.

14          I know the 404(b) issues and the other Motion

15  in Limine #2 are -- that is going to be a hearing

16  probably as long as this one, I'm guessing.  I know it's

17  scheduled for next week, I think, and I'll see you for

18  that hearing next week.

19          And, meanwhile, I know you're going to meet

20  and confer and talk about joint proposed instructions to

21  deal with the willfulness instruction; to deal with the

22  knowingly instruction; the false, fictitious and

23  fraudulent and how that's handled, that was something

24  Attorney Mirhashem brought up; and then also proposed

25  instructions regarding the *Darden* factors, now that you

1    know that I'm inclined to give those to the jury.

2              And if you need any kind of extension on

3    getting those first -- getting the proposed instructions

4    to me, you know, I think -- I think if you can get those

5    to me sooner rather than later, I can get you a draft

6    sooner rather than later.  So hopefully that'll be

7    incentive enough to have you file that, you know, within

8    30 days.

9              And I'll see you next week for the 404(b)

10   hearing.

11             Anything else before we adjourn?

12             MS. DRONZEK:  Not from the government your

13   Honor.

14             MS. GRAHAM:  No, thank you.

15             THE COURT:  All right.  Good.  Thank you,

16   counsel.

17             Court is adjourned.

18             MR. GINGRANDE:  Thank you, your Honor.

19             (Proceedings concluded at 11:45 a.m.)

20

21

22

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 2/11/21          */s/  Liza W. Dubois*
                            LIZA W. DUBOIS, RMR, CRR