IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | |
| | ] | |
| v. | ] | No. 19-cr-142-LM |
| | ] | |
| NATHAN CRAIGUE | ] | |

## MOTION TO DISMISS

Nathan Craigue respectfully moves the Court to dismiss the superseding indictment.  This motion is grounded in Fed. R. Crim. P. 48(b)(1).

As grounds for this motion, the following FACTS and LEGAL ARGUMENTS are stated:

### FACTS

On July 10, 2019, the grand jury returned a two-count indictment against Mr. Craigue. Both counts involve alleged false statements relating to the employment status of Kenneth McKenna.  While the second count mentions not only McKenna, but also Chris Erickson, the allegation of falsity in that count is clearly limited to McKenna. In fact, it has been clear at least since June 29, 2020 that this Court has construed the second count to be limited to a false statement concerning McKenna:

> Count one alleges that Craigue falsely represented to an OHSA officer in August 2018 that McKenna was a subcontractor and not an employee. Count two alleges that Craigue falsely represented to an OHSA officer in October 2018 that McKenna was not an employee by saying "I've always treated them—they would come and go as they please, so I would always treat them as not employees." Doc. no. 1 at 2.
>
> Though these statements are not identical, the alleged false assertion—that McKenna was not an employee—is the same.

Doc. 27 (June 29, 2020 Order) at 9.

1

On February 24, 2020, trial was continued to May 2020 at the request of the defense because "[a]dditional time is required to file motions in limine, proposed jury instructions, proposed voir dire questions, and obtain rulings on these pleadings as well as two motions to dismiss." Doc. 20.  Subsequently, the Court ruled on the two motions to dismiss, one of which (quoted above was premised on both counts charging the same crime – a false statement about McKenna's employment status. Documents 23, 27.

The May 2020 trial was canceled because of exigencies created by the pandemic. The pandemic also resulted in cancelation by the court of trial in June or July 2020. Finally, after a scheduling conference on June 22, 2020, at which the parties and the Court discussed a realistic trial date, the trial was continued on a defense motion to October 20. 2020. Doc. 28-29. However, at a status conference in September, counsel learned that, while an October 6 spot was available, October 20 was not an option, and the trial was continue to November 2020. Doc.  32-33.

On October 7, 2020, the Court entered an order that "[o]n or before October 14, 2020, counsel shall file either a motion to continue or, if the case is ready to proceed to trial as scheduled, a Joint Trial Status Report." On October 14, 2020, the parties filed a status report, stating that they were ready for trial. Doc. 34. In anticipation of a November trial, a flurry of activity ensued, including the filing of multiple motions in limine and proposed jury instructions, and the issuance by the Court of juror questionnaires. Doc. 35-48.

The motions filed in October 2020 included a motion in limine to exclude testimony concerning Erickson and Ford's employment status and Erickson's injuries.  Doc. 36 (motion in limine #2), filed October 21, 2020.

On October 30, 2020, the defense was forced to file a motion to continue because, that morning, Mr. Craigue had "notified his counsel that his son tested positive for COVID. As a result, his son will be in quarantine until November 9. Mr. Craigue was advised that he will need to quarantine 14 days after November 9. This will result in a quarantine period until November 24." Doc. 50 at 1 (footnote omitted). Trial was continued to December 2020, with the case placed on that month's "priority list." October 30, 2020 Endorsed Order. However, with the pandemic worsening in the winter, the Court continued the trial to January 2021. November 18, 2020 Minute Entry. On December 10, 2020, as the pandemic continued to rage, the Court conducted a status conference. At the time, Mr. Caigue was sick with COVID-19. To the best of counsel's recollection, the Court offered counsel an option between trial in March or April of 2021. Trial was reset for April 2021 as "requested/suggested by defendant." December 10, 2020 Minute Entry.

On December 24, 2020, the defense complemented its motion in limine #2 with a response to the government's Rule 404(b) notice. Doc. 65. The government joined the issues by filing detailed responses. Doc. 57, 66.

