UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

v.                                    Criminal No. 19-cr-142-LM
                                      Opinion No. 2021 DNH 160 P
Nathan Craigue


**O R D E R**

In this false statement case, the government brought a superseding indictment against defendant Nathan Craigue on the eve of trial, thereby requiring Craigue to seek a last-minute continuance.  See doc. no. 78.  The superseding indictment contains no new factual allegations.  It alleges no new crimes.  It is based on information previously available to the government.  The government admits that it superseded for one reason: to avoid the court's adverse pretrial evidentiary rulings.  The government offers no satisfactory reason for why it did not supersede in October 2020 (when Craigue filed his first motions in limine) or in January 2021 (when the court issued its evidentiary rulings), but instead elected to supersede after the parties filed a joint status report on March 5 confirming that the case was ready to proceed to trial on April 6.  Presently before the court is the defendant's motion to dismiss the superseding indictment pursuant to Federal Rule of Criminal Procedure 48(b)(1).  See doc. no. 82.

Trial has been scheduled for April 6 for several months.  The court spent hours hearing argument and issuing oral rulings on the parties' many evidentiary motions.  The government knows that the court did so to avoid keeping a jury

waiting while the court waded through evidentiary issues midtrial, as well as to address as many issues as possible pretrial to keep the case on track for an April trial. The government knows the challenges that come with scheduling and convening jury trials during this pandemic. The government knows that the judges of this court awarded this case "priority" status for the April 6 jury selection period over other trial-ready cases.

The government's gamesmanship renders it impossible to conduct trial in this case—or any other case—during the April 6 jury selection period. Had the court known of the government's intent to obtain a superseding indictment in advance, the court would have substituted a different trial-worthy case for this priority spot. There is no longer sufficient time to do so.

For the reasons explained below, however, Rule 48(b) does not permit the court to dismiss the superseding indictment and proceed to trial on the original indictment. The court is therefore compelled to deny Craigue's motion.

## BACKGROUND

I.     <u>Factual Background</u>[1]

As of August 2018, Craigue was the owner and operator of Craigue & Sons Home Exteriors. In the summer of 2018, the company was hired to perform work on

---

[1]To the extent the following facts are not alleged in the original or superseding indictment, they are drawn from the court's prior orders (doc. nos. 23 & 27) denying Craigue's motions to dismiss (doc. nos. 15 & 19). They are recited only to provide context.

a property located in Concord, New Hampshire.  Craigue tasked two individuals,

Kenneth McKenna and Nicholas Ford, with the project.  On August 28, 2018,

McKenna had an accident at the job site.  He later died from his injuries.  The day

of the accident, an officer from the Occupational Safety and Health Administration

("OSHA") visited the job site and questioned Craigue.  In response to the officer's

questioning, Craigue stated that McKenna and Ford were subcontractors and not

employees of Craigue or his business.  In October 2018, an OSHA officer

interviewed Craigue again.  When the officer asked Craigue whether McKenna and

another of Craigue's workers, Christopher Erickson, were employees of his

company, Craigue stated, "I've always treated them – they would come and go as

they please, so I would always treat them as not employees."  Doc. no. 1 at 2

(original indictment); accord doc. no. 79 at 2 (superseding indictment).


II.    Procedural Background

       In July 2019, the government obtained its original indictment charging

Craigue with two counts of making a false statement to a federal agent in violation

of 18 U.S.C. § 1001(a)(2).  Count One of the original indictment alleges that, on

August 28, 2018, Craigue violated § 1001(a)(2) "by stating to an OSHA . . . Officer

that [McKenna] . . . was a subcontractor and was not an employee of [Craigue] or

his business."  Doc. no. 1 at 1.  Count One does not allege that Craigue violated

§ 1001(a)(2) by making a false statement as to Ford's employment status, however.

Count Two alleges that, on October 24, 2018, Craigue violated the statute "by

3

stating to an OSHA . . . Officer that [McKenna] . . . was not an employee of [Craigue] or his business." Id. at 2.  Like Count One, Count Two—despite specifically identifying the statement regarding both McKenna and Erickson as the statement alleged to give rise to liability under § 1001(a)(2)—does not allege that Craigue made a false statement as to Erickson's employment status.

