UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

v.                                                            Criminal No. 19-cr-142-LM

Nathan Craigue

O R D E R

The Sixth Amendment guarantees criminal defendants the right to a public trial.  Presley v. Georgia, 558 U.S. 209, 212 (2010).  The First Amendment likewise affords the public and the press a right of access to criminal trials.  Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982).  These rights are abridged when the courtroom is closed to the public.

The defendant's trial is taking place during the public health emergency caused by the COVID-19 outbreak.  To address public safety concerns caused by the pandemic, the court has limited public attendance so that all those who must attend the proceeding—including the defendant, the jury, the jury pool, counsel, and court personnel—may safely practice social distancing to the extent possible.  See Standing Order 20-27 (July 24, 2020).[1]  Specifically, during the jury trial, the court will permit the defendant to reserve up to four "pods" of seats for friends or family in the gallery of the courtroom.  Three of these four pods will consist of two seats; the fourth pod will be a single seat.  The government has indicated a need for only

---

[1] The court's current standing orders regarding the COVID-19 pandemic are available at: https://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19.

two seats in the courtroom; thus the court will permit the government to reserve up to two seats in the gallery of the courtroom during the jury trial.  There will be two seats reserved in the gallery for the general public, and those two seats will be available on a first-come-first-serve basis.  Any seats allocated to the defendant or the government that are not reserved the day before by providing names to the deputy clerk will be made available to the general public on a first-come-first-serve basis.  Finally, the court will permit up to fifteen additional members of the public who wish to access the defendant's trial to do so via an overflow courtroom where the proceedings will be shown on a large screen.  For jury selection, there are two public seats available in the main courtroom, which will be made available to the general public on a first-come-first serve basis, and fifteen additional seats available in an overflow courtroom where the proceedings will be shown on a large screen.

Before making this public access determination, I carefully considered the defendant's public trial right and the public's right of access.  This order details my findings.

For constitutional purposes, a courtroom closure may be either total or partial.  See Bucci v. United States, 662 F.3d 18, 23 (1st Cir. 2011); see also Presley, 558 U.S. at 213 (explaining that Sixth Amendment guarantees at least as much public access as does First Amendment).  Total closures involve "situations where all members of the public [are] excluded during some phase of the trial."  Bucci, 662 F.3d at 23.  By contrast, a courtroom closure is only partial "where courtroom access is restricted but some members of the public are permitted to attend."  Id.  A

"compelling" interest is required to justify a total closure, whereas a partial closure may be justified a "substantial" interest. Id. at 23 & n.3 (citing cases from the Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits). "[A] less stringent standard [is] justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does." Woods v. Kuhlman, 977 F.2d 74, 76 (2d Cir. 1992).

Here, the limitations placed on in-person access to the defendant's trial and jury selection constitute partial closures because, although courtroom access has been restricted, some members of the public will still be permitted to physically attend. See Bucci, 662 F.3d at 23. In addition, the goals of public access will still be achieved: neither jury selection nor the trial is being held in secret, and the public (including the defendant's family and supporters) will have the opportunity to observe both proceedings. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 593-97 (1980) (Brennan, J., concurring) (discussing the functions of public access to court proceedings, including ensuring that procedural rights are respected and that justice is afforded equally, maintaining public confidence in the administration of justice, promoting accurate fact-finding, and enabling the public to act as a check on judicial power); see also Bucci, 662 F.3d 18 (discussing benefits of openness in criminal proceedings).

A four-part standard governs whether a partial closure is justified:

(1) There must be a substantial interest that is likely to be prejudiced;

(2) The closure must be no broader than necessary to protect that interest;

(3) The trial court must consider reasonable alternatives to closing the proceeding; and

(4) The court must make findings adequate to support the closure.

Bucci, 662 F.3d at 22-23 (citing Waller v. Georgia, 467 U.S. 39, 48 (1984)).  The court's findings in support of this partial closure are as follows.

First, the court finds that preventing the spread of COVID-19 is a substantial interest that would likely be prejudiced without this partial closure.  Since the first announced case in New Hampshire on March 2, 2020, the state has reported 98,791 confirmed cases of COVID-19.[2]  So far, 1,353 deaths have been attributed to the disease in this state.  In addition, over 2,340,736 COVID-19 tests have been reported (both positive and negative), the State has 425 currently active cases, and community-based transmission has been confirmed.[3]  Nationally, the number of confirmed cases has grown to over 34,154,305 with 611,020 cases resulting in death.[4]

Given the contagious nature of the virus and the exponential growth in cases, COVID-19 presents an enormous danger to the health and safety of the public, including the litigants, security and court personnel involved in this proceeding.

