*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO OCTOBER 4, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
UNITED STATES OF AMERICA          *
                                  *  1:19-cr-142-01-LM
          v.                      *  June 10, 2021
                                  *  9:17 p.m.
NATHAN CRAIGUE                    *
                                  *
* * * * * * * * * * * * * * * * * *
```

**REDACTED** TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE LANDYA B. McCAFFERTY


Appearances:


For the Government:          John S. Davis, AUSA
                             Aaron G. Gingrande, AUSA
                             United States Attorney's Office



For the Defendant:           Dorothy E. Graham, Esq.
                             Behzad Mirhashem, Esq.
                             Federal Defender's Office



Court Reporter:              Liza W. Dubois, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             55 Pleasant Street
                             Concord, New Hampshire 03301
                             (603)225-1442

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  Hi, Judge.  Good evening.  Can you hear
 3    me?
 4              THE COURT:  Yes, I can.  Can you hear me?
 5              THE CLERK:  Okay.  Yes.  Let me announce the case.
 6    And Tracy's here, but she is on the telephone, and then we have
 7    counsel.
 8              So, for the record, this is a hearing in the United
 9    States vs. Nathan Craigue.  It's 19-cr-142-01-LM.
10              And I'm not sure if it's under seal or not, the
11    hearing, but --
12              THE COURT:  No, I don't think so.
13              THE CLERK:  All right.
14              THE COURT:  All right.  So I've gotten copied on
15    what appears to be a -- the government is intending to move to
16    strike ██████████ testimony.  And I want to know the legal
17    authority for that and then I just want to know what's the
18    defendant's position with respect to that motion.
19              First let me know what's your position, attorney
20    Behzad -- Attorney Mirhashem and Attorney Graham.
21              MR. MIRHASHEM:  Your Honor, I -- our request is --
22    and I -- I appreciate the Court has been very patient with us,
23    but I'm going to be very honest with you.
24              I got up at 3:30 this morning to start working on
25    this case.  It's 9:20 right now.  So many things have happened
```

1    today.  We need to slow this down to make sure we do it right.

2           Attorney Davis five minutes ago told me that

3    Mr. Carroll has admitted paying ███████ to testify before a

4    federal grand jury.  My --

5           THE COURT:  Right.  I'm going to stop you just for a

6    minute because this hearing is not going to be a long hearing.

7    And I can tell you this; I am not inclined to grant a motion to

8    strike.  I want to hear the legal authority for the motion to

9    strike, but I am not inclined to grant that motion.

10           So what I would say is that -- and I -- I want to

11    hear your position on the motion, but ultimately I'm not

12    inclined to grant that at this point.

13           So my thinking is get ready for cross-examination of

14    ███████ tomorrow.  We'll start with Officer Kelly and then

15    we'll move right into ███████.

16           I want to hear -- and obviously I'll research the

17    legal authority for the motion to strike the testimony, but

18    I -- this -- this is unusual.  This is your own witness.  You

19    put this witness on in your case in chief.  This witness's

20    testimony has been very strong for the government, at least

21    during direct, so, therefore, very prejudicial to -- to the

22    defendant.

23           And so give me the authority, Attorney Davis, for

24    the motion to strike.

25           MR. DAVIS:  Judge, it's the judge's discretionary

1    authority to remedy discovery violations, which is in Rule

2    16(d)(2).  And while I -- we have drafted the motion.  I sent

3    it to Behzad.  We still don't know his position.  We've all

4    been -- so, anyway, I could send you the motion.

5              We cite a case, *Sepulveda*, which is an old

6    New Hampshire case, 15 F.3d 1161.  That's actually a motion for

7    a mistrial, and the Court there struck the testimony of an

8    expert witness and issued a curative instruction, which is what

9    we're seeking here.

10             It is an unusual motion and an unusual situation,

11   Judge.

12             THE COURT:  Okay.

13             MR. DAVIS:  We do -- we do have -- we do agree that

14   there was a payment made by the Concord Police Department to

15   ███████ in part at least to pay him for his grand jury

16   testimony.

17             THE COURT:  What -- I am -- and here's the other

18   thing I want to do before we get off.

