UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

    v.

Civil No. 19-cr-142-LM
Opinion No. 2021 DNH 181 P

<u>Nathan Craigue</u>

**O R D E R**

    The United States brought charges against Nathan Craigue for making false statements to a federal agent, in violation of 18 U.S.C. § 1001(a)(2).  During trial, it was revealed that the Concord Police Department paid a reluctant but important government witness to testify against Craigue before the grand jury.  Facing a post-trial evidentiary hearing about its misconduct in withholding this and other exculpatory evidence, the government voluntarily dismissed the charges against Craigue.  After trial, the court granted several motions for protective orders and motions to seal court records related to and referencing some of the evidence that the government withheld from the defense.

    Now, non-party Imran Alrai has moved, through counsel, to intervene in this case for the purpose of unsealing those records.  Doc. no. 149.  The government does not object to Alrai's limited intervention, but opposes, at least in part, unsealing the records.  For the reasons that follow, the court grants Alrai's motion.

**BACKGROUND**

I.    <u>Trial & Voluntary Motion to Dismiss</u>

In July 2019, the government brought charges against Craigue for making false statements to a federal agent about whether people who worked for his contracting business were employees or independent contractors.  The case arose from statements Craigue allegedly made to federal investigators following tragic events in which Kenny McKenna died after falling from a roof while working on a job for Craigue's company.

Craigue's trial was originally scheduled for April 2021.  Just prior to his scheduled trial, however, the government sought and obtained a new indictment against Craigue charging him with the same crimes.  The superseding indictment delayed the trial.  The trial ultimately occurred in June 2021.

A witness whom this court refers to as John Doe testified on the third and fourth days of trial, June 9 and 10.[1]  During this testimony and in subsequent conferences with the parties, the court learned that the government had not acted with due diligence in investigating damaging evidence about Doe's credibility, and, as a result, this evidence was unavailable to Craigue before his trial.  Specifically, Doe had been paid to testify before the grand jury in this case and was subsequently employed as a paid confidential informant by the Concord Police Department in drug cases.  Thus, on the morning of the fifth day of trial, June 11, the court

---

[1] As will become clear, the court uses the pseudonym throughout this order for Doe's safety and privacy.

granted the government's assented-to motion to dismiss the case with prejudice (doc. no. 130).

The court did not issue any order to seal while trial was ongoing. All of the in-court proceedings were open to the public, including the third and fourth days of trial when Doe testified. After trial ended, the court issued a series of orders with the aim of protecting Doe's safety and privacy interests as balanced against the public's right to know about the events of a criminal jury trial. At no time, however, has the fact that the Concord Police Department paid Doe to testify before the grand jury been under seal.

On November 15, 2021, prior to issuing this Order, which revises the court's earlier protective orders, the court held a sealed hearing during which counsel for the government, Craigue, Alrai, and Doe were present and argued their positions on the record. Prior to the hearing, the court also temporarily sealed all records from trial that could, in connection with the information that the court will unseal in this Order, reveal Doe's identity (the "Prehearing Procedural Order"). See doc. no. 159. For the purpose of allowing counsel for Alrai and Doe the ability to fully understand the issues and litigate their positions, the court allowed them access to the sealed documents, with certain restrictions on disclosure.

With that background in mind, the court turns to an in-depth discussion of the sequence of events that led to the dismissal of the charges against Craigue.

A.      June 9 - Trial Day 3

On June 9, the third day of trial,[2] the government called John Doe as a witness as part of its case in chief.  The government subpoenaed Doe to testify at trial, meaning that Doe was compelled to appear in court.  Doe was a critical fact witness for the government.  Doe was present at the work site when McKenna fell, and, on that date, he spoke to an Occupational Health and Safety Administration investigator who arrived on the site to investigate the accident.  At trial, and in aid of the government's prosecution of Craigue, Doe testified about statements he claimed Craigue made to him on the date of McKenna's accident.

Some of Doe's answers during direct examination led Craigue's counsel to become suspicious about whether Doe had a history of drug use that the government had not disclosed.  In a sidebar, the government's lawyers denied any knowledge of Doe having previously used drugs, and Craigue's counsel requested that he be permitted to ask questions to Doe about possible drug use outside the presence of the jury (known as a "voir dire" of the witness).

Accordingly, with the court's permission, counsel for Craigue conducted a voir dire examination of Doe about possible prior drug use.  During this voir dire, Doe readily acknowledged a history of drug use.  He testified that he had a substantial

---

[2] All of the trial events that occurred on June 9 were recounted in an unredacted transcript that was, prior to the Prehearing Procedural Order, available to the public.  See doc. no. 145.

history of drug use, stating that it would be easier for him to list the drugs he had <u>not</u> used than it would for him to list the drugs he had.

