UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   1:19-cr-142-01-LM
           v.                       *   June 7, 2021
                                    *   4:01 p.m.
NATHAN CRAIGUE                       *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE LANDYA B. McCAFFERTY

Appearances:


For the Government:          John S. Davis, AUSA
                            Aaron G. Gingrande, AUSA
                            United States Attorney's Office




For the Defendant:           Dorothy E. Graham, Esq.
                            Behzad Mirhashem, Esq.
                            Federal Defender's Office




Court Reporter:              Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603)225-1442

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  For the record, this is a status
 3    conference regarding jury selection in Nathan Craigue, United
 4    States vs. Nathan Craigue.  It is 19-cr-142-01-LM.
 5              THE COURT:  Okay.  Do -- does counsel have a copy of
 6    a summary of the issues the jury -- two juror members --
 7    prospective jurors had or do I need to read those or summarize
 8    them?
 9              MR. GINGRANDE:  I haven't seen it.
10              MR. DAVIS:  We have them, Judge.
11              THE COURT:  You haven't seen it?
12              MR. DAVIS:  They were emailed, Judge.
13              THE COURT:  Okay.
14              MR. GINGRANDE:  I must have missed it.  I apologize.
15              THE COURT:  I think it just came in, Attorney
16    Gingrande, because I just got my copy as well.  So if you just
17    look at your email, it might be right in the top.
18              DEPUTY CLERK UHRIN:  It was sent as a reply to
19    Attorney Esposito's email about scheduling this hearing.  The
20    Re: line is today at 4:00 p.m. Zoom hearing and it came from
21    Tracy.
22              MR. GINGRANDE:  Okay.  Thanks.  I'm trying to find
23    it now.
24              Oh, now I see it.  Yup.  Thank you.  It was in the
25    body of the email.  Got it.  Thanks.
```

1    THE COURT:  There are two requests to be excused and

2  they both seem like legitimate excuses.  Definitely should be

3  kept in the jury pool, they shouldn't be completely excused

4  from service, but I certainly am willing to hear from counsel

5  and, obviously, Mr. Craigue, if you need at any point to have a

6  breakout room to talk about this with your counsel, you have

7  every right to do that.  So all you'd need to do is just say,

8  Judge, can I speak to my lawyers.  It's important that you're

9  part of this impanelment of your jury.

10    So let me get from counsel your thoughts with

11  respect -- let's start with -- start with number one, and get

12  your thoughts.  This is the person who is unable to find child

13  care for two days in the stretch of time that we need her to

14  serve.  What I don't understand is there must have been some

15  miscommunication from the start because obviously if she agreed

16  to serve on the jury, she would have known that it would be

17  from today forward through Monday of next week.  But there

18  appears to have been some miscommunication and she's unable to

19  find child care for June 8th or June 11th.

20    Let me hear from counsel.  What do you think?

21    MS. GRAHAM:  Would you -- I can start, your Honor.

22    We have --

23    THE COURT:  Go ahead.

24    MS. GRAHAM:  -- no objection and I, prior to our

25  Zoom meeting, had a telephone conference with Mr. Craigue and

1   he agrees and so we do not have an objection.

2           THE COURT:  Okay.  Government, what's your position

3   on number one?  We can move her in -- keep her in the jury

4   pool, obviously, but how do you feel about giving her an

5   excuse?

6           MR. DAVIS:  No objection, Judge.

7           THE COURT:  Okay.  That's easy then.  If you guys

8   agree on one, I'm guessing you agree on two.  Two seems more

9   compelling, in a way.

10          It looks like she's admitting there was some sort of

11  miscommunication about the time frame and she does have the

12  type of job that if she described it to me in person I'd look

13  at you and get your thoughts and we'd probably all agree that

14  she should probably not serve and might even be distracted by

15  serving because of the -- missing her work.

16          So what do you guys think about number two?

17          MS. GRAHAM:  Again, we have no objection and --

18  after consulting with Mr. Craigue as well.

19          THE COURT:  All right.  Government?

20          MR. DAVIS:  Same thing, Judge.

21          THE COURT:  Okay.  That was easy.  That really was

22  the purpose of the hearing.

23          So anything else we in should talk about while we're

24  here?

25          MS. GRAHAM:  Yes, your Honor.

1        THE COURT:  I'm very happy to be breathing, frankly.

2   I couldn't breathe this morning.  So I'm -- I'm feeling very

3   good.  If you need to talk to me about something, go right

4   ahead.

5        MS. GRAHAM:  Thank you, your Honor, if I may.

6        So over the weekend we had received a Giglio letter

7   from -- regarding Christopher Erickson's disclosure during his

8   trial prep and so I then filed a motion placing the Court and

9   the parties on notice of that potential cross-examination.

10        What I wanted to do is to revisit yet again my

11   motion regarding the 2017 injury now that there really is new

12   evidence.  Specifically, my understanding of the Court's

13   position was that the injury was coming in to show that there

14   was a worker's compensation discussion and now that we know

15   that there was no discussion between Mr. McKenna and

16   Mr. Craigue, then it would seem to be that there is then no

17   relevance to the 2017 injury and so I think it's appropriate

18   now to revisit that prior to beginning trial.

19        THE COURT:  All right.  Attorney Davis or Gingrande?

20        MR. DAVIS:  So I'll -- I'll yield to Mr. Gingrande.

21        MR. GINGRANDE:  Okay.  I mean, I think that's -- we

22   are on the same page.  That was the reason we were going to

23   introduce that injury.  I think that absent Mr. Erickson

24   testifying to a specific conversation in the context of that

25   injury, we won't seek to admit it.  So we're in agreement.

