UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * * * * *
                                      *
UNITED STATES OF AMERICA              *
                                      *   19-cr-142-01-LM
            v.                        *   June 11, 2021
                                      *   9:10 a.m.
      NATHAN CRAIGUE                   *
                                      *
* * * * * * * * * * * * * * * * * * * *


**SEALED** TRANSCRIPT OF JURY TRIAL
DAY FIVE
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY


APPEARANCES:


For the Government:        John S. Davis, AUSA
                           Aaron G. Gingrande, AUSA
                           U.S. Attorney's Office




For the Defendant:         Behzad Mirhashem, Esq.
                           Dorothy E. Graham, Esq.
                           Federal Defenders Office




Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
 1                      P R O C E E D I N G S

 2              (CHAMBERS CONFERENCE)

 3              THE COURT:  All right.  So I've just received

 4   document 130, which is the government's assented to motion to

 5   dismiss the case with prejudice, has the assent of defense,

 6   and that motion is granted.

 7              So now I'll just bring the jury in and thank them

 8   for their service, say something nice.

 9              Yes.

10              MS. GRAHAM:  Could I just add one thing for the

11   record, your Honor --

12              THE COURT:  Yes.

13              MS. GRAHAM:  -- that is not included in the motion.

14              Part of our agreement and consent to the dismissal

15   was the condition that no federal criminal charges arising

16   from the events in this case would be brought and that is our

17   understanding, and there is no objection to that as well.

18              MR. DAVIS:  We agree.

19              THE COURT:  All right.

20              MR. MIRHASHEM:  And there's a second matter, your

21   Honor.

22              THE COURT:  There's always another matter in this

23   case.

