IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| | ] |
| v. | ] No. 19-cr-142-LM |
| | ] |
| NATHAN CRAIGUE | ] |

**ASSENTED-TO MOTION CONCERNING PROTECTIVE ORDER**

Nathan Craigue respectfully moves the Court to enter an order stating that the document attached as Exhibit 1 to this motion will be subject to the same protective order requested by the government with respect to the Concord Police Department file of ▮▮▮▮▮▮▮, except that

(a) The redacted version of the same document, attached as Exhibit 2, is not subject to the protective order; and

(b) As to destruction of digital copies of Exhibit 1, defense counsel are not required to do any more than delete the email sent to defense counsel by the government, which contained Exhibit 1 as an attachment.

As grounds for this motion, it is stated:

1. Mid-trial, AUSA Davis and AUSA Gingrande learned of the existence of a Concord Police Department CI file for ▮▮▮▮▮▮▮ The defense agreed to the release of that file to the defense subject to a protective order. Subsequently, the government also provided Exhibit 1 to defense counsel.

2. Whether and to what extent Exhibit 1 should be subject to a protective order raises complex issues involving balancing the rights and interests of Mr. Craigue, ▮▮▮▮▮▮▮ the government, and the public. *Cf., e.g., United States v. Kravetz*, 706 F.3d 47 (2013) (discussing public right of access to Rule 17(c) materials and sentencing memoranda). Here, the parties have reached an agreement as to this

particular document and, if the Court is willing to adopt that agreement, extensive legal argument may not be necessary. Under the agreement, those portions of Exhibit 1 revealing ▇▇▇ identity and his status as a drug CI would be subject to a protective order, but those portions of the document revealing that he was paid in cash for his testimony before the grand jury, would not be. Nor would the identities of the Concord Police Department Officer who made the payment or of the Department of Labor case agent be subject to the order. This agreement strikes the right balance in the judgment of the parties.

3. With respect to the nature of the protective order, there is one difference here as compared to the CI file. The CI file was handed to defense counsel in paper form, and counsel can destroy the file upon conclusion of this case. (All that remains before that will happen is resolution of the issue at hand.) Exhibit 1, however, was emailed to defense counsel by the government. Both defense counsel certainly agree to delete the email and its attachment, but there would remain the possibility that, as part of the email backup system, a copy of the email would remain archived. Defense counsel will certainly make no attempt to retrieve the archived email.

4. AUSA Gingrande assents to the relief requested in this motion.

WHEREFORE, Nathan Craigue respectfully moves the Court enter an order stating that the document attached as Exhibit 1 to this motion will be subject to the protective order requested by the government with respect to the Concord Police Department file of ▇▇▇ ▇▇▇, except that

(a) The redacted version of the same document, attached as Exhibit 2, is not subject to the protective order; and

(b) As to destruction of digital copies of Exhibit 1, defense counsel are not required to do any more than delete the email sent to defense counsel by the government, which contained Exhibit 1 as an attachment.

                                Respectfully submitted,

                                */s/ Behzad Mirhashem*
                                Behzad Mirhashem
                                N.H. Bar #10031

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 15, 2021 the above document was served by email upon all counsel of record.

                                /s/ *Behzad Mirhashem*
                                Behzad Mirhashem

EXHIBIT 1

| **REPORT OF INTERVIEW** | **U.S. DEPARTMENT OF LABOR**  |
|---|---|
| | **OFFICE OF INSPECTOR GENERAL** |

| **Interview of:**   Detective William Carroll | **Interview Date:** June 10, 2021 |
|---|---|
| **Case Number:** I-182102224-J | **Date Prepared:** June 10, 2021 |
| **Location:**   Telephonic from 53 Pleasant Street, Concord, NH 03301 | |
| **By:** SA Eric L. Rousseau | |

OIG Form 103 (4/17)

On June 10, 2021, at approximately 3:00 p.m. OI Special Agent Eric Rousseau, Assistant United States Attorney (AUSA) John Davis, and Assistant United States Attorney Aaron Gingrande telephonically interviewed Detective William Carroll at ▇▇▇ 4442.

Special Agent Eric Rousseau identified himself and his respective agency as well as AUSAs Davis and Gingrande. The following is the sum and substance of that interview.

Carroll was asked if he recalled a report dated May 16th 2019 regarding a Concord Police Department Confidential Informant (CI) ▇▇▇ Carroll stated that he recalled a report on or about that time frame, however did not remember the exact day, nor the exact substance of the report, however, did recall a report being authored by himself around that time frame. The report was read to Carroll, who then acknowledge that the report was indeed authored by him and was correct to the best of his remembrance. The report was dated May 16, 2019 and stated in sum and substance, that ▇▇▇ had been a source of corroborated information to Carroll for years and was currently cooperating with a federal investigation by testifying in a Grand Jury Investigation. Since ▇▇▇ past information had previously bore fruit, he was cooperating in an ongoing federal investigation, and wanted to become a paid CI for Concord Police, ▇▇▇ was paid $80 by Carroll out the Concord Police Department's funds.

Carroll did not remember who initiated the CI request, whether it was himself or ▇▇▇ Carroll recalled that they had come to an agreement that if ▇▇▇ testified at Grand Jury, he would be paid for cooperating. On May 16, 2019, one day after ▇▇▇ Grand Jury testimony, Carroll met ▇▇▇ and paid him a sum of $80 for his "cooperation".

