UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19-cr-142-LM |
| v. | ) | |
| | ) | FILED UNDER SEAL AT LEVEL 1 |
| NATHAN CRAIGUE | ) | |

## UNITED STATES' SEALED SUPPLEMENTAL RESPONSE TO MOTION OF IMRAN ALRAI TO INTERVENE

The United States of America supplements its Response to Imran Alrai's Motion to Intervene (ECF #149) (the "Response" and "Motion," respectively) as follows:

Based on an agreement with Imran Alrai, the government previously moved to modify the protective order in this case to provide Alrai access to sealed or redacted documents so he could use them in defending his pending criminal case. Alrai's counsel represented in negotiations that if the government provided the documents, it would be "in lieu of a Motion to Intervene in *Craigue*" to unseal documents. Alrai and his counsel also agreed to be bound by the Court's protective order protecting these documents. Subject to that understanding, the government moved to modify the protective order to give Alrai access to the sealed documents, which motion the Court granted. Now, having already received and reviewed the information in the sealed documents, Alrai moves to intervene in *Craigue*.[1]

---

[1] Alrai seeks to unseal the following documents: (1) government's motion for protective order (ECF #132), with (2) accompanying motion to seal (ECF #133); (3) defendant's motion for protective order with exhibits (ECF #134), with (4) accompanying motion to seal (ECF #135); (5) transcript of night Zoom conference on Jury Trial Day 4, 6/10 (ECF #136); (6) transcript of Jury Trial Day 5 on 6/11 (ECF#141); (7) transcript of afternoon chambers conference on Trial Day 4 (ECF #142); (8) government's motion to modify protective order to grant Alrai access to sealed documents with proposed order (ECF #143), with (9) accompanying motion to seal (ECF #144); (10) government's motion to further redact transcripts with exhibits (ECF #146), with

Alrai's motion should be denied. The Court has already properly balanced the interests at stake and addressed them by redacting some documents and sealing others. *See* Fed. R. Crim. P. 49.1(d). Alrai's motion provides no basis to justify the Court's reassessing its previous analysis and revising its protective order. To the contrary, the scope of the relief he seeks would upset the careful balancing the Court has already achieved. Alrai's motion disregards the compelling privacy interests at stake in revealing the identity of an informant.  Due to the large amount of information about the informant in the sealed documents, granting Alrai's motion to unseal would put the informant in danger of reputational and physical harm, but would not provide Alrai with access to additional meaningful information that may be useful in his defense. He has not advanced a compelling reason to unseal the subject documents; his motion therefore fails.

Alternatively, if the Court finds the documents should be unsealed, the risk involved in identifying the witness as an informant requires that the unsealed documents be redacted.

## PROCEDURAL HISTORY

On June 25, 2021, Alrai's counsel wrote to the government seeking sealed documents in *Craigue* related to the dismissal of the case and the defense's allegations of prosecutorial misconduct. Alrai's counsel explained that the allegations were relevant to his motion to overturn his conviction and to be granted a new trial because the *Alrai* case shared a lead prosecutor in common with the *Craigue* case, *Brady* violations were at issue in the *Alrai* case, and the *Craigue* case contained allegations by the defense of *Brady* violations.  *See generally* Exhibit A. Alrai's counsel stated that they intended to file a public motion to intervene in *Craigue* to unseal the documents, but then said the government could produce these documents "**[i]n lieu of a Motion**

---

(11) accompanying motion to seal (ECF #147); (12) transcript of the morning of Jury Trial Day 4 (ECF #148); and (13) transcript of morning chambers conference, Trial Day 4 (ECF #150).

to Intervene in *Craigue*." *See id.* at 2 (emphasis added).  Alrai's counsel added that they would agree to be bound by a protective order if the government produced these documents.  *Id.*

On July 6, the government responded to Alrai's counsel, agreeing to provide the requested documents if the court granted permission, and if defense counsel and Alrai agreed to be bound by the terms of the Court's protective order. The government explained that it would contact the witness's counsel and the defense to obtain their positions.

On July 22, the government sent a draft of its motion for a modified protective order to Alrai's counsel. A paragraph in the draft motion said Alrai should be granted access for the purposes of "post-conviction" relief, in reference to his motion for a new trial. Alrai's counsel reviewed the motion and responded that the government had accurately conveyed their position.

On July 23, the government indicated to Alrai's counsel that it would file its motion. But later that same day, Judge LaPlante granted a new trial in the Alrai case (now scheduled for January 4, 2022). Since Alrai was no longer in "post-conviction" posture, the government asked if Alrai still sought the sealed *Craigue* documents. Alrai's counsel replied that he did.

On July 28, the government wrote back to obtain Alrai's counsel's sign-off on the change in verbiage in its motion about the reason for Alrai's request for the documents: from using the documents for "post-conviction relief" to "a motion to dismiss the charges against defendant Imran Alrai with prejudice." Alrai's counsel replied, saying "we don't need to give you any reason to file a motion to unseal records related to a public criminal trial of great public interest that was dismissed in the middle of trial after the judge set deadlines for filing motions related to prosecutorial misconduct." Counsel further stated:

> Please let us know by tomorrow at 10:00 if you are going to file the motion we discussed or not. **If you elect not to file it,** we will prepare a motion to unseal that will not be filed under seal.

(emphasis added). *See* Exhibit B, July 28 Email from Alrai's Counsel. The government then filed the motion to modify the protective order (ECF #143).

On August 3, the Court granted the government's motion, giving Alrai access to the requested sealed documents in the *Craigue* case "for the sole purpose of examining and potentially using them in connection with the litigation of the *Alrai* matter." *See* ECF #143. The Court's order provided for limited redactions to the name and identifying information of the government's witness, but unlike the redacted documents on the public record, did not call for redaction of references to the confidential informant issue. *Id.*

During the period from August 3 to 25, the government reviewed the sealed and redacted documents and applied more limited redactions for the copies to produce to Alrai's counsel. During this time, the government moved to redact certain transcripts and sent proposed redactions to the Court for approval. The Court granted the motion and approved the redactions. On August 25, Alrai's counsel inquired about the status of the document production so they could decide whether "to wait for you to produce these documents **or file a motion to intervene** in the *US* v. *Craigue* case to unseal the documents in question" (emphasis added). The government produced the documents on August 25.

