UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
UNITED STATES OF AMERICA          *
                                  *   19-cr-142-01-LM
           v.                     *   November 15, 2021
                                  *   3:37 p.m.
       NATHAN CRAIGUE             *
                                  *
* * * * * * * * * * * * * * * * * *
```

**SEALED** TRANSCRIPT OF ORAL ARGUMENT
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY


APPEARANCES:


For the Government:          Aaron G. Gingrande, AUSA
                             U.S. Attorney's Office



For the Defendant:           Behzad Mirhashem, Esq.
                             Federal Defenders Office

                             Theodore M. Lothstein, Esq.
                             Lothstein Guerriero, PLLC



Intervenor:                  Donna J. Brown, Esq.
                             Wadleigh, Starr & Peters, PLLC




Court Reporter:              Susan M. Bateman, RPR, CRR
                             Official Court Reporter
                             United States District Court
                             55 Pleasant Street
                             Concord, NH 03301
                             (603) 225-1453

```
 1                    P R O C E E D I N G S

 2           THE CLERK:  For the record, this is a sealed motion

 3   hearing in United States versus Nathan Craigue.  It is

 4   19-cr-142-01-LM.

 5           THE COURT:  All right.  Let me just start by asking

 6   everybody to use John Doe as the name of the individual at

 7   issue.

 8           The reason this hearing is under seal is I want you

 9   to feel confident and comfortable explaining whatever the

10   argument is you want to explain to me about John Doe, but the

11   issue is obviously his protection.

12           And at this point having great familiarity

13   obviously with Craigue and having reviewed Attorney Brown's

14   motions, and my obligation is obviously to protect the

15   public's right of access, I have weighed everything.  I'm not

16   ready to rule because I want to hear from counsel, and I

17   appreciate you, Attorney Lothstein, jumping in and

18   representing John Doe at this hearing.

19           I am -- it is my intent at this point to protect

20   him -- to the extent I can, protect him by using John Doe,

21   sealing his name, and sealing any other identifying

22   information, and that is what I think balances the public's

23   right of access here.