In January 2021, the Court conducted two hearings over the course of more than five hours, addressing the motions in limine and requests for jury instructions. Minute Entries for January 12 and January 20, 2021. More than two-and-a-half hours were devoted to a hearing on admissibility of matters such as Ford and Erickson's employment status, Erickson's injuries, and McKenna's injuries and death. During the January 20, 2021 hearing – whose transcript runs to 100 pages – the Court expressed its grave concerns about admitting evidence relating to Erickson's injury and hospitalization:

THE COURT:

But introducing this -- honestly, this is really -- this is emotionally evocative type of evidence. The jury is not going to like Mr. Craigue when they hear these details. They just aren't. They're going to want to convict him because he went in to this guy and basically bribed him, tried to give him money in exchange for what would have been perhaps, you know, paying worker's comp or just didn't provide for him. He got injured on his site.

The jury is going to really, I think, hear this type of evidence and really use it to, I think, want to find Mr. Craigue guilty. And so that's the concern I have with this evidence. And I'm concerned because you have the evidence with respect to his knowledge of worker's comp.

So while this evidence is really powerful, it's powerfully inculpatory. I think you have that kind of evidence and you can present that kind of evidence in a way that is not going to completely demonize Mr. Craigue.

So that's my concern with respect to Mr. Erickson's injuries. I understand you're saying you're not going to get into the details of his injuries, but he was injured on the site, same site, and this behavior with respect to Mr. Erickson really is just deplorable and the jury hears it and I think the case may be over.

So I'm very concerned about that evidence coming in in terms of the probative value being substantially outweighed by the unfair prejudice in terms of what the jury hears and how the jury is going to react to this evidence.

Transcript of January 20, 2021 Hearing at 28-29.

On January 22, 2021, the Court issued a detailed order, *inter alia* excluding evidence of

Erickson's injuries a month before McKenna's death, as well as evidence of Erickson's and

Ford's employment statuses. Doc. 70.

On February 25, 2021, the Court entered an order stating that this case was scheduled for

trial and either a motion to continue or a trial status report must be filed by March 8, 2021.  On

March 5, the parties reported that they were ready for trial. Doc. 77. On March 12, the Court reviewed that report and scheduled a final pretrial conference for March 22.

On March 12, 2021, the government informed defense counsel that it intended to seek a superseding indictment as to count two, and likely as to count one.  On March 16, 2021, the government informed defense counsel that it intended to seek a superseding indictment as to both counts.

The defense was suddenly confronted with key changes in the case – the trial was now not about the employment status of one person but three – which will require relitigating issues such as Erickson's injuries and hospitalization. Moreover, because Rule 403 rulings are made, not in a vacuum, but considering the probative value and unfairly prejudicial impact of other evidence, issues such as the admissibility of McKenna's death must now be relitigated. Furthermore, a new legal issue – the potential duplicity of each count in which falsity as to the employment status of two individuals is alleged – has to be researched and, if appropriate, litigated.  For these and other reasons, the defense was forced to move to continue the trial. A motion to continue was filed on March 17, 2021. Doc. 78.

On March 19, 2021, the Court issued the following order:

> As a result of an anticipated superseding indictment, defense counsel has filed an assented-to motion to continue the trial in this case. See doc. no. 78. The court would like to discuss the motion to continue with counsel at the Final Pretrial Hearing, currently scheduled for March 22, 2021 at 2:30 pm. Based on the motion to continue, the court's understanding is that the anticipated superseding indictment will bring two counts alleging the same basic false statements as the original indictment (i.e., statements that McKenna was a contractor, not an employee), but will allege that the defendant's statements were unlawful for the added reason that they falsely represented the employment status of additional workers (Ford and Erickson). These new workers were the subject of prior court rulings on motions in limine. The court is interested in why the government delayed bringing the superseding

indictment. See Fed. R. Crim. P. 48(b)(1). This concern is
heightened in light of the pandemic and the efforts the court has
made to schedule jury trials during this pandemic. The court would
like to discuss these issues with counsel and consider ways to keep
the trial on track, including the possibility of severing certain
counts. The court is also prepared to permit expedited briefing on
issues regarding the new indictment, and to issue expedited
rulings.