The court's ability to bring Craigue to trial on the original indictment, and to conduct criminal trials more generally, has been sharply curtailed by the COVID-19 pandemic.  Indeed, following Governor Sununu's March 2020 declaration of a state of emergency in New Hampshire, the court held no trials for several months.  In July 2020, the court issued a standing order outlining protocols for resuming criminal trials.  See Standing Order 20-25 (July 24, 2020).[2]  Those protocols continue to apply at the time of this order's issuance.  They permit one criminal trial per jury selection period for the entire court, and do not permit any trials to proceed simultaneously.  See id.  The protocols also require the court and litigants to work together each month to identify cases that are prepared to proceed to trial, which the court then uses to create a prioritized list of trial-ready cases for the following month.  See id.  Assuming the case is ready for trial, a case's priority is determined, generally, based on the case's age and whether the defendant is

---

[2] The court's current standing orders addressing the COVID-19 pandemic are available at: https://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19.

incarcerated.  The priority list is communicated to the entire criminal bar approximately six weeks before the beginning of each trial period.[3]

Although trial in this case had at one point been scheduled for May 2020, it was continued twice over the summer pursuant to the court's standing orders postponing all criminal trials due to COVID-19.  See doc. nos. 25 (standing order), 26 (standing order), 28 (motion to continue) & 29 (order granting continuance). Following promulgation of the court's protocols for resuming in-person criminal trials, however, the court placed this case on its list of trial-ready cases for November 2020.  See doc. no. 33.  On October 14, the parties filed a joint status report stating that they were prepared to proceed to trial in November.  See doc. no. 34.  In consultation with the parties, and based on the age of this case relative to other November 2020 trial-ready cases and the number of prior continuances granted, the court gave this case priority status for its November 6 trial period.

The parties, and the court, began ramping up for trial.  At a status conference on October 19, the court instructed the parties to address as many evidentiary issues as possible in advance of trial.  The court's goal—which was communicated to counsel—was to decrease the amount of time jurors spent in the courthouse and thereby limit their chance of exposure to the virus.  The court also wanted to resolve as many issues as possible in advance of trial to ensure that the case could, in fact,

---

[3] Generally, the court assigns (on a monthly basis) one case as first priority and a backup case as second priority in the same two-week jury selection period.  In April, the court selected three separate cases for trial and planned three separate, sequential jury selections for those cases. The Craigue case was awarded the April 6th selection.

be tried in November.  In response to the court's instructions, the parties filed a flurry of pretrial motions, requests for jury instructions, and requests for voir dire. However, Craigue was forced to seek a continuance of the November trial date on October 30 when a member of his household tested positive for COVID-19, necessitating that Craigue quarantine until late November.  See doc. no. 50; Endorsed Order of Oct. 30, 2020.  Trial was thereafter rescheduled for December and placed on that month's priority list.

Unfortunately, a spike in COVID-19 infections in New Hampshire compelled the court to continue the December trial.  See Minute Entry for Status Conference of Nov. 18, 2020.  Trial was rescheduled for January 2021.  See id.  Continuing unsafe levels of COVID-19 required the court to continue trial once more, this time until April 2021, in the hopes that trial could be conducted safely by that point.  See Minute Entry for Status Conference of Dec. 10, 2020.  Due to the ongoing surge of COVID-19 cases in New Hampshire, counsel for both parties agreed at a December 2020 status conference that a trial date in April (rather than March) offered the best chance of a date certain for trial.

Since October 2020, the parties and the court have engaged in substantial pretrial litigation regarding numerous evidentiary issues.  On October 21, 2020, Craigue filed a motion in limine seeking to exclude, inter alia, evidence bearing on Ford and Erickson's employment status at Craigue's company.  See doc. no. 36.  He argued that, because he had only been charged with making false statements as to

McKenna's employment status, evidence bearing on Ford and Erickson's status was irrelevant and posed an unfair risk of confusing the issues before the jury.

On December 4, 2020, the government provided defense counsel with a Rule 404(b) notice stating its intent to seek the admission of various evidence purported to relate to Erickson's employment status, such as Craigue's alleged failure to pay taxes on Erickson's wages.  See doc. no. 61; see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (setting forth a nonexhaustive twelve-factor test to determine whether a worker is an employee or contractor when the word "employee" has legal significance but is not specifically defined).  The notice also stated the government's intent to admit evidence that Craigue effectively bribed Erickson not to file a workers' compensation claim after Erickson suffered a severe injury at the same jobsite as McKenna shortly before the latter's fatal accident.  Craigue subsequently filed a motion in limine seeking exclusion of evidence contained in the government's notice on Rule 404(b) and Rule 403 grounds.  See doc. no. 65.