---

[2] These local statistics are taken from the New Hampshire Department of Health and Human Services' website, available at https://www.nh.gov/covid19/ (last visited 8:00 a.m. June 3, 2021).

[3] New Hampshire Department of Health and Human Services, COVID-19, https://www.nh.gov/covid19/  (last visited 8:00 a.m. June 3, 2021); Real Clear Politics, https://www.realclearpolitics.com/  (last visited 8:00 a.m. June 3, 2021).

[4] Real Clear Politics, https://www.realclearpolitics.com/  (last visited 8:00 a.m. June 3, 2021).

The court's interest in preventing the spread of COVID-19 and preserving the health of all hearing participants, including the public, is a substantial interest that would likely be prejudiced if the court did not impose this partial closure. See United States v. Smith, 426 F.3d 567, 572-73 (2d Cir. 2005) (finding that U.S. Marshal's policy after September 11th of requiring unknown visitors to court to produce photo identification constituted partial closure of courtroom that was justified by substantial interest of promoting security and preventing terrorism).

Second, the court finds that the restrictions placed on in-person attendance at the defendant's trial and jury selection are no broader than necessary to protect public health and safety. See United States v. Alimehti, 284 F. Supp. 3d 477, 490 (S.D.N.Y. 2018) (granting partial closure of courtroom to protect identity of undercover agents where courtroom was closed to public during agents' testimony but audio of testimony was live-streamed into different courtroom and transcripts of testimony were made promptly available to public). Restricting the number of persons who may attend these proceedings allows those who do attend to safely practice social distancing in accordance with public health guidelines. At the same time, allowing members of the public beyond those who may safely attend in-person to view the proceedings via an overflow courtroom permits additional persons to observe the proceedings from within the courthouse. Such public observation serves the policy concerns underlying the First and Sixth Amendment public trial rights without substantially endangering the health of those observers or increasing the

danger to the health of in-person attendees. See Richmond Newspapers, 448 U.S. at 593-97.

Third, the court has considered alternatives to this partial closure. It has considered, for example, imposing no limits on public access to the proceedings, but concludes that this alternative is not reasonable because it would not allow for sufficient social distancing measures. The court has also considered permitting the public to observe the proceedings solely through videoconferencing technology. And it has considered allowing the public to observe solely through in-person attendance without providing an alternative means of observation once the courtroom reaches capacity. The court ultimately concludes, however, that numerical limits on in-person attendance alongside the use of an overflow courtroom strikes the appropriate balance. This course of action allows at least some members of the public—including the defendant's friends and family—to physically attend the proceedings while also allowing additional persons to observe the proceedings from within the courthouse where they are occurring.

In conclusion, the court finds that a partial closure of court proceedings is necessary in that, once the courtroom reaches capacity, public access to the defendant's jury selection and trial will be afforded via an overflow courtroom. This partial closure is justified by the substantial interest in protecting public health and safety from the spread of COVID-19 and is no broader than necessary to protect that interest.

## CONCLUSION

Defendant may reserve up to four "pods" of seats for friends or family to attend the jury trial in-person. Three of the four pods shall consist of two seats, and the fourth pod shall consist of one seat. Defendant shall provide the identity of these in-person attendees to the undersigned judge's case manager before each day of trial.

The government may designate up to two people who will attend the jury trial in-person. The government shall provide the identity of these in-person attendees to the undersigned judge's case manager before each day of trial.

The court shall reserve two seats for the general public (including media) to attend defendant's trial in person. These seats shall be awarded on a first-come-first-serve basis. Any seats allocated to the defendant or the government that are not reserved the day before by providing names to the deputy clerk will be made available to the general public on a first-come-first-serve basis.

For jury selection, there are two public seats available in the main courtroom, which will be made available to the general public on a first-come-first-serve basis.

To the extent additional persons wish to observe defendant's trial or jury selection, the court will permit fifteen additional persons to observe the proceedings via an overflow courtroom where the proceedings will be shown on a large screen. These seats shall be awarded on a first-come-first-serve basis.

Once the overflow courtroom reaches capacity, no member of the public or media will be allowed to enter the courthouse to observe the proceedings.

Attendees must familiarize themselves with and abide by the court's COVID-19 protocols.  See Standing Orders 20-25 (July 24, 2020), 20-27 (July 24, 2020), 21-13 (Apr. 8, 2021), 21-18 (May 26, 2021).[5]

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 3, 2021

cc: Counsel of Record.

---

[5] Once again, the court's standing orders regarding COVID-19 are available at: https://www.nhd.uscourts.gov/court-response-coronavirus-disease-covid-19.