19             If your authority is 16(d) -- and I'm looking at 16

20   right now -- failure to comply:  If a party fails to comply

21   with this rule, the Court may:  (A) order that party to permit

22   the discovery or inspection, specify its time, place, and

23   manner, and prescribe other just terms and conditions; (B)

24   grant a continuance; (C) prohibit that party from introducing

25   the undisclosed evidence; or (D) enter any other order that is

1    just under the circumstances.

2              And so are you relying on (D)?

3              MR. DAVIS:  Yes.

4              THE COURT:  Okay.  And in my mind, striking this

5    gentlemen's direct testimony and not allowing Attorney

6    Mirhashem to cross-examine him and expose what occurred in this

7    case would be harm, substantial harm, to his case.

8              And so I analyze it similarly to a Fifth Amendment

9    issue.  If he had simply pled the Fifth and he didn't get

10   immunity, where would -- we'd be in the same spot.  And,

11   ultimately, I am worried -- I would be worried in that

12   situation a curative instruction is not going to -- is not

13   going to cure it.

14             And in light of the facts and the seriousness of

15   this, that the Concord PD, and that -- and that you did not

16   find out about it until the middle of the trial, I -- I do not

17   think there's anything just about striking this witness's

18   testimony under these circumstances.

19             So that's my -- that's my immediate reaction to a

20   motion to strike.  A lot of things happen during a trial and

21   this one has been unusual in that way, but we're going to

22   continue with the trial.  And tomorrow Officer Kelly is on the

23   stand and he's going to be cross-examined by Attorney Mirhashem

24   for about an hour, a redirect, and then we'll put on ███████

25   for what should be a lengthy cross-examination.

1          And with respect to the issue of the motion to

2     dismiss for prosecutorial misconduct, I would like to hear

3     right now -- because I know that you told it to me in passing

4     today, but I'm not sure I got the full details and I'm not sure

5     I remember them.

6          Tell me how it was that the government learned today

7     about the -- the ██ information.  I -- I know that it started

8     when Attorney Mirhashem brought up the drug use.

9          Can you back up and explain to me the sequence of

10    events so that I can make a record of that and I can understand

11    what -- in terms of the government's lack of due diligence here

12    to cause this situation, I need to understand what has

13    happened.

14         Because a motion to strike, ultimately, I am not

15    going to grant that.  I can tell you that right now.  There's

16    just -- you're not giving me enough legal authority for it.  It

17    does not -- it is not just to do that and I'm not going to

18    grant it.  We're going to continue with the trial.

19         I am, however -- I would like to contemplate the

20    issue of a dismissal for prosecutorial misconduct, and I'd like

21    to hear the detailed evidence with regard to the lack of due

22    diligence on the part of the government with Concord Police

23    Department, which is in the same town, and we have a probation

24    officer in the courthouse who worked there who was involved in

25    this case.

1          I -- I know that -- and I understand that this is

2   not a situation where Attorney Davis or Attorney Gingrande knew

3   this information and didn't disclose it.  That's clear.  But in

4   terms of just basic due diligence, I need to know what

5   happened.  How was it discovered?

6          And if you could just put that on the record for me,

7   a combination perhaps of Attorney Davis, Attorney Mirhashem, so

8   that I can understand exactly what transpired before I -- we

9   come to court tomorrow.

10          MR. DAVIS:  Judge, Attorney Mirhashem sent us an

11   email late yesterday.  I'm not sure what time.  I had the

12   email.  I'd have to find it.  But what he said in it was he was

13   requesting that we inquire of William Carroll and the Concord

14   Police Department regarding their -- I think he said contacts

15   or relationship with ███████ and if we didn't do that that he

16   was going to file a motion and to let us know what we were

17   doing.  And so I emailed him and said we're inquiring.

18          We then spoke by phone.  We reached William Carroll

19   and we asked him about his relationship with ████████.  And

20   William Carroll told us that ████████ had been ████████████████

21   ████████ and that there was a ████████.

22          And we then subpoenaed -- I actually drew up the

23   subpoena last night.  We subpoenaed Concord Police and the

24   subpoena was served at something like I don't know what time

25   this morning and we gave Concord Police as much heads up as we

1  could that it was coming.  Of course, Mr. Carroll doesn't work

2  there anymore.