When Craigue inquired about Doe's most recent drug use, however, it became apparent that Doe needed to consult with his own counsel about his Fifth Amendment rights.[3]  Accordingly, the court suspended Doe's voir dire examination and, after discussing the matter with Doe, appointed Attorney Ted Lothstein to represent him.  See Order of June 9, 2021 ("A potential Fifth Amendment issue arose with respect to one of the government's witnesses, [John Doe], during Trial. Mr. [Doe] has requested that the court appoint counsel to advise him on this matter. The court orders that counsel shall be appointed to represent [John Doe] for the limited purpose of advising him on a potential Fifth Amendment issue in connection with his testimony in this case.").[4]  To keep the trial moving at a steady pace, the government and Craigue agreed to move forward with the testimony of other witnesses while Doe consulted with Attorney Lothstein.

Later the same day, during a break in the trial, the court, Attorney Lothstein, and counsel for the parties conferred about when Doe's voir dire and cross examination would continue.  Attorney Lothstein stated that he and the government were in the process of obtaining satisfactory immunity letters from the

---

[3] Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.

[4] This order was temporarily placed under seal prior to the court's hearing on Alrai's motion to intervene.  As discussed below, the order will be unsealed with Doe's actual name substituted with the "John Doe" pseudonym.

state about protecting Doe from prosecution given his prior, and potentially recent, drug use.

Attorney Lothstein also requested that the remainder of Doe's voir dire occur in a closed courtroom.  Attorney Lothstein argued that Doe's answers about his prior drug use could harm Doe's public reputation and that there was no public interest in his answers if the court decided Doe's drug use was irrelevant to the case against Craigue.  Craigue objected, pointing to his constitutional right to a public trial and to Doe's cavalier answer during voir dire about his drug use—namely, Doe's answer that it would be easier to list the drugs he had not used than to list the drugs that he had.  Craigue asserted that Doe's drug use was not "top secret information."  The court deferred resolving the issue but noted its strong inclination to keep the courtroom open given Craigue's right to a public jury trial.


B.      June 10 - Trial Day 4

The issues that led to the dismissal of the charges against Craigue coalesced on June 10.  The relevant events of June 10 are separated into five proceedings. Some of the transcripts of these proceedings were public prior to the Prehearing Procedural Order: (1) a morning status conference (nonpublic); (2) the morning trial session (public with redactions); (3) a status conference prior to the afternoon trial session (nonpublic); (4) the afternoon trial session (public); and (5) an evening status conference (public with redactions).  The court reviews these proceedings chronologically.

1.      <u>Morning Status Conference</u>

The morning of June 10, the court held a status conference with counsel for the government, Craigue, and Doe.  During the conference, which focused on a discussion about Doe's voir dire to be resumed that morning, the government revealed that it had learned that Doe had been a paid confidential informant for the Concord Police Department in drug cases.  The government represented that it had been unaware of Doe's history working with the Concord Police Department, just as it had been unaware of Doe's prior drug use.  The government also represented that it had now issued a subpoena to obtain a "confidential informant file" maintained by the Concord Police Department about Doe, which the government intended to provide to Craigue's defense counsel once obtained.

Counsel for Craigue stated that he would be filing a motion to dismiss the case for prosecutorial misconduct, namely, the government's failure to disclose Doe's prior drug use and his history as a paid confidential informant.  Counsel for Craigue also noted a concern about additional undisclosed exculpatory information being "out there"—unknown to the government's counsel but known to the government's agents or the police.

2.      <u>Trial Morning Session</u>

After the morning status conference, Craigue continued his voir dire of Doe. Before breaking for lunch, the court and counsel for the government and Craigue discussed the status of the discovery related to Doe's confidential informant file and

whether defense counsel would be able to review the material in time to proceed with the trial in the afternoon.

### 3. Afternoon Status Conference

Prior to the start of the afternoon proceedings, the court held a status conference. During that conference, the government requested that the court send the jury home and revealed that it was "possible we will dismiss the case" on the basis of information obtained from investigating Doe's history with the Concord Police Department.

Specifically, the government revealed that a Concord Police Department officer paid Doe $80 for his testimony before the grand jury. The government noted it had learned that a Concord police officer acted as Doe's "handler" when Doe was a confidential informant, and the government thought it possible that this particular officer had paid Doe for his grand jury testimony.

After this revelation, Craigue asked for a hearing on his motion to dismiss the case based on prosecutorial misconduct. The court suggested that a hearing for prosecutorial misconduct would be appropriate after trial if Craigue were convicted. Counsel for Craigue agreed to that procedure so long as the information about Doe's history as a confidential informant and his being paid to testify could be raised on further cross-examination.

4.    <u>Afternoon Session</u>

In a brief afternoon session, the court dismissed the jury for the day.