```
1              THE COURT:  Okay.  So the government is saying we're

2    not going to ask him anything about the 2017 injury; we,

3    therefore, agree essentially without that worker's comp

4    evidence, 2017 injury is not relevant.

5              How do you respond to that, Attorney Graham?

6              MS. GRAHAM:  I'm in agreement in that we had been

7    seeking to exclude that from the beginning.  So I'm pleased

8    that that's not coming in.

9              THE COURT:  Okay.  So we can stop there.  There's

10   no -- there are no other legal issues we're going to need to

11   resolve with respect to this?

12             MS. GRAHAM:  I don't foresee any regarding that

13   specific --

14             THE COURT:  Okay.

15             MS. GRAHAM:  -- issue if it's not coming in.

16             THE COURT:  Okay.  Well, that is good.  I'm glad we

17   went over that.  That simplifies things.

18             And let me just say for tomorrow, I think I've

19   finally gotten used to the whispering technology, let's call it

20   whispering technology, for the jury selection.  I think

21   Attorney Davis has it down.  He's whispering.  And I think,

22   Attorney Graham, you're whispering.

23             Attorney Mirhashem, you are not whispering, sir.

24             MR. MIRHASHEM:  Not a good whisperer.  I'm sorry.

25   And I touched the thing.  That screws things up, too.
```

1          THE COURT:  So I think tomorrow, and myself as well,

2   we've got to whisper with these witnesses so that others around

3   us are not hearing what we're saying.  But the technology works

4   fantastic.  It's just -- it took me a few people to get used to

5   it and so I think I am at least used to it and I think we'll be

6   able to move through it more quickly, I hope, tomorrow.  Also

7   I'll be able to breathe, so that will help.

8          So we've got eight of 36.  So we'll get it done --

9   we'll get it done before noon, I hope, and then we'll open --

10  opening statements and put on as many witnesses as you can get

11  in before 4:00.

12          Did you want to say something, Attorney Davis?

13          MR. DAVIS:  Yes, Judge.  Just briefly.

14          We would like to propose a jury instruction about

15  OSHA and OSHA jurisdiction.  I think I'll have it tonight, I

16  hope, but I just wanted to flag that.  We had not proposed that

17  earlier, but I think it's -- it's important for the jury to

18  understand and it's certainly relevant to the materiality

19  element to understand what OSHA is doing and what OSHA's

20  jurisdiction is.  And I have a -- at least the beginning of a

21  jury instruction, so I just wanted you to know we think we have

22  that coming shortly.

23          THE COURT:  Okay.  Good.  Let me ask -- that is

24  jogging my memory that I -- I obviously have entered -- allowed

25  the introduction of the death of Mr. McKenna over defense

1 counsel's objection.

2        Having looked through some of the exhibits, I

3 noticed it looks like it was a diabetic episode of some sort

4 that Mr. McKenna may have had?

5        MR. DAVIS:  He certainly was a diabetic and he had

6 been dizzy right before.  I don't think anyone knows if --

7        MR. CRAIGUE:  Yeah, we do.

8        THE COURT:  Right.

9        MR. DAVIS:  -- if he actually fainted or not.  But

10 it certainly -- it certainly is a factor.

11        THE COURT:  And what I just want the jury to

12 understand is that the case does not deal with that; that

13 there's no issue of Mr. McKenna -- Mr. Craigue having caused

14 that or the workplace having caused that.

15        So I just am wondering how you want to address that.

16 Is that something you want to do by stipulation or just do it

17 in your opening, if the government makes it clear to the jury

18 this case is not about that, there is no evidence of that,

19 something like that.  Because they're going to hear about that,

20 I think, early in the case and I don't want --

21        MR. DAVIS:  Yeah.

22        THE COURT:  -- them to obviously leap to the

23 conclusion that somehow it was workplace safety.

24        MS. GRAHAM:  Your Honor, what I'll say is I believe

25 the medical examiner report showed that I think his sugar level

1    or -- was --

2              THE COURT:  Was off the charts.

3              MS. GRAHAM:  Yeah.

4              THE COURT:  Right.  But I -- the jury doesn't need