24              MR. MIRHASHEM:  This is the last one.

25              THE COURT:  Okay.
```

1          MR. MIRHASHEM:  The second matter is that yesterday

2     in open proceedings the Court conducted an inquiry from the

3     government about the nature of the evidence.

4          We received a report about that matter today in

5     discovery from the government, and we have two issues with

6     that.

7          One, we believe that the Court should obtain a copy

8     of that document whether or not it's under seal so that the

9     Court can see the full representation as far as what this

10    report says, who knew, who didn't know, what William Carroll's

11    involvement was, what Federal Agent Sean Roberts's involvement

12    may have been.

13         All of that I think is matters that given the

14    representations yesterday the Court should be aware of and

15    make its own judgment of the report.

16         The other matter is we assented to sealing the CI

17    packet.  We do not believe that this report should be subject

18    to that order.  If the government wants to redact certain

19    information, you know, we can discuss redaction, but the fact

20    that our client who for two years has been prosecuted in this

21    case, the government did not reveal that there was a -- this

22    report says there was $80 paid to this person who testified in

23    grand jury against our client.

24         There is no -- this was discussed in open court

25    yesterday.  The Concord PD knew about it.  The Concord police

1    officer says he would not have engaged -- I mean, the wording,

2    I may be off, but he basically said he would have kept Agent

3    Roberts posted about this.

4              This is discovery that was provided to us.  It's

5    nothing but individual drug sales by ██████.   ████████

6    has -- you know, every time one of our clients gets convicted

7    the next day there's a press release on their website.  This

8    matters.  I had a client who just lost a job two days ago

9    based on their press releases.  Why should there be any

10   limitation on our client's ability to tell the world about

11   what happened to him?

12             MR. DAVIS:  Judge, we ask that the report -- we

13   have no objection to the Court seeing it.

14             The report documents our phone call to Mr. Carroll

15   late yesterday after court.  The Department of Labor agent

16   worked assiduously overnight to get it done, and we sent it

17   within ten minutes to the defense.  We have no objection to

18   the Court seeing it of course.

19             We do ask that it be subject to the same protective

20   order because it clearly reveals that ████████ was signed up

21   as a CI, and being signed up as a CI, and discusses how that

22   came about in May of 2019, and so in the same spirit that the

23   CI file was sealed, we would ask that this be sealed.

24             Now, if there are -- so we -- you can do a press

25   release, whatever you want, about the case being dismissed,

1    but --

2              MR. MIRHASHEM:  We don't do press releases.  Our

3    client -- my suggestion -- I'm sorry.  I didn't mean to

4    interrupt.

5              MR. DAVIS:  Anyway, I mean, part of the point of

6    this is to protect what's left of the confidentiality of █████

7    █████ cooperation.  He didn't do anything wrong.  █████

8    █████.  He worked for twelve days for the Concord police.

9    There's nothing derogatory in their file about him.  That

10   cooperation has been kept secret, and we have investigated --

11   at your request we've disclosed -- you have everything that we

12   have about it.  All we ask is don't put in the press that █████

13   █████ was a paid cooperator.

14             MR. MIRHASHEM:  I'm certainly not going to put

15   anything in the press.  My concern is when our clients under a

16   threat of prolonged imprisonment testify pursuant to a 5K

17   agreement, the whole world learns at trial of their

18   cooperation.

19             This person got paid to cooperate against our

20   client.  We don't have any interest in harming him.  But when

21   somebody signs up to cooperate and we have his cooperation

22   agreement, then I guess in litigation we can see what he

23   understood or didn't understand.

24             I talk to clients and say you can cut five years

25   off your sentence, but you've got to know that then you're

1    going to go do the rest of the five years and everybody at the

2    prison is going to know that you cooperated.

3            When people get paid to become informants, they are

4    told we may need to disclose you to the defense.  And

5    here there was a -- you know, when the court's local rules on

6    Giglio disclosure with respect to informants is actually

7    followed, the defense gets that information to use at trial.

8            In this case the government has taken every

9    possible step to -- you know, you reindicted two days before,

10   like, a trial.  Now you want to -- the government wants to

11   terminate this and put a lid on it.

12           My job as my client's lawyer is I have his

13   interests, but he has a right to get the discovery in this

14   case and do with it as he sees fit unless the Court determines

15   that it's subject to a protective order.

16           So my proposal as to that would be -- I'm obviously

17   not going to, like, disclose anything and instruct our client

18   not to disclose anything.

19           We can file motions as to whether or not this

20   particular report should be completely sealed, completely

21   unsealed, redacted, but if this had been disclosed to us as

22   part of proper Giglio procedures,          would have

23   testified.  We would have cross-examined with this stuff.

24           We had a Concord Monitor reporter subpoenaed

25   because          had given a statement to him that he was a

```
 1   subcontractor.  The lawyer for the Concord Monitor is sitting

 2   out there.  The Monitor would have learned about it.  It would

 3   have been all over the news.  The Concord Monitor reporter was

 4   going to impeach this witness, and so that's the risk you take

 5   when you become a paid informant.

 6               MR. GINGRANDE:  I would like -- could I respond,

 7   your Honor?

 8               The circumstances of this situation are extremely

 9   unique in that the government did not learn about the fact

10   that he was a confidential informant until this trial had

11   already begun and we were in the middle of him testifying.

12               THE COURT:  Can I just stop you though?  That's

13   exactly the problem.

14               MR. GINGRANDE:  Oh, no.  I understand, your Honor.

15               THE COURT:  Ultimately, there was a signal in the

16   file that should have alerted the prosecution here there may

17   be some exculpatory evidence or something strange about this,

18   I'm going to look into this, and ultimately, ████████ may not

19   have ever testified and would not be in any danger at all if

20   you had followed your obligations and you had pursued this

21   with due diligence, even minimal diligence.  It took one phone

22   call, one phone call, and here we are, and ████████ is in

23   danger because of that fact, frankly.