Carrol stated that he believes it was SA Sean Roberts who told him originally about the Grand Jury, but could not be certain.

Carroll stated that SA Roberts was his point of contact with the government prosecutorial team. Carroll stated that "I do not believe I would have paid ▇▇▇ if Sean didn't know", however; did not recall if he had notified SA Roberts of the payment or his subsequent use as a paid CI for Concord Police.

Carroll stated that it was his belief that ▇▇▇ understood that the reason for his payment was for testifying in the Grand Jury and stated that "yes, we do not pay in advance for deals." Carroll also stated that ▇▇▇ was paid for his cooperation in testifying only, not for a specific testimony or outcome. Carrol was asked when the agreement was made between himself and ▇▇▇ for payment to testify. Carroll could not recall, however said, it would have been sometime before the Grand Jury.

**Interview Of:** Detective William Carroll
**Case Number:** I-182102224-J
**Interview Date:** June 10, 2021
Page **2** of **2**

Carroll stated that ▓ was used as a paid CI several times over a period of approximately 12 days, from May 16, 2019. The last date of payment was approximately May 28, 2019. Carroll stated that the reason for ▓ brief time as a paid CI was "his heart just wasn't in it". Carroll felt that ▓ did not mind passing along information, but when it came to actually doing drug buys, it just wasn't for him. Carroll stated that ▓ status as a CI would have expired around ▓ 2020, because after a year of inactivity, a CI's status expires.

Carroll stated that the entire time he knew ▓ he had not discovered any derogatory information that would affect ▓ credibility or suggest wrong doing. ▓ was not passing along information or operating as a CI in lieu of charges or for other favorable treatment.

Carroll stated that ▓ was exclusively his CI and that no other officers in the Concord Police would have any knowledge of ▓ or his activities.

Carroll stated that there was no compensation to ▓ for his initial cooperation with OSHA and other federal investigators nor did ▓ request money to testify at the Grand Jury.

Carroll stated that while ▓ was told to keep his CI status confidential, there was no expectation that ▓ would not disclose his status as a CI to federal prosecutors and law enforcement.

The interview concluded at approximately 4:00 p.m.

End of report.

*Eric L. Rousseau*          06/10/2021

EXHIBIT 2



# REPORT OF INTERVIEW

**U.S. DEPARTMENT OF LABOR**
**OFFICE OF INSPECTOR GENERAL**

| Interview of: Detective William Carroll | Interview Date: June 10, 2021 |
|---|---|
| Case Number: I-182102224-J | Date Prepared: June 10, 2021 |
| Location: Telephonic from 53 Pleasant Street, Concord, NH 03301 | |
| By: SA Eric L. Rousseau | |

OIG Form 103 (4/17)

On June 10, 2021, at approximately 3:00 p.m. OI Special Agent Eric Rousseau, Assistant United States Attorney (AUSA) John Davis, and Assistant United States Attorney Aaron Gingrande telephonically interviewed Detective William Carroll at ▓▓▓▓-4442.

Special Agent Eric Rousseau identified himself and his respective agency as well as AUSAs Davis and Gingrande. The following is the sum and substance of that interview.

Carroll was asked if he recalled a report dated May 16th 2019 regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Carroll stated that he recalled a report on or about that time frame, however did not remember the exact day, nor the exact substance of the report, however, did recall a report being authored by himself around that time frame. The report was read to Carroll, who then acknowledge that the report was indeed authored by him and was correct to the best of his remembrance. The report was dated May 16, 2019 and stated in sum and substance, that ▓▓▓▓▓▓ was currently cooperating with a federal investigation by testifying in a Grand Jury Investigation. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ he was cooperating in an ongoing federal investigation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was paid $80 by Carroll out the Concord Police Department's funds.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Carrol recalled that they had come to an agreement that if ▓▓▓▓ testified at Grand Jury, he would be paid for cooperating. On May 16, 2019, one day after ▓▓▓▓ Grand Jury testimony, Carroll met ▓▓▓▓ and paid him a sum of $80 for his "cooperation".

Carrol stated that he believes it was SA Sean Roberts who told him originally about the Grand Jury, but could not be certain.

Carroll stated that SA Roberts was his point of contact with the government prosecutorial team. Carroll stated that "I do not believe I would have paid ▓▓▓▓ if Sean didn't know", however; did not recall if he had notified SA Roberts of the payment ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Carroll stated that it was his belief that ▓▓▓▓ understood that the reason for his payment was for testifying in the Grand Jury ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Carroll also stated that ▓▓▓▓ was paid for his cooperation in testifying only, not for a specific testimony or outcome. Carrol was asked when the agreement was made between himself and ▓▓▓▓ for payment to testify. Carroll could not recall, however said, it would have been sometime before the Grand Jury.

**Interview Of:** Detective William Carroll
**Case Number:** I-182102224-J
**Interview Date:** June 10, 2021
Page **2** of **2**

Carroll stated that the entire time he knew ▓▓▓ he had not discovered any derogatory information that would affect ▓▓▓ credibility or suggest wrong doing. ▓▓▓

Carroll stated that ▓▓▓ no other officers in the Concord Police would have any knowledge of ▓▓▓ or his activities.

Carroll stated that there was no compensation to ▓▓▓ for his initial cooperation with OSHA and other federal investigators nor did ▓▓▓ request money to testify at the Grand Jury.

The interview concluded at approximately 4:00 p.m.

End of report.

*Eric L. Rousseau*          06/10/2021