On September 16, despite the parties' agreement, Alrai's counsel informed the government and the attorneys for Nathan Craigue and the third-party witness that they planned to file a public motion to intervene in *Craigue*. The motion made no mention of the access to the *Craigue* documents Alrai already enjoyed, and no argument as to why his access was insufficient to protect his interests in his case. Alrai's draft motion to intervene specifically ████████

████████████████████████████████████████████████

████████████████████████████ The government noted its objection to

the motion, ████████████████████████████████████████ Alrai's counsel

responded by filing the instant motion, on September 17.

**ARGUMENT**

At the status conference held on Alrai's motion on September 28, the Court asked if the

Motion could be resolved short of litigation. The government's filing of a motion to modify the

protective order in the *Craigue* case to give Alrai access to protected documents *was meant to be*

*that very resolution*. Alrai agreed to be bound by the terms of the protective order, and

represented that he would forego filing a public motion to intervene if he received the protected

documents for that purpose. The government provided the documents to Alrai on the basis of that

agreement. He has the documents he needs to litigate his defense.

Now, Alrai seeks to lift the protective order to which he had agreed. He has filed a public

motion  Alrai has filed this public motion with full

knowledge of the issues in this case discussed in the sealed records, and with knowledge that the

witness in question was a confidential informant. *See* Exhibit C, September 28 Email of Alrai's

Counsel (showing Alrai's counsel knows the name of the government witness in question, where

they specify whose name to redact from the unsealed records).

Unsealing the documents in this case risks exposing the witness's identity as a

confidential informant ("CI"). Because of the nature of the information conveyed in the

chambers conferences and protective orders at issue, redacting the witness's name and personal

identifiers is insufficient to protect the informant's identity. The Court should continue to strike

the balance it has in its redactions and decisions to protect documents. The documents should either remain under seal, or be unsealed, but with redactions not only of the informant's name, but of discussion of the CI issue and any information tending to reveal the informant's identity.

## I.      THERE IS A STRONG INTEREST IN PROTECTING IDENTIFYING INFORMATION ABOUT CONFIDENTIAL INFORMANTS.

Courts traditionally protect the identities of confidential informants, and more broadly, information that would tend to reveal their identities. In *Roviaro v. United States*, 353 U.S. 53, 60-64 (1957), the Supreme Court recognized the "informer's privilege": the "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  The privilege furthers and protects the public interest in effective law enforcement; it promotes communication of citizens' knowledge of crimes to law-enforcement by preserving the citizens' anonymity. *Roviaro*, 353 U.S. at 59. "The underlying concern of the doctrine is the common-sense notion that individuals who offer their assistance to a government investigation may later be targeted for reprisal from those upset by the investigation." *Dole v. Local 1942, IBEW,* 870 F.2d 368, 372 (7th Cir. 1989).

Importantly, the informer's privilege "protects more than just the name of the informant and extends to information that would tend to reveal the identity of the informant." *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006) (citing *Roviaro* and holding "this information is protected to the same extent as the confidential informant's name.") The scope of the government's privilege is as broad as the "underlying purpose" of the privilege to "protect the anonymity of the confidential source." *Id.*; *Roviaro,* 353 U.S. at 59.

The party opposing the privilege has the burden of showing that his need for the information outweighs the government's entitlement to the privilege. *Dole,* 870 F.2d at 372-73; *United States v. Mills*, 710 F.3d 5, 14 (1st Cir. 2013) (same).

## II.   ALRAI DOES NOT HAVE A SPECIAL INTEREST IN UNSEALING THE DOCUMENTS: HE ALREADY HAS THEM.

Defense counsel asserts that Alrai has a special interest in the sealed documents as they relate to allegations of prosecutorial misconduct and dismissal of the *Craigue* case. *See* Motion at 2, 10-11. But the government has already provided to Alrai's counsel copies of these sealed documents with minimal redactions to protect the identity of the witness (and no redactions to the CI issue), pursuant to the terms of the Court's modified protective order.

The modified protective order allows Alrai to use the documents to fully litigate his case. The government moved for Alrai's access to the documents despite Judge LaPlante's already having granted a new trial and Alrai's need for "post-conviction" relief no longer applying (since he was no longer convicted). Given his access to the documents, Alrai has no more standing or interest in publicly unsealing these documents than any other member of the public.  And any interest he has as a defendant in another case in publicly unsealing the documents is no greater than the interest that the Ninth Circuit weighed in *Napier*, 436 F.3d at 1136.

## III.   ONLY TWO TRANSCRIPTS FROM THE *CRAIGUE* TRIAL ARE NOT PUBLICLY AVAILABLE IN REDACTED FORM; IF UNSEALED, THEY MUST BE THOROUGHLY REDACTED TO PROTECT THE WITNESS.

Due in large part to the Court's decisions balancing the interests at stake, very little remains sealed in this case. Of the five or so sealed transcripts in this case, the majority of them are already available to the public in redacted form. Specifically:

- **ECF #136,** the Sealed Transcript of the Zoom conference held the evening of Jury Trial Day 4 on 6/10 at which defense's allegations of prosecutorial misconduct are discussed, is available to the public with limited redactions as ECF #137.