24           I know the government wants to argue that I should

25   seal additional materials related to his cooperation, so I
```

1    want to hear from the government.

2              I want to hear from Attorney Brown, Attorney

3    Mirhashem, and Attorney Lothstein to the extent you take a

4    position on this, and I want to focus it if we could on the

5    issue of right now what frankly was under seal still until I

6    issued that temporary seal order in my most recent order.

7    That is temporary until ultimately I decide what to do after

8    this hearing, but up until that moment the grand jury payment

9    was always public.

10             The cooperation is what I know the government has

11   sought to keep private in subsequent post trial motions and

12   requests which I granted along the way.

13             And then Attorney Brown filed a motion to intervene

14   and seeking to have more matters made public.

15             So let me hear from the government first on this,

16   and then I'll let Attorney Lothstein, Attorney Brown, and

17   Attorney Mirhashem respond.

18             Go ahead.

19             MR. GINGRANDE:  Thank you, your Honor.

20             For the record, this is AUSA Aaron Gingrande on

21   behalf of the government.

22             Just before we get into the substance of this, your

23   Honor, I did want to give an opportunity to Attorney Brown to

24   perhaps give an update to the Court about the status of her

25   representation of Mr. Alrai in this case.

1          It's come to my attention that there has been a

2    motion to withdraw her representation of Mr. Alrai, but I am

3    not the one in the best position to provide that update.

4          I appreciate you giving me the opportunity to speak

5    first, but I did want to give that opportunity to Attorney

6    Brown just because it could affect these proceedings.

7          THE COURT:  Go ahead, Attorney Brown.

8          MS. BROWN:  Thank you, your Honor.

9          I'll preview this by giving you a brief summary of

10   the status of counsel in Mr. Alrai's case.  It's probably

11   humanly impossible, but I will do the best I can.  It's very

12   complicated right now in terms of motions to be appointed and

13   other complicating factors.  We filed a fairly lengthy motion

14   about a week or so ago.

15         I understand my ethical duties is that unless and

16   until we, meaning my office, is allowed to withdraw from the

17   case that we are counsel of record.

18         I discussed that with Mr. Alrai last week.  I don't

19   remember what day it was.  I think it was toward the end of

20   the week or whatever, but I did discuss with him that it was

21   my position that we would go forward with this.  He assented

22   to that even though there was a pending motion to withdraw,

23   and that's why I'm going forward because some of the -- Mr.

24   Alrai is weighing all the factors.  It's his interest to move

25   forward with this and not have this delayed.  And as I said,

1    my ethical obligation is to protect his interest unless and

2    until the issue regarding my status of counsel is resolved.

3                    THE COURT:  Okay.  All right.

4                    Attorney Gingrande, go ahead.

5                    MR. GINGRANDE:  Okay.  Great.

6                    I was just -- you know, my only further thing that

7    I wanted to kind of I guess raise before the Court is just the

8    issues surrounding the reasons for that motion to withdraw as

9    counsel.  I do understand that they involve potential

10   conflicts of interest and a potential for ineffective

11   assistance, and so I did want to make sure that was before the

12   Court before proceeding and again give the opportunity to

13   Attorney Brown if there was something more on the record she

14   wanted to say about that.  I'm not sure of the Court's

15   familiarity with the reasons for that withdrawal.

16                   THE COURT:  Okay.  Well, I'm not seeing as though

17   it's going to do anything to affect my ruling in this matter.

18   So I would like to move along unless there is somebody else

19   who sees some reason why that should affect the public's right

20   of access.

21                   I know Mr. Alrai has issues.  He's got a separate

22   case.  I know that one of your allegations too was that the

23   government and Attorney Brown had made some agreement that

24   Attorney Brown would not file a motion to intervene if certain

25   things were handed over.  Well, Mr. Alrai cannot bargain away

1  the public's right of access.  So we're here.  I am going to

2  rule on the issue of access and the First Amendment issues at

3  stake.  So that's what I'm concerned with at this point.

4          Attorney Gingrande, I know that it was the

5  government that really did want to keep the cooperation piece

6  of this under seal, and so long as I am keeping his identity

7  under seal, his name, and any other identifying information,

8  and I would include in that, you know, his age, his place of

9  residence, things that people could identify him easily with,

10  his educational background, his job history with the exception

11  of having worked for Craigue & Sons obviously, specific

12  people -- I think it was Attorney Mirhashem at different

13  chambers conferences or different hearings that we had after

14  John Doe's testimony, I think certain people he cooperated

15  against might have been mentioned at different times, I would

16  certainly redact that from any public record.  There were

17  ████████████████████████████████████████████████████

18  testified had died.  Those would identify him I think

19  potentially.  That kind of identifying information I would be

20  I think favorably disposed to keep under seal because that

21  could identify who he is, but beyond that I know you wanted

22  the entirety of the cooperation piece redacted and kept under

23  seal.

24          Are you still maintaining that position?

25          MR. GINGRANDE:  Well, I think the only thing that,

1      you know, maybe I would want to kind of further hone in on is

2      just how we're defining identifying information as it relates

3      to the confidential -- the piece about being a confidential

4      informant.

5              You know, the very fact of the existence of a

6      confidential informant being a confidential informant in this

7      case is -- in my opinion and the opinion of the government I

8      think it's -- if we can truly effectively prevent the public

9      from knowing who the confidential informant is, no, I don't

10     have a problem with that.

11             My concern, especially in light of Alrai's

12     counsel's motion, is that the attention is already on John Doe

13     right now.  The attention is on John Doe because the public

14     motion that was filed cites in various places the fact that

15     the government dismissed the case in relation to the testimony

16     of a witness who had a Fifth Amendment issue, had an issue

17     involving the voir dire and was voir dired, and there's

18     additional information that directly points to John Doe as

19     being the reason for the dismissal of the case.

20             And so if we then reveal that there's a

21     confidential informant in the case, the natural inference I

22     think the public can draw is that, oh, it's that witness, that

23     same witness.

24             THE COURT:  A witness the government called to the

25     witness stand in a public trial when you knew that he was a

1    cooperator.  That witness.

2            MR. GINGRANDE:  Oh, no, we did not know that he was

3    a cooperator.

4            THE COURT:  The government knew.  The government --

5    the Concord Police Department certainly knew.  The

6    prosecutorial entity of the case at the front end certainly