At the March 22, 2021 hearing, the Court explained its concern about the timing of the
superseding indictment (which was returned the same day and docketed on March 23, Doc. 79).
To the best of counsel's recollection, the Court stated that the superseding indictment was
obtained in an apparent attempt to circumvent the Court's evidentiary rulings. The Court noted
that by placing this case on the April priority list of the very limited number of cases proceeding
to trial during the pandemic, other defendants, some incarcerated, had been deprived of the
chance to go to trial. The Court further indicated that the superseding indictment required the use
of limited grand jury time available during the pandemic.

In response to inquiries from the Court, the government explained that it never
anticipated that the Court might rule as it did on the evidentiary issues. The government stated
that the possibility of superseding as a means of responding to the Court's ruling had not
occurred to counsel for the government until March 11, 2021.

After the March 22 hearing, the Court issued an expedited briefing schedule on a motion
to dismiss based on the timing of the superseding indictment. (This schedule does not apply to
other motions to dismiss the defense may file.)

## LEGAL ARGUMENT

A.  The Rule 48 standard

Federal Rule of Criminal Procedure 48(b)(1) provides that this Court "may dismiss an indictment, information, or complaint if unnecessary delay occurs in … presenting a charge to a grand jury [.]"  The Advisory Committee Notes to Rule 48 explain that Rule 48 is not limited to Sixth Amendment or Speedy Trial Act concerns. The Notes explain that the Committee

> considered the relationship between Rule 48(b) and the Speedy Trial Act. *See* 18 U.S.C. §§3161, et seq. Rule 48(b), of course, operates independently from the Act. *See, e.g., United States v. Goodson*, 204 F.3d 508 (4th Cir. 2000) (noting purpose of Rule 48(b)); *United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981) (suggesting that Rule 48(b) could provide an alternate basis in an extreme case to dismiss an indictment, without reference to Speedy Trial Act); *United States v. Balochi*, 527 F.2d 562, 563–64 (4th Cir. 1976) (per curiam) (Rule 48(b) is broader in compass). In re-promulgating Rule 48(b), the Committee intends no change in the relationship between that rule and the Speedy Trial Act.

Fed. R. Crim. P. 48, Advisory Committee Notes (2002 amendment); *see also United States v. Judge*, 425 F. Supp. 499, 503–05 (D. Mass. 1976) (granting Rule 48(b) motion to dismiss) (district court's inherent power to dismiss under Rule 48(b) is "not limited to those situations in which the Sixth Amendment right to a speedy trial has been violated [;]" rather, the rule "is a restatement of the inherent power of the court to dismiss a case for want of prosecution.").

Compared to the Constitution, Rule 48(b) imposes a "more exacting standard" on the government. *United States v. Cartano*, 420 F.2d 362, 363 (1st Cir. 1970). "However, the denial

of a motion to dismiss under the Rule, for a delay which falls short of a constitutional defect, will be reversed only on a showing of an abuse of discretion." *Id*.

As Judge Zobel has explained, "Rule 48(b) dismissal for 'unnecessary delay' is … solely within the court's discretion." *United States v. Machado*, No. CRIM.A.04-10232-RWZ, 2005 WL 2886213, at *6 (D. Mass. Nov. 3, 2005) ("Because the government has provided no satisfactory explanation for the long hiatus in its prosecution of defendant, its delay can only be described as 'unnecessary.') (*citing United States v. Mitchell,* 723 F.2d 1040, 1050 (1st Cir.1983), *abrogated on other grounds by Henderson v. United States*, 476 U.S. 321 (1986)). "The invocation of [Rule 48] is within the discretion of the district court and it will be reversed only for abuse of discretion." *Mitchell*, 723 F.2d at 1050 (1st Cir. 1983).[1]