On January 20, 2021, the court held a lengthy hearing on Craigue's motions.[4]  In summary, the court concluded that evidence regarding Ford and Erickson's employment posed an unfair risk of confusing the issues before the jury.  See, e.g., doc. no. 74 at 22-25.  Because the original indictment (which, at that point, was the only indictment) did not charge Craigue with violating 18 U.S.C. § 1001(a)(2) by

---

[4] The court had held another lengthy hearing the prior week addressing the parties' proposed jury instructions and several other motions in limine.  See doc. no. 68.

7

falsely claiming that Erickson or Ford were contractors rather than employees, the court concluded that evidence as to Erickson and Ford's employment posed a substantial risk of confusing the issues before the jury and of distracting them with tertiary issues.  This is particularly true where the jury must weigh multiple Darden factors in deciding whether Craigue's statements about McKenna's employment status were false.  Because of the complexity of that determination, the court wanted the jury to train its focus on the only charged false statements.  To add two other workers into that mix—neither of whom was material to the charged false statement—would likely cause confusion for a jury trying to weigh the Darden factors as to McKenna.  In addition, the court found that evidence of Erickson's injury and Craigue's attendant conduct would inflame the jury's passions, rendering its probative value substantially outweighed by the risk of unfair prejudice.  See id at 28-29.  Thus, the court granted Craigue's motions to exclude evidence relating to Ford and Erickson.  See doc. no. 70 (summarizing rulings from January 20 hearing).

On February 6, 2021, and in accordance with the parties' agreement at the previous status conference in December, the court entered a trial notice on the docket informing the parties that jury selection and trial would begin on April 6, 2021.  This case was given priority over other criminal cases for that trial period because of the case's age and the large number of prior continuances.  The parties subsequently submitted a joint status report on March 5 confirming that the case was ready to proceed to trial as scheduled.  See doc. no. 77.  The government was aware of this case's priority status in advance of filing the March 5 status report.

8

The court then set a Final Pretrial Conference for March 22 and scheduled an in-person hearing for April 1 on joint motions to strike jurors for cause.

However, on March 12—six months after the parties began litigating the admissibility of the Erickson and Ford evidence—the government informed defense counsel that it intended to seek a superseding indictment alleging that Craigue's statements were also false as to Ford and Erickson's employment status. See doc. no. 78 at 1. The government thereafter obtained its superseding indictment on March 22. See doc. no. 79.

The superseding indictment alleges no new crimes. It is based on information that was in the government's possession at the time it obtained the original indictment in July 2019. Count One of the superseding indictment alleges that Craigue's statement on August 2018 is unlawful because it is false as to both McKenna and Ford's employment status. See id. And Count Two alleges that Craigue's statement at the OSHA interview on October 24, 2018—that "I've always treated them – they would come and go as they please, so I would always treat them as not employees"—is unlawful because it is false as to both McKenna and Erickson's employment status.

At the March 22 hearing, the government conceded that it obtained the superseding indictment to avoid the court's evidentiary rulings regarding Ford and Erickson. The government stated that it never anticipated the court would grant Craigue's motions to exclude that evidence, and that it had not considered the possibility of obtaining a superseding indictment until one week after it confirmed

for the court in its March 5 status report that the case was prepared to proceed to trial on April 6.  The government also acknowledged that nothing prevented it from bringing the charges alleged in the superseding indictment in the original indictment.

Craigue then filed a motion to dismiss the superseding indictment pursuant to Federal Rule of Criminal Procedure 48(b).  See doc. no. 82.  The government has objected, and the motion is ripe for resolution.


## DISCUSSION

Under Rule 48(b)(1), "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . presenting a charge to the grand jury." Fed. R. Crim. P. 48(b)(1).  "This rule is a 'restatement of the inherent power of the court to dismiss a case for want of prosecution.'"  United States v. Kelly, 661 F.3d 682, 689-90 (1st Cir. 2011) (quoting United States v. Correia, 531 F.2d 1095, 1099 (1st Cir. 1976)); accord Fed. R. Crim. P. 48 (advisory committee note); see also United States v. Guyon, 43 F.3d 1456, 1994 WL 718954, at *2 (1st Cir. 1994) (unpublished table opinion).  As such, Rule 48(b) "operates independently" from the requirements of the Speedy Trial Act, and permits dismissal even where there has been no violation of that Act.  United States v. Kifwa, Crim. No. 2:19-CR-194-DBH-01, 2020 WL 5913987, at *8 n.14 (D. Me. Oct. 6, 2020) (quotation omitted); see also Kelly, 661 F.3d at 690.  Furthermore, "[t]he standard for dismissal under Rule 48(b) is more exacting than the standard under the Sixth Amendment" for constitutional