3           And this morning they found ███████ and I think ran

4  it through legal and sent us over ███████, which we got it and

5  I think I reported to you we had it.

6           We then looked at ███████ and decided -- and we

7  could see that he was ██████████ and knew that we were

8  going to disclose it and we disclosed it to defense counsel

9  with an oral agreement to a protective order.  And that's what

10 happened.

11          And what ███████ indicated is that there was -- you

12 know, we can make a record of this, but ████████ -- ████████ is

13 two -- two documents of particular note.  One is a memo by

14 William Carroll that documents it -- a meeting on May 16th of

15 2019, which is the day after ███████ testified in grand jury.

16 And on that day, there is documented a payment made to ███████

17 for $80 and that payment record references the case number of

18 William Brouillet in responding to the scene in this case and

19 it says, for information that led to indictment, which is --

20 apparently was in error, because I guess William Carroll may

21 have thought the case had been indicted.  It had not been

22 indicted.  It was not indicted until July.

23          But Mr. Carroll admits that he made the payment ███████

24 ██████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████



And so the ███████████████████████████, although that's not reflected in ████████, sometime in 2020 and Mr. Carroll then came to the probation office in September of 2020.

THE COURT:  Okay.  All right.  Is there anything to add to that record, Attorney Mirhashem?

MR. MIRHASHEM:  Yes.  The record will show in this case in September of 2019, days after the accident, Sean Roberts of --

THE COURT:  You mean 2018?

MR. MIRHASHEM:  2018.

THE COURT:  Okay.

MR. MIRHASHEM:  Agent Roberts documented the fact that because OSHA and the Department of Labor were having difficulty bringing in ████████ for another interview, they reached out to William Carroll, who had a previous relationship

1    with ▆▆▆▆▆, to help establish rapport with him.  This occurs

2    in the discovery that the government provided to the defense.

3                Now, the government knew that ▆▆▆▆ -- I mean, I

4    can tell you, going into this trial, the one witness that the

5    defense was really concerned about was ▆▆▆.  Because Erickson,

6    we had -- he's got a felony conviction; he's got, you know, a

7    pending DWI.  ▆▆▆ is just like this innocent kid; he just had

8    a misdemeanor that was dismissed and how are we going to

9    cross-examine him.

10               And so he had this previous relationship and --

11               THE COURT:  Okay.  Let me just stop you.

12               MR. MIRHASHEM:  Okay.

13               THE COURT:  So the fact that Roberts, who is the

14   case agent, am I right?

15               MR. MIRHASHEM:  Yes.

16               THE COURT:  Roberts is the case agent.  He's aware

17   of the fact that OSHA and Department of Labor are somehow

18   looking to talk to ▆▆▆ and they want to get -- somehow get

19   William Carroll involved.  And --

20               MR. MIRHASHEM:  Because of the previous

21   relationship.  Sorry, I interrupted you.

22               THE COURT:  All right.  That's in the discovery that

23   the government gave to you?

24               MR. MIRHASHEM:  In more than one place.

25               THE COURT:  Okay.

1          MR. MIRHASHEM:  Sean Roberts made --

2          THE COURT:  Okay.

3          MR. MIRHASHEM:  -- a time line.  And in the time

4   line, he has this development.  You -- there's a table that,

5   you know, if we get to a hearing on a motion to dismiss we will

6   submit --

7          THE COURT:  Right.

8          MR. MIRHASHEM:  -- and you'll see that the

9   government has known this for a long time.

10          Now --

11          THE COURT:  Okay.  That's a piece of this that I've

12   not understood until now.

13          MR. MIRHASHEM:  Right.

14          THE COURT:  But this was actually in discovery.

15          MR. MIRHASHEM:  In discovery.  So --

16          THE COURT:  And so this is something that Attorney

17   Davis and Attorney Gingrande have been aware of; that, in fact,

18   there was some connection to William Carroll in order to

19   establish rapport and the government did not look into that?