5.    <u>Evening Status Conference</u>

At around 9:15 p.m. that evening, the court held an emergency videoconference with the government and counsel for Craigue. During this conference, counsel for Craigue proffered that a former Concord Police Officer—who at the time of this trial was working as a federal probation officer—had admitted to paying Doe to testify before the grand jury. Rather than seek dismissal of the case, the government moved to strike Doe's testimony. After hearing arguments from counsel, the court denied that request. <u>See</u> Order of June 10, 2021 ("On June 10, 2021, at 9:15 p.m., the court held a video conference in this case. . . . In an oral ruling during the conference, the court denied the government's motion to strike the testimony of [John Doe] the government's own witness. Trial will begin tomorrow morning at 9 a.m. Defense will file a motion regarding prosecutorial misconduct by Saturday at 12 p.m., and the government will respond by Sunday at 12 p.m.").[5]

The former Concord Police Officer's admission is recorded in an investigation report prepared by a government agent after interviewing the officer earlier that day. The investigation report states that the officer enlisted Doe as a paid

---

[5] This order was public prior to the Prehearing Procedural Order. As discussed below, the order will be unsealed with Doe's actual name substituted with the "John Doe" pseudonym.

confidential informant for the Concord Police Department for drug cases immediately after paying Doe for his testimony before the grand jury.  During the interview, the officer stated that he knew Doe because Doe had provided "corroborated information" to the Concord Police Department for "years."[6]  At the time of the interview, the officer could not remember whether it was he or Doe that "initiated" the request that Doe become a confidential informant.  However, the officer said that Doe did not request money to testify before the grand jury and that "they had come to an agreement that if [Doe] testified" before the grand jury, "he would be paid for cooperating."  Thus, it appears more likely that the officer initiated the payment, considering that Doe had been reluctant to become a paid informant and only spent two weeks as a paid informant thereafter.  The officer stated that he "believe[d]" a Department of Labor special agent told him about the grand jury proceeding and that he did not "believe" he would have paid Doe if the special agent, who was his "point of contact" with the government's prosecutorial team, did not know about it.  Nonetheless, the officer did not recall whether he had told the special agent about paying Doe for his testimony or about Doe's subsequent work as a paid informant.

---

[6] Craigue's counsel had been arguing since the afternoon conference that a document provided by the government in discovery indicated that Doe had an ongoing relationship with the Concord Police Department.  At both the afternoon and evening conference, Craigue's counsel expressed frustration that the government had not investigated the nature of this relationship.

C.      June 11, Trial Day 5

In light of the officer's admission that the Concord Police Department paid Doe to testify before the federal grand jury in this case and the court's denial of its motion to strike Doe's testimony, the government moved to dismiss the charges against Craigue the morning of the fifth day of trial.[7]  The court granted this motion and dismissed the charges against Craigue with prejudice—meaning that the charges against Craigue can never be refiled.

During a status conference prior to calling in the jury to tell it that the case was over, the parties discussed the consequences of the mid-trial revelation that Doe had been a confidential informant.  While the court did not issue an order sealing any part of the record, including whether Doe acted as a confidential informant, the court found (and both parties agreed) that the information that Doe had been paid for his grand jury testimony would be public.  The court found that the potential risk of harm to Doe could have been avoided had the government properly investigated and discovered that Doe had been a confidential informant prior to trial.

After the status conference ended, the court dismissed the jury and ended the trial.

---

[7] An unredacted copy of the transcript for June 11 has been under seal.  An initial public redacted copy was docketed, doc. no. 140, but it was placed under seal after the government filed a motion calling attention to the fact that the redactions of the transcript were incomplete.  A second redacted transcript that removes references to Doe's name has been publicly available (doc. no. 154).

II.    <u>Post-Trial Motions for Protective Orders & Sealing Court Records</u>

On June 16, 2021, a week after the court dismissed the case, the court issued its first protective order after the parties filed sealed and assented-to requests (doc. nos. 132, 133, 134, and 135).  The court's protective order restricts Craigue's use of Doe's confidential informant file with the Concord Police Department and the use of the investigation report about the officer's interview.  However, the court's protective order permitted Craigue to disseminate a redacted version of the investigation report.  The redacted version of the report discusses the payment to Doe for the grand jury testimony but redacts both Doe's name and the fact that Doe was employed by the Concord Police Department as a confidential informant.

Shortly thereafter, transcripts were requested of the trial. With counsel's assent, the court issued two sealed endorsed orders dated June 18 and July 1, 2021, ordering redactions from the trial transcripts for June 10 and 11, as well as from the June 10 evening status conference transcript.  Specifically, these redactions removed references to Doe's name and to Doe's work as a confidential informant.