5    to know the exact specifics, but it does look as though it was

6    not related at all to a workplace safety issue and I just want

7    to make sure -- I'm -- I see the relevance and probative value

8    of the death, but I also understand the defense counsel's

9    objection to it, not wanting it in.

10             Obviously it -- the prejudice can be completely --

11   you know, can be severely limited and restricted, frankly, if

12   the jury learns early on that it didn't have anything to do

13   with workplace safety and the case doesn't deal with that.  And

14   I know that's not an issue you're pushing at all, so I was

15   thinking maybe the easiest way to handle it would be have the

16   government's opening address it.  But I'm -- I'm open to

17   addressing it in whatever way defense counsel, government,

18   thinks makes the most sense.

19             MR. DAVIS:  So, Judge, I would say that we -- we

20   certainly agree that there is no allegation that this was a

21   workplace death or that Mr. Craigue is responsible in any way

22   for that death.  We're not going to introduce evidence that he

23   was.

24             I'm a little less -- I mean, I think it could be

25   problematic to say, well, there is absolutely -- nothing about

this case has to do with workplace safety because the OSHA
inspector would say, well, there is such thing as fall
protection and a lot of what he was investigating and talked
with Mr. Craigue and many others about was was there fall
protection on the roof, was there fall protection used.  And my
guess is if fall protection had been used that fainting from
diabetes might not have been fatal.

And so it may not be as simple as -- as saying as a
matter of fact, workplace safety had nothing to do with the
death.  Workplace safety has nothing to do with the charges
here and with what the government is seeking to prove.

And, again, we -- what we -- and one other the
complication, I think, is we do need to establish what OSHA is
and what OSHA is doing here.  And certainly OSHA -- and we
intend to introduce that you investigate accidents at
workplaces and you enforce workplace safety regulations and you
have jurisdiction at a place where an employee works for an
employer and that's right in the statute and what I'll -- what
I'll submit.

But the point being that when an OSHA investigator
goes into a site, one of the first things he does or tries to
do is establish who are the employees; is someone here who is
an employee.  Because if there are no employees, there's
actually no OSHA jurisdiction.

And so that question is very material to his

1  investigation and the government does need to put on evidence

2  of that.  And not just evidence, but law on that point.

3            So -- and I'm sort of rambling here, but we are

4  going to -- absolutely we're not going to ask what -- we're

5  going to say that ▮▮▮▮▮▮ is going to say that he fell, he

6  was on the ground and obviously injured, he called 911.

7  There's going to be no other description, nothing about blood

8  -- there actually was blood there -- and we're, you know,

9  cautioning all the witnesses about that.

10           And I'm -- I'm happy to say in opening, and maybe

11 that's a very -- you know, the right way to do it is say in

12 opening, this case is not a -- is not a workplace safety case

13 and there is no allegation before you or there's no allegation

14 that Mr. Craigue is responsible for the death that you'll hear

15 about, something like that.

16           You know, I didn't want to volunteer that because

17 maybe the defense doesn't want the -- that raised before the

18 jury.  I'm not sure.  And --

19           THE COURT:  Let me -- let me hear what the defense

20 thinks.  Let me -- I appreciate that and I appreciate handling

21 this in a way that would be consistent with my decision to let

22 it in.  I'm obviously letting it in --

23           MR. DAVIS:  Right.

24           THE COURT:  -- because I know it's not your theory

25 of the case in any way.  But if there is any way in which the

1    jury's going to be allowed to speculate that his death was in

2    any way caused by, I think, the workplace, then I'm going to

3    reconsider my willingness to admit the evidence because then it

4    becomes -- prejudice really does outweigh probative at that

5    point for me.  If the jury's going to be angry that he died at

6    the workplace, which they could be, they could be concerned