24               So, ultimately, I will hear briefing on this.  I

25   think you could redact information to protect ████████.
```

1  That's my thinking.

2            The issue is that he was being paid money for his

3  testimony.  Why does the world need to know he was a CI?

4            Ultimately, I think that is something that is

5  something the public from Mr. Craigue's perspective can know

6  and I don't think that is going to harm████████, but the fact

7  that he was doing drug deals and getting paid I would be

8  inclined to keep that from the public and protect him as much

9  as we can.

10            MR. MIRHASHEM:  I agree that -- we would not object

11  to payments for drug deals as a CI being redacted as long as

12  it is in the public record that this man was put on trial

13  after a grand jury witness was paid to testify against him by

14  a Concord police officer whose name should be public, there's

15  no reason to seal his name, and that Agent Sean Roberts of the

16  Department of Labor was, as described in the report, in some

17  way involved.  There's no reason to seal his name.

18            THE COURT:  And I'm not saying that.  I think you

19  seal the CI information to protect████████.

20            MR. MIRHASHEM:  We don't have an objection to that.

21            THE COURT:  Okay.

22            MR. GINGRANDE:  Your Honor, would you mind if I

23  just --

24            THE COURT:  I'm sorry.  I did interrupt you.  You

25  go ahead.

```
 1              MR. GINGRANDE:  Yeah, just to finish the sentence.

 2              It was a unique situation in that at the time that

 3    the government learned he was already on the stand.  And

 4    ordinarily before we would put any witness on the stand, you

 5    know, and you're right, we would ordinarily have -- you know,

 6    had we had -- had we known and disclosed it, we would have had

 7    an opportunity to discuss ███████████the consequences of

 8    his testifying.  The fact that it would become known that he

 9    was a confidential informant, et cetera.

10              When we learned this, he was in the middle of his

11    testimony.  The government couldn't speak to him at all and

12    couldn't even inform him about what might come out.  The fact

13    that he would be the confidential informant, that fact might

14    come out.

15              So ████████was put in a position where he would

16    not know that this information, any of the information, the

17    fact that, you know, apparently that he was even paid for that

18    grand jury testimony, the fact that he was a confidential

19    informant, that any of that would come out, and we certainly

20    couldn't tell him because of the stance of this case.

21              So our position is feel free to blame the

22    government, but don't put ████████in the position where all

23    of the sudden he ends up -- you know, we had called him to

24    testify and he didn't know what the implications of that would

25    be because we didn't have the information to talk to him about
```

 1  and get his informed consent, in other words, to be a witness.

 2           So we don't believe that, you know, his -- he

 3  should be publicly just outed in that way.

 4           THE COURT:  And I think everybody agrees with that.

 5           MR. GINGRANDE:  Okay.  All right.

 6           THE COURT:  All right.  So we'll go out, we'll say

 7  hello and good-bye to the jury, I'll try to say something nice

 8  to them, and then we'll go home for the weekend.

 9           All right.  Thank you.

10           (CONCLUSION OF CHAMBERS CONFERENCE)

11           (IN COURT- JURY PRESENT)

12           THE CLERK:  This is the United States versus Nathan

13  Craigue.  It is 19-cr-142-01-LM.  Jury trial day five.

14           THE COURT:  Good morning members of the jury.

15           This is I think our fifth day of this jury trial,

16  and you have been so attentive and patient throughout.  I

17  thank you for that; as do the parties and counsel.

18           Something has come up and the trial is over.  Your

19  service is complete.

20           In short, the government discovered something that

21  led them to dismiss the case against Mr. Craigue.  So I am

22  going to dismiss you this morning.

23           Understand, however, that I am grateful to each of

24  you for your service.  You served your country for the last

25  five days.  You served as officers of the court.

1          You must have noticed that every time you entered

2    the courtroom or exited the courtroom everyone in the

3    courtroom stood to honor you, to honor you for your role in

4    this trial.

5          As you leave the courtroom today, we will all rise

6    one final time.  You deserve that honor.

7               Thank you for your service.

8               The jury is dismissed.

9               All rise for the jury.

10              THE COURT:  Court is adjourned.

11              (Conclusion of trial 9:30 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T E

2

3

4        I, Susan M. Bateman, do hereby certify that the

5   foregoing transcript is a true and accurate transcription of

6   the within proceedings, to the best of my knowledge, skill,

7   ability and belief.

8

9

10  Submitted: 7-8-21        /s/    Susan M. Bateman _____
                             SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25