- **ECF #141**:  The Sealed Transcript of Jury Trial Day 5 on 6/11 is available to the public in redacted form as ECF #140.
- **ECF #148**: The Sealed Transcript of the morning of Jury Trial Day 4 (6/10) is available to the public in redacted form as ECF #138.[2]

Redactions to ECF #136 were made pursuant to the Court's June 18 order, which ordered redactions to "any and all references to the government's witness acting as a confidential informant" and instances of the witness's name. References to the witness being paid for grand jury testimony were not redacted. The Court's June 18 order also applied to the "hearing the next morning at the courthouse on June 11, the final morning of the trial," i.e., Trial Day 5.[3]

The only fully sealed transcripts of which the government is aware that are not available to the public are ECF #**142** and **150**. These transcripts are, respectively, the afternoon Chambers Conference of Trial Day 4, and the morning Chambers Conference on that same day.

Alrai has not met his burden to show the public's need for the information in these transcripts outweighs the strong public interest in maintaining witness safety by keeping informants anonymous.  These transcripts should thus remain sealed. Alternatively, if the Court is inclined to unseal ECF #142 and 150, it should unseal only broadly redacted versions.

Each of the sealed documents discusses at length that the government witness was a CI. These transcripts also discuss the CI issue in the context of information that reveals who the government witness is when taken together with public documents. This is precisely what the informer's privilege is meant to protect. *Napier*, 436 F.3d at 1136 (informer's privilege protects information that would "tend to reveal the identity of the informant," not just names); *United States v. Tzannos*, 460 F.3d 128, 140 (1st Cir. 2006) (same).

---

[2] Alrai has not shown that the publicly available *redacted* transcripts must be unredacted to protect the public's interests. This Response thus focuses on the sealed transcripts.
[3] While this is clearly reflected in the Court's Order, it is unclear to the government where this redacted transcript appears on the docket.

**A. The Sealed Transcripts Reveal that the Informant Is the Witness Who Was Subject to *Voir Dire* at Trial.**

As one example, the documents connect the informant as being the witness who was asked *voir dire* questions during the trial. The name of the witness subject to *voir dire* at trial is a matter of public record, appearing in the publicly available transcripts of Trial Days 3 and 4. *See, e.g.,* ECF #145, Trial Day 3, 136-145; ECF #138, Trial Day 4, p. 9.  Revealing that the CI is the witness who testified on *voir dire* would therefore publicly "out" the witness.  Examples in the sealed transcripts making this connection include ECF #142 pages 12-13, where, after naming the government's witness, the Court says "Do we need to do anymore *voir dire*, I don't think so, with [the witness]?" and Mr. Mirhashem says "we would want to bring out that [the witness] provided drug information to Concord PD in 2016 but at the time wasn't interested in cooperating."  The Court then discusses what, if any, testimony about the CI issue need be referenced during *voir dire* of the witness. Identifying the CI as the witness who testified on *voir dire* also occurs in ECF #150, including on pages 7-8. Any reference to the CI's being the witness who testified on *voir dire* would therefore need to remain sealed or be redacted in order to protect the CI's identity.

**B. The Sealed Transcripts Reveal That the Informant Is the Witness Who Testified About Drugs and Was Represented By Attorney Lothstein.**

It also would disclose the identity of the CI to unseal all but the witness's name in the transcripts because the transcripts discuss the informant as being a drug user. The only witness asked about drug use on the public record, and whose name appears testifying about drug use, is the witness in question. This connection is explicitly drawn, for example, in ECF #142, pages 15-16 where Mr. Mirhashem says ". . . I'm going to ask about . . . [the witness's] [drug] use when [s/he] was interviewed in October, [his/her] use before testifying in court . . ." and the Court responds "Ted Lothstein asked for a sealed courtroom because of all the reputational harm

[the witness would suffer]. I'm not going to allow that . . . . He will no doubt, however, ask for a sealed courtroom on the cooperation piece. . . ."

As this excerpt shows, the informant is also linked to his/her attorney in the sealed transcripts. The fact that Mr. Lothstein represents the witness is already in the public record, *see*, *e.g.*, ECF #138 (Jury Trial Day 4, Morning Session) at 3-9. Thus, revealing that he is the attorney for the informant would also compromise the informant's anonymity.

### C. Unsealing the Transcripts With Only the Witness's Name Redacted Would Disclose Identifying Information, Including Him/Her Being a "Key Witness," His/Her Criminal History and His/Her Working in Drug Rehabilitation.

In the sealed transcripts, in discussing the CI issue, the informant is described in multiple places as being a "key witness" and "one of the government's two key witnesses."  *See, e.g.,* ECF #150 at 6, 11. The witness is also described as "███████████████" *Id.* at 6. This description, coupled with the witness's role in the trial and the witness's ████ discloses the witness's identity. The witness's criminal record is also described in various places in the sealed transcripts. ECF #150 at 6 (describing ████████████, 11 (contrasting CI's criminal record with record of government's other "key witness"). The witness is further described as working in drug rehab and ████████████ *see* ECF #150 at 6-7—testimony already on the public record in the witness's *voir dire*, *see* Doc. 145, Trial Day 3, 136-139.

The sealed transcripts also provide other information that would allow members of the public, particularly the ████████████, to recognize the witness, including that the witness reported a drug dealer ████████████████ to Concord police. ECF #150 at 3.  The timeframe of the witness's cooperation and the amount the witness is paid is also discussed.  *Id.*  Due to the specific nature of who the witness was reporting, and the timeframe of activity, publishing this information would pose an unacceptable risk of exposing the informant.

### D.  Redacting Only the Witness's Name Is Insufficient

As the above transcript excerpts show, redacting only the witness's name from the two sealed transcripts is insufficient to protect the witness's identity. The government's production of documents in this matter provides a case in point. The government disclosed the sealed documents to Alrai's counsel with only minimal redactions to the witness's name and gender in an effort to keep the witness's identity hidden, but to also provide Alrai with the information necessary to litigate his defense. Despite these redactions, Alrai's counsel determined who the confidential informant was, referencing the witness by name in an email to the government.  *See* Exhibit C (stating their agreement to redact the witness's name in unsealed documents). This shows the necessity of redacting the other identifying information to protect the witness.