7    knew.

8            I'm not saying that you, Attorney Gingrande, or

9    Attorney Davis knew.  I have absolutely no understanding that

10   that is true.  I firmly believe that you did not know that,

11   that you discovered it as the Court did, as Attorney Mirhashem

12   did, but the fact is that the prosecutorial misconduct in this

13   case stems from the fact that you did not research that, you

14   did not make any efforts to find that out, and ultimately you

15   decided to file a motion to dismiss right before Attorney

16   Mirhashem would have been cross-examining him.  So that was a

17   decision made ultimately by the government in this case.

18           The government received the case from the Concord

19   Police Department, am I wrong about that, and from the

20   Merrimack County Attorney's Office?

21           MR. GINGRANDE:  So just to focus in on your

22   question, your Honor, you're asking -- specifically you're

23   asking me if I know how the case was adopted by the

24   government?

25           THE COURT:  My understanding is the Concord PD was

1    on the scene right away investigating the case and there was

2    a Concord --

3                MR. GINGRANDE:  I think that's right in terms of

4    Concord PD being on the scene.

5                I do believe that in terms of our reason for being

6    involved with the case it was actually not a case that was --

7    again, this is my understanding.

8                I should say that I was not part of this office

9    when the case was initially taken on, but my understanding is

10   that we received the case because this was a case involving

11   OSHA, and the Concord PD -- at least aspects of this case the

12   Concord PD was not pursuing.  And so my understanding is that

13   it was the Department of Labor was how we came to take on this

14   case, but I'm not sure of the exact details and I honestly

15   don't know if it's particularly relevant to what you're trying

16   to get at, your Honor.

17               THE COURT:  Well, what I'm trying to get at is

18   ultimately the government called this witness to the stand in

19   your case in chief to testify against the defendant.

20               MR. GINGRANDE:  Yeah, and this is true.  We

21   certainly did call him to the stand.

22               In terms of -- you know, when it comes to the issue

23   that we're trying to, you know, focus on today, it's about

24   protecting this witness in light of what has happened in the

25   government's position, and it's about now that he has been

1    brought to the stand, now that he has testified, now that the

2    case has been dismissed, now that the information has come out

3    regarding, you know, John Doe's position and his testimony,

4    where do we go from here.  And the interest that the

5    government has, as stated consistently, is trying to protect

6    this witness.

7            As your Honor already pointed out, you know, the

8    fact that there's an allegation of prosecutorial misconduct is

9    certainly something that is part of the public record already

10   and it's not something that the government is trying to hide.

11   That is public.  That deserves to be public.

12           But the identity of the confidential informant the

13   government believes should not be made public, and there are

14   very compelling reasons that that should be the case, not the

15   least of which starts with <u>Roviaro</u> and the informant's

16   privilege.

17           So the government's position in this matter is that

18   it is Mr. Alrai's burden to show why the public access in this

19   case overcomes that privilege, and in this case Mr. Alrai has

20   not met that burden.

21           As a preliminary issue, the government has included

22   just for the sake of background how it was that the government

23   came to file a motion to grant access to Mr. Alrai to the

24   documents in this case, and Mr. Alrai has been granted the

25   access that he needs to litigate his defense in this matter

1   fully.  He has been given access to the sealed documents with

2   only minimal redactions to the name of John Doe, and he has

3   had access to those documents now for weeks and therefore has

4   the ability to litigate the case which was the original -- the

5   reason for the agreement with counsel.

6            Now, counsel has phrased it, and I've cited this

7   many times, as an alternative to filing a public motion, and

8   it was precisely because the government wanted to keep the

9   protection -- keep protected the identity of the confidential

10  informant that we agreed to proactively make that motion to

11  get Mr. Alrai the access that he needed to litigate his case

12  and that the Court granted by modifying the protective order

13  on August 3rd, and it was subject to Alrai's counsel's promise

14  and Mr. Alrai's that they would be subject to the -- that the

15  documents would be produced subject to the protective order.

16           So what happened after that was with the benefit of

17  having those -- we produced those documents.  The Court, you

18  know, issued its ruling, we produced the documents, and with

19  the benefit of reviewing all that information and with the

20  benefit of knowing because the redactions were so minimal or

21  at least being able to infer who John Doe was as was cited in

22  Exhibit C to our opposition as showing kind of counsel's

23  knowledge of who John Doe is, then Alrai's counsel files the

24  motion at issue here despite the parties' agreement and

25  further focused the spotlight on this witness and did so by

1   pointing out that this witness was at the heart of the

2   dismissal.  This witness had an issue with the Fifth

3   Amendment, was subject to voir dire, et cetera.  That is in

4   the opinion of the government identifying information about

5   this witness.

6          And so that is the basis for the government's

7   concern of now unsealing the information related to the fact

8   that there is a confidential informant in this case.  It will

9   be very easy for members of the public to put two and two

10   together and look at, okay, the witness involved here had a

11   Fifth Amendment issue, that's on the public record, the

12   witness involved here was represented by Attorney Lothstein

13   and was subject to a voir dire, and that's on the public

14   record, and that same witness was the witness who is a

15   confidential informant.

16          And so it is for that reason that the government

17   strongly, strongly feels that that information should remain

18   under seal.

19          Your Honor, we would agree to the other

20   information.  Again, information of allegations of

21   prosecutorial misconduct, information related to, you know,

22   other things that are contained in those transcripts that do

23   not speak to the witness -- a witness being a confidential

24   informant, we would agree that that information is information

25   that the public deserves to access.

1          But it is because of that very real risk of

2    reprisal and harm both reputationally and possibly physically

3    to this witness that the government is seeking to keep that

4    information under seal and/or redacted.

5          And it's also in line with the public interest in

6    Roviaro and other cases that protect that type of information

7    that informants provide in order to facilitate communication

8    between citizens who have seen violations of law or know

9    information about violations of law communicating with law

10   enforcement and not having a chilling effect on that.

11         So that is the reason, your Honor, that we are

12   concerned about this information coming to light.

13         THE COURT:  All right.  Let me ask you a question,