While the Court, in exercising its "discretionary powers" under Rule 48 is not limited to the traditional Sixth Amendment speedy trial analysis set out in *Barker v. Wingo*, 407 U.S. 514, 1972, the Court "may" consider those factors in its analysis, namely, 1) the length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right, and 4) prejudice to the

---

[1] Judge Saylor has characterized the Rule 48 test as follows:

Pursuant to Rule 48(b), the court may dismiss an indictment if an unnecessary delay occurs in "(1) presenting a charge to the grand jury; (2) filing an information against a defendant; (3) or bringing a defendant to trial." Fed. R. Crim. P. 48(b). The standard for dismissal under Rule 48(b) is more exacting than the standard under the Sixth Amendment, and permits dismissal even if there has been no constitutional violation. *See United States v. Cartano*, 420 F.2d 362, 363 (1st Cir. 1970); *Mathies v. United States*, 374 F.2d 312, 314-15 (D.C. Cir. 1967). The defendant must show that there was an unnecessary delay, and that it either prejudiced him or was improperly motivated. *Fleming v. United* States, 378 F.2d 502, 504 (1st Cir. 1967).

*United States v. Cortez*, No. CR 20-10198-FDS, 2021 WL 534866, at *7 (D. Mass. Feb. 12, 2021).

The defense disagrees with the statement that a showing beyond "unnecessary delay" is required for dismissal under Rule 48 on the facts of this case, contrary to the text of the Rule. However, to the extent that what *Fleming* stated applies in this case under Rule 48, delaying the trial in order to circumvent the Court's evidentiary ruling and gain a tactical advantage constitutes an improper motive.

defendant." *United States v. Bouthot*, 685 F. Supp. 286, 301 (D. Mass. 1988); *see also United States v. Guyon*, 43 F.3d 1456 (1st Cir. 1994) (Table), 1994 WL 718954 at *2.

    B.  <u>Application of Rule 48</u>

        Here, the Rule 48(b) standard has been met because there has been "unnecessary delay."  In the midst of a pandemic, the Court allocated a priority jury trial spot to this case, which involves an indictment that is almost two years old. But the government has now forced the defense to seek a continuance by waiting until two weeks before jury selection to seek a superseding indictment.  The government's only explanation is that it did not realize until after a trial status report was filed with the Court that it could circumvent the Court's evidentiary rulings by substituting new charges that would convert uncharged allegations to charged ones.

        Rule 48 commits to the discretion of this Court, pursuant to its inherent powers, the determination as to whether a dismissal is appropriate. On the facts at hand, the Court should exercise that discretion and dismiss the case.

        It is sometimes noted that, in dismissing a case pursuant to its inherent powers, a court should not frustrate the government's legitimate interests in pursuing a criminal prosecution. Thus, in *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000), cited in the Advisory Committee Notes quoted above, the Fourth Circuit explained that dismissal with prejudice under Rule 48(b) can be a harsh remedy if "the court allows its interest in the orderly administration of justice to override the interests of victims and the public interest in the enforcement of the criminal law." That is emphatically not the case in this instance.  Dismissing the superseding indictment would leave intact the criminal prosecution the government has intended to pursue all along – the making of alleged false statements about the employment status of McKenna.

The facts of this case are unique. In the midst of a pandemic, this Court has dedicated a limited resource – a priority trial spot -- to this case, as opposed to others waiting for a trial date. After hours of hearings, the Court has fully addressed the parties' evidentiary arguments. Everything is ready to go, but now the government seeks a tactical advantage by changing the language of the indictment. Because gaining that tactical advantage comes at the cost of unnecessary delay, dismissal of the indictment is well within this Court's discretion.

WHEREFORE, Nathan Craigue respectfully moves the Court to dismiss the superseding indictment.

Respectfully submitted,

*/s/ Behzad Mirhashem*
Behzad Mirhashem
N.H. Bar #10031

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23 2021 the above document was served electronically upon all counsel of record through the CM/ECF filing system.

*/s/ Behzad Mirhashem*
Behzad Mirhashem