10

speedy trial claims.  United States v. Cortez, Crim. A. No. 20-10198-FDS, 2021 WL 534866, at *7 (D. Mass. Feb. 12, 2021) (citing, inter alia, United States v. Cartano, 420 F.2d 362, 363 (1st Cir. 1970)); see also Kelly, 661 F.3d at 690.  "Rule 48(b) dismissal for unnecessary delay is . . . solely within the court's discretion."  United States v. Machado, Crim. A. No. 04-10232-RWZ, 2005 WL 2886213, at *6 (D. Mass. Nov. 3, 2005); accord United States v. Mitchell, 723 F.2d 1040, 1050 (1st Cir. 1983), abrogated on other grounds by Henderson v. United States, 476 U.S. 321 (1986).

     To obtain a dismissal under Rule 48(b), "[t]he defendant must show that there was an unnecessary delay, and that it either prejudiced him or was improperly motivated."  Cortez, 2021 WL 534866, at *7 (citing Fleming v. United States, 378 F.2d 502, 504 (1st Cir. 1967)); see also United States v. Johnson, 579 F.2d 122, 125 (1st Cir. 1978) (same); Guyon, 1994 WL 718954, at *2 (noting that a court faced with a Rule 48(b) motion "may" consider the factors applicable to Sixth Amendment speedy trial claims).  Craigue does not argue that he has been prejudiced by the government's delay in bringing the superseding indictment.  He does argue, however, that the government delayed obtaining the superseding indictment "in order to circumvent the Court's evidentiary ruling and gain a tactical advantage" and that this "constitutes an improper motive."  Doc. no. 82 at 8 n.1.

     While it is clear an intent to evade this court's evidentiary rulings motivated the government to obtain the superseding indictment, the First Circuit has not previously considered whether such a motivation may justify dismissing a superseding indictment under Rule 48(b).  However, the Tenth Circuit addressed

this precise question in United States v. Begay, 602 F.3d 1150 (10th Cir. 2010).

There, a grand jury indicted the defendant on one count of aggravated sexual abuse

of a child.  See Begay, 602 F.3d at 1151.  The government thereafter filed a motion

in limine to admit evidence of the defendant's additional, uncharged sexual assaults

against the alleged victim and her minor sister.  See id.; Fed. R. Ev. 414.  The court

denied the government's motion.  See Begay, 602 F.3d at 1152.  After the Tenth

Circuit affirmed the district court's evidentiary ruling on interlocutory appeal, the

government obtained a seven-count superseding indictment which converted many

of the uncharged sexual assault allegations into charged crimes.  See id.

The defendant moved to dismiss the superseding indictment pursuant to

Rule 48(b)(1).  The district court granted the defendant's motion, concluding that

the government failed to offer a "valid" explanation for the delayed new charges.  Id.

at 1153.  Specifically, the district court found that, although the government was

aware of the evidence underlying the superseding charges at the time it obtained

the original indictment, "the government delayed superseding the indictment . . . to

preserve for itself a weapon to use against Begay in the event its motion to

introduce evidence of alleged prior instances of sexual abuse . . . fell short."  Id. at

1153-54 (quotation omitted).  In the absence of a proper motivation for the delay,

the district court granted the defendant's motion to dismiss the superseding

indictment pursuant to Rule 48(b)(1) and ordered the parties to proceed to trial on

the original.  See id.

12

The Tenth Circuit concluded that the district court abused its discretion in so doing.  See id. at 1155.  The court explained that, according to the Advisory Committee Notes accompanying Rule 48(b), the rule "was intended as a restatement of the inherent power of the court to dismiss a case for want of prosecution."  Id. at 1154 (quotation omitted).  Thus, the Tenth Circuit explained, the rule is not "an all-encompassing grant to district courts of supervisory authority over the prosecution of criminal cases, but rather [is] a recognition of a district court's power to dismiss a case that the government has failed to prosecute in a timely manner."  Id.  To construe the rule otherwise would be inconsistent "with the well established rule that, absent prejudice to the defendant, a superseding indictment may be filed at any time before trial."  Id.