20          Did you -- did you ask for Giglio material formally

21   at an earlier time than via email a few days ago, Attorney

22   Mirhashem, Attorney Graham?

23          MR. MIRHASHEM:  Oh, I'm sorry.  Did we ask for it?

24   Well, let me -- let me put it this way.  First of all, our

25   position -- I'm just going to fast forward and read the email

1    that I sent that Attorney Davis talked about because then I

2    think that could be a -- so the answer to your question is we

3    sent a discovery letter to the government at the beginning of

4    our case.  And I'll have to check, but I think that includes

5    requests for exculpatory evidence.  But what we always do is

6    the court's local rules require disclosure of Brady and Giglio

7    material, I believe it's three weeks before trial.

8              The Supreme Court in multiple cases has made it

9    clear that the government's obligation does not turn on a

10   request from the defense.  So we didn't have to request it.

11   What I quoted in the email that Attorney Davis referred to is,

12   I said:  As you know, the -- quote -- the individual prosecutor

13   has a duty to learn of any favorable evidence known to the

14   others acting on the government's behalf in the case, including

15   the police.  I put in the citation to *Kyles vs. Whitley*.  I

16   mean, I said, "as you know," and I prefaced that by, hey, there

17   is this reference to a previous relationship.

18             I mean, we, as the defense, are in the dark as to

19   what does the government actually do in a case to comply with

20   its obligations.  Whenever we bring this up, the response is we

21   know about our obligation.  But we don't get to find out what

22   they do.

23             So here we know there's a previous relationship; we

24   know we don't have to make a request; we know that the

25   government is aware of its obligation; we know that there's a

1    court rule that says three weeks before trial, you have to turn

2    over Giglio materials.  So -- so, no --

3             THE COURT:  I understand.  Okay.  All right.  I

4    understand that.  I'm just trying to fact-gather.

5             MR. MIRHASHEM:  Right.

6             THE COURT:  Let me ask you this, Attorney Davis.

7             In light of the fact that this was in the discovery,

8    that you were actually on notice of this relationship and you

9    did not look into it or have some investigator look into it,

10   how is that not grounds for dismissal on prosecutorial

11   misconduct, not handing over this -- this relationship before

12   the trial ever started?

13            MR. DAVIS:  Well, Judge, I -- I mean, there's so

14   many things coming at me here at 9:40 p.m., it's difficult to

15   respond.

16            I'm not sure what -- I'm actually not sure what the

17   report actually says.  But I -- I do -- because I've seen

18   Behzad quote it, I don't question it, and I know that the case

19   agent was aware of a relationship.  That's true.  It's not in

20   the discovery and it's not documented anywhere that he was ███

21   ██.  And there are many different ways, of course, a person or

22   a police officer can have a relationship with a young kid in a

23   community.

24            Now -- so I wasn't aware of a ████████████.

25            THE COURT:  I -- I know.  No one has said that.  But

1   there was apparently at least an indication that the OSHA and

2   Department of Labor folks wanted the help of William Carroll,

3   who was at the Concord PD, a central player in this case, and

4   needed him to help establish rapport to get ███ in there to

5   talk to them.

6          So, again, I -- that, to me, would suggest at least

7   a phone call to William Carroll, some sort of investigation to

8   find out what was going on there so that in case there's some

9   sort of exculpatory evidence, you turn it over.  But it

10  certainly has a feeling of perhaps having some potential

11  exculpatory value to it.  But to just completely ignore it,

12  that's the reason we are here now at, you know, 10:40 -- 9:40

13  having a hearing.

14         So what I would say, it is late, but I am

15  contemplating the issue of whether or not this misconduct

16  deserves dismissal without hearing the rest of the, you know,

17  cross-examination of all the other witnesses.  This, to me, is

18  a fundamental lack of due diligence on the part of the

19  government in terms of doing its obligation with respect to

20  Brady.

21         So I want to consider that as I -- as I think about

22  these issues, but I -- I am not prepared to make a ruling on

23  that without giving counsel, obviously, an opportunity to argue

24  that and file something on that.  And I'm sorry to have to ask

25  you to do it, but I'm going to need to have briefing on that

1    and I think I'm going to need it this weekend, and the trial

2    will continue.  It will proceed tomorrow morning.  But I would

3    like to also think about this issue before -- perhaps before

4    the case is over.