Later, on July 28, 2021, the government filed a sealed, assented-to motion (doc. no. 143) requesting a modification to the protective order to permit the defendant in <u>United States v. Imran Alrai</u> (18-cr-192-JL)—who is now the putative intervenor—access to redacted versions of Doe's confidential informant file, the investigative report, and some of the transcripts related to those materials.  The government also filed an accompanying assented-to motion to seal all matters

related to its motion to modify the protective order (doc. no. 144).  The court granted those requests in a sealed endorsed order dated August 2, 2021.

On August 20, 2021, the government filed an assented-to motion "to further redact trial transcripts" (doc. no. 146) to ensure that references to Doe's identity were appropriately redacted from the trial transcripts for June 10 and June 11.[8]  The government also moved to seal its request (doc. no. 147).  The court granted the government's motions in a sealed endorsed order dated August 25, 2021.

## DISCUSSION

Imran Alrai moves to intervene for the purpose of unsealing the court's records and transcripts.  The sealed motions and court orders are doc. nos. 131, 132, 133, 134, 135, 143, 144, 146, and 147.  At the time Alrai filed his motion to unseal,[9] the sealed transcripts were of the June 10 morning status conference (doc. no. 150); the June 10 morning trial session (doc. no. 148); the afternoon status conference (doc. no. 142); the evening status conference (doc. no. 136); and the June 11 trial session (doc. no. 141).  For the following reasons, Alrai's motion is granted.

---

[8] Information that could have revealed Doe's identity was unredacted in the first redacted trial transcripts for June 10 and June 11.

[9] As discussed above, the court temporarily sealed additional records in anticipation of issuing this Order.

Alrai contends that the public has an interest in having access to the sealed court records and transcripts, all of which the court has summarized, as relevant, above.  He adds that he has a special interest in unsealing these records because his 2019 convictions were vacated (pending a new trial) following the discovery of prosecutorial misconduct involving the same Assistant United States Attorney who led the prosecution in both his case and this case.  Alrai contends that multiple instances of prosecutorial misconduct by the same prosecutor would be relevant evidence as he seeks to dismiss the government's charges against him.  In short, although he has already had access to a significant portion of the trial transcripts in this case,[10] Alrai requests that the court unseal the remaining sealed court records so both he and the general public can fully understand the prosecutorial misconduct that occurred in this case.

The government objects.  It argues that the court properly and correctly balanced the interests at stake in its current protective orders.  The government asserts that the court has properly redacted some records and sealed others.  The government argues that unsealing the court records about Doe's work as a confidential informant in drug cases would put Doe in danger of reputational and physical harm but would not provide Alrai any information meaningful to his

---

[10] The government asserts that it agreed to provide Alrai with those records because he agreed to forgo filing a motion to intervene in this case.  The government complains that, by filing this motion to intervene, Alrai has reneged on his promise. But whatever agreement Alrai and the government had between them has no bearing on the court's decision, as Alrai cannot bargain away the public's right of access to criminal proceedings.

14

defense.  The government adds that most of the trial transcripts are available publicly, which means that, even if the court unsealed the remaining nonpublic transcripts with redactions to Doe's name, he might be easily identified.  The government contends that, if any requested transcripts or documents are unsealed, Doe's name, the fact that he was a confidential informant, and any information tending to reveal Doe's identity should be redacted.

Counsel for Doe and Craigue also offered their positions during the court's November 15, 2021, oral argument.  Doe agreed with Alrai's argument that the matters under seal in this case are of immense public interest, and he supported the court's suggestion that Doe's name and several categories of potentially identifying information be redacted throughout the record to minimize the risk of harm to Doe.  On the condition that appropriate redactions are made to protect his identity, Doe conceded that the public should have access to the fact he had been a confidential informant.  Counsel for Craigue took no position on unsealing the records in this case but reiterated his concerns about the seriousness of the government's misconduct.

I.    Right of Access to Court Proceedings

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).  Courts "generally do not condition enforcement of this right on a proprietary interest in the document or

upon a need for it as evidence in a lawsuit." Id.  This is because "public monitoring of the judicial system fosters important values of quality, honesty, and respect for our legal system." Siedle v. Putnam Invs., Inc., 147 F.3d 7, 9-10 (1st Cir. 1998); F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

Accordingly, "[t]he common law presumes a right of public access to judicial records." Siedle, 147 F.3d at 9-10.  On top of that general common law right, the First Amendment provides a "right of access to certain criminal proceedings and materials submitted therein." United States v. Kravetz, 706 F.3d 47, 52 (1st Cir. 2013); Anderson v. Cryovac, Inc., 805 F.2d 1, 6-7 (1st Cir. 1986) (reiterating that "open trials have a 'community therapeutic value,' especially in the administration of criminal justice, because they assure the public that the process is fair and just"). Indeed, the public interest is strongest in materials submitted and events that occur during a criminal trial.  See Richmond Newspapers v. Virginia, 448 U.S. 555, 575 ("Plainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted . . . ."); id. at 566-67 (describing the public nature of criminal trials as giving "assurance that the proceedings [are] conducted fairly to all concerned" and as discouraging perjury and "the misconduct of participants"); Poliquin v. Garden