7    about it -- they need to understand that's not what this case

8    is about and you're not going to hear evidence that that was

9    caused in any way by any sort of workplace safety issue.

10            Yes, OSHA investigates workplace safety and that's

11   important and I understand what you're saying there.  And

12   you're correct, I overstated I think at the beginning when I

13   suggested that we would say that there's really no workplace

14   safety issues in the case.  Obviously those come up.  But with

15   respect to his death, the jury needs to understand that that is

16   not a part of this case, that in no way is Mr. Craigue being

17   held responsible for that and in no way are we suggesting that

18   or is the government suggesting that.

19            If that cannot be conveyed to the jury somehow in a

20   way that I'm comfortable with, then I think prejudice starts to

21   outweigh probative.

22            So that's my concern.  Let me hear from defense

23   counsel.

24            MS. GRAHAM:  Again, your Honor, that has been our

25   concern from day one, that the death and evidence of the death

1    would be extremely prejudicial and that it would anger the jury

2    and that they would take that anger out on our client.

3           Without knowing exactly what the government plans to

4    say, I'd like to, you know, defer, I guess, comment until I'm

5    able to see what they suggest because I think, you know, as

6    we've previously said, the death, I think, is incredibly

7    prejudicial and we would prefer that it not come in at all.

8           But understanding what the Court's ruling is, I

9    think that it would be very important for me to review what the

10   government's suggestion is before I, you know, make --

11          THE COURT:  I understand.  I understand that.

12          MR. DAVIS:  And I'd be happy to send that, Judge.

13   I'm just writing here as we speak -- you know, I'm writing a

14   sentence.  I could say there is no evidence in this case that

15   the defendant is responsible in any way for the death of

16   Kenneth McKenna and the defendant is not charged in any way --

17   I haven't written that yet, but the point that there is no

18   evidence and there's no charge we totally agree with and I'm

19   happy to say.

20          THE COURT:  Well, maybe that addresses it.  I'll let

21   defense counsel work with you on that, maybe via email tonight.

22          I would like to address this before we start trial

23   because it needs to be something that's made very clear to the

24   jury, that they are not to be used -- in other words, if this

25   came in, I would give a limiting instruction of some sort

1    anyway and just say to the jury, you may not use this to in any

2    way find Mr. Craigue guilty on the false statement charge.  It

3    is not relevant to the false statement charge except for the

4    question of credibility.  There's no evidence, no suggestion,

5    that he is responsible for this death.

6            It needs to be made so clear to the jury that that

7    is the case.  Otherwise, then there is a suggestion left in

8    their minds, well, there may not be evidence, there may not be

9    a charge, but the government is somehow suggesting that he may

10   be culpable.  Again, that needs to be removed from the jury's

11   consideration, possible consideration, for me to be comfortable

12   finding that the death is admissible because its probative

13   value is not substantially outweighed by the prejudice.

14           When I start to hear that the jury might be able to

15   speculate about that, then I --I'm very concerned about

16   prejudice.  My understanding was this was just not even going

17   to be an issue in the case; the government would -- would not

18   be pursuing this in any way; and I was thinking that this could

19   be taken, frankly, from the jury's, you know, speculation

20   altogether somehow.  But if we can't do that, I will tell you

21   that I do think then the death becomes substantially

22   prejudicial.

23           Again, this is the problem, I think, in some ways

24   with ruling in advance because I don't know exactly how the

25   evidence is going to come in.  But during our arguments back in

1 February or whenever they were, I certainly got the impression

2 the government was not going to be pursuing in any way, shape,