## IV.  THE COURT ALREADY STRUCK THE PROPER BALANCE IN SEALING CERTAIN DOCUMENTS IN THIS CASE AND REDACTING OTHERS.

The Court already weighed the interests of the public against the risks to the informant's safety when deciding to redact the documents listed in Argument Section III-IV and to seal ECF #142 and #150. The Court acknowledged the necessity of protecting the witness on multiple occasions in the sealed transcripts themselves:



> **THE COURT:**  Here's the concern I have. It's just [the witness's] safety. ▓▓▓▓▓▓▓▓▓▓and [s/he's] going to be disclosing, and it would be presumably in a big motion to dismiss, that [s/he] has been cooperating and, you know, engaging in drug deals and paid informant activity for the Concord PD ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓. It just worries me for [his/her] own safety.

*See* ECF #142 at 16.  The irony in the Court's comments is that if this very section of the transcript were unsealed, this information too—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—when coupled with publicly available information, would itself tend to expose the informant, and risk harm the Court seeks to avoid.

Further, the Court suggested that counsel research whether a closed courtroom—the ultimate bar to public access—would be permissible for cross-examination on the CI issue, to protect the witness. *See* ECF #142 at 18 (discussing research about a closed courtroom, stating "[The witness] could be in danger whether [s/he] stopped being a CI recently or not.  The fact that [s/he] was engaged in a relationship with Concord PD and being paid to do drug deals undercover with people [s/he] knew, I would think that could put [her/him] in harm's way.")

The Court sealed the transcripts at issue for the valid purpose of protecting the informant. *See id.*; ECF #150 at 1. That decision was correct. It would undo the efforts of all parties and the Court to protect the witness if the Court were to unseal and unredact the documents now.  As an alternative to keeping the transcripts fully sealed, the government would agree to unseal them on the condition that sections related to the CI issue and information tending to reveal the informant's identity are thoroughly redacted. The government would submit proposed redactions for the Court's approval for this purpose.

## V.   THE SEALED FILINGS IN THIS CASE SHOULD REMAIN SEALED OR BE REDACTED IF THEY ARE UNSEALED.

In addition to the sealed transcripts discussed above, granting Alrai's counsel's motion would unseal the following filings not currently available to the public:

**ECF #132**:  Government's assented-to motion for protective order ("P.O.") for CI file.
**ECF #133**:  Government's assented-to motion to seal motion for P.O.
**ECF #134**:  Defendant's assented-to motion for P.O for DOL report.
**ECF #135**:  Defendant's assented-to motion to seal his motion for P.O.
**ECF #143**:  Government's assented-to motion to modify P.O.
**ECF #144**:  Government's assented-to motion to seal motion to modify P.O.
**ECF #146**:  Government's assented-to motion to further redact transcripts, with exhibits.
**ECF #147:**  Government's motion to seal motion to further redact trial transcripts.

The assented-to motions to seal—documents 133, 135, 144 and 147—contain only a single reference each that tends to reveal the CI issue. Accordingly, the government would agree to unseal them, with the following redactions: a single redaction to the reference to potential

12

harm to "the witness" in the government's motions to seal documents 132, 144 and 147, and a single redaction to the phrase "confidential informant" in the defendant's (ECF #135).

Unsealing the protective orders themselves, however, would break privilege by disclosing information tending to reveal the identity of the informant. Specifically, **ECF #132**: (1) identifies the government witness by name, and (2) discusses the fact that the government worked with Concord Police, referencing the contents of the CI file (referred to as the "CPD file" in the motion). **ECF #143** makes these same references (with the exception that it does not mention the witness by name), and also references that "the witness's identity was redacted" in the DOL report, describes that Attorney Lothstein represents the witness, and describes the possible harm that could come to the witness if the information were revealed. The government would agree to unseal these documents, but only if this information is redacted.

**ECF #134** relates to the Department of Labor ("DOL") report describing the CI file and the relationship between the informant and Concord PD.  Defendant's motion:

(1) identifies the witness by name in the same phrase that it ties the witness to the Concord Police Department file, in three separate places in the motion;
(2) references the witness by name in discussing "balancing the rights and interests" of various parties, and states that the portions of the DOL file that "reveal [the witness's] identity and [his/her] status as a drug CI would be subject to a protective order, but those portions of the document revealing that [s/he] was paid in cash for [his/her] testimony before the grand jury would not be"; and
(3) makes multiple references to the "CI file."

Most importantly, ECF #134 attaches as Exhibit 1 an *unredacted* copy of the DOL report. The unredacted copy does not take into account any of the parties' balancing of interests; it is simply for the Court's reference. *See* Fed R. Crim. P. 49.1(f). The unredacted report names the witness in multiple places, discusses CI activity in almost every paragraph, and includes details such as how long the CI worked, how s/he was paid, and for whom. Exhibit 2 to ECF #134 is the same document, but with redactions to third-party-witness and CI-related information.

13

As the government and defendant agreed, and the Court approved in the protective order, the parties' redactions in ECF #134, Exhibit 2 strike the appropriate balance of protecting third party interests while leaving other information unredacted. Accordingly, the government would agree to (a) unseal Exhibit 2 to ECF #134 (with a few additional redactions to conceal the gender of the witness), and (b) unseal Defendant's motion for protective order itself, with redactions that account for the categories of information (1) through (3) discussed above, but on the condition that Exhibit 1 to ECF #134 (the unredacted version of Exhibit 2) be kept under seal.

Finally, the government's motion to further redact transcripts, **ECF #146**, contains exhibits with proposed redactions to further protect the witness's identity. It would defeat the purpose of this motion to unseal these exhibits since doing so would unseal the redactions. All information not redacted in the exhibits is already available to the public. Hence, the exhibits should remain sealed. The government would agree, though, to unseal the motion itself, with two redactions to "the witness" and that sensitive information about him/her was disclosed at trial.