14   a couple of factual questions about the cooperation.

15         He has not -- John Doe is not currently

16   cooperating; is that correct?

17         MR. GINGRANDE:  That's correct.

18         THE COURT:  And the cooperation as I understand

19   it -- and this is what I want you to tell me.  The cooperation

20   that we're talking about here in this case ended in 2018

21   sometime.  Is that right?

22         MR. GINGRANDE:  Yes, I do believe that's correct.

23         THE COURT:  Okay.  So the cooperation ended before

24   the indictment was issued in this case, the first indictment?

25         MR. GINGRANDE:  No, I'm sorry.  Maybe I need to go

1    back on this and correct the record.

2          No, the cooperation in fact -- oh, you're talking

3    about the indictment as opposed to the grand jury testimony.

4          I would have to refresh my recollection on the

5    first indictment in this case, your Honor.  Could you tell me

6    what that date was?

7          THE COURT:  I know it was 2019.  I'm fairly sure.

8          Attorney Mirhashem, do you know?

9          MR. MIRHASHEM:  The date of the indictment?

10         THE COURT:  The first -- original indictment.

11         MR. MIRHASHEM:  I can check that, your Honor.

12         It looks like the original indictment in this case

13    appears to have been returned July 10, 2019.

14         THE COURT:  Okay.  July 2019.  Okay.

15         And the cooperation had ended then before the

16    indictment was issued?

17         MR. GINGRANDE:  Well, now we're closer in time to

18    the grand jury testimony, right?  Am I wrong that the grand

19    jury testimony was in May of 2019?

20         THE COURT:  That sounds right if essentially they

21    issued the indictment a month after.

22         MR. GINGRANDE:  Right.  So --

23         THE COURT:  Or two.

24         MR. GINGRANDE:  I'm just trying to confirm it.  I'm

25    trying to pull up the record right now, your Honor, of the

1    cooperation.

2              THE COURT:  But he's not currently cooperating.

3    It's not your typical cooperation case.  It's -- if you will,

4    it is stale cooperation.  It's not --

5              MR. GINGRANDE:  He's certainly no longer

6    cooperating, your Honor.

7              THE COURT:  Right.  And it's not as if you're using

8    him to prosecute other people on an ongoing basis.  That's not

9    happening, right?

10             MR. GINGRANDE:  As far as I'm aware, your Honor,

11   that's correct.

12             THE COURT:  Okay.  All right.

13             And the cooperation evidence in the case is

14   relevant to a prosecutorial misconduct argument, and certainly

15   Attorney Mirhashem made the argument that this was material

16   that should have been turned over, this was Brady material in

17   the Craigue trial, and so ultimately there is a public right

18   of access argument to be made that the cooperation evidence

19   that was kept from Attorney Mirhashem and his client is part

20   of the prosecutorial misconduct that is related to the

21   payment, giving John Doe money to testify at the grand jury,

22   those are related.

23             And so that's why I have a hard time completely

24   wiping the cooperation from the public record, but on the

25   other hand I see a need to do what I can do to try to protect

1   his name and his identity.

2          I think -- if your argument is accurate that just

3   the fact that he was a witness in this public trial is going

4   to identify him because of the nature of the case and other

5   things that happened in the case, then I'm not sure how I can

6   properly address that.

7          I do want to hear from Attorney Lothstein, and

8   obviously, Attorney Brown, I'll let you respond as well and

9   hear from Attorney Mirhashem.

10         But, Attorney Lothstein, what's your position?  You

11  are on mute.

12         MR. LOTHSTEIN:  Thank you.

13         So -- well, your Honor, it's tough because, you

14  know, John Doe -- I put a Post-It note on my screen to try to

15  remind myself to say this correctly because I don't like

16  referring to any client by generic terms.

17         John Doe, as you know from the transcripts and

18  presiding over this trial, was really a nobody before this all

19  started in a good way, not in a bad way, but, you know, he was

20  a nobody.  He was a person that did not have a public persona,

21  a public spotlight on him, and ideally he would like to keep

22  it that way for obvious reasons.

23         He was roped into this.  He was a subpoenaed

24  witness.  He did not want to participate in this trial.  The

25  transcript is painful to read.  He certainly didn't sound like

1   a well-prepared witness.  I'm surprised he didn't have a

2   lawyer from the beginning, honestly, when the first questions

3   on cross-examination are you lied on official forms, on OSHA

4   forms, and that's a crime, isn't it.  So I'm surprised that he

5   didn't have a lawyer from the beginning even apart from all

6   the issues about being an informant for the Concord Police

7   Department.

8           I liked what you said before, your Honor, and

9   spelling out a number of different things that you're going to

10  redact to take away context that would identify him just by

11  his associations or his job, prior jobs and things like that.

12          Because there's been news coverage of this case, I

13  think John Doe understands that no matter how much you do

14  that, yes, a good reporter or somebody could try to connect

15  the dots, but it's hard for me to argue against further -- I

16  mean, it's hard for me to argue in favor of more redactions

17  because the level of public interest and the issues in this

18  case is almost as strong as the level of public interest could

19  possibly be.  I mean, I live here in Concord.  Either a

20  Concord police officer committed just unbelievable misconduct

21  in giving money to a federal grand jury witness and not

22  telling the prosecutors about it or the Concord officer told

23  them and so the attorneys in this hearing right now committed

24  very serious misconduct.

25          I don't have an opinion which way.  I have to hope

1    that it's not Attorney Gingrande and Attorney Davis, but I

2    have no idea.

3            The point is though that either way -- either way

4    it's hard to imagine an issue in a criminal justice system

5    with much more need for the public to know than, you know, and

6    looking at it in the light most favorable to Attorneys

7    Gingrande and Davis, that a Concord police officer paid a

8    federal grand jury witness and didn't tell the federal

9    prosecutors' office.  That is terrible.  That is terrible.

10           So it's hard for me to argue for anything more than

11   you're already offering to do, your Honor, and I appreciate

12   those redactions to help him remain -- at least chances are to

13   remain an anonymous person, just another person on the street.

14           THE COURT:  Okay.  Thank you very much.

15           Let me just say as a person who oversaw the Craigue

16   trial that I witnessed Attorney Gingrande and Attorney Davis

17   discover these facts in the middle of the trial and witnessed

18   their reaction, and I can certainly say that my impression was

19   they were as shocked as the Court and as Attorney Mirhashem.

20           Now, should they have looked sooner?  Should they

21   have lifted up a rock and looked underneath it?  Attorney

22   Mirhashem says they should have.  That there was actually a

23   document in the file that would have alerted a prosecutor to

24   do due diligence to look into what was going on between this

25   witness and the Concord Police Department.

1    I don't in any way mean to suggest that that's

2    acceptable or that that's not prosecutorial misconduct.  That