The Tenth Circuit held that the district court's factual findings—i.e., that the government knew of the evidence underlying each count of the superseding indictment at the time it obtained the original indictment—could not support a conclusion that the government had failed to prosecute in a timely fashion.  See id. at 1154-55.  The Tenth Circuit also rejected the district court's "conclusion that it was improper for the government to respond in a tactical manner" by converting the uncharged allegations into charged crimes "after its unsuccessful interlocutory challenge to the district court's denial of its motion in limine."  Id. at 1155.  Indeed, the Tenth Circuit found that "the case law clearly supports a contrary conclusion," noting that "the Supreme Court has repeatedly emphasized that courts are not 'permitted to abort criminal prosecutions simply because they disagree with a

prosecutor's judgment as to when to seek an indictment,' or 'to impose on law enforcement officials their personal and private notions of fairness.'" Id. (brackets and ellipses omitted) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)). And, while "prosecutorial vindictiveness" constitutes an improper reason to seek a superseding indictment, the defendant did not argue that the government acted vindictively in obtaining the superseding indictment. See id. at 1155-56.

This court finds Begay persuasive. The First Circuit recognizes—as did the Tenth Circuit in Begay—that Rule 48(b) restates the district court's inherent power to dismiss for want of prosecution. See Kelly, 661 F.3d at 689-90; Guyon, 1994 WL 718954, at *2; Correia, 531 F.2d at 1099.[5] The government's tactics in obtaining a superseding indictment to avoid this court's evidentiary rulings and throw a carefully planned jury trial off track during a pandemic—while troubling—cannot be equated with a failure to prosecute the case. See Begay, 602 F.3d at 1154-55; United States v. Trahan, 333 Fed. Appx. 818, 820 (5th Cir. 2009); see also, e.g., Machado, 2005 WL 2886213, at *1, *6 (finding dismissal warranted under Rule 48(b) where, after defendant cooperated with the government in related cases and the parties finalized a plea agreement, the government failed to pursue a change-of-

---

[5] In Correia, the First Circuit also noted that the Advisory Committee on Criminal Rules had at one time proposed an amendment to Rule 48(b) that "would have recognized 'a power in the court to dismiss a prosecution when to do so would serve the ends of justice and the effective administration of the court's business.'" Correia, 531 F.2d at 1099 n.6 (quoting 48 F.R.D. 547, 640 (1970)). This amendment "would have . . . authorized the courts to dismiss criminal cases for a broad range of policy reasons." Id. However, the Committee ultimately did not submit the proposed amendment to Congress and it was never incorporated into the Federal Rules of Criminal Procedure. See id.

plea and sentencing hearing "for nearly four years" and "apparently forgot that a sealed information against defendant was pending").

Moreover, like the Tenth Circuit, the First Circuit recognizes the government's wide discretion in structuring its charging decisions.  See, e.g., United States v. Bucci, 582 F.3d 108, 112 (1st Cir. 2009) (noting "the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime"); United States v. Stokes, 124 F.3d 39, 46 (1st Cir. 1997) (concluding that, where prosecutorial vindictiveness had not been shown, trial court's "disagreement with the government's decision to prosecute" constituted an "inappropriate" basis to dismiss indictment); United States v. Santana, 6 F.3d 1, 11 (1st Cir. 1993) (explaining that "federal courts [must] refrain from using [their] supervisory power to conform executive conduct to judicially preferred norms by dismissing charges, absent cognizable prejudice").  "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."  Bucci, 582 F.3d at 112 (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)); see also United States v. Hasan, 747 F. Supp. 2d 642, 687-88 (E.D. Va. 2010) (rejecting argument that Rule 48(b) precluded the government from "alleg[ing] new charges in a Superseding Indictment based on the same set of facts . . . that were included in the original [i]ndictment" because "dismissal pursuant to Rule 48(b) is not warranted by a court's disagreement with the Government's charging decisions, even ones

15

calculated to have tactical effect").  Here, the government's tactics are, unfortunately, within the limits of its broad discretion, and they cannot provide a basis for dismissal under Rule 48(b) in the absence of prejudice or vindictiveness. See Begay, 602 F.3d at 1154-56; Hasan, 747 F. Supp. 2d at 688.

## CONCLUSION

The government's actions are an affront both to the concept of judicial economy and the efforts of this court to safely conduct jury trials during a once-in-a-lifetime pandemic.  Rule 48(b) does not, however, permit dismissal of the superseding indictment for engaging in such tactics.  Craigue's motion to dismiss (doc. no. 82) is denied.

Although the superseding indictment alleges no new charges, the nature of the newly alleged false statements has altered the evidentiary landscape in a way that may require Craigue to prepare for and litigate a significantly different trial. The assented-to motion to continue the trial (doc. no. 78) is therefore granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 28, 2021
cc:      Counsel of Record.
         U.S. Probation
         U.S. Marshal