5            And I think I have the record here with respect to

6    this issue in terms of William Carroll and I know you could

7    make hay, Attorney Mirhashem, perhaps, putting William Carroll

8    on the stand and putting other witnesses on the stand, but I

9    don't see that there's a lot of dispute about the basics with

10   respect to what happened here in terms of this -- the lack of

11   due diligence, the lack of any effort on the part of the

12   government to follow up on this and find out what the heck is

13   going on.  Why in the world are OSHA and Department of Labor

14   working with Concord PD to bring ███ in to help establish

15   rapport?  That would suggest they have a prior relationship

16   with him and they know him well.  Somebody does.  So I am

17   concerned about it from that perspective.

18           The motion to strike is denied.  We're going to

19   start -- I'm happy to meet at 8:00 a.m.

20           Apparently there's also a witness issue.  Tracy

21   Uhrin got an email from a subpoenaed defense witness, I think,

22   and that his attorney is going to be there tomorrow.  I don't

23   know if we'll have time necessarily to deal with that issue,

24   but we'll put Kelly right on at 9:00 and go right into ███

25   tomorrow.

1          So that's -- that's my plan.  And I'd like counsel

2     to brief the question -- the issue of a motion to dismiss.

3          So I think, Attorney Mirhashem, Attorney Graham,

4     I -- I need that motion and the government's going to need the

5     ability to respond to it and I'm going to give you a very, very

6     short time frame.

7          So if you could file your motion, Attorney

8     Mirhashem, file it by Saturday noon, government files a

9     response by Sunday at noon, and then I can have the weekend to

10    research, think about, the issue before Monday.  But we're not

11    going to -- we're not postponing the trial for any reason.

12         So we will plow ahead.  I will meet you -- I will

13    meet you at 9:00 unless you need to speak with me at 8:00 or

14    8:30.  I suspect I should probably just say meet you at 8:00,

15    just so you have the night to think about things and come fresh

16    in the morning.  Would that -- would that make sense to

17    everybody?

18         MR. MIRHASHEM:  I mean, I'll speak for myself at

19    this point.

20         I mean, I think that so many things have happened

21    these past couple of days, I can use every minute to -- if

22    we're actually going to -- because -- I'm rambling, but if I

23    could just -- can I have one minute -- I'm going to be very

24    brief.  I just want to make two points very quickly.

25         THE COURT:  Go ahead.

1          MR. MIRHASHEM:  One is there is a separate ground

2     for dismissal here that we will brief quite aside from not

3     turning over exculpatory evidence, which is what -- the

4     indictment that our client is, you know, facing, somebody --

5     and this may have been the -- somebody was paid to testify

6     against him.  I mean, I know we're used to payment in the world

7     of drugs on the street, but I'm going to research is it really

8     not a crime in this country for Mr. Carroll to take $80 and

9     hand it to a witness and say, this is for your testimony?  I

10    mean, that's -- so there's a separate ground for a dismissal.

11          This Court is really not going to -- well, we would

12    request that this Court dismiss this case quite aside from the

13    exculpatory evidence issue because of the outrageous

14    misconduct, known or unknown to these two individuals

15    personally, that the police department that was investigating

16    this case paid a witness.

17          And Mr. Davis left out something from that report

18    from Mr. Carroll.  He has it in front of him and I don't, but

19    the report refers to his cooperation with DOL.  The -- the

20    money, we will I expect establish, was not paid for helping the

21    Concord PD.  This is a federal case.  So a witness got paid.

22    So that's one issue.

23          The other -- I know the Court has decided this and

24    I'm just going to be very brief.  Our request is -- to have us

25    just go out in the dark before the jury and see what all these

1    people say is really not fair.  We should -- our request would

2    be the jury can be told to come back on Monday, we can have a

3    hearing tomorrow, have these people testify, get down to the

4    facts.

5              Because I'll say this, and I'm choosing my words

6    carefully.  This morning I did say, well, I have no doubt that

7    these two individuals didn't know.  But I'll tell you,

8    Mr. Davis does not seem at all perturbed by this matter.  I

9    don't understand how it can't be shocking that a witness was

10   paid to testify before a grand jury.  But for an email that I

11   sent, our client would have been convicted.