Way, 989 F.2d 527, 533 (1st Cir. 1993) ("Open trials protect not only the rights of individuals, but also the confidence of the public that justice is being done by its courts in all matters, civil as well as criminal.").  At the same time, however, "[i]mportant countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Siedle, 147 F.3d at 10.  Accordingly, the court "must carefully balance the competing interests that are at stake in the particular case." Id.

Having considered the parties' arguments, reviewed the court's records, and examined the applicable case law, the court finds that the public's right to know all facts pertinent to the government's misconduct in this case outweighs the risk of harm to Doe that may result from revealing that, in the past, he worked as a confidential informant for the Concord Police Department.  As discussed further below, the risk of harm to Doe will be adequately mitigated by redacting his name and other potentially identifying information from the public record.

A.    Public's Right of Access

To start, the public has a paramount right of access to the transcripts and records that memorialize this criminal trial, including the entire basis for the dismissal of the charges against Craigue.  See Kravetz, 706 F.3d at 52; Anderson, 805 F.2d at 6-7.  The Concord Police Department paid Doe, who was a reluctant witness but had a history of drug addiction, to testify against Craigue before a grand jury.  The Concord Police Department had used Doe as a source of

17

"corroborated information" for years, and, leveraging that relationship, it made an agreement with Doe whereby he would be paid if he "cooperated" by testifying against Craigue before the grand jury.  Afterward, the Concord Police Department paid Doe to conduct undercover drug deals.

The government's failure to learn of and disclose these facts was patent prosecutorial misconduct.  See Giglio v. United States, 405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within" the general rule requiring a new trial regardless of whether the government acted in good faith); Kyles v. Whitley, 514 U.S. 419, 437-38 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); United States v. Martinez-Medina, 279 F.3d 105, 118 (1st Cir. 2002) (holding that certain payments to individuals "are a legitimate part of a prosecutor's arsenal" so long as the government appropriately discloses "the arrangement"); United States v. Dailey, 759 F.2d 192, 199-200 (1st Cir. 1985) (discussing the legality of making payments to undercover informants and the extensive procedural safeguards that make such payments legal, starting with disclosure of the payments to the defense).

And this misconduct was not a mere technicality; prosecutors and defense attorneys know the rules that prohibit this type of misconduct so well that the precise legal basis for Craigue's anticipated motion to dismiss hardly needed mention as events unfolded.  Except for Craigue's skilled cross-examination of Doe,

which began the chain of events that led to the discovery of the payment to Doe, Craigue could have been convicted of a felony charge and could have spent time[11] in federal prison despite, in truth, having had a wholly unfair trial.  See Brady v. Maryland, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); see also United States v. Bagley, 473 U.S. 667, 676 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule."); Giglio, 405 U.S. at 154.

    B.    Misconduct in Alrai's Case

        Furthermore, Alrai has a particular interest in unsealing these records. Specifically, the same lead prosecutor in this case also led the prosecution against Alrai, who was convicted after a bench trial.  Prior to his sentencing, Alrai uncovered evidence that one of the government's expert witnesses had been working under the supervision of the victim's lawyer and that information led Alrai to discover additional evidence favorable to his defense.  After Alrai uncovered the evidence, the government admitted the evidence should have been provided to Alrai prior to trial.  See United States v. Alrai, No. 18-cr-192-JL, 2021 WL 4133924, at *1 (D.N.H. Sept. 10, 2021).  The court issued an order vacating his convictions, finding

_____

[11] A person guilty of violating § 1001(a)(2) can receive a maximum sentence of five years' imprisonment.  18 U.S.C. § 1001(a).

that the government's failure to disclose this evidence to Alrai prior to trial violated

Brady and rendered Alrai's trial unfair.  See id. at *14 ("The court finds that the

prosecution violated Brady by withholding or failing to provide evidence that is

favorable to Alrai and, when considered collectively, is sufficient to undermine

confidence in the trial verdict.").  In addition, the court in Alrai observed some of the

same problems with the government's prosecution as occurred here:

> In addition to these Brady violations, the prosecution engaged in
> insufficiently diligent discovery practices, which resulted in oversights
> and omissions in its disclosures. Concurrently, the prosecution made
> several false representations about the status of discovery and
> disparaging remarks regarding Alrai's continued discovery requests.
> These troubling practices could have also dissuaded Alrai from
> pursuing legitimate discovery and defense strategies, potential[ly]
> further prejudicing him.