3 or form anything close to a suggestion even that Mr. Craigue

4 would be in any way responsible for this death.  So my

5 ruling --

6             MR. DAVIS:  That's --

7             THE COURT:  -- was definitely made with that

8 understanding.

9             MR. DAVIS:  I'm just hoping that nothing I've said

10 makes you think otherwise.  That has -- that's always been our

11 position.  And maybe something I've said made you think that

12 I'm trying to get the judge -- the jury to speculate.  That's

13 not --

14             THE COURT:  I did hear you say that had there been

15 these particular things in place, he may not have died.  That

16 concerns me a little bit.

17             MR. DAVIS:  So -- and I don't know, Judge.  I know

18 that fall protection and whether fall protection was used was a

19 big part of what the OSHA inspector talked about and our case

20 entirely excludes that part.  We don't ask the OSHA inspector

21 about it.  We're not going to talk about fall protection.  We

22 never intended to in our -- and I don't suggest we're going to

23 talk about that.

24             I'm just saying if -- if a factual pronouncement is

25 made, if a finding is made, essentially, that -- that workplace

1    safety had nothing to do with the death of Kenneth McKenna just

2    as an empirical matter of truth, I'm just saying I'm not sure

3    that's right because fall protection was an issue and it -- and

4    it could be, I don't know, but it could be that fall protection

5    might have made a difference here.

6              I'm not saying that we want the jury to think about

7    that and I'm not saying we intend to suggest that to the jury.

8    We're not.  I mean, the -- we're staying completely away from

9    fall protection.  I'm just -- but I'm just saying if the Court

10   is -- wants to say or sort of say, you know, what the fact is,

11   I'm just saying that fall protection could have mattered, I

12   think.  I just don't know.  But I'm --

13             THE COURT:  Okay.  Well, that --

14             MR. DAVIS:  Yeah.

15             THE COURT:  I just think that leaves a jury to

16   speculate that fall protection -- there was no fall protection

17   and to the extent there's any testimony about that -- and,

18   again, I don't know the case.  You do.

19             But if the jury's allowed to speculate about that,

20   we obviously have some construction workers with experience who

21   could be on our jury who could say, hey guys, if there had been

22   fall protection -- now, again, I haven't ruled on photos and

23   photographs and whether or not those show fall protection, I

24   don't know, but ultimately if the jury can speculate that

25   something Mr. Craigue did might have caused his death, then I

1  am much more inclined to keep the evidence of death out.  So

2  that's why I'm saying -- I'm urging that perhaps you can come

3  up with some language that would make that clear to the jury

4  that they are not to speculate about that.  Because I would

5  tell them that in a limiting instruction; you are not to

6  speculate about that.

7         But, again, I haven't drafted a limiting

8  instruction.  I was hoping that counsel would come up with a

9  stipulation or some sort of way of really minimizing any sort

10  of prejudice from this.

11         So that's where I'll leave it.  I'll leave it with

12  you, in your hands, and -- and then just -- if we could just

13  revisit it.  Obviously it's important for your opening and --

14  for both of your openings.

15         Attorney Mirhashem?

16         MR. MIRHASHEM:  I just wanted to -- if you were

17  finished with that, a related --

18         THE COURT:  Yes.

19         MR. MIRHASHEM:  -- thing I wanted to bring up is

20  what Attorney Davis just said now about OSHA jurisdiction.  I

21  mean, obviously he's going to draft an instruction and we'll

22  have a chance to address it with the Court, but we've always

23  assumed that obviously for materiality the government is going

24  to establish that the status of the worker, employee versus

25  independent contractor, matters to OSHA.  So that's not an

1    issue.

2           But I've heard Attorney Davis say that they want to

3    have the jury learn, perhaps from the Court, that OSHA's

4    jurisdiction turns on an investigation of safety matters.  We

5    strongly object to that because there's a dead body, then OSHA