It is unclear what information in the sealed documents is not already available to the public in redacted copies, other than that regarding the CI issue. Alrai has not met his burden to present that information and show the interest in disclosing it outweighs the interests underlying the informer's privilege.[4]

---

[4] *In re Special Proceedings*, 842 F.Supp.2d 232 (D.D.C. 2012) ("*Stevens*") is of no import, since there was no informant's privilege at issue. *Stevens* involved a *public* official—Senator Ted Stevens (Alaska). *Id.* at 235. The case created a national discourse. *Id.* at 239. The government sought to seal the report of an FBI agent who alleged prosecutorial misconduct. *Id.* The Court appointed an investigator who concluded there had been "systematic concealment" of exculpatory evidence. *Id.* at 242. In this case, the Defendant is not a public official, and there is no national discourse. No government agent has complained about prosecutorial misconduct and there are no allegations, let alone findings, regarding "systematic concealment" of evidence.

## VI.     CONCLUSION

Alrai's motion should be denied. Should the Court unseal documents, it should only do so subject to redactions, which is an approach consistent with its prior orders. The government proposes redacting discussion of the CI issue and information identifying the informant, including as follows:

- **ECF #132 (government's motion for P.O.)**:  Redact: (1) references to the witness's name; (2) discussion that witness worked with Concord PD; (3) references to "CPD file."
- **ECF #133 (government's motion to seal ("MTS"))**:  Redact reference to "the witness."
- **ECF #134 (defendant's motion for P.O.)**:  Redact (1) sentences including the witness name in the same phrase discussing the Concord PD file; (2) the witness's name in sentence discussing balancing parties' rights and interests; (3) sentence stating portions of the DOL file "reveal [the witness's] identity and [his/her] status as a drug CI would be subject to a protective order."; (4) references to the CI file.
  - **ECF #134, Exh. 1 (unredacted DOL report)**:  Keep sealed.
  - **ECF #134, Exh. 2 (redacted DOL report)**:  Redact references to CI's gender.
- **ECF #135 (defendant's MTS P.O.)**: Redact the phrase "confidential informant."
- **ECF #143 (government's motion to modify P.O.)**: Redact: (1) discussion that witness worked with Concord PD; (2) references to "CPD file"; (3) sentence describing that the witness's identity was redacted in the DOL report; (4) sentence describing that Attorney Lothstein represents the witness, and the possible harm to the witness.
- **ECF #144 (MTS motion to modify P.O)**: Redact reference to "the witness."
- **ECF #146 (government's motion to further redact transcripts, with exhibits)**: Keep the exhibits sealed. Redact reference to the witness and harm to the witness in motion.
- **ECF #147 (MTS motion to redact transcripts)**: Redact reference to "the witness."
- **ECF #142 & #150**: Redact all information tending to reveal CI's identity (*see* Section IV).

The government is available to propose drafts of redactions to the documents listed above.

Dated:     October 9, 2021                          Respectfully submitted,

                                                                    JOHN J. FARLEY
                                                                    Acting United States Attorney

                                          By:        /s/ Aaron Gingrande
                                                                    Aaron G. Gingrande
                                                                    John S. Davis
                                                                    Assistant U.S. Attorneys
                                                                    53 Pleasant Street, 4th Floor
                                                                    Concord, New Hampshire 03301

# EXHIBIT A

# WADLEIGH, STARR & PETERS, P.L.L.C.

WILLIAM C. TUCKER
JAMES C. WHEAT, Of Counsel
RONALD J. LAJOIE
MARC R. SCHEER
GREGORY G. PETERS
FRANK P. SPINELLA, Jr.
DEAN B. EGGERT
MICHAEL R. MORTIMER
KATHLEEN C. PEAHL
RICHARD THORNER
CHARLES F. CLEARY
CHRISTINE GORDON
TODD J. HATHAWAY
ALISON M. MINUTELLI

**Attorneys At Law**
**95 Market Street**
**Manchester, New Hampshire 03101**
**Telephone (603) 669-4140**
**Facsimile (603) 669-6018**

WWW.WADLEIGHLAW.COM

*Serving New Hampshire since 1899*

MICHAEL J. TIERNEY
DONNA J. BROWN
ROBIN D. MELONE
CRAIG S. DONAIS
ALYSIA M. CASSOTIS
CHRISTOPHER P. MCGOWN
ABBY TUCKER
STEPHEN M. BENNETT, Of Counsel
ALLISON M. FUSCO
STEPHEN N. ZAHARIAS
ELIZABETH E. EWING
WILLIAM P. REDDINGTON
MICHAEL G. EATON
GRETCHEN M. WADE

**Direct Dial: (603) 206-7234**
**dbrown@wadleighlaw.com**

June 25, 2021

VIA EMAIL
Cam T. Le
John S. Davis
Matthew Hunter
U.S. Attorney's Office (NH)
53 Pleasant Street, 4th Fl
Concord, NH 03301

Re:      *United States v. Imran Alrai*, 18-cr-192-JL

Dear Cam, John and Matt,

It has come to our attention that the case *United States v. Nathan Craigue*, No. 1:19-cr-00142-LM, was dismissed with prejudice on June 11, 2021.  Based on the docket entries, it appears the dismissal was the result of prosecutorial misconduct.  *See* Attached Docket Sheet (entry on June 10, 2021).  Lead Attorney of record was AUSA John Davis.  It is our understanding that certain aspects of the proceedings regarding the alleged prosecutorial misconduct remain under seal.