3    was a failure of due diligence based on my impression.

4          However, my impression is also that the attorneys

5    at issue here did not know what had gone on in this case.

6    Should they have known?  Yes.  Did they know?  I do not think

7    so.

8          That's beside the point, however.  I appreciate

9    your weighing in on behalf of John Doe.

10         Attorney Brown, would you like to add anything?

11         MS. BROWN:  Yes, a couple of things.

12         Attorney Gingrande refers to Roviaro several times,

13   and I think it's in their pleading.  It's really worth

14   mentioning that that case found that disclosure of the

15   informant was justified by constitutional consideration.  I

16   know they used boilerplate language about the importance of

17   protecting informants.

18         And I think the underlying facts of that case are

19   important too because, and this has been my experience for 30

20   years, you use an informant as merely an information source

21   towards other things.  Like an informant says, hey, this

22   person is selling drugs, and then you go set up surveillance

23   and you take photos, I mean we've all seen those cases, and

24   then you get independent evidence of the supposed drug dealer

25   going in and out, whatever it is, then you shouldn't have to

1    turn over the informant because he's not part of your case.

2         But when you send the informants to the drug

3    deal -- in fact, he's doing the drug deal.  In fact, he's the

4    one who's encouraging the defendant to sell drugs or to sell

5    more drugs or sell a larger quantity of drugs, and the

6    defendant is saying, hey, this guy was sucking me in here, now

7    you've made the informant a part of the case and now you've

8    made him relevant.

9         That's how I've always read Roviaro and I think

10   that's what it says.  And it's specifically mentioned where

11   the informant either was a witness in the case or a part of

12   the crime.  That's a different scenario in terms of

13   confidentiality than merely providing information that leads

14   to other independent information.  I think that's really

15   important here.

16        As far as the documents that I've received, as far

17   as I could tell, and I may have missed this, the only thing

18   that identifies John Doe -- the only case that I can identify

19   that he was involved with was the Craigue case.

20        So if anyone has some motive towards hurting Mr.

21   Doe, it would be Mr. Craigue, and my understanding is he knows

22   that Mr. Doe, you know, was acting as an informant.  He had a

23   front row seat as all of this went down.  I'm sure his

24   attorneys told him about this.  So I don't see that there's

25   anyone else out there in the world who would be having

1    problems with this.

2            But, most importantly, there's a way to protect

3    this informant.  There are ways to redact.  Can we always stop

4    people from making deductions from records and files?  No.  I

5    run into that myself.  I'll get discovery in a case and it

6    says informant, and I'll go to my client, do you know who this

7    guy is, you know.  Sometimes they do and sometimes they don't,

8    you can never a hundred percent protect for that, but this is

9    a situation where you can protect for it.  If people want to

10   make guesses, they're always going to do that, but I think the

11   information here is of such an important constitutional

12   magnitude for not just Mr. Alrai, and that seems to be what

13   the government was arguing, like, oh, he's got his stuff, he

14   can go use that.

15           Mr. Alrai filed this motion under two theories.

16   One, he is a representative of the public.  And as a victim

17   himself of prosecutorial misconduct, he has an interest as a

18   member of the public of having incidences of prosecutorial

19   misconduct made public but obviously doing so in a way --

20   we've always from our first pleading been in favor of

21   redactions, that that's something that the Court should do.

22   We don't have any objection to that.

23           And I think that summarizes our arguments.

24           THE COURT:  Thank you.

25           Attorney Mirhashem, do you want to say anything?

1          MR. MIRHASHEM:  Your Honor, I would like to say

2     three things.

3          The first two I wasn't planning on saying when this

4     hearing started, but I think I do want to say them now with

5     respect to the factual record, you know, a lot of time has

6     passed and, you know, my memory of what happened is certainly

7     not perfect and I'm sure neither is other people's, but I want

8     to tell you my best recollection of two facts, neither one of

9     which really bears strongly on the issue before the Court but

10    I think it's important for me to say them.

11         One, I think, as the Court pointed out, the

12    Department of Labor documentation in this case states that the

13    agent learned that a Concord Police Department officer had

14    some form of ongoing relationship with John Doe.  So this is

15    not a situation where an agency that was, like, tangentially

16    involved in the investigation knew something.

17         The Department of Labor records, the very records

18    that Attorney Gingrande and Attorney Davis provided to us,

19    contained a reference to this relationship between John Doe

20    and the Concord Police Department.

21         The second thing I want to say, going back to this

22    issue of who knew what and Attorney Lothstein's sort of two

23    scenarios, the facts I think in fact seem to suggest a third

24    scenario.  The document that talks about the cooperation of

25    John Doe in the form of getting paid for testifying before a

1    federal grand jury states that the Concord police officer

2    says, and I don't have it in front of me, but essentially says

3    this is something that he thinks he would have told the

4    federal agent on the case.

5            So it's not just either Concord police knew and

6    kept it to themselves or Attorneys Gingrande and Davis knew.

7    The most plausible scenario seems to be the Concord Police

8    Department officer told a federal agent that he had paid a

9    federal grand jury witness, and apparently that federal agent

10   didn't do anything about it and we don't know if any

11   disciplinary action or anything else was taken with respect to

12   that agent.

13           And so these are two facts that I say because

14   honestly the reason I'm getting into this -- I want the record

15   on this to be clear in light of the third thing I'm going to

16   say.  My concern is you're going to issue an order that is

17   going to result in a Concord Monitor article.  That article is

18   going to have quotes from the U.S. Attorney's Office, oh, this

19   was a Concord Police Department matter and we didn't know

20   about it.  The feds didn't know about it.  We had no way to

21   know about it.  That's going to be an inaccurate statement,

22   and I just want to say up front that those inaccuracies will

23   in some form have to be corrected.

24           So I'm just reminding us that the facts are not

25   that this was a separate state agency that, you know, had

1    nothing to do with this case.  That Concord police officer's

2    belief -- although if I remember the report correctly, he

3    doesn't have a definite actual recollection of telling the

4    agent, but I think he said in that report that it's the sort

5    of thing that he would have told the agent.

6              And so those are my factual notes for the record.

7              As far as my position as Mr. Craigue's lawyer, you

8    know, I think our position has been clear throughout this

9    litigation that these are weighty issues for the Court to