12             And if people aren't shocked by this -- who knows

13   who knew in his office.  We want a hearing.  I'm not going to

14   accuse people of being untruthful without evidence, but we do

15   want testimony under oath up and down the chain of command to

16   see who knew about this.  William Carroll, who's -- he just

17   pays this guy $80 and walks away?

18             This is not a Concord PD case.  Concord PD decided

19   there wasn't evidence for manslaughter.  Why is he -- why is a

20   state police agency paying somebody to testify before a federal

21   grand jury for a federal false statement crime?  That makes no

22   sense to me.  Whether it was Sean Roberts, whether it was an

23   Assistant United States Attorney, some federal person knew

24   about this and we're going to do whatever we can to expose

25   that.

1          THE COURT:  And I say to you the same thing I said

2     today, that ultimately you will cross the heck out of these

3     witnesses because you now have the ███████ and you have

4     information about this payment.  And you will be allowed to

5     cross-examine those witnesses aggressively.

6               And I am not going to stop the trial and take a huge

7     break.  We're going forward with the trial tomorrow.  And I

8     will take the motion to dismiss under advisement and I would

9     want you to submit your brief by noon on Saturday and the

10    government's response by noon on Sunday, but I'm not going to

11    delay the trial so that you can do all kinds of discovery and

12    witness examination and -- because I'm going to let you do

13    that.

14              If after this trial he is convicted, I will give you

15    a week-long evidentiary hearing if that's what it takes,

16    Attorney Mirhashem, to uncover what happened here.  But I don't

17    understand why I absolutely have to stop the jury trial in its

18    tracks right now when I know ultimately the cross-examination,

19    the material you have for cross-examination, is -- is

20    astounding.

21              So -- and I know you are a talented lawyer.  So I am

22    not -- I'm not concerned.  I think tomorrow you'll wake up and

23    you'll be ready to go.  And I think we all will.

24              I would say that I don't think that Attorney Davis's

25    demeanor is any indication perhaps of what he's thinking and I

1   think he's simply prosecuting the case as diligently as he can.

2          So I -- I think there's a due diligence issue here,

3   but I -- I do not think, and I am loathe to think, that anybody

4   in his office was aware of this.  And I would suggest that

5   everybody in his office would have -- would have a reaction to

6   this.

7          So I just say that as a judge very familiar with

8   Attorney Davis and his office.

9          Attorney Davis, go ahead.

10          MR. DAVIS:  Judge, I appreciate that.

11          What I wanted to raise is it's quite possible that

12   in light of the Court's declining to strike the testimony,

13   we'll talk again with our management and that we will move to

14   dismiss tomorrow.  I -- I don't -- I don't know that we'll do

15   that, but I -- I certainly think it's possible, and so just

16   come in in the morning and move to dismiss.  I just don't know

17   what we're going to do and I need to talk again with

18   Mark Zuckerman and perhaps the U.S. Attorney.

19          The reason I raise that is that if we do that, I

20   assume that the trial then ends and the jury will have come in

21   to no effect.  And I wonder if -- if it may make more sense to

22   call them off and get the briefing and -- I think the Court is

23   obviously interested and thinking about moving to dismiss on

24   its own this weekend regardless.

25          So, anyway, I just -- I just -- I want you to know

1    we may come in tomorrow and move to dismiss.  I just don't

2    know.

3                THE COURT:  Okay.  Well, I'm not going to hold the

4    jury back and we're going to go forward tomorrow morning at

5    9:00 a.m.

6                If you need to speak with me -- I want to give

7    Attorney Mirhashem to 9:00 a.m. to prepare.  If you need to

8    meet with me before that, just let Attorney Esposito know.

9                All right.  Thank you, counsel.  See you in the

10   morning.  Court's adjourned.

11               (Proceedings concluded at 9:53 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 7/6/2021          */s/  Liza W. Dubois*
                            LIZA W. DUBOIS, RMR, CRR




I certify that the foregoing is a true and correct
copy of the transcript originally filed with the Clerk of Court
on July 6, 2021, and incorporating redactions requested by the
Court in accordance with Judicial Conference policy.  Redacted
characters appear as a "black box" in the original transcript
and blank lines in the copies.



Submitted: 7/7/21          /s/ Liza W. Dubois
                           LIZA W. DUBOIS, LCR, CRR