Id.

While the court granted Alrai a new trial, Alrai has now moved to dismiss the

charges against him with prejudice.  Alrai argues in his motion to unseal that a

history of misconduct by a particular prosecutor could bear on the motion to

dismiss, particularly in light of the "insufficiently diligent discovery practices" that

occurred in both cases.  While that is a question for the Alrai court, there can be no

dispute that it is in the public's interest to have that decision made with as much

publicly-available information as possible.

In sum, the Concord Police Department's ongoing relationship with Doe prior

to the Craigue indictment, its payment to Doe for his grand jury testimony, and its

business relationship with him after his grand jury testimony raise several

questions about prosecutorial misconduct about which the public has a right to

know.  First, the fact that highly similar misconduct has happened at least twice in this United States Attorney's Office within a short time span raises concerns about the seriousness to which the government takes its constitutional disclosure obligations.  Second, the confidential informant file that revealed the payment to Doe for his grand jury testimony was in the Concord Police Department's possession, such that it would have been a trivial matter for the government to obtain the information had it made any effort to do so.  Third, even before Doe's grand jury testimony, the government had in its possession a document from the Department of Labor indicating that Doe had an ongoing relationship with someone in the Concord Police Department. That document should have triggered follow up from the government.  And finally, the individual in the Concord Police Department with whom Doe had an ongoing relationship is currently working for United States Probation and Pretrial Services Office in New Hampshire—which has an office in the same federal courthouse where the grand jury convened to indict Craigue. Thus, it is unclear why the government failed to learn about, prior to trial, the payment to Doe for his grand jury testimony or about Doe's subsequent work as a paid informant.  As noted above, the public is entitled to access all the facts bearing on these issues.

C.      Risk of Harm to Doe

At the same time, unsealing the records in this case without taking steps to issue appropriate redactions would reveal that Doe was a paid confidential

informant in drug cases, a fact which, if publicized, could lead to retaliation against him.  See, e.g., United States v. Bus. of Custer Battlefield Museum and Store, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011); Goff v. Graves, 362 F.3d 543, 550 (8th Cir. 2004); United States v. Yousef, 327 F.3d 56, 168 (2d Cir. 2003); see also Roviaro v. United States, 353 U.S. 53, 60-64 (1957) ("The government has a privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law.").  Considering the heavy weight that courts place on protecting the identity of confidential informants—and in fairness to Doe, who should not be punished for the government's transgressions—the question is how to protect Doe's safety while, on balance, minimizing the amount of information that is withheld from the public record.  See Roviaro, 353 U.S. at 62 (discussing informer's privilege generally); Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 402-403 (1st Cir. 2005) (holding, in a civil case, that when evaluating whether and how to impose a protective order over disclosing identity of confidential informants courts should consider the public's interest, the need for confidentiality, and privacy interests).

The government contends that the best way to keep Doe safe is to keep intact the current protective orders, which withhold from the public the fact that Doe worked as a confidential informant.  The government also places the burden on Alrai to demonstrate that the records should be unsealed.  But "a protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment."  Poliquin, 989 F.2d at

535.  The burden remains on the proponent of non-disclosure—the government—to show that the presumption of disclosure is overcome under the circumstances.  See id.; Standard Fin. Mgmt. Corp., 830 F.2d at 411 ("The objectors—those seeking to keep the datum hidden from view—must carry the devoir of persuasion."); United States v. Pickard, 733 F.3d 1297, 1302 (10th Cir. 2013) ("Consistent with this presumption that judicial records should be open to the public, the party seeking to keep records sealed bears the burden of justifying that secrecy, even where, as here, the district court already previously determined that those documents should be sealed.").[12]

The circumstances suggest that the risk of harm to Doe is not as severe as the government contends.  The information about Doe's work as a confidential informant is stale: the employment relationship between Doe and the Concord Police Department ended in the summer of 2019, and the record indicates that Doe had little interest in being a paid informant.  Doe's reluctance to cooperate is also part of the public record.  Moreover, it is already in the public record that Doe had a drug addiction, had an ongoing relationship with the Concord Police Department prior to this case, and was paid $80 to testify before the grand jury.  Thus, from the public record as it already exists, it is not difficult to infer that Doe may have been on the Concord Police Department's payroll in other ways.

---

[12] Even if the burden were placed on Alrai to demonstrate that Doe's employment as a confidential informant should be unsealed, the court finds that Alrai would meet that burden under the facts of this case.