6    comes to investigate safety?  I mean, that cat is out of the

7    bag.  They don't need that.  The materiality turns on whether

8    these individuals were workers or independent contractors.  And

9    we object to in any way connecting that to safety.

10          This case is not about safety.  It's not about

11   death.  An OSHA investigator shows up.  OSHA has jurisdiction

12   to be at a workplace, check things out, if the persons there

13   are employees.

14          So we certainly don't want the judge to be telling

15   the jury about safety and we would object to the government

16   injecting safety into examination of OSHA witnesses.  I think

17   the Court previously ruled that -- and I understand it was in

18   limine -- that safety concerns, safety findings, are out, and

19   so there's no reason to talk about safety in connection with

20   OSHA's jurisdiction over this matter.

21          OSHA would have had jurisdiction to investigate at

22   this worksite depending on whether or not the workers were

23   employees.  That's all that's really relevant for this case and

24   anything beyond that certainly would be highly prejudicial.

25          THE COURT:  I'll give the government, obviously, an

1  opportunity to respond to that, but I would say just my

2  understanding when I ruled on this when we first argued it was

3  that the death was relevant to the fact that OSHA's on the site

4  in the first place and that it provides some sort of motive for

5  Mr. Craigue to lie and it's relevant for that reason.

6         Now, the fact is ultimately the death is not

7  something that is caused by Mr. Craigue -- and, again, I'm

8  asserting that -- I'm overstating that -- but in terms of what

9  the jury understands during this trial, they are not to be

10  speculating about the death having been caused by Mr. Craigue.

11  If that can happen, then the death stays out.  It's out.  If

12  that is something that the jury can speculate about, then it's

13  just not coming in, because it's substantially -- the prejudice

14  substantially outweighs the probative.

15         However, it's probative for the reasons I've held

16  it's probative in the first place and OSHA is there because a

17  worker at a workplace died.  But that's just -- that's just

18  part of the case, Attorney Mirhashem.

19         So the fact that they're investigating workplace

20  safety is part of the story, I think, but it's -- the fact is

21  that his death was not in any way caused by Mr. Craigue and the

22  jury cannot be speculating about that.

23         So I say both at the same time.  It's relevant for

24  that reason, but ultimately they need to know, as a matter of

25  fact, this is not something they are to speculate about.  Yes,

1    OSHA can be there in the first instance for that reason, to

2    examine workplace safety, but ultimately he lied, allegedly, at

3    that time.  There is a motive to lie.  That's -- that's part of

4    the government's allegation and that's probative and it's

5    significantly probative.  But if the jury then is allowed to

6    somehow speculate that the government or anyone else in the

7    courtroom thinks that he somehow caused the death, then I think

8    the prejudice substantially outweighs the probative.

9              So let me just say -- I just wanted to say, Attorney

10   Mirhashem, that my understanding all along was that this is

11   part of the story; that OSHA is there because of this workplace

12   accident and ultimately because of the death.  Now, I don't

13   know that for a fact, but ultimately the government can

14   obviously fill me in in terms of what the evidence will show.

15             But what's your response to that, Attorney Davis?

16             MR. DAVIS:  I think, Judge, I agree with everything

17   you said.  The -- of course, safety is in the title of the

18   agency.  OSHA is the Occupational Safety and Health

19   Administration.  I don't know how to try the case without at

20   least the jury understanding what OSHA is, what it does, and

21   that this is an OSHA investigation and that the statement here

22   is material to that investigation.  There's no way to try the

23   case otherwise, I don't think.

24             I agree with Mr. Mirhashem that there are no safety

25   findings that we're going to talk about or should be gone into