We intend to move to intervene in *United States v. Craigue*, set forth the bases as to why the sealed material is relevant in *United States v. Alrai*, and request that the Court unseal the records relating to the allegations of prosecutorial misconduct and/or the dismissal.  We are seeking your position on this Motion.  The case law clearly supports intervention under these circumstances. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)) ("[C]ourts have widely recognized that the correct procedure for a non-party to challenge a protective order is through intervention for that purpose."); *Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009) ("[T]he general right of public access to judicial records is enough to give ***members of the public*** standing to attack a protective order that seals this information from public inspection." (emphasis added)); *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004) (collecting cases for the proposition that intervention in criminal cases has been granted when "a third party's constitutional or other federal rights are implicated by the resolution of a particular

**WADLEIGH, STARR & PETERS, P.L.L.C.**

U.S. Attorney's Office (NH)
June 25, 2021
Page 2

motion, request, or other issue during the course of a criminal case"). We also intend to file an appropriate motion in *United States v. Alrai* concerning this issue.

In lieu of a Motion to Intervene in *Craigue*, we request that you provide copies of any filings related to the allegation of prosecutorial misconduct and/or the dismissal, and further request copies of the transcripts of the trial proceedings, which we understand are not under seal. We, of course, will agree to abide by any protective order in place. We believe the proceedings in *Craigue* are relevant and material in this case for two reasons, as explained in more detail below: (1) it bears upon the credibility of AUSA John Davis with respect to the testimony he offered at the evidentiary hearing in this matter; and (2) it is relevant to both the claimed inadvertency of the failure to disclose exculpatory information in this matter and the proper remedy for the *Brady* violations.

First, at the hearing on December 7, 2020, AUSA Davis was questioned by the Court and offered testimony concerning the failure to disclose exculpatory information in this case. For example, among other things, AUSA Davis claimed inadvertency in failing to disclose certain documents, referenced his faulty memory, and asserted that he could not locate in his email inbox confirmation as to whether he received the RSM billing record that ultimately led to the discovery of the subject *Brady* violations. AUSA offered the testimony at the hearing without cross-examination. We objected to AUSA Davis offering said testimony, particularly where AUSA Davis was not noticed as a witness and where we did not have the opportunity, nor the preparation necessary, to cross-examine him. The Court has not resolved this issue; we maintain our objection and continue to assert that we must be given the opportunity to cross-examine AUSA Davis. And after the hearing, AUSA Davis again claimed, in a Declaration, inadvertency and faulty memory in failing to disclose documents he admitted should have been disclosed prior to trial.

Allegations of prosecutorial misconduct by the same prosecutor—particularly when such misconduct, as here, led to dismissal with prejudice—are clearly relevant to the credibility of that prosecutor. Under Rule 404(b), for instance, other bad acts are admissible and may be relevant to knowledge, absence of mistake, lack of accident, or intent: all issues that impact cases involving *Brady* violations. AUSA Davis offered testimony and submitted a Declaration concerning substantial and material issues in this matter. He was a witness at the evidentiary hearing and must be subject to cross-examination. And while we are in the midst of litigating an issue concerning AUSA Davis's failure to disclose exculpatory evidence, another instance of prosecutorial misconduct has occurred. As you know, this is a very unique case and one that has become more unique with the discovery that the US Attorney responsible for making disclosure decisions and testifying about them has been accused of misconduct in another case. Accordingly, we ask that you disclose the requested material as it bears upon the credibility of a testifying witness, AUSA Davis.

**WADLEIGH, STARR & PETERS, P.L.L.C.**

U.S. Attorney's Office (NH)
June 25, 2021
Page 3

Second, the requested material is relevant to both the claimed inadvertency of the failure to disclose exculpatory information and the proper remedy for the *Brady* violations.  Courts have considered other instances of prosecutorial misconduct in evaluating *Brady* violation claims and determining the proper remedy for same, and the United States Supreme Court has endorsed that practice.  *Brecht v. Abrahamson*, 507 U.S. 619, 638, n.9 (1993) ("Our holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict."); *see also*, *e.g.*, *Duckett v. Mullin*, 306 F.3d 982 (10th Cir. 2002).  Where there is prosecutorial misconduct in the present case and other instances of prosecutorial misconduct by the same prosecutor or USAO, courts can invoke their supervisory power to craft an appropriate, and/or deterrence-based, remedy.  *See Duckett*, 306 F.3d 982; *United States v. Chapman*, 524 F.3d 1073, 1084-88 (9th Cir. 2008); *United States v. Lamela*, 942 F.2d 100, 103-04 (1st Cir. 1991) (suggesting that, where there is prosecutorial misconduct in the present case, a "pattern" of prosecutorial misconduct becomes relevant and material); *see also United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988) ("If delay is occasioned by a pattern of governmental inattention or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue.").

Similarly, courts have considered remedial measures undertaken by the Department of Justice or a particular USAO, subsequent to an instance of prosecutorial misconduct, in crafting an appropriate remedy or sanction.  *See*, *e.g.*, *United States v. Jones*, 620 F. Supp. 2d 163, 179-85 (D. Mass. 2009).  In ultimately deferring a ruling on sanctions, after heavy criticism of the prosecutor, the court in *Jones* considered remedial measures taken by the DOJ *subsequent to* the prosecutorial misconduct in that case.  If subsequent remedial measures and training are relevant to culpability, so too are subsequent instances of prosecutorial misconduct.

Finally, multiple instances (or a pattern) of prosecutorial misconduct are relevant to determining whether the failure to disclose exculpatory evidence in this case was the result of "deliberate indifference," a type of prosecutorial "recklessness" that justifies dismissal.  *See* Doc. 220: 2-7.

Accordingly, the requested material is relevant and material to both a testifying prosecutor's credibility and the merits of Mr. Alrai's *Brady* Motion.  We are hopeful that we can coordinate the receipt of the requested documents through your office.  If that is not possible, we will have to pursue the other means outlined above.

Please let us know your position on the Motion to Intervene—or, alternatively, if you will agree to provide us with the requested material—as soon as possible, but no later than July 5, 2021.