10   consider.  There's a strong public interest here.  There's a

11   strong interest on behalf of John Doe.  There's a strong

12   interest on behalf of Mr. Alrai.

13             Our client, you know, the case against him was

14   tried in June, was dismissed in June.  He wants to go on with

15   his life.  He's not looking forward to publicity or anything.

16   So we take no position on exactly what should or should not

17   be redacted here.

18             Thank you.

19             THE COURT:  Okay.

20             MR. LOTHSTEIN:  Your Honor, could I say one more

21   thing or two more things maybe?

22             THE COURT:  Go ahead.

23             MR. LOTHSTEIN:  Thanks.

24             The first thing I want to say is that although

25   Donna is right about Roviaro and everything she said, one of

1   the reasons why I think it's important for you to do the

2   redactions you're talking about is that I have to believe that

3   if Attorney Davis and Attorney Gingrande did know this full

4   story they just would have dismissed this case.  I mean,

5   they're very experienced lawyers.  It's hard for me to believe

6   they would take a case to trial if they knew that a grand

7   jury -- that their star witness or one of their star witnesses

8   had been paid for grand jury testimony.

9           So if they had dismissed it before trial, then none

10  of this would ever have been known.  So that's a way in which,

11  you know, John Doe is really an innocent victim here because

12  he is not someone who signed up to cooperate with Attorney

13  Gingrande and Attorney Davis with all the risks that comes

14  with that and with the knowledge that when he testified in

15  public that all of that would come out.  It couldn't be more

16  different than that.

17          It's much more likely to be a situation where there

18  never would have been a jury trial if these two attorneys knew

19  that and of course understanding that they have to disclose it

20  to the defense.

21          So that's why I think it's important for the Court

22  to take those extra steps to try to redact as much as possible

23  to create the context here.

24          And the last thing I want to say -- because I don't

25  want to be misunderstood by anyone.  When I said there's two

1    scenarios, and then Behzad points out correctly I think that

2    there could be a third scenario, regardless I'm not saying

3    that they're all equally equal.  I mean, I have to believe

4    that the Concord police officer is just saying something

5    self-serving when he says I think I would have told them or I

6    have to believe I would have told them, I don't remember.

7            Look, we'll never know.  That's all I meant when I

8    said I don't have an opinion about this is that I missed all

9    the key events in this case.  I came in to clean up at the

10   end, thank you for that, your Honor, and I've done the best I

11   can, but I don't want to be misunderstood that I'm saying that

12   all those scenarios are equally likely.

13           The only point I'm trying to make is that no matter

14   how you look at it somebody committed serious misconduct.

15           THE COURT:  All right.

16           I have to say my memory is consistent with Attorney

17   Mirhashem's, and so I want to ask -- Attorney Gingrande, is

18   what Attorney Mirhashem described, is that consistent with

19   your memory as well and your understanding of the record?

20           MR. GINGRANDE:  No, not at all.  And frankly, you

21   know, I wasn't intending to get into this, your Honor.

22           Again, this is not -- what we're here to discuss is

23   the motion and the opposition and how to protect a

24   confidential informant.

25           THE COURT:  Excuse me.  I know what we're here to

1    discuss, and I am asking you a question, okay?

2              MR. GINGRANDE:  Okay.

3              THE COURT:  And I remember very clearly that there

4    was a piece of paper in the file.  Attorney Mirhashem referred

5    to it with frustration repeatedly and he said the document

6    referenced some sort of relationship between the Concord

7    Police Department and John Doe, and the reason he was

8    concerned about it was because John Doe did not want to

9    cooperate with the government in this case.  John Doe was

10   essentially uncooperative and they needed to bring in this

11   person who had this close relationship with him to essentially

12   talk him into coming in, and there was a document that

13   Attorney Mirhashem described being in the file.  Attorney

14   Mirhashem was relying on the document, if my recollection is

15   accurate, and he was saying to the Court, Judge, I'm asking

16   him to follow up on this document, and ultimately Attorney

17   Davis did.

18             And you know what?  That's when ultimately it was

19   revealed that there was cooperation, there was this CI file at

20   the Concord PD, and there was this shocking revelation about

21   the payment to the grand jury.

22             And my recollection with regard to the statements,

23   and I don't think it is in the record anywhere, but the record

24   that Attorney Mirhashem described where the current probation

25   officer, former Concord Police Department officer, is saying

1    he would have told the federal agent, that seems consistent
2    with my memory of that.
3            You just said that it's not at all close to your
4    memory.  So what is your memory?
5            MR. GINGRANDE:  Your Honor, since I'm being asked
6    directly, I will respond.
7            The date of that document that Behzad just cited is
8    months, months before John Doe is signed up as a CI and months
9    before the grand jury testimony that he gave.  That
10   relationship at that time, whatever it may be, was not a
11   relationship of John Doe being a CI.
12           I'm trying to find the exact dates right now as I
13   pull this up for what the precise date of that document is,
14   but I believe the date of that prior relationship -- that
15   references a prior relationship is March 26th of 2019 in an
16   interview with John Doe and John Doe is not signed up until
17   May 16th of 2019.
18           THE COURT:  Okay.  I'm just a little confused.
19           MR. GINGRANDE:  So --
20           THE COURT:  Let me stop you.
21           MR. GINGRANDE:  Yes.
22           THE COURT:  March 26, 2019, John Doe is
23   interviewed.  I never saw these records.  I only heard them
24   referenced so I'm asking you because I don't know, but that
25   record is an interview with John Doe in March of 2019, right?

1          MR. GINGRANDE:  That's a report of an interview in

2     which this relationship is cited to the best of my

3     recollection, yes.

4          THE COURT:  Okay.  Let me ask you though.  They

5     have had a relationship prior to March of 2019 whereby he was

6     getting paid small amounts of money to be a CI for the Concord

7     PD, and you told me earlier that you think that ended in 2018

8     so clearly his relationship predated this March 2019

9     interview.

10          But it really is beside the point because

11     ultimately that's what uncovered -- in the middle of the trial

12     you and Attorney Davis uncovered somehow following up on this

13     that there was this CI relationship.  So that's ultimately

14     what is important here.

15          And I remember the references to this document, and

16     Attorney Mirhashem had seen it, it had been provided to him,

17     and he had been urging the government to follow up on that

18     document.

19          He didn't file any sort of motion to compel, maybe

20     I would have granted such a motion, but ultimately he was

21     asking me to compel the government to look into this and

22     ultimately you agreed to do it on your own in the middle of