To be sure, the court initially agreed with the government that withholding Doe's past employment as a confidential informant was sufficient to balance the public's interests on the one hand against protecting Doe's safety on the other. However, in reviewing the transcripts and records of this case at present, it is clear that absent the information that Doe was employed as a confidential informant, the public does not have access to critical information that reveals the full scope of the government's misconduct in this case and the sequence of events that led to the discovery of that misconduct.  Further, the discovery of prosecutorial misconduct in Alrai's case adds weight to the public's need for all the relevant information. Having found that the balance of factors favors disclosing Doe's employment with the Concord Police Department as a paid confidential informant subsequent to its payment to Doe in exchange for testifying before the grand jury in this case, the court turns to the appropriate steps needed to minimize the risk of harm to Doe.

II.    <u>Redacting Doe's Identifying Information</u>

The nature of Doe's participation in this trial makes it difficult in this case to unwind the revelation that he was a confidential informant from his identity.  That is, Doe was an important witness for the prosecution and testified extensively about the events that led to Craigue's prosecution.  Doe's testimony on direct examination was previewed in detail by both parties during their opening statements, and Doe's encounters with other individuals involved in the case was, at times, referenced in the testimony of other witnesses.  Doe's public testimony on direct examination

about his job history and the events leading to McKenna's death led Craigue's counsel to query Doe about prior drug use.  Doe's testimony about his prior drug use came on a voir dire examination immediately after counsel for Craigue laid a foundation by referencing Doe's testimony on direct examination.  And, during the same exchange, the court appointed Attorney Lothstein to represent Doe.  All of these matters occurred in an open courtroom during a jury trial and are, as they should be, memorialized in various transcripts and court orders that can be examined by the public.

Doe's public testimony, however, is intertwined with and referenced in the court's and parties' discussions about Doe's employment as a confidential informant, which have been kept from the public's view.  If Doe's identity can be ascertained from the trial transcripts, anyone would be able to identify him as the confidential informant being discussed.  For that reason, it is necessary to redact Doe's name and other potentially identifying information—such as his educational history and where he lives—from the trial transcripts and court records in this case.  While this means that previously-unredacted and public court records must become, in part, nonpublic, this approach strikes the best balance between enforcing the public's right of access to criminal trials and protecting Doe's safety and privacy interests. See Bus. of Custer Battlefield Museum and Store, 658 F.3d at 1194 (stating that the privacy interests of informants can be protected "through a court's discretion either to release redacted versions of the documents or, if necessary, to deny access altogether . . . ."); Goff, 362 F.3d at 550 (affirming order that redacted informants'

testimony to the extent it could reveal their identities); In re Application of Newsday, 895 F.2d 74, 79-80 (2d Cir. 1990) (affirming district court's redaction of a search warrant affidavit to eliminate references to innocent third parties when balancing public's right of access to the document against the third parties' privacy interests); cf. Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 252 (1st Cir. 2013) (discussing the strong privacy interests that weigh against disclosing identity of confidential informants).  The government contends that this approach is insufficient, but Doe's counsel opined at oral argument that redactions of the type proposed by the court would be satisfactory considering the circumstances.

Finally, the court has at all times been mindful that, had Doe's work as a confidential informant been disclosed prior to trial as it should have been, then that fact may have been irrelevant to the trial issues and perhaps need not have been disclosed to the public.[13]   See Tr. Trial Day 5 at 7:18-21 ("[U]ltimately, [Doe] may not have ever testified and would not be in any danger at all if you had followed your obligations and you had pursued this with due diligence, even minimal diligence.").  At the least, the court could have handled the issue in the usual manner, which is through pretrial motions practice.  United States v. Brown, No. 09-30-GZS, 2009 WL 3151870, at *8 (D.N.H. Sept. 24, 2009) (observing that "[r]equests for information about the identity of a confidential informant and the

---

[13] The fact that the police use confidential informants or that the police used Doe, specifically, as a confidential informant is not a matter of particular public concern.  Rather, the issue here is that the government failed to disclose this information, and prosecutorial misconduct is always a matter of public concern.

struggle over entitlement to the privilege typically are fought out in motion practice and other pretrial proceedings"). The public, however, has a right to know when the government fails to live up to its constitutional obligations. Thus, Doe's history as a confidential informant, alongside the government's payment to him for his grand jury testimony, are matters about which the public has a right to know.

## CONCLUSION

In summary, the circumstances and the matters about which Doe testified occurred in the public domain. They frame matters of significant public importance, namely, prosecutorial misconduct in a criminal investigation and prosecution. The reason to keep the matter sealed is a risk of harm coming to a former confidential informant. Here, however, that risk can be adequately mitigated by redacting Doe's name and any other potentially identifying information from the relevant court records. The court finds that this solution adequately balances the interests of the public in this information and the compelling interest of keeping the identity of a confidential informant nonpublic. Alrai's motion (doc. no. 149) is granted.