1    and no discussion about safety issues.  We're not going to do

2    that -- you know, that's -- again, that's what we understand

3    the rules are.  We're not going to talk about the safety

4    investigation.

5              The only thing I'd just say to sort of modify the

6    Court's statement a little bit is the death -- there's no

7    requirement of a death for OSHA to respond.

8              THE COURT:  Right.

9              MR. DAVIS:  So a serious worker accident would have

10   merited the same response, I think, and this officer, Officer

11   Kelly, got on the scene before anyone knew of the death.  So

12   what was known was there was a serious fall and an injury and

13   that's what got him there and he learned there that Mr. McKenna

14   had passed.

15             So, anyway, I mean, I think we can do it and I -- I

16   understand both side's points and I'm -- I think we're -- we're

17   happy to reach a stipulation and also I think it's totally

18   proper to instruct the jury not to speculate.  So all of that

19   is quite doable.

20             But, again, I think, as we also said at the

21   beginning, I don't know how to try this case if the fact of

22   McKenna's death is -- is in doubt or, you know, wondered about

23   or -- I mean, the whole case is about that death, including

24   the -- the -- the potential reason why Mr. Craigue would make a

25   false statement.

1          So, anyway, I think it can be done.  I think it has

2     to be done to have a trial.  And -- and I think that's all I

3     have.

4          THE COURT:  Okay.  Well, I -- I think it can be done

5     as well, so hopefully you can confer and give me some language

6     tomorrow that I will be comfortable with that makes it clear

7     the jury is not to speculate.

8          So I will -- I'll wait -- we'll meet briefly before

9     we go in to the jury or we can meet after we pick our -- after

10    we get our 16 in the box.  It might be close to lunch and we

11    can meet about this at that point.

12         So I appreciate this.  Thank you, both -- thanks,

13    everybody.  Is there anything else before we get off?

14         MR. MIRHASHEM:  Your Honor, I'll just say I think

15    you already indicated, but just to be clear, any stipulation we

16    enter into would be in light of the Court's ruling against us

17    on --

18         THE COURT:  Yes.

19         MR. MIRHASHEM:  -- the issue and not a waiver of

20    that issue.

21         THE COURT:  You've preserved the issue, Attorney

22    Mirhashem, and objected to any introduction of Mr. McKenna's

23    death.

24         MR. MIRHASHEM:  Thank you.

25         MS. GRAHAM:  May I ask a question?

1          THE COURT:  Attorney Graham.

2          MS. GRAHAM:  The jury was going to call at 5:00.  Do

3   we have any update as to whether or not the AC is going to be

4   up and running tomorrow?

5          THE COURT:  It's fixed.

6          MS. GRAHAM:  Okay.

7          THE COURT:  I thought maybe you would have gotten

8   that email or I would have said it first thing on the -- on

9   the -- at the hearing.

10          Yes, it's been fixed and so we should have our

11   normal, breathable, nice fresh courtroom tomorrow.

12          And, you know, it's interesting.  It was hot, hot,

13   hot, but the $CO_2$ level was well below 800.  So even though it

14   was terrible, the quality of the air was awful and it was hot,

15   the $CO_2$ level was low because we have everybody so spread out

16   and the ceilings are high and it's such a big room.

17          So thank goodness in terms of just anything COVID,

18   the $CO_2$ level was -- was well below 800 the whole time.

19          MS. GRAHAM:  And what time would you like us to be

20   in the courthouse tomorrow, your Honor?

21          THE COURT:  I think we're going to start at 9:00

22   a.m., so whatever makes you most comfortable.  We don't need to

23   meet ahead of time unless -- unless you want to.  I'll be there

24   around 8:30.

25          MS. GRAHAM:  Thank you.

1               THE COURT:  All right.

2               MR. MIRHASHEM:  Thank you.

3               THE COURT:  Good.  See you tomorrow.  Court's

4    adjourned.

5               MR. DAVIS:  Thank you.

6               (Proceedings concluded at 4:37 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 7/22/2021          */s/  Liza W. Dubois*
                              LIZA W. DUBOIS, RMR, CRR