**WADLEIGH, STARR & PETERS, P.L.L.C.**

U.S. Attorney's Office (NH)
June 25, 2021
Page 4

                                        Sincerely,

                                        *Donna J. Brown*

                                        Donna J. Brown
                                        Michael G. Eaton

DJB/kew

**EXHIBIT B**

| | |
|---|---|
| **From:** | Donna J. Brown <dbrown@wadleighlaw.com> |
| **Sent:** | Wednesday, July 28, 2021 4:37 PM |
| **To:** | Gingrande, Aaron (USANH); Michael G. Eaton |
| **Cc:** | Hunter, Matthew (USANH); Davis, John (USANH); Le, Cam (USANH) |
| **Subject:** | RE: Alrai: Motion for Modified Protective Order in Craigue Case |
| **Attachments:** | In re Knight Pub Co.rtf |

Hello,

It is our position that we don't need to give you any reason to file a motion to unseal records related to a public criminal trial of great public interest that was dismissed in the middle of a trial after the judge set deadlines for filing motions related to prosecutorial misconduct. (See attached case law.) This whole exchange began 3 weeks ago when I sought your position on a motion to unseal the pleadings in US v. Craigue. If you are retracting your agreement to file a motion to allow us to review the documents under a protective order, that is your right. Please let us know by tomorrow at 10:00 if you are going to file the motion we discussed or not. If you elect not to file it, we will prepare a motion to unseal that will not be filed under seal. Please let us know your position on the motion a motion to unseal ASAP.

Best regards,

Donna J. Brown
Wadleigh, Starr & Peters, P.L.L.C.
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 206-7234 (Direct)
603-669-6018   Facsimile
dbrown@wadleighlaw.com



This electronic message transmission contains information from the law office of Wadleigh, Starr & Peters, P.L.L.C. and may be confidential or privileged. The above information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be advised that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this message in error, please notify me by telephone (603 669-4140) or by electronic mail immediately and delete this message from your computer.

---

**From:** Gingrande, Aaron (USANH) <Aaron.Gingrande@usdoj.gov>
**Sent:** Wednesday, July 28, 2021 3:51 PM
**To:** Donna J. Brown <dbrown@wadleighlaw.com>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <Matthew.Hunter@usdoj.gov>; Davis, John (USANH) <John.Davis8@usdoj.gov>; Le, Cam (USANH) <Cam.Le@usdoj.gov>
**Subject:** RE: Alrai: Motion for Modified Protective Order in Craigue Case

Thank you for your response.  Would the new purpose for which you seek access to the documents then correctly be stated as "examining and potentially using them in connection with a motion to dismiss the charges against defendant Imran Alrai with prejudice"?

---

**From:** Donna J. Brown <dbrown@wadleighlaw.com>
**Sent:** Tuesday, July 27, 2021 5:09 PM
**To:** Gingrande, Aaron (USANH) <AGingrande@usa.doj.gov>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <MHunter4@usa.doj.gov>; Davis, John (USANH) <JDavis6@usa.doj.gov>; Le, Cam (USANH) <CLe@usa.doj.gov>
**Subject:** RE: Alrai: Motion for Modified Protective Order in Craigue Case

Hello,
We do not withdraw our request for the documents from US v. Craigue.  As stated previously, we still agree to the protective order that is in place.  We feel that the judge's order granting a new trial in Alrai does not moot our request to review the records from Craigue as other instances of alleged prosecutorial misconduct are relevant to the other remedy we requested – dismissal with prejudice.

Donna J. Brown
Wadleigh, Starr & Peters, P.L.L.C.
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 206-7234 (Direct)
603-669-6018    Facsimile
dbrown@wadleighlaw.com



This electronic message transmission contains information from the law office of Wadleigh, Starr & Peters, P.L.L.C. and may be confidential or privileged. The above information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be advised that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this message in error, please notify me by telephone (603 669-4140) or by electronic mail immediately and delete this message from your computer.

---

**From:** Gingrande, Aaron (USANH) <Aaron.Gingrande@usdoj.gov>
**Sent:** Tuesday, July 27, 2021 2:44 PM
**To:** Donna J. Brown <dbrown@wadleighlaw.com>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <Matthew.Hunter@usdoj.gov>; Davis, John (USANH) <John.Davis8@usdoj.gov>; Le, Cam (USANH) <Cam.Le@usdoj.gov>
**Subject:** RE: Alrai: Motion for Modified Protective Order in Craigue Case

Donna and Michael,

Subsequent to my email to you on Friday, I learned that Judge LaPlante granted your motion for a new trial in the *Alrai* case that same day.  In light of that development, what I had stated as the basis of the motion to modify the protective order (i.e., granting your access to the protected documents for the sole purpose of examining and potentially using

them in post-conviction, pre-sentence motions in the *Alrai* case) is no longer correct.  In light of the development, are you withdrawing your request for the protected documents in the *Craigue* case, or is there another basis on which you are seeking them?  Please let me know.

Thank you,
Aaron

---

**From:** Gingrande, Aaron (USANH)
**Sent:** Friday, July 23, 2021 4:46 PM
**To:** Donna J. Brown <dbrown@wadleighlaw.com>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <MHunter4@usa.doj.gov>; Davis, John (USANH) <JDavis6@usa.doj.gov>; Le, Cam (USANH) <CLe@usa.doj.gov>
**Subject:** RE: Alrai: Motion for Modified Protective Order in Craigue Case

Thanks, Donna.  We will get this on file.

---

**From:** Donna J. Brown <dbrown@wadleighlaw.com>
**Sent:** Thursday, July 22, 2021 7:20 PM
**To:** Gingrande, Aaron (USANH) <AGingrande@usa.doj.gov>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <MHunter4@usa.doj.gov>; Davis, John (USANH) <JDavis6@usa.doj.gov>; Le, Cam (USANH) <CLe@usa.doj.gov>
**Subject:** RE: Alrai: Motion for Modified Protective Order in Craigue Case

Hi,
Thank you for sending this.  I have reviewed it and the bracketed section accurately reflects our position on the motion.

Donna J. Brown
Wadleigh, Starr & Peters, P.L.L.C.
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 206-7234 (Direct)
603-669-6018   Facsimile
dbrown@wadleighlaw.com



This electronic message transmission contains information from the law office of Wadleigh, Starr & Peters, P.L.L.C. and may be confidential or privileged. The above information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be advised that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this message in error, please notify me by telephone (603 669-4140) or by electronic mail immediately and delete this message from your computer.

---

**From:** Gingrande, Aaron (USANH) <Aaron.Gingrande@usdoj.gov>
**Sent:** Thursday, July 22, 2021 2:09 PM
**To:** Donna J. Brown <dbrown@wadleighlaw.com>; Michael G. Eaton <meaton@wadleighlaw.com>
**Cc:** Hunter, Matthew (USANH) <Matthew.Hunter@usdoj.gov>; Davis, John (USANH) <John.Davis8@usdoj.gov>; Le, Cam

(USANH) <Cam.Le@usdoj.gov>
**Subject:** Alrai: Motion for Modified Protective Order in Craigue Case

Donna and Michael,

We hope you are doing well.  Attached please find the motion we intend to file to modify the protective order and grant you access to protected transcripts in the *Craigue* matter, along with a proposed modified protective order for the court to sign.  We will move for this motion itself and the corresponding protective order to be sealed.  We have obtained the positions of defense counsel and the third party witness, which are reflected in the attached motion.  Could you please confirm whether the bracketed section accurately reflects your/your client's position, and revise it if it does not?

Please let us know if you have any additional comments.  It is possible that we will make our own tweaks upon a further review as well; if we do so, we will let you know prior to filing. If you would like to discuss the attached documents, please do not hesitate to contact me:  603-573-6341.

Best,
Aaron

**Aaron Gingrande**
**Assistant United States Attorney**
**United States Attorneys Office | District of New Hampshire**
53 Pleasant Street | 4th Floor | Concord, NH 03301
Phone: (603) 225-1552
Email: aaron.gingrande@usdoj.gov



*Please be advised that all emails sent to this address are archived and retained by the United States Department of Justice.*

# EXHIBIT C

**From:**          Donna J. Brown <dbrown@wadleighlaw.com>
**Sent:**          Tuesday, September 28, 2021 5:28 PM
**To:**            Gingrande, Aaron (USANH)
**Cc:**            Dorothy Graham; Davis, John (USANH); Behzad Mirhashem; Michael G. Eaton
**Subject:**       [EXTERNAL] RE: Craigue hearing

Hi,
It is our position that all documents numbered 134-154 (except Doc. 149 which is not under seal), including all exhibits
attached to those documents, should be unsealed and available to the public.  This includes any transcripts.  As we
stated in our motion to intervene, we agree to redacting ██████ name from any documents/transcripts.

Donna J. Brown
Wadleigh, Starr & Peters, P.L.L.C.
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 206-7234 (Direct)
603-669-6018    Facsimile
dbrown@wadleighlaw.com



This electronic message transmission contains information from the law office of Wadleigh, Starr & Peters, P.L.L.C. and
may be confidential or privileged. The above information is intended to be for the use of the individual or entity named
above. If you are not the intended recipient, please be advised that any disclosure, copying, distribution or use of the
contents of this message is prohibited. If you have received this message in error, please notify me by telephone (603
669-4140) or by electronic mail immediately and delete this message from your computer.

**From:** Gingrande, Aaron (USANH) <Aaron.Gingrande@usdoj.gov>
**Sent:** Tuesday, September 28, 2021 12:07 PM
**To:** Donna Esposito <Donna_Esposito@nhd.uscourts.gov>
**Cc:** Dorothy Graham <Dorothy_Graham@fd.org>; Davis, John (USANH) <John.Davis8@usdoj.gov>; Donna J. Brown
<dbrown@wadleighlaw.com>; Behzad Mirhashem <Behzad_Mirhashem@fd.org>
**Subject:** RE: Craigue hearing

Thanks, Donna.  We would be grateful if, when you get the chance, you could provide the full list of sealed transcripts
(much like you did for the sealed documents 132 to 135 below).  I think it would be helpful for all parties and the Court
to know/confirm the exact documents at issue in the motion.  Please let us know if this is possible.

Thanks again,
Aaron

**From:** Donna Esposito <Donna_Esposito@nhd.uscourts.gov>
**Sent:** Tuesday, September 28, 2021 10:44 AM

**To:** Gingrande, Aaron (USANH) <AGingrande@usa.doj.gov>; Behzad Mirhashem <Behzad_Mirhashem@fd.org>
**Cc:** Dorothy Graham <Dorothy_Graham@fd.org>; Davis, John (USANH) <JDavis6@usa.doj.gov>;
dbrown_wadleighlaw.com <dbrown@wadleighlaw.com>
**Subject:** RE: Craigue hearing

This is really a status conference - - I am sorry that it was called a motion hearing.

---

**From:** Gingrande, Aaron (USANH) <Aaron.Gingrande@usdoj.gov>
**Sent:** Tuesday, September 28, 2021 10:18 AM
**To:** Behzad Mirhashem <Behzad_Mirhashem@fd.org>; Donna Esposito <Donna_Esposito@nhd.uscourts.gov>
**Cc:** Dorothy Graham <Dorothy_Graham@fd.org>; Davis, John (USANH) <John.Davis8@usdoj.gov>
**Subject:** RE: Craigue hearing

<mark>**CAUTION - EXTERNAL:**</mark>

Donna,

In the spirit of clarifying the scope of documents, Alrai's counsel has also moved to unseal "all transcripts" in the case.  Do you have a complete list of what the sealed transcripts are in this matter?  I am doing my best to put a list together, but it would be great to see what the Court considers the full list.  Please let us know when you get the chance.

Thanks,
Aaron

---