23     the trial, and that's when you uncovered the CI history as

24     well as the grand jury testimony.

25          So that's ultimately what's important about this

1    document.  No?

2                    MR. GINGRANDE:  Well, can I respond to that, your

3    Honor?

4                    THE COURT:  Yes.  Of course.

5                    MR. GINGRANDE:  So you just quoted me as saying

6    that I agree that it was in 2018.  If you recall, I said at

7    the time:

8                    I think that's right.  I might be getting confused.

9    I know we talked about the grand jury testimony.

10                   It turns out that was -- 2019 was the grand jury

11   testimony, okay?

12                   If you look at the documents, the relationship as a

13   CI happens in 2019, not 2018, and it begins in May of 2019,

14   not 2018, okay?

15                   THE COURT:  Well, that's an important --

16                   MR. GINGRANDE:  So to the extent I agreed to 2018

17   and led the Court to believe that it was 2018, I do apologize.

18   No, it was 2019, in May of 2019 when that CI relationship was

19   established, and it was two months prior, March 26th of 2019,

20   that the report of the interview saying that they had a

21   relationship was written.

22                   So at the time that that report was written there

23   was no CI relationship.  There was none.  And there was no

24   payment for grand jury testimony because that hadn't even

25   happened yet.  So that's why, your Honor, I'm saying I

1    disagree with Attorney Mirhashem's --

2              THE COURT:  It would have been helpful for me to

3    know that when I was asking you specific facts about when he

4    was a CI and when it started and when it stopped.

5              So what you're telling me now is an entirely

6    different set of facts.  You're telling me that he was a CI as

7    of May 2019.

8              So he was a CI and was paid for his grand jury

9    testimony at around the same time because he testifies in

10   front of the grand jury for $80 against Mr. Craigue in July of

11   2019.  So, in essence, he's in this business relationship, if

12   you will, with the government at the time that the grand jury

13   is meeting to indict Mr. Craigue.

14             So that in and of itself I think heightens the

15   level of prosecutorial misconduct at issue here and makes it

16   even more important that you disclose this to Mr. Craigue's

17   attorneys, which you did when you found out about it to your

18   credit.

19             However, I need to know if in fact he's a CI, when

20   did his CI status end?  Was he done cooperating at the time

21   that he testified in this trial?

22             MR. GINGRANDE:  No.  So my understanding, your

23   Honor, is that the first payment that he received, and this is

24   in -- this is in the DOL report that your Honor has access to

25   that Attorneys Mirhashem and Graham have access to as well,

1    and now that Attorney Brown has access to, but I believe that

2    that was the first -- and you just said I think that he

3    testified in July of 2019 before the grand jury.  Is that what

4    he said?

5              THE COURT:  I think that's what you and Attorney

6    Mirhashem just told me.  It was May.  It was May and then the

7    indictment was issued in July.

8              MR. GINGRANDE:  Correct.

9              THE COURT:  Okay.

10             MR. GINGRANDE:  Exactly.  So it was May, and that

11   was the beginning.

12             The CI relationship essentially started with the

13   payment in May of 2019.  And so he testifies for the grand

14   jury, and then the next -- I think it's the next day he is

15   paid and it's essentially an inducement.  And again, I am

16   paraphrasing what is in this DOL report that your Honor has

17   access to and it's on the record.  It's an inducement for him

18   to become a CI.

19             So as it turns out, he did not have an ongoing

20   relationship of being a CI at the time that he's testifying

21   for -- at least to the extent that -- you know, he's not

22   getting paid as a CI at the time that he testified.  It's

23   literally the next day that he is paid for the first time as a

24   CI.  And then going forward from that John Doe -- he, John

25   Doe, is continuing to be paid as a CI and that lasts for that

 1   summer roughly, and then after that John Doe is no longer an

 2   active CI.

 3          So again, those are -- that was one of the points

 4   for which I disagree with Attorney Mirhashem because that

 5   relationship did not happen -- the CI did not happen until

 6   later.

 7          And then the other response was that -- it was

 8   essentially what Attorney Lothstein said when it comes to this

 9   question of -- this question of John Doe -- or not John Doe,

10   I'm sorry, of the DOL agent's knowledge of what the police may

11   have said.  That is also spelled out specifically in that DOL

12   report so we don't have to guess as to what was said, it's in

13   the report, and the account was that the Concord police think

14   they must have -- you know, this officer thinks he must have

15   told the agent that he was paying a confidential informant but

16   couldn't recall any actual conversation informing him and the

17   agent -- where he would have told the agent, and then the

18   agents did not know.  At least told us they did not know.

19          So the -- you know, there's been discussion in this

20   hearing obviously about what we knew, what we should have

21   known.  I just want to say for the record, because these

22   things did come up, is that the other thing that's been

23   discussed is diligence in this.  Without going into a whole

24   long discussion about it, you know, I will say personally that

25   I conducted diligence that I would have thought would have

1   revealed this information, and I was shocked when we did learn

2   this information in the middle of trial.

3            It is my understanding that my colleagues who were

4   working on this case longer than I was had also conducted

5   diligence and yet did not get this information.

6            So of course when Attorney Mirhashem brought it to

7   our attention and asked us to follow up on this relationship,

8   ask the questions, at that point that relationship had

9   transpired.  It had become a relationship of a CI.  We

10  followed up, we got that information, and of course we were

11  going to inquire right away and Attorney Mirhashem wouldn't

12  have to compel it because we take those obligations seriously.

13  I'll speak for myself.  I take that obligation seriously.  And

14  so we wanted to do that of course to uncover that information

15  and to comply with our obligations, and obviously it revealed

16  what it did.

17           And so -- you know, again, I wasn't prepared to

18  talk about these things today.  I think that the issue that

19  we're talking about, you know, these may be tangentially

20  related.  Certainly they are related, but my concern now is

21  really what do we do given what transpired and trying to

22  protect this witness.

23           THE COURT:  Well, I need to know if he's a current

24  CI, when was he a CI.  I need to know those things in terms of

25  my decision here today.  So the question of when he stopped

1   being a CI is relevant.

2          What was the relationship then before he was a CI?

3   How do you characterize that?

4          Attorney Mirhashem.

5          MR. MIRHASHEM:  Your Honor, I partially agree with

6   Attorney Gingrande.  So let me just respond, if I may.

7          I think we started down this path because I heard

8   Attorney Gingrande say -- there was this, you know -- at least

9   as I heard, and he was suggesting, oh, the Concord Police

10  Department, they're separate from the Department of Labor.

11         I responded to that by saying in fact the

12  Department of Labor's own records refer to a relationship

13  between John Doe and a Concord police officer.

14         Attorney Gingrande is right that if you -- once

15  they -- my position is Brady required them, Kyles versus

16  Whitley required them right then and there.  Within their

17  discovery they see that a key prosecution witness had a

18  relationship with a police department that was involved in

19  this case.  They had a constitutional obligation to inquire

20  into the nature of that relationship, and they violated Mr.

21  Craigue's due process rights by failing to make such an

22  inquiry.  That's my position.

23         But as a factual matter, that relationship had it

24  been inquired to he is right that at that stage was not a

25  formal payment for a CI relationship.

1          Part of the difficulty here is that we were given

2    these records and we eyeballed them and returned them.  We

3    don't have any copies of them.

4          So the document that certainly exists is the motion

5    to seal that I filed the day after the trial was dismissed,

6    that had the DOL investigative report about the grand jury

7    testimony.  So I agree that that's a very reliable source for

8    the Court to look at.

9          But as far as the relationship, my recollection --

10   and Attorney Gingrande may actually have their reports.  This

11   police officer had some sort of a relationship with John Doe

12   in connection I believe with some drug incidents.  However,

13   John Doe had not been interested in cooperating formally with

14   the Concord Police Department.

15         For whatever reason on the very day that he

16   testified before the federal grand jury, he got paid for it

17   and he started a formal CI relationship with, like, records

18   that I saw of payments, et cetera.

19         So I think that if I suggested that he was a CI at

20   the time, that was not my intention.  He had some sort of

21   relationship with this officer, and that should have been

22   enough for the government to contact the Concord Police

23   Department and say, you know, what is your connection with

24   this key prosecution witness.  <u>Kyles</u> requires no less than

25   that.

1        But I'm not suggesting he was an informant at that

2   time.  He became an informant, I think as Attorney Gingrande

3   indicated, either the day he gave paid federal grand jury

4   testimony or the day after he gave paid federal grand jury

5   testimony.

6        THE COURT:  Okay.  All right.

7        Anybody want to say anything else?

8        MR. GINGRANDE:  Your Honor, I would just ask -- I

9   suppose this is just a question.  Assuming the Court does

10  order redactions for the documents, you know, the government

11  has agreed to, and I think, you know, this was in our

12  opposition, to proposed redactions, you know, so we could do

13  the work and actually redact the documents and submit them for

14  the Court's approval.  Also, of course, open to whatever the

15  Court may feel appropriate, but I think that the government

16  has, you know, proposed redactions in its opposition for that

17  purpose.

18        THE COURT:  Okay.  All right.

19        Anybody want to say anything else?

20        (No response.)

21        I'll issue an order -- I think as soon as I can in

22  this issue a decision.  It will lay out specifically I think a

23  procedure, and I think it will be fairly consistent with what

24  I've told you here would be my goal, which is to redact his

25  name.  To the extent he's referred to, he's referred to as

1   John Doe.  To the extent there's any reference to him in a

2   public document, that will be -- his name will be removed.

3           And I will probably let the government have the

4   first crack at this and frankly probably make you do the most

5   work in consultation with Mr. Alrai's counsel, Attorney Brown,

6   but I'll probably ask you to submit this new proposed set of

7   redactions within a certain time frame and then I'll give

8   Attorney Lothstein, Attorney Brown, and Attorney Mirhashem a

9   short time to object on grounds that it's inconsistent somehow

10  with the Court's order.  And assuming it's not inconsistent,

11  assuming that all the other attorneys agree that it's

12  consistent with my order, you can obviously let the Court know

13  that and then we can get this record cleaned up and it can be

14  opened up in the manner in which I have described here, and I

15  think that's probably what I will end up doing.

16          I appreciate counsels' input.  I appreciate the

17  briefing.  Unless there's anything anybody wants to say before

18  we break --

19          MR. MIRHASHEM:  I just have one request, your

20  Honor.

21          In response to the Court's inquiries I think during

22  this sealed hearing, I and I think others made references to

23  various matters that are subject to protective orders by this

24  Court.

25          I know that Mr. Alrai is present during this

1    hearing.  So I would just ask that either his counsel or the

2    Court inform him that these are matters that are confidential

3    pursuant to the Court's order.

4              THE COURT:  Okay.  Well, I was hoping that that

5    would be something Attorney Brown would have made clear to him

6    before this hearing, she's shaking her head yes, but that is

7    correct.

8              And to the extent any members or clients are

9    watching this hearing, this is a sealed proceeding, and I

10   intend to issue an order, you know, shortly so that the

11   broader seal that I issued in my most recent order will be

12   very temporary, and the public will then have access to, you

13   know, large -- in large part the entirety of the record minus

14   his name and any other identifying information.  That's my

15   intention.

16             MR. MIRHASHEM:  Thank you, your Honor.

17             THE COURT:  All right.  Thank you.

18             MR. GINGRANDE:  I'm sorry, your Honor, could I -- I

19   apologize.

20             THE COURT:  Go ahead.  Go ahead.

21             MR. GINGRANDE:  I was just going to ask -- the one

22   other thing that I was just hoping to get some clarity on

23   regarding this hearing was just the scope of the motion and

24   the documents, and I don't know if this was already a plan of

25   yours to include in the motion specifically what the documents

```
 1   are.
 2              THE COURT:  Yes.  Yes, I will.
 3              MR. GINGRANDE:  The government has tried to put
 4   forward what it thinks is the full scope of documents, but it
 5   would certainly be helpful to get some guidance from the Court
 6   on that.
 7              THE COURT:  I will lay that out for you in the
 8   order what I believe to be the entirety of the orders and
 9   transcripts that we're talking about in this case.
10              MR. GINGRANDE:  Okay.
11              THE COURT:  I could certainly summarize that for
12   you now, but my guess is that you would not necessarily be
13   able to or want to absorb that level of detail right now, but
14   if I'm wrong about that, I can certainly list them for you.
15              MR. GINGRANDE:  That's okay.
16              THE COURT:  All right.  I'll include that in my
17   order.
18              Thank you, counsel, and Court is adjourned.
19              (Conclusion of hearing at 4:45 p.m.)
20
21
22
23
24
25
```

1                    C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate transcription of

6    the within proceedings, to the best of my knowledge, skill,

7    ability and belief.

8

9

10   Submitted:  12-13-21     /s/   Susan M. Bateman _____
                              SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25