The court directs the Clerk of Court as follows:

- To maintain the status quo while the parties determine whether to appeal the court's decision, this Order shall be sealed at Level I and the following directives to the Clerk of Court shall be stayed for 30 days.[14]

---

[14] If any party chooses to appeal this Order, the court will keep this Order under seal and stay its directives to the Clerk of Court until that appeal is resolved. Additionally, to ensure that during any appeal the public has access to the parts of the trial record that the parties collectively agree should be public, all docket

- Doe's actual name shall be replaced with "John Doe" in the following orders.  After Doe's name is replaced in each order, the orders shall be unsealed.

  - The court's minute orders dated June 9, 2021, and June 10, 2021, which reflect the proceedings of jury trial days three and four;

  - the court's endorsed order dated June 9, 2021, that directs counsel be appointed to him;

  - the court's endorsed order dated June 10, 2021, that reflects the court's denial of a motion to strike; and

  - the court's endorsed order dated June 18, 2021, that seals portions of two hearings and directs Doe's name to be redacted in transcripts of those hearings.

- The following motions shall be unsealed: doc. nos. 133, 135, 143, 144, 147, and 149.  No redactions need be made to these motions.

- The following court orders shall be unsealed:  Order of August 2, 2021, granting doc. nos. 143 and 144 and Order of July 1, 2021, directing a transcript to be redacted consistent with prior orders.  No changes or redactions need be made to these orders.

The court directs the parties as follows:

- Counsel for the government shall meet and confer with counsel for Alrai, Craigue, and Doe so as to confirm that the following recitation of the court records to be redacted and unsealed is complete and accurate.

- Within 30 days of this Order, the government shall file, under seal, a proposed redacted transcript for each of the following court proceedings with redactions consistent with this Order:

  - June 7, Status Conference (doc. no. 152)[15]

---

entries that were sealed by the Prehearing Procedural Order in anticipation of this Order will be unsealed.

[15] The court provides citations to the existing docket entries that correspond with transcripts of each court proceeding for the parties' ease of reference.  Only one proposed redacted transcript need be filed for each proceeding.

- o   June 8, Jury Trial Day 2 (doc. no. 151)

- o   June 9, Jury Trial Day 3 (doc. no. 145)

- o   June 10, Morning Status Conference (doc. no. 150)

- o   June 10, Jury Trial Day 4 AM (doc. nos. 138, 148, and 153)

- o   June 10, Jury Trial Day 4 PM (doc. no. 139)

- o   June 10, Afternoon Status Conference (doc. no. 142)

- o   June 10, Evening Status Conference (doc. nos. 136 and 137)

- o   June 11, Jury Trial Day 5 (doc. nos. 140, 141, and 154)

- Within 30 days of this Order, the government shall file, under seal, an appropriately redacted copy of the investigation report of the interview of the former Concord Police Officer (doc. no. 134-1) and of any other sealed motion requested by Alrai that the court has not already directed the Clerk of Court to unseal (e.g., doc. nos. 132, 134, and 146).

- Appropriate redactions shall be as follows.  Doe's name and any other potentially identifying information, such as his age, place of residence, education history, job history (excluding his work for Craigue and employment as a confidential informant), and the names of his friends, shall be redacted from the transcripts of the above-listed court proceedings and sealed motions.  Any references to specific individuals against whom Doe acted as a confidential informant shall be redacted.  However, the proposed redactions shall be narrowly tailored so as to minimize the amount of information that is withheld from the public.

- The government shall confer with counsel for Alrai, Doe, and Craigue to discuss proposed redactions prior to filing them with the court.  The government is directed to make reasonable efforts to obtain Alrai, Doe, and Craigue's assent to the proposed redactions.  The court will not deem agreement that the redactions and records are consistent with this Order as a waiver of any party's position argued during the court's November 15, 2021, hearing.

- The proposed redacted records shall be filed as prescribed by the Order of October 6, 2021, which provides that "[f]uture proposed redactions shall be requested via unsealed motion with any proposed redactions included in a sealed attachment."  In other words, the government shall file an unsealed motion with each requested transcript and motion properly redacted as separate and provisionally sealed attachments.

29

- If there is not assent to the government's proposed redactions, within 10 days of the government's filing of proposed redactions, the non-assenting participant shall file an objection to the government's proposed redactions to the extent they are inconsistent with this Order.

- If there are no objections to the government's proposed redactions and subject to the court's approval of the proposed reactions, the court will unseal the proposed redactions and any transcripts that require modified redaction will be replaced to reflect the redacted copies.

- Any transcripts produced of the court's November 15, 2021, oral argument on this motion or of any other court proceeding for which transcripts have not already been produced shall be, if necessary, appropriately redacted in the same manner described above.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 23, 2021

cc